IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Martin Cowen**, et al.,<br><br>     Plaintiffs,<br><br>vs.<br><br>**Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia,<br><br>     Defendant. | Case No. 1:17-cv-04660-LMM<br><br><br>**Declaration of<br>Hugh Esco** |

1.    My name is Hugh Esco.  I am a registered voter in Georgia's Sixth Congressional District.

2.    I am a founding member, longtime officer, and current secretary of the Georgia Green Party.

3.    The Georgia Green Party was founded in 1996 and is the official Georgia affiliate, an accredited member of the Green Party of the United States.

4.    The Georgia Green Party is a political body within the meaning



Plaintiff's SJ
Exhibit

006

of O.C.G.A. § 21-2-170.

5.      Over the course of my involvement with the Georgia Green Party,

I have coordinated or otherwise been involved with numerous petition drives.

I have coordinated or been involved with petition drives for Green Party

candidates for President, other statewide offices, U.S. Representative,

members of the Georgia General Assembly and for county office.  I have also

coordinated or been involved with the Georgia Green Party's petitions

attempting to qualify to nominate candidates for statewide office by

convention under O.C.G.A. § 21-2-180. As a result of those petition drives, I

have over the years filed tens of thousands of signatures with the Georgia

Secretary of State, having personally collected more than ten thousand of

those signatures.

6.      In my experience, Georgia's signature requirements for

independent and political-body candidates for U.S. Representative are not

realistically achievable.

7.      The number of signatures required is simply too high to collect in

the time available.  This is particularly true because the Secretary of State's

office routinely rejects a high proportion of signatures.  In 2016, for example,

the Secretary of State rejected approximately half of the signatures collected

2

for the Green Party's nominee for President, Dr. Jill Stein.  As a result of the low validation rates, in my experience, a party or candidate needs to collect at least double the number of raw signatures as the number of valid signatures which are required by the statute.

8.     The sheer burden of collecting tens of thousands of signatures is compounded by at least four additional factors.  First is that traditional public spaces where petitioning used to take place, such as main streets and town squares, have become increasingly privatized into shopping malls and the like.  Second is that the automobile has insulated voters from circulators. Potential signers drive right past our circulators as they go to park at privately owned strip malls and shopping centers.  Third is that concerns about identity theft have made many potential signers wary about sharing their personally identifying information like birth dates and home addresses. And fourth is that petition circulators, even when canvassing legally on public property, are often harassed by police officers unaware or unconcerned about the right to petition guaranteed to our Party supporters.  Green Party petitioners have been harassed repeatedly over the years while gathering signatures in public parks, and this makes it very difficult to attract and maintain volunteer circulators.

3

9.    I have worked with hundreds of volunteer petition circulators over the years.  While many of them were hard-working and dedicated, volunteers rarely produce many signatures.  They can usually devote only a few hours per week to the effort – if that – and they usually don't turn in more than a few dozen signatures.  Based on my experience with volunteers over the years, I would estimate that an independent or political-body candidate for U.S. Representative would need hundreds of volunteers in order to collect the number of raw signatures required for access to the ballot, and that number of volunteers is simply not realistic.

10.    It might be possible for a candidate to meet the requirement with paid petition circulators, but that would take a huge sum of money.  Based on my experience with paid petition circulators, I would estimate that an independent or political-body candidate for U.S. Representative would need more than $75,000, and that number is also not very realistic.  Either a candidate would have to have immense personal wealth or the ability to raise that money within the limits of federal campaign finance laws.  But I have found that raising money for signature-gathering is very difficult.  Donors generally do not want to give money for that purpose.

11.    Several Green Party candidates for U.S. Representative have

4

made a genuine effort to satisfy the ballot-access requirement.

12.    In 2002, Joyce Griggs declared her intention to qualify for the general-election ballot as the Green Party candidate in Georgia's First Congressional District.  She made a genuine effort to gather enough signatures but was unsuccessful in doing so.  It is worth noting that the signature requirement was lowered by court order that year because Georgia was late to redraw district lines, and Griggs was still unable to gather enough signatures despite her best efforts.  With perhaps eight volunteers, Griggs gathered approximately 400 signatures over a period of six or eight weeks.

13.    Also in 2002, Al Herman declared his intention to qualify for the general-election ballot as the Green Party candidate in Georgia's Seventh Congressional District.  He made a genuine effort to gather enough signatures but was unsuccessful in doing so.  With ten or so volunteers, Herman collected more than 2,000 signatures over a five-month period.

14.    In 2018, Jimmy Cooper declared his intention to qualify for the general-election ballot as the Green Party candidate in Georgia's Eighth Congressional District.  He made a genuine effort to gather enough signatures, gathering 171 in January and February of that year, before

5

discovering that recent changes to the election calendar would preclude his access to the ballot for other purposes.

15.   Georgia's ballot-access laws make it more difficult for the Green Party to recruit highly-qualified candidates for U.S. Representative.

16.   In 2012, we came close to recruiting former U.S. Representative and 2008 Green Party nominee for President, Cynthia McKinney, to run as the Green Party candidate for U.S. Representative in Georgia's Fourth Congressional District.  She filed a notice of candidacy with the Federal Election Commission and began raising money for a possible bid, but she ultimately decided against running because she concluded that it would be difficult, if not impossible, for her to satisfy the ballot-access requirements.  Had she been on the ballot in the general election, I believe that she would have been highly competitive.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on June __3ᵈ__, 2019.

_____
Hugh Esco