IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Martin Cowen**, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>**Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia,<br><br>Defendant. | Case No. 1:17-cv-04660-LMM<br><br>**Declaration of Ryan Graham** |

    1.    My name is Ryan Graham. I am a registered voter in Georgia's Fifth Congressional District.

    2.    I hold a bachelor's degree in computer science from Georgia State University, and I am currently employed as an IT Project Manager for a consulting company.

    3.    I have been involved with the Libertarian Party for approximately four years, and I was recently elected as chair of the Libertarian Party of Georgia.

Plaintiff's SJ Exhibit 009

4. During my time with the party, I have been involved in membership, IT, affiliate growth, fundraising, and campaigning for the party and its candidates.

5. I started up local affiliates of the Libertarian Party in 10 counties across Georgia.

6. In 2018, I ran as the Libertarian candidate for Public Service Commission, District 3. I received 102,878 votes, or 2.7 percent, in a three-way race.

7. I did not have to gather signatures on a nominating petition for that race, because the Libertarian Party of Georgia is qualified to nominate candidates for statewide office by convention.

8. I would have run for state representative in Georgia's House District 59, but the signature requirement for ballot access deterred me from doing so. I was not sure that I could gather the number of valid signatures required, particularly when the Secretary of State's office rejects so many signatures. So instead I ran for statewide office where ballot access was assured, and the incumbent in House District 59 ran unopposed in the general election.

9. I currently have no concrete plans to run for office again, but I would consider doing so if the right opportunity presented itself. But I would

not likely run for U.S. Representative under existing law, because I do not believe that ballot access is reasonably achievable.

10. In 2018, I helped to gather signatures for two Libertarian candidates for state representative: Jay Strickland in House District 42, and Demond Kennedy, in House District 90.

11. Instead of spending canvassing time educating voters on the policy positions of our candidates, we must use that time to focus on educating voters about ballot access laws so that we can gather signatures.

12. In House District 42, located in suburban Cobb County, I was able to collect approximately 10 signatures per hour by going door to door with a "walk list" of active registered voters obtained from the Secretary of State. Even so, the Secretary of State's office rejected almost 45 percent of the signatures that I and others had gathered on Strickland's behalf. As a result, Strickland did not qualify for the ballot, and the incumbent ran unopposed in the general election.

13. In House District 90, located in suburban Dekalb, Henry, and Rockdale counties, I was only able to get 2 signatures in 3 hours of volunteer time. Many potential signors would not open their door to a stranger, and instead opted to speak through the door. Others claimed to support our efforts but refused to give a stranger the types of information being asked for. As a result, we were not able to collect the number of signatures required.

14. Georgia's ballot-access laws put the Libertarian Party at a financial disadvantage compared to the two recognized political parties in Georgia.

15. Under Georgia law, Republican and Democratic candidates pay their filing fees directly to their political party. The political party then pays the Secretary of State 25 percent of the fees collected, keeping the remaining 75 percent. Libertarian candidates, by contrast, are required to pay their entire filing fee directly to the Secretary of State. The Secretary of State keeps 25 percent and then transmits the remaining 75 percent to the Libertarian Party *after the election is over*. The result is that the Democratic and Republican parties receive an influx of money during the election season as candidates pay their filing fees, while the Libertarian Party does not. The Libertarian Party must instead wait months for those funds—funds that could be used for party-building, signature gathering, or campaigning.

16. The Libertarian Party of Georgia did not receive its share of qualifying fees for the 2018 election from the Secretary of State until mid-April 2019.

17. Another way in which Georgia's ballot access laws put the Libertarian Party at a financial disadvantage is through the operation of federal campaign-finance laws. The Libertarian Party, like the Democratic and Republican parties, is limited in the amount that it can contribute to a

4

candidate's campaign for U.S. Representative. Under currently law, a party committee can give only $10,000 per election cycle ($5,000 for the primary, and $5,000 for the general election). Democratic and Republican candidates can use party contributions for campaigning and other substantive activities. Libertarian candidates will almost invariably have to use that money to obtain ballot access, and even then, the party's contribution would only cover a small fraction of the hundreds of thousands of dollars likely necessary to obtain ballot access.

18. Potential donors have expressed frustration in having to donate towards getting candidates on the ballot instead of supporting campaigning activities.

19. Instead of spending campaign contributions on campaigning activities, our candidates are forced to spend the contributions on petitioning.

20. The Libertarian Party of Georgia has members in each of Georgia's 14 congressional districts.

21. The Libertarian Party of Georgia wants to nominate a candidate for U.S. Representative in all of Georgia's congressional districts and to have those nominees appear on the general-election ballot.

22. Doing so would enable us to take part in a coordinated national campaign, supported by the national Libertarian Party, that presents the

Libertarian Party as a viable alternative to the Republican and Democratic parties.

23.  The Libertarian Party has a platform and policy positions that a plurality of Americans support and which are not being addressed by the two major parties.  We believe that Libertarian positions would have broad appeal to Georgia voters as well, but, without ballot-access, we cannot effectively compete in the marketplace of ideas.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on May __31__, 2019.

_____
Ryan Graham
Atlanta, Georgia

6