IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Martin Cowen**, et al.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>**Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia,<br><br>　　　　Defendant. | Case No. 1:17-cv-04660-LMM<br><br><br>**Declaration of Cynthia McKinney** |

　　　　1.　　My name is Cynthia McKinney. I am a registered voter in Georgia's Fourth Congressional District.

　　　　2.　　I am a university professor, human rights activist, and former politician.

　　　　3.　　I served two terms in the Georgia General Assembly as a Democratic member of the Georgia House of Representatives from 1989 to 1993.

Plaintiff's SJ Exhibit 011

4. In 1993, I became the first African-American woman to represent Georgia in the United States Congress.

5. I was elected to Congress as a Democrat six times by the people of Georgia, and I served twelve years as a U.S. Representative. I represented the Eleventh and Fourth Congressional Districts located in the Atlanta metropolitan area.

6. In December 2007, I announced my candidacy for the 2008 presidential nomination of the Green Party. I won the nomination in July 2008 and appeared on the ballot in 32 states as the Green Party's presidential nominee. I received 161,797 votes.

7. In 2011, I began to explore the possibility of running for U.S. Representative in Georgia's Fourth Congressional District as a Green Party candidate.

8. I reached out to supporters across the country to gauge their interest. I also sought advice from people with experience in organizing ballot-access petition drives.

9. Even with a large network of supporters both across the country and in Georgia, I determined that I would need tens of thousands of dollars, if not six figures, to be certain that I could collect enough signatures to satisfy Georgia's ballot-access requirements. I would need well more than the

minimum number of valid signatures because of Georgia's well-known history of low signature validation rates.

10. In May 2012, I submitted a statement of candidacy form to the Federal Election Commission declaring my intention to seek the Green Party's nomination. Doing so made it possible for me to start raising funds to support the campaign. I then attempted to secure pledges of sufficient donations to allow me to mount a successful petition drive.

11. Raising money for a petition drive proved to be difficult and time consuming. In my experience, donors do not like to spend their money on gathering signatures for ballot access when success is far from assured. They prefer to donate to candidates who are already on the ballot so that their money can be used in more concrete and tangible ways.

12. In fact, at a potential donors roundtable event, I was specifically told that it only takes one person in the Secretary of State's office to deny your petition for candidacy after we've donated thousands of dollars toward the effort. For them, the risk of an unnamed, unknown bureaucrat keeping me off the ballot by objecting to the collected signatures was too high.

13. By June 2012, I determined that I would not be able to raise the resources necessary to mount a successful ballot-access campaign *and* a competitive campaign in the general election once ballot access had been

secured. I therefore withdrew from the race without ever having publicly announced my intention to enter it. Georgia's ballot-access restrictions effectively deterred me from running.

14. I believe that I would have been very competitive in the general election if I had been able to appear on the ballot without having to spend vast amounts of money on a petition drive.

15. Based on my experience in 2012, I do believe that Georgia's signature requirement for ballot access is not realistically achievable.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on May __30__, 2019.

_____
Cynthia McKinney