IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Martin Cowen**, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> **Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia, <br><br> Defendant. | Case No. 1:17-cv-04660-LMM <br><br> **Declaration of Ted Metz** |

1. My name is Edward T. "Ted" Metz. I am a registered voter in Georgia's Thirteenth Congressional District.

2. I have been involved with the Libertarian Party of Georgia since 2014, and I was chair of the party from 2017 to 2019.

3. In 2018, I ran as the Libertarian candidate for Governor. I received 37,235 votes, or .95 percent, in a three-way race.

4. In 2014, I ran as the Libertarian candidate for Insurance Commissioner. I received 86,427 votes, or 3.43 percent, in a three-way race.

Plaintiff's SJ Exhibit 012

5. I did not have to gather signatures on a nominating petition for that race, because the Libertarian Party of Georgia is qualified to nominate candidates for statewide office by convention.

6. I ran for these statewide offices in part to help the Libertarian Party maintain its statewide ballot access under Georgia's current law. I might have chosen to run for a non-statewide office if the party's ballot access were not contingent on its candidate's performance in elections for statewide office.

7. I intend to seek the Libertarian nomination for U.S. Senator in 2020 and for Governor again in 2022. Again, I might choose to seek a non-statewide office if the party's ballot access is not contingent on the party's performance in elections for statewide office.

8. I would like to vote for a Libertarian candidate for U.S. Representative in my district.

9. During my time with the party, I have been involved with fundraising and candidate recruitment.

10. As chair, I received dozens of inquiries from potential Libertarian candidates. Among other things, I would explain the ballot-access requirements to these potential candidates. It is hard to know for sure why some of the potential candidates declined to run, but my sense is that the signature requirement was a significant deterrent for potential candidates for

U.S. Representative and the state legislature. The filing fee was also a deterrent for candidates for U.S. Representative. Two potential candidates that I know were deterred by the ballot-access requirements are Beth Pollak, who inquired about running for state representative, and Travis Klavohn, who inquired about running for U.S. Representative. I believe that both of them would have run as Libertarian candidates if the ballot-access requirements had been reasonably achievable.

11. As chair, I was also involved in fundraising, and I have heard donors refuse to give to candidates because the candidates were not assured of a place on the ballot. Donating to a candidate who may not even make it onto the ballot strikes these donors as a risky proposition at best and makes fundraising exceedingly difficult.

12. The same is true of volunteer recruitment. Just as donors are hesitant to give their money to support a candidate who may not make it on the ballot, so too are volunteers hesitant to donate their time to the same cause. As chair, I often tried to recruit volunteers for signature-gathering over social media, and I found it to be very difficult to get people excited about that activity. Not only is the task of canvassing door-to-door itself off-putting to some people, but also the Secretary of State's track record of rejecting so many signatures submitted in the past by Libertarian candidates

makes our supporters believe that gathering signatures would be a wasted effort.

13.     Georgia's filing-fee scheme also puts the Libertarian Party and its candidates at a disadvantage compared to Republicans and Democrats. Republican and Democratic candidates pay their filing fees directly to their political party. The political party then pays the Secretary of State 25 percent of the fees collected, keeping the remaining 75 percent. Libertarian candidates, by contrast, are required to pay their entire filing fee directly to the Secretary of State. The Secretary of State keeps 25 percent and then transmits the remaining 75 percent to the Libertarian Party more than a year later, without interest, and well after the election is over.  This means that the Republican and Democratic parties can use the filing-fee income during the current campaign cycle but the Libertarian party cannot.

14.     In general, I believe that Georgia's ballot-access requirements hurt the Libertarian Party's ability to compete in the marketplace of ideas. We have no shortage of interesting and popular policy positions, but the ballot-access restrictions keep most of our candidates off the ballot and deter many other candidates from even entering the fray.  And without Libertarian candidates on the ballot, many voters don't get exposed to our ideas.  Those who would otherwise support us have no feasible way to do so when they enter the voting booth.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on May 31, 2019.

_____
*Ted Metz* (signature)
Ted Metz
Mableton, Georgia