IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Martin Cowen**, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>**Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia,<br><br>    Defendant. | Case No. 1:17-cv-04660-LMM<br><br>**Declaration of Wayne Parker** |

1. My name is Wayne Parker. I am a U.S. citizen and a registered voter in Georgia.

2. I am a longtime member of the Libertarian Party, and I previously served for several terms on the executive committee of the Libertarian Party of Georgia.

3. In 2000, I was the Libertarian Party's nominee for the Public Service Commission, District 5. I received 135,888 votes, or 6.0 percent, in a three-way race.

Plaintiff's SJ Exhibit 016

4. I did not have to gather signatures on a nominating petition for that race, because the Libertarian Party of Georgia was and is qualified to nominate candidates for statewide office by convention.

5. In 2002, I was the Libertarian Party's nominee for U.S. Representative in Georgia's Eleventh Congressional District.

6. I was part of a slate of Libertarian nominees for U.S. Representative that year. The slate included Carol Ann Rand in Georgia's Sixth Congressional District and Chad Elwartowski in Georgia's Ninth Congressional District.

7. Under the leadership of the Libertarian Party of Georgia's chair, Helmut Forren, we made a genuine effort to qualify for the ballot that year—probably the party's most substantial effort to obtain ballot-access for U.S. Representative before or since then.

8. Our campaign began as soon as district boundaries were finalized after the 2002 redistricting process. Because that process reduced the time available to petition, a federal judge reduced the signature requirement in my district to 9,462 valid signatures.

9. We began our petition drive using volunteer petition circulators but quickly determined that we would not be able to gather enough signatures without paid petition circulators. We also determined that

we would not have enough volunteers or money to attempt more than one petition drive, so the party decided to focus on my campaign.

10. Forren, along with his contacts at the national Libertarian Party, raised approximately $40,000 for the effort.

11. We employed about 35 professional, paid petition circulators.

12. Our petition circulators were repeatedly harassed by the police for attempting to petition in public places. One group of petitions was prevented by police from petitioning at the Fourth of July fireworks display in Rome, Georgia. Another group was prevented from petition at public events in Columbus and Lagrange because of local anti-solicitation ordinances.

13. Our petitioners ultimately gathered almost 20,000 raw signatures, and we submitted them before the filing deadline on August 7, 2002.

14. On September 10, 2002, the Secretary of State's office informed me that my petition contained only 8,346 valid signatures—just shy of the number required by the judge's order—and that I therefore did not qualify for the ballot. The Secretary of State's office did not indicate why it had rejected so many of my signatures.

15. My campaign sought further redress in the courts, but we were unsuccessful in obtaining review of the Secretary's determinations or the number of signatures required. As a result, I did not appear on the ballot in 2002, and it was by then too late for me to qualify as a write-in candidate.

16. The Republican nominee, Phil Gingrey, narrowly won the general election over the Democratic nominee, Roger Kahn. I believe that I would have been very competitive in that race if I had been on the ballot. I would have drawn votes from both candidates and from disaffected voters as well.

17. My experience in 2002 convinced me that it is virtually impossible to qualify for the general-election ballot as a third-party candidate for U.S. Representative without a lot of money for paid petition circulators. Under normal circumstances, *i.e.* when the signature requirement is not lowered by court order, a single candidate would probably need more than $100,000. And even then, ballot access would be far from assured because the Secretary of State's office routinely rejects a large fraction of the signatures submitted with literally no oversight or meaningful opportunity for review.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on May __15__, 2019.

_____
Wayne Parker

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on May ____, 2019.

______________________

Wayne Parker