IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Martin Cowen**, et al., | Case No. 1:17-cv-04660-LMM |
| Plaintiffs, | |
| vs. | |
| **Brian P. Kemp**, in his official capacity as Secretary of State of the State of Georgia, | **Declaration of Darcy G. Richardson** |
| Defendant. | |

## Introduction

1. My name is Darcy G. Richardson, and I have been retained by the plaintiffs to determine whether Georgia's five-percent petition requirement for access to the general-election ballot was enacted with a discriminatory purpose.

2. My investigation has led me to conclude that the Georgia General Assembly enacted the petition requirement in 1943 for the discriminatory purpose of preventing Communist Party candidates from appearing on Georgia's ballots.

Plaintiff's SJ
Exhibit

017

## Professional Background and Experience

3.     I am an author and historian specializing in the history of independent candidates and third-party politics.

4.     I have written more than a dozen books on American political history, including a planned seven-volume series on the history of third-party politics in the United States.  The first volume in that series, Others: Third-Party Politics From the Nation's Founding to the Rise and Fall of the Greenback-Labor Party (2004), earned a Choice magazine Outstanding Academic Title award for 2005.  Other volumes in that series include: Others: Third Parties During the Populist Period (2007); Others: Third Parties from Teddy Roosevelt's Bull Moose Party to the Decline of Socialism in America (2007); and Others: "Fighting Bob" La Follette and the Progressive Movement: Third-Party Politics in the 1920s (2008). My most recent book is The Lowest Ebb: Norman Thomas and Americans Minor Parties in 1944 (2018). My work has been cited in Newsweek's "What to Read" section, and I have been quoted in major publications such as the Wall Street Journal, the Washington Times, and the Philadelphia Inquirer.

5.     Appendix A to this declaration contains a complete list of all publications that I have authored in the past 10 years.

6.      I have not testified as an expert in any cases in the last four years.

7.      I am receiving no compensation for my work in this case.

## Analysis

8.      Georgia enacted its first ballot-access law in 1922.[1]  That law provided that an independent candidate, or the nominee of any party, could appear on the general-election ballot as a candidate for any office with no petition and no fee.

9.      Georgia's permissive ballot-access law remained in place until 1943, when the General Assembly adopted a five-percent petition requirement for access to the general-election ballot.[2]  That law allowed candidates of any political party that received at least five percent of the votes in the last general election for the office to appear on the general-election ballot without a petition or fee.  The law required all other candidates to file a petition signed by at least five percent of the registered voters in the territory covered by the office. The petition deadline was 30 days before the general election.

---

[1] Act of Aug. 21, 1922, ch. 530, §3, 1922 Ga. Laws 97, 100 (codified at 1933 Ga. Code § 34-1904).
[2] Act of March 20, 1943, ch. 415, § 1, 1943 Ga. Laws 292.

10.    Three years earlier, Georgia's Secretary of State, John B. Wilson, had unilaterally barred Earl Browder, the Communist Party's nominee for president, and other members of the party from appearing on the state's ballots in the 1940 election.  Notwithstanding the provisions of Georgia law, Wilson justified his ruling on the grounds of public policy: "It would be against public policy to place on our ballot the names of candidates of a party which seeks to overthrow our democratic constitutional form of government."[3] Wilson also relied on advice from Georgia's Attorney General, Ellis Arnall, a noted anti-communist politician who had waged a "campaign" to keep communist candidates off of Georgia's ballots.[4]

11.    Wilson's action came in the midst of a wave of anti-communist and nativist sentiment in the United States.  The House Un-American Activities Committee was established in 1938 and anti-communist legislation soon followed in Congress and across the United States.  Examples include the Hatch Act of 1939, which outlawed the hiring of federal workers who

---

[3] *Georgia Bars Communist Candidates from Ballot*, St. Louis Post-Dispatch, Aug. 20, 1940. Wilson's justification echoed anti-communist rhetoric that was common at the time.  In 1939, for example, Congress adopted the Hatch Act, which outlawed the hiring of federal workers who advocated the "overthrow of our Constitutional form of government," a phrase that was specifically targeted at the Communist Party.  An Act to Prevent Pernicious Political Activities, Pub. L. No. 76-252, § 9A, 53 Stat. 1147 (Aug. 2, 1939).

[4] *Arnall Campaign to Bar Communists on Ballot Irks Browder*, Thomasville Press, June 28, 1940. *See also* Harold P. Henderson, *The Politics of Change in Georgia* 22 (1991).

advocated the "overthrow of our Constitutional form of government;" and the Alien Registration Act of 1940, which made it a criminal offense to advocate the violent overthrow of the government or to organize or be a member of any group or society devoted to such advocacy. A Gallup poll on May 1941 found that 71 percent of respondents favored outlawing the Communist Party altogether.[5]

12.     Shortly after the 1940 presidential election, Secretary of State Wilson was reported to be seeking legislation to keep the Communist party permanently off the ballot. At the time, Wilson proposed to require all candidates for state and national office in Georgia to file with the secretary of state sufficient information to determine whether the party "is designed to overthrow our constitutional form of government."[6] Although the communist party would not be mentioned in the bill, Wilson said that "it and any other similar party would be the primary target."[7]

13.     Although the General Assembly did not adopt Wilson's proposal in 1941 or 1942, it did adopt the five-percent petition requirement in 1943. An article in the Atlanta Constitution reported that the petition requirement was designed to "sustain[] Secretary of State John B. Wilson in refusing a

---

[5] M.J. Heale, *American Anticommunism* 129 (1990).

[6] *Legislation Sought to Bar Communists from Georgia Ballot*, Thomasville Enterprise Times, Feb. 21, 1941.

[7] *Id.*

Communist candidate for president a place on the Georgia ballot in the 1940 election."[8] The article offered no other justification for the bill.

14.    No other justification for the petition requirement is apparent in the historical record.  Between 1922 and 1943 Georgia had never had more than 5 candidates on its presidential ballot, and there had never been more than 2 senatorial candidates in a general election.

## Conclusion

15.    Based on the foregoing, it is my opinion as a professional historian that one of the purposes, if not the primary purpose, of Georgia's five-percent petition requirement was to discriminate against the Communist Party by preventing its candidates from appearing on Georgia's ballots.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 20, 2018.


_____
Darcy G. Richardson
Jacksonville, Florida


_____

[8] *State Senate Receives New Election Bills*, Atlanta Constitution, Feb. 18, 1943.

APPENDIX A

Darcy Richardson Publications 2008-2018

Darcy G. Richardson, *Loyola's Improbable Ramblers: 55 Years in the Making* (2018)

Darcy G. Richardson, *The Lowest Ebb: Norman Thomas and Americans Minor Parties in 1944* (2018)

Darcy G. Richardson, *Bernie: A Lifelong Crusade Against Wall Street and Wealth* (2015)

Darcy G. Richardson, *Others: "Fighting Bob" La Follette and the Progressive Movement: Third-Party Politics in the 1920s* (2008)