IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Martin Cowen**, et al.,<br><br>　　　Plaintiffs,<br><br>vs.<br><br>**Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia,<br><br>　　　Defendant. | Case No. 1:17-cv-04660-LMM<br><br>**Declaration of<br>Nathan Wilson** |

　　　1.　　My name is Nathan Wilson. I am a registered voter in Georgia's Eleventh Congressional District.

　　　2.　　I am a member of the Libertarian Party of Georgia, and I would like to vote for a Libertarian candidate for U.S. Representative in my district.

　　　3.　　I served as the Executive Director of the Libertarian Party of Georgia from March 2016 to October 2018 and was responsible for fundraising and growing the state party. I currently serve on the Libertarian Party of Georgia's Executive Committee as the Political Director.

　　　4.　　As Executive Director, I found that raising money to support a ballot-access petition drive was exceedingly difficult. Major political donors

Plaintiff's SJ Exhibit

021

do not want to give money to support candidates who, history suggests, have little chance of appearing on the general-election ballot. They want to give money to promote the Libertarian Party's ideas, and they recognize that candidates who are not on the ballot are not taken seriously by the media or the voters. The difficulty—some would say impossibility—of obtaining ballot access for House candidates in Georgia is well-known in the donor community, and that knowledge makes it nearly impossible for the party to raise money for petition drives.

5. Federal campaign-finance laws make this situation even worse. Even if I could convince a major donor to give the party $1,000,000 to support ballot access, federal law would only permit the party to give $10,000 to each candidate per election cycle ($5,000 in the pre-nomination stage and $5,000 for the general election). That is a mere pittance. A donor could give up to $5,6000 per election cycle to the candidate as well, but the total amount would still be a pittance compared to the cost of gathering enough signatures to qualify for the ballot.

6. As Executive Director, I solicited bids from professional petition-circulating companies for the cost of gathering signatures for the party's 2018 nominees for U.S. Representative. I received quotes between $100,000 and $250,000 for a single race to nigh guarantee that the firm would gathering enough signatures to qualify the candidate for the ballot.

2

7. One of the reasons that it was so expensive is because gathering signatures for district races is much harder than gathering signatures for a statewide petition. The signature-gatherers have to gather more signatures and spend more time verifying signatures to ensure that signers are registered in the correct district.

8. Another cost factor was that Georgia's petitioning window—roughly the first six months of an election year—comes at an especially busy time in the signature-gathering world. There is a lot of nationwide demand for petition circulators at that time, so prices go up.

9. As Executive Director, I also found that Georgia's ballot-access restrictions depleted the party's talent pool and made it more difficult for us to recruit high-quality candidates. We had more than one member of the Executive Committee leave the party to run for office as either a Democrat or Republican because they would not likely be able to get on the ballot as a Libertarian. These are people who would have been high-quality Libertarian candidates had they been able to run under our banner. And they had to leave the party, depriving us of their talent and experience, not because they disagree with our ideas but because of Georgia's ballot-access restrictions.

10. During my time with the party, I have been involved with several petition drives.

11. In my view, the biggest obstacle to gathering a signature is the time it takes, once you have found a registered voter, to explain what the petition is for and that signing it does not indicate support for the candidate. Many voters are impatient and unwilling to give you that much time. They will sometimes then sign in a hurry, which increases the chance that the Secretary of State will reject the signature.

12. Another obstacle that I have encountered is bad data in the voter registration list. The Libertarian Party of Georgia purchases a list from the Secretary of State before every election cycle. We use that list to prepare "walk lists" to guide candidates and their supporters to the doors of registered voters when they're out canvassing door to door. But we have found that 20 percent or more of the data obtained from the Secretary of State is inaccurate. This leads to a lot of wasted time, effort, and money.

13. I have also encountered practical difficulties with gathering petition signatures at polling places on the day of a primary election. One would think that gathering signatures outside of a polling place would be a great way to find registered voters. Not so.

14. In my experience, many counties consolidate polling places on primary day. In my home county (Bartow), for example, there are about nine polling places open for the general election but only one polling place open for the primary election. And, like many counties in Georgia, my home county is

4

split among more than one congressional district. This means that there is a good chance that voters who show up at that polling place will not live in the district you need. Figuring out whether the voter lives in the "right" district takes time and effort and makes the endeavor more difficult and less reliable.

15. Also, Georgia law forbids electioneering within 150 feet of a polling place. The party has been advised that gathering signatures for a nomination petition constitutes electioneering, so that means that we cannot gather signatures within 150 feet of a polling place on election day. And I have found that in many areas, the parking lot for the polling place is within that 150-foot radius. Or the building is close to the street, so signature gatherers have to go across the street. Either way, this means that signature-gatherers never have the chance to interact with voters at that polling place, which may be the only polling place open in that county on primary day. I have also found, particularly in rural areas, that the the 150-foot radius sometimes puts signature gatherers in the middle of the woods because there is no sidewalk or other place to stand near the polling place.

16. Lastly, I have found that turnout on primary days is generally low in Georgia because there are so few contested primaries. And the voters who do turn out are oftentimes the most ardent party supporters who will not sign a petition for a candidate who is not a member of the voter's preferred party.

17. Based on my experience, I do not believe that Georgia's signature requirement for political-body candidates for U.S. Representative are realistically achievable. The number of signatures is just too high. And, while it might be possible to gather the required number with professional petition circulators, there is no realistic way under current campaign-finance laws for the party or a candidate to raise the money that would be required to pay them. It could only be done by a candidate wealthy enough to fund the hundreds of thousands of dollars necessary for such a drive out of his or her own pocket.

18. I currently have no concrete plans to run for office, but I would consider doing so if the right opportunity presented itself. I would not likely run for U.S. Representative under existing law, however, because of Georgia's ballot-access restrictions. If those were more realistic, I would definitely consider running for U.S. Representative as a Libertarian candidate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on June __3__, 2019.

_____
Nathan Wilson
__Rydal__, Georgia