IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Martin Cowen**, et al., | Case No. 1:17-cv-04660-LMM |
| Plaintiffs, | |
| vs. | |
| **Brian P. Kemp**, in his official capacity as Secretary of State of the State of Georgia, | **Plaintiffs' (Corrected) First Set of Requests for Admissions to the Defendant** |
| Defendant. | |

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and Local Rule 36, the plaintiffs ask the defendant to respond within 30 days to these requests by admitting, for purposes of this action only and subject to objections to admissibility at trial, the truth of each of the following statements:

1.      Plaintiff Aaron Gilmer, whose full name is Robin Aaron Gilmer, is a registered voter residing in the Ninth Congressional District.

Plaintiff's SJ
Exhibit

026

2.    When Georgia first enacted its five-percent petition requirement in 1943, the petition deadline was 30 days before the general election.  *See* Act of March 20, 1943, ch. 415, § 1, 1943 Ga. Laws 292 (amending 1933 Ga. Code § 34-1904, which provided that "All candidates for National and State offices, or the proper authorities of the political party nominating them, shall file notice of their candidacy, giving their names and the offices for which they are candidates, with the Secretary of State, at least thirty days prior to the regular election, except in cases where a second primary election is necessary.").[1]

3.    Georgia law permits a political body to become "qualified to nominate candidates for state-wide public office by convention." O.C.G.A. § 21-2-180.

4.    A political body becomes qualified to nominate candidates for state-wide public office by convention if: (a) it submits a qualifying petition signed by at least one percent of the total number of registered voters at the last general election; or (b) it nominated a candidate for statewide public office in the last election who received votes totaling at

---

[1] The 1933 Georgia code is available online at http://digitalcommons.law.uga.edu/ga_code/32/ .

least one percent of the total number of registered voters in the election. O.C.G.A. § 21-2-180.

5.    Petitions seeking to qualify a political body to nominate candidates for statewide public office by convention are due no later than the second Tuesday in July, O.C.G.A. § 21-2-185, and all signatures must be gathered within 15 months of the date on which the petition is submitted, O.C.G.A. § 21-2-182.

6.    Candidates for statewide partisan public offices nominated by a political body that is qualified under Section 21-2-180 appear automatically on the ballot without a nomination petition. O.C.G.A. § 21-2-132(e)(5). Each such nominee must submit a notice of candidacy and pay the applicable qualifying fee by the deadlines prescribed in O.C.G.A. § 21-2-132(d), but no nomination petition is required.

7.    Candidates nominated for statewide partisan public offices by a political body that is qualified under Section 21-2-180 appear automatically on the ballot without a nomination petition.  O.C.G.A. § 21-2-132(e)(5).  Each such nominee must submit a notice of candidacy and pay the applicable qualifying fee by the deadlines prescribed in O.C.G.A. § 21-2-132(d), but no nomination petition is required.

3

8.      Candidates nominated by political bodies that are not qualified under Section 21-2-180 do not appear automatically on the ballot for any office. In order to appear on the general-election ballot, such candidates for statewide public offices (other than president) must submit: (1) a notice of candidacy and qualifying fee, O.C.G.A. § 21-2-132(d); and (2) a nomination petition signed by one percent of the number of registered voters eligible to vote for that office in the last election, O.C.G.A. § 21-2-170(b).  Such candidates for all other partisan public offices must submit: (1) a notice of candidacy and qualifying fee, O.C.G.A. § 21-2-132(d); and (2) a nomination petition signed by five percent of the number of registered voters eligible to vote for that office in the last election, O.C.G.A. § 21-2-170(b).  Nomination petitions are due no later than noon on the second Tuesday in July.  O.C.G.A. § 21-2-132(e).

9.      In 1999, the General Assembly added a further requirement that each sheet of a nomination petition be notarized.  Act of April 1, 1999, ch. 23, § 2, 1999 Ga. Laws 23, 24-25 (codified at Ga. Code § 21-2-170).

4

10.    In 1964, when an independent candidate for U.S. Representative last satisfied the five-percent signature requirement to appear on Georgia's general-election ballots, the congressional district in which the candidate qualified did not split any county boundaries.  *See* Act of March 13, 1964, ch. 923, 1964 Ga. Laws 478.

11.    In 1964, when an independent candidate for U.S. Representative last satisfied the five-percent signature requirement to appear on Georgia's general-election ballots, only 25 percent of Georgia's nonwhite voting-age population was registered to vote.  *See* S. Rep. No. 89-162, at 44 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2508.

12.    In 1964, when an independent candidate for U.S. Representative last satisfied the five-percent signature requirement to appear on Georgia's general-election ballots, the overall registration rate was approximately 63 percent of voting-age population, which is below where it is today (approximately 86 percent).  *See* S. Rep. No. 89-162, at 41 (1965), *reprinted in* 1965 U.S.C.C.A.N. 2508.

13.    When Billy McKinney qualified for the ballot as an independent candidate for U.S. Representative in 1982, a federal court had reduced the five-percent signature requirement due to litigation

5

over the State's redistricting plan that delayed the adoption of new districts following the 1980 Census.  [*See* documents attached hereto as Exhibit A.]

14.     In the three election cycles from 2012 through 2016, Georgia has had 15 unopposed races for U.S. Representative—more than any other state in the nation.  That number represents almost 36 percent of its races for U.S. Representative over that period, which is a greater share than any other state in the nation except Massachusetts. *See* Federal Election Commission, *Federal Elections 2016* at 89-184 (2017); Federal Election Commission, *Federal Elections 2014* at 33-125 (2015); Federal Election Commission, *Federal Elections 2012* at 77-177 (2013).[2]

15.     In 2016, the winning candidate ran unopposed in the general election in five (35.7%) of Georgia's 14 congressional districts: the First, Ninth, Tenth, Thirteenth, and Fourteenth.  No other state had more than four unopposed races for U.S. Representative in 2016, and only two states, Alabama (42.8%) and Massachusetts (44.4%), had a greater share

---

[2] The Federal Election Commission publishes a compilation of official election results for federal offices. Those publications are available at https://transition.fec.gov/pubrec/electionresults.shtml.

of their races for U.S. Representative unopposed. *See* Federal Election Commission, *Federal Elections 2016* at 89-184 (2017).

16.     In 2014, the winning candidate ran unopposed in the general election in seven (50.0%) of Georgia's 14 congressional districts: the Third, Fourth, Fifth, Eighth, Eleventh, Thirteenth, and Fourteenth.  No other state had more than six unopposed races for U.S. Representative in 2014, and only one state, Massachusetts (66.7%), had a greater share of its races for U.S. Representative unopposed. *See* Federal Election Commission, *Federal Elections 2014* at 33-125 (2015).

17.     In 2012, the winning candidate ran unopposed in the general election in three (21.4%) of Georgia's 14 congressional districts: the Third, Eighth, and Tenth. No other state had more than two unopposed races for U.S. Representative in 2012, and only two states, Kansas (25%) and Massachusetts (22.2%), had a greater share of their races for U.S. Representative unopposed. *See* Federal Election Commission, *Federal Elections 2012* at 77-177 (2013).

18.     In 1970, the General Assembly imposed a qualifying fee on candidates for U.S. Representative equal to five percent of the annual salary of the office.  Act of March 20, 1970, ch. 1079, § 13, 1970 Ga. Laws

347, 367 (codified at 1933 Ga. Code § 34-1013).  At the time, the annual

salary of U.S. Representatives was $42,500. *See* Ida A. Brudnick, Cong.

Research Serv., 97-1011, Salaries of Members of Congress: Recent

Actions and Historical Tables 16 (2018), *available at*

https://fas.org/sgp/crs/misc/97-1011.pdf.

19.    In 1974, the General Assembly lowered the qualifying fee to

three percent of the annual salary of the office, where it remains today.

Act of January 29, 1974, ch. 757, § 2, 1974 Ga. Laws 4, 6.

20.    Georgia uses a different set of ballot-access rules in special

elections to fill vacancies in the office of U.S. Representative.

21.    Those rules do not distinguish between candidates affiliated

with a political party, candidates affiliated with a political body, and

independent candidates.

22.    In order to appear on the ballot in a special election for U.S.

Representative, each candidate must submit a notice of candidacy and

the qualifying fee by the date specified for that election. No nomination

petition is required.  Every candidate who submits a notice of candidacy

and qualifying fee, and who otherwise meets the qualifications for the

office, appears automatically on the special-election ballot.

23.     In the last 50 years, Georgia has held six special elections to fill a vacancy in the office of U.S. Representative.  In 2017, Georgia held a special election in the Sixth Congressional District.  In 2010, Georgia held a special election in the Ninth Congressional District. In 2007, Georgia held a special election in the Tenth Congressional District. In 1999, Georgia held a special election in the Sixth Congressional District. In 1983, Georgia held a special election in the Seventh Congressional District. And, in 1977, Georgia held a special election in the Fifth Congressional District.

24.     In each special election for U.S. Representative in Georgia in the last 50 years, at least one independent candidate or candidate affiliated with a political body appeared on the special-election ballot. [*See* documents attached hereto as Exhibit B.]

9

Dated: August 6, 2018.


**/s/ Bryan L. Sells**
Attorney Bar No. 635562
Attorney for the Plaintiffs
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

Exhibit A

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

MACEO CARL DIXON,           )     CIVIL ACTION FILE NO. C 92177

    Plaintiff        )    ————————————— L 14-489

                    )

v.                    )     APPLICATION FOR WRIT
                    )     OF MANDAMUS, PETITION
THE HONORABLE DAVID B. POYTHRESS,  )     FOR DECLARATORY
                    )     JUDGMENT AND APPLICATION
SECRETARY OF STATE OF THE      )     FOR INTERLOCUTORY
                    )     INJUNCTION
STATE OF GEORGIA          )

    Defendant        )

Now comes Plaintiff MACEO CARL DIXON, named above and files his Application for Writ of Mandamus, Petition for Declaratory Judgment and Application for Interlocutory Injunction as follows:

## COUNT ONE

1.

The petitioner is MACEO CARL DIXON. He is the Socialist Workers Party candidate for the Fifth Congressional District for United States Congress in Georgia in the 1982 General Election to be held November 30, 1982. He meets the qualifications described in the United States Constitution for election to the office that he seeks in that he is a natural born citizen of the United States, has obtained the age of 33 years and is a bona fide resident of the Fifth Congressional District as required by Law.

2.

The Defendant David B. Poythress, Secretary of the State of Georgia maintains his principal office at 214 State Capitol Building, Atlanta, Fulton County, Georgia, and is responsible and charged by Law with the duty of administering and supervising the nomination of candidates by petition as set forth in Ga. Code Sect. 34-1010 et. seq., Official code of Georgia Sect. 21-2-170, et seq.

3.

That pursuant to Ga. Code Sect. 34-1010 and Official
Code of Georgia Sect. 21-2-170 et seq.; petitioner was
required to file with Defendant's office a nomination
petition comprised of a number of signatures of registered
voters in the Fifth Congressional District equivalent in
number to the number which reasonably approximates the
product derived by multiplying 5% of the number of electors
within the district eligible to vote at the last general
election times a fraction; the numerator of this fraction
shall be the number of days within the period prescribed
for circulation of petitions and the denominator shall be 180.
In no event, however, shall the number of electors whose
signature is required to be set at less than one-half of
1% of the number of electors within the district eligible
to vote at the general election.   Said number as stipulated
by the Secretary of State's office is Four Thousand Thirty-
Seven (4,037) signatures.

4.

On or about October 20, 1982, petitioner filed in the
Defendant's office a nomination petition containing about
Seven Thousand Eight Hundred Twenty-One (7,821) signatures
of registered Georgia voters in the Fifth Congressional
District, pursuant to the order of the United States District
Court for the District of Columbia, George Busbee v. William
French Smith, et al. Civil No. 82-0665.   A copy of said order
is attached hereto as Exhibit "A" and is incorporated by
reference herein.

5.

At the time of said filing, Petitioner, through his
representatives, was advised by the Secretary of State's
office that a response from said office based upon a review
of the petition and the signatures contained therein would
be rendered on or before October 29, 1982.   In fact,
notification to Petitioner was denied based upon an
insufficient number of valid signatures received, on

November 1, 1982 by letter, a copy is attached hereto
as Exhibit "B" and is incorporated herein by reference.

6.

After November 1, 1982, representatives for Petitioner
secured copies of the worksheets used by employees of the
Secretary of State's office and various County officials
in conducting the verification process with regard to
said petition.

7.

Based upon information and belief, and an analysis of
said worksheets, the Petitioner, through his representatives,
determined that over Three Thousand (3,000) signatures
contained in the nomination petition described above had been
stricken as invalid by employees of the Secretary of State
on the basis that particular voters were not registered to
vote in the county of his or her residence; that particular
voters were incorrectly identified as not being registered
to vote in the State of Georgia; and that particular voters
were incorrectly stricken as having a Post Office address as
their place of residence.

8.

On information and belief, Petitioner contends that a
substantial number of alleged ungenuine and illegible
signatures were incorrectly stricken as invalid signatures
and should be counted as valid signatures toward the
requisite total.

9.

Petitioner alleges that upon a proper accounting of
the signatures contained in the petition, Petitioner should
have been placed upon the general election ballot for
November 30, 1982, and that the Secretary of State's decision
to deny Petitioner a place on said ballot is in error.

10.

Petitioner further alleges that upon information and
belief, the Secretary of State intends to print the ballots
for said election after November 4, 1982, and that the printing
of said ballot without the names of Petitioner imprinted

-3-

thereon will result in irreparable harm to Petitioner.

<u>COUNT TWO</u>

11.

The Petitioner realleges paragraphs 1 through and
including 10 as if initially set forth herein.

12.

Petitioner alleges that an independent candidate,
Rep. Billy McKinney, has secured a position on the November 30,
1982 general election ballot by securing signatures in excess
of Four Thousand Thirty-Seven (4,037) of registered voters
in the Fifth Congressional District.

13.

Petitioner alleges upon information and belief that
employees of the Secretary of State and other County officials
credited registered voter signatures and residences for Rep.
Billy McKinney that were stricken as invalid signatures and
residences for Petitioner as candidate for the Socialist
Workers Party.

14.

Petitioner alleges upon information and belief that the
practices, procedures and methods instituted and used by the
Secretary of State's office, its employees, agents and
representatives were arbitrary, capricious, and discrimina-
tory in that such practices, procedures and methods have
denied Petitioner equal access to the ballot on November 30,
1982 general election thereby depriving Petitioner of equal
protection and due process of Law in violation of First,
Fifth and Fourteenth Amendments of the United States Con-
stitution and Art. I, Sec. I, Para. I (Ga. Code Sect. 2-101)
and Art. I, Sec. I, Para. IV (Ga. Code Sect. 2-104 Harrison
1977) of the Georgia Constitution.

15.

Petitioner alleges that the practices, procedures and
methods used by the Secretary of State's office in denying
Petitioner equal access to said ballot discriminates against

-4-

the political affiliation and association of Petitioner and
the Socialist Workers Party and violates his First, Fifth,
and Fourteenth Amendment rights as guaranteed by the United
States Constitution, and Art I, Sec. I, Para I (Ga. Code 2-101)
and Art. I, Sec. I, Para. IV (Ga. Code 2-104 Harrison, 1977)
of the Georgia Constitution.

16.

Petitioner alleges that there is an actual controversy
between the defendant growing out of the practices, procedures
and methods employed by the Secretary of State's office, its
employees, agents and representatives to determine valid and
invalid registered voters in the Fifth Congressional District.

17.

Petitioner alleges that his rights, as guaranteed by the
United States and Georgia Constitution in reference to said
controversy should be declared by this Court, and Petitioner
is entitled to a declaration of his rights and a declaration
with reference to his legal relations thereto.

18.

Petitioner alleges that his Court should designate a
time after service of this Complaint for trial and that
process issue thereon for a trial of this controversy.

COUNT THREE

19.

Petitioner realleges paragraphs 1 through and including
10, and paragraphs 12 through and including 18 as if initially
set forth herein.

20.

Petitioner alleges that he will suffer irreparable harm
and injury if he is denied the right to have his name on the
November 30, 1982 general election ballot.

21.

Petitioner alleges that there is a likelihood of success
of his case on its merits if said case proceeds to trial.

22.

Petitioner alleges that the equitable balancing of

hardship to defendant and himself weighs in his favor and
the public interest.

23.

Petitioner has no remedy at Law.

24.

Petitioner alleges that defendant, his agents, employees
and representatives should be enjoined and restrained from
printing ballots and holding the general election for
November 30, 1982 until Petitioner's name is imprinted on
said ballot.

WHEREFORE, Petitioner respectfully prays that:

(1) this Court issue a Writ of Mandamus against
defendant David B. Poythress, Secretary of State of the State
of Georgia requiring and directing him and his office to
place the Petitioner on the general election ballot for
November 30, 1982;

(2) this Court issue an interlocutory injunction against
defendant David B. Poythress, Secretary of State of the State
of Georgia enjoining and restraining him, his office, agents,
employees, and representatives from publishing or printing any
ballots and from scheduling and holding the general election
for November 30, 1982 until Petitioner is placed on said ballot;

(3) this Court issue a declaratory judgment declaring
the rights and duties of the parties in this action and
declaring that the practices, procedures and methods
employed by the Secretary of State's office, its employees,
agents, and representatives violate the Petitioner's rights
as guaranteed by the First, Fifth and Fourteenth Amendments
of the United States Constitution and Art. I, Sec. I, Para. I
(Ga. Code 2-101) and Art. I, Sec. I, Para IV (Ga. Code 2-104
Harrison, 1977) of the Georgia Constitution;

(4) this Court issue a Rule Nisi requiring defendant
the Honorable David B. Poythress, Secretary of State of the

-6-

State of Georgia to appear and show cause as soon as practicable why the prayers of Petitioner should not be granted; and

(5) this Court Grant Petitioner such other and further relief as this Court deems just and proper.

Respectfully submitted,

Torin D. Togut
Attorney for Petitioner

116 E. Howard Avenue
Decatur, Georgia 30030
373-5515

-7-

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

MACEO CARL DIXON,　　　　　　*

　　　　　　　Plaintiff　　*

-vs-　　　　　　　　　　　　*　　　CIVIL ACTION
　　　　　　　　　　　　　　　　　FILE NO. C-92177
THE HONORABLE DAVID B.　　*
POYTHRESS, SECRETARY OF　　　　BRIEF IN SUPPORT OF
STATE OF THE STATE OF　　　*　　MOTION FOR TEMPORARY
GEORGIA,　　　　　　　　　　　　RESTRAINING ORDER
　　　　　　　　　　　　　　　*
　　　　　　　Defendant
　　　　　　　　　　　　　　　*

## I. STATEMENT OF FACTS

The plaintiff, MACEO CARL DIXON, is a black male, who is
a candidate of the Socialist Workers Party for United States
Congress, Fifth Congressional District.  Mr. Dixon qualified in
all respects to run for this office, except that he allegedly
has failed to secure 4,037 valid signatures in the Fifth Congres-
sional District in order to be placed on the November 30, 1982
general election ballot.

Plaintiff submitted a nominating petition to the Secre-
tary of State's office on or about October 20, 1982, containing
7,821 signatures.  In accordance with the guidelines set forth
by the Georgia legislature and the court order in Busbee v. Smith,
et al, Civil File No. 82-0665, United States District Court for
the District of Columbia, plaintiff seemingly complied with each
requirement to place his name on the ballot.  But on November 1,
1982, plaintiff received a letter from the Secretary of State
denying his right to have his name on the November 30, 1982
general election ballot.  The Secretary of State's office claimed
that over 3,000 signatures on plaintiff's ballot were invalid,
and thus disqualified him for the election.

Plaintiff, therefore, had five (5) days to file a writ
of mandamus to correct the Secretary of State's ruling on plain-
tiff's signatures.  Plaintiff, through his representative, has
made an initial review of some alleged invalid signatures and
has found some voters who were incorrectly striken from plain-
tiff's nomination petition.  But it is virtually impossible to

BOOK 6243 PAGE 446

check every striken signature even before November 30, 1982.
Plaintiff believes, nevertheless, that enough evidence can be
presented to show he qualifies for the November 30 1982 general
election.

Plaintiff has filed this temporary restraining order to
prevent the printing of ballots for said election without his
name on it.

II. ARGUMENT AND CITATION OF AUTHORITY

The Socialist Workers Party is a bona fide political
party existing in the United States since 1938, and in Georgia
since about 1969.  Plaintiff, as a candidate for that party, is
a valid representative and choice for those voters who desire to
exercise their vote for his candidacy.

Voting is a fundamental right and the State may not arbi-
trarily deny the right of any candidate to run for office.  The
denial of access to the ballot burdens two fundamental rights:
(1)  the right of individuals to associate for the advancement
of political beliefs; and (2) the right of qualified voters,
regardless of their political association to cast their votes
effectively.  "The right to vote is 'heavily burdened' if that
vote may be cast only for one or two candidates...at a time when
other candidates are clamoring for a place on the ballot".  Lubin
v. Panish, 415 U.S. 709 (1974); Anderson v. Poythress, 246 Ga.
435, 440 (1980).  See, Westbury v. Sanders, 376 U.S. 1 (1964);
Reynolds v. Sims, 377 U.S. 533 (1964); Williams v. Rhodes, 393
U.S. 23 (1968); Illinois State Board of Elections v. Socialist
Workers Party, 440 U.S. 173 (1979).

Plaintiff recognizes that the State has an interest in
regulating the number of candidates on the ballot.  Jenness v.
Fortson, 403 U.S. at 442 (1971).  But that interest must be
balanced with the right to have a serious candidate's name to be
placed on the ballot.  See, Lubin v. Panish, supra, 415 U.S. at
1321.

Recently, by a four to three majority, the Georgia Supreme
Court upheld a trial court's ruling that John Anderson should be
omitted from the ballot, even though there appeared to be some
irregularities by the Secretary of State's office in screening

-2-

voters signatures.  <u>Anderson v. Poythress</u>, supra, 246 Ga. 435,
440, 441 (1980).

Plaintiff believes that he has produced sufficient evi-
dence to put the verification of voters' signatures in doubt.
See, <u>Taggart v. Phillips</u>, 242 Ga. 454 (1978).  Since plaintiff
has even less time and resources to fully verify every signature
the burden of gaining access to the ballot is even more cumber-
some, if nearly impossible.  This burden is, in essence, too high
a barrier to the ballot.  <u>McCarthy v. Secretary of the Common-
wealth</u>, 371 Mass. 667, 359 N.E. 2d 291 (1977).

There is no question of irreparable harm to the plaintiff
if he is omitted from the ballot, and, in fact, he may qualify
for the ballot.  This question was addressed in John Anderson's
appeal in the United States District Court for the Northern Dis-
trict of Georgia, where Mr. Anderson's injunction was granted,
and his name was placed on the November 4, 1980 general election
ballot.

Here plaintiff is merely 600 signatures away from comply-
ing with the Secretary's requirements.  But verifying over 3,000
signatures at this time is impossible.  Therefore, if this Court
finds some evidence of irregularity of verifying signatures, it
should grant plaintiff's motion.

For the above-stated reasons, this Court should grant
plaintiff's Motion for a Temporary Restraining Order.

Respectfully submitted,

Torin Togut
Attorney for Plaintiff


116 E. Howard Avenue
Decatur, Georgia 30030
373-5515

Exhibit B



# April 18 special election in Georgia's 6th Congressional District

***This page primarily focuses on the April 18 election. For more information on the runoff, see Georgia's 6th Congressional District special election, 2017***

The **6th Congressional District of Georgia** held a special election for the U.S. House of Representatives on April 18, 2017. No candidate received at least 50 percent of the vote in the general election, so the top two, Jon Ossoff (D) and Karen Handel (R), advanced to the runoff election on June 20.

Heading into the April election, Ballotpedia rated this race as a race to watch. Although it was normally a safe Republican district, polling and spending in the district indicated a competitive race. The election replaced Tom Price (R), who was confirmed as U.S. secretary of health and human services. Prior to his cabinet appointment, Price represented the 6th District from 2005 to 2017.[1] Eighteen candidates filed to run in the race: 11 Republicans, five Democrats, and two independents. A traditional primary election was not held in the race. Instead, all candidates competed in a special election on April 18, 2017. Of those 18, Jon Ossoff (D) and Karen Handel (R) advanced to the June 20 runoff election.[2][3][4]

Jon Ossoff (D) took the first slot in the runoff with 48.1 percent of the vote. Karen Handel (R) secured the second position with 19.8 percent of the vote. Bob Gray (R) came in third with 10.8 percent of the vote, while Dan Moody (R) and Judson Hill (R) both received 8.8 percent of the vote. Democratic candidates combined to receive about 49 percent of the total vote, while Republican candidates combined to receive about 51 percent of the total vote.[5]

Heading into the election, Democrat Jon Ossoff led the field according to polling data. He was trailed by the four Republican front-runners in the race: former Georgia Secretary of State Karen Handel, businessman Bob Gray, state Sen. Judson Hill, and former state Sen. Dan Moody. Ossoff hovered around the 40 percent mark in the polls, while Handel consistently took second place with 15 to 20 percent. Gray consistently took third with 10 to 15 percent, and Hill and Moody averaged between five and ten percent.[6][7]

Ossoff also led the field in fundraising by a substantial margin, raising over $8.3 million. Comparatively, only three U.S. House candidates raised more than $8.3 million during the entire 2016 election cycle, and Democratic congressional candidates in Georgia's 6th District raised a combined sum of $836,228 from 2000 to 2016. Moody raised over $2 million, 95 percent of which was self-funded. Gray's contributions totaled $717,500, and he loaned his campaign $500,000. Hill and Handel raised $523,032 and $463,744, respectively.[8][9][10]

Each of the front-runners launched an ad campaign and had received at least one important endorsement in the race. The candidates largely focused on self-promotion in their ads and rarely attacked one another. Dan Moody was the only one to release an ad directly criticizing a fellow candidate, Karen Handel.

When asked about the importance of this race, former Speaker of the House and U.S. Representative from Georgia's 6th District (1979-1999) Newt Gingrich told Ballotpedia, "I do think Republicans have to pay attention, and I think it would be a big mistake to allow this district to go to Ossoff, partly because of the psychology nationally, and partly because once a relatively talented person gets in office, it's really hard to get rid of them." See Ballotpedia interview: Newt Gingrich on the Georgia special election for more thoughts on this race from Gingrich.

| Candidate Filing Deadline | Special Election | Runoff Election |
|---|---|---|
| February 15, 2017 | April 18, 2017 | June 20, 2017 |

Georgia's 6th Congressional District consists of many of the northern suburbs of Atlanta and includes eastern Cobb County, northern Fulton County, the Dunwoody area of northern Dekalb County.[11]

# Elections results

| | U.S. House, Georgia District 6 Special Election, 2017 | | | [hide] |
|---|---|---|---|---|
| Party | Candidate | Vote % | Votes | |
| Democratic | ✓**Jon Ossoff** | 48.1% | 92,673 | |
| Republican | ✓**Karen Handel** | 19.8% | 38,071 | |
| Republican | Bob Gray | 10.8% | 20,802 | |
| Republican | Dan Moody | 8.8% | 17,028 | |
| Republican | Judson Hill | 8.8% | 16,870 | |
| Republican | Kurt Wilson | 0.9% | 1,820 | |
| Republican | David Abroms | 0.9% | 1,639 | |
| Democratic | Ragin Edwards | 0.3% | 504 | |
| Democratic | Ron Slotin | 0.3% | 491 | |
| Republican | Bruce LeVell | 0.2% | 455 | |
| Republican | Mohammad Ali Bhuiyan | 0.2% | 415 | |
| Republican | Keith Grawert | 0.2% | 415 | |
| Republican | Amy Kremer | 0.2% | 351 | |
| Republican | William Llop | 0.2% | 326 | |
| Democratic | Rebecca Quigg | 0.2% | 304 | |
| Democratic | Richard Keatley | 0.1% | 229 | |
| Independent | Alexander Hernandez | 0.1% | 121 | |
| Independent | Andre Pollard | 0% | 55 | |

| **Total Votes** | **192,569** |
| --- | --- |
| *Source: Georgia Secretary of State* | |

# Candidates

### Runoff candidates:

🔵 Jon Ossoff

🔴 Karen Handel ✔️

### Special election candidates:[12]

## Democratic

Ragin Edwards[13]

Richard Keatley - Former U.S. Navy officer[14]

Jon Ossoff - Managing director and CEO of Insights TWI[15] ✔️

Rebecca Quigg - Doctor[4]

Ron Slotin - Former state sen.[16]

## Republican

David Abroms - Certified public accountant[4]

Mohammad Ali Bhuiyan - Small business owner[17]

Keith Grawert - Air Force pilot[4]

Bob Gray - Businessman[18]

Karen Handel - Former Georgia Secretary of State[19] ✔️

Judson Hill - State Sen.[1]

Amy Kremer[4]

Bruce LeVell - Head of Donald Trump's national diversity coalition[20]

William Llop - Certified public accountant[4]

Dan Moody - Former state sen.[21]

Kurt Wilson - Businessman[4]

### Third Party/Other

Alexander Hernandez (Independent)[22]

Andre Pollard (Independent)[4]

### Withdrew:

Joshua McLaurin (D) - Attorney[16][23]

Sally Harrell (D) - Former state rep.[24]

SM Abu Zahed (R)[25]

## Ballotpedia's interviews with the candidates

### Karen Handel

Handel spoke with Ballotpedia on March 31, 2017, about her campaign.



### Judson Hill

Hill spoke with Ballotpedia on April 3, 2017, about his campaign.



**Spending** Endorsements Polling Issues Campaign ads Debates

Policy differences of Republican candidates

## Candidate fundraising and spending

Heading into the election, Jon Ossoff (D) led the field in fundraising by a substantial margin, raising over $8.3 million. Over $5.6 million of that sum was from individual donations of less than $200, which means that detailed information about those donors is unavailable as the FEC does not require donations of less than $200 to be itemized. Of the remaining money, nearly 25 percent came from in-state. Roughly 20 percent came from California, 16 percent from New York, 6 percent from Massachusetts, and 3 percent from Illinois. Dan Moody (R) raised over $2 million, 95 percent of which was self-funded. Bob Gray's (R) contributions totaled $717,500, and he loaned his campaign $500,000. Nearly 60 percent of the remaining money he raised came from Georgia. Judson Hill (R)

and Karen Handel (R) raised $523,032 and $463,744, respectively. Hill raised roughly 85 percent of his money from inside the state, while Handel received nearly 90 percent of her donations from within Georgia.[8][26][27]

Full data for all candidates who filed with the FEC is displayed below.

| Pre-Special FEC Report | | | |
|---|---|---|---|
| Candidate | Contributions | Expenditures | Cash on Hand |
| 🔵 Jon Ossoff | $8,320,693 | $6,183,941 | $2,136,751 |
| 🔴 Bob Gray | $717,500 | $321,028 | $396,472 |
| 🔴 Karen Handel | $463,744 | $279,767 | $183,977 |
| 🔴 Judson Hill | $523,032 | $359,210 | $163,822 |
| 🔴 Dan Moody | $2,025,263 | $1,865,030 | $160,232 |
| 🔴 David Abroms | $260,902 | $155,412 | $105,490 |
| 🔴 Mohammad Ali Bhuiyan | $32,785 | $26,068 | $6,716 |
| 🔴 Keith Grawert | $51,402 | $34,106 | $17,296 |
| 🔴 Amy Kremer | $19,852 | $15,233 | $4,618 |
| 🔴 Kurt Wilson | $319,068 | $199,149 | $119,919 |
| 🔵 Richard Keatley | $15,890 | $9,349 | $6,540 |
| 🔵 Ron Slotin | $78,427 | $70,522 | $7,905 |
| ⚪ Alexander Hernandez | $5,666 | $5,944 | $41 |
| ⚪ Andre Pollard | $5,250 | $5,250 | $0 |

# Satellite spending

- April 14, 2017: The Democratic Congressional Campaign Committee released a radio ad featuring actor Samuel L. Jackson urging voters to get out and vote Democratic.[28]

- April 10, 2017: The Club for Growth spent another $300,000 on an ad attacking Karen Handel (R) and Dan Moody (R) on taxes.[29]

- April 7, 2017: The Congressional Leadership Fund released another ad, which tied Ossoff to Nancy Pelosi. The ad brought the spending total of CLF up to nearly $3 million.[30]

- April 6, 2017: Ending Spending released an ad supporting Karen Handel (R). The size of the ad buy was $500,000.[31]

- April 3, 2017: The National Republican Congressional Committee (NRCC) released an ad attacking Jon Ossoff (D). The ad calls Ossoff a "D.C. Liberal", and the NRCC reportedly

Case 1:17-cv-04660-LMM Document 69-20 Filed 06/05/18 Page 28 of 39

spent $2 million on the purchase.[32][33]

- March 31, 2017: The NRCC released an ad urging voters to get out and vote Republican in the special election. The NRCC also spent money to put five staffers on the ground in the district in the following week.[34][35]

- March 30, 2017: According to a Republican operative, the Republican National Committee (RNC) planned on increasing its number of staffers on the ground from six to 15. The RNC also planned to open a second field office.[35]

- March 28, 2017: The Club for Growth, which had previously endorsed Bob Gray (R) in the race, launched an ad targeting Karen Handel (R), the leading Republican in polling. The ad attacked Handel for spending during her tenure as Georgia secretary of state.[36]

- March 1, 2017: The Congressional Leadership Fund, a Republican super PAC, began spending in the race by launching a $1.1 million ad campaign targeting the Democratic front-runner in the race, Jon Ossoff.[37]

- February 2017: The Democratic Congressional Campaign Committee (DCCC) paid to put nine staffers on the ground in the district in an attempt to reach voters who had not been targeted in prior election cycles.[38]

# See also

- Special elections to the 115th United States Congress (2017-2018)
- Georgia's 6th Congressional District special election, 2017
- Georgia's 6th Congressional District
- Tom Price

# Footnotes

1. *AJC.com*, "Judson Hill becomes first Republican to enter race to replace Tom Price," November 30, 2016
2. The April 18 election was functionally a top-two primary since no candidate received over 50% of the vote.
3. *Governor Nathan Deal*, "Deal congratulates Price, calls special election," February 10, 2017
4. *Georgia Secretary of State*, "18 candidates enter 6th Congressional District race," February 15, 2017

Only the first few references on this page are shown above. Click to show more.

# America Votes™ 24

## A HANDBOOK OF CONTEMPORARY AMERICAN ELECTION STATISTICS

RICHARD M. SCAMMON
ALICE V. McGILLIVRAY
RHODES COOK

**2000**



CQ PRESS

A Division of Congressional Quarterly Inc.
Washington, D.C.

6

# UNITED STATES

## SPECIAL ELECTIONS TO THE 106th CONGRESS

### CALIFORNIA 42nd CD (Continued)

#### November 16, 1999 Special General Election

23,690 Joe Baca (D); 21,018 Elia Pirozzi (R); 1,198 Rick Simon (Reform); 956 John "Scott" Ballard (Libertarian).

### GEORGIA 6th CD

House Speaker Newt Gingrich (R) resigned January 3, 1999, in the wake of a poorer-than-expected Republican showing in the 1998 congressional elections. Gingrich was never sworn in as a member of the 106th Congress. Johnny Isakson (R) was elected February 23, 1999, to fill the term for the 106th Congress. Since Isakson won a majority of the vote in the first-round balloting, no runoff election was held.

#### February 23, 1999 Special Election

51,548 Johnny Isakson (R); 20,115 Christina Jeffrey (R); 4,014 Gary "Bats" Pelphrey (D); 1,593 Barry Doublestein (R); 1,459 A. Leigh Baier (Independent); 478 Marco Longo (R); 6 Kelly Brown (Independent write-in). (The election was nonpartisan, and candidates were not identified on the ballot by party affiliation.)

### LOUISIANA 1st CD

Bob Livingston (R) resigned February 28, 1999, after admitting to marital infidelity during the House debate on the impeachment of President Clinton in December 1998.  Livingston was the would-be successor to Newt Gingrich as House Speaker. David Vitter (R) was elected May 29, 1999, to fill out the remaining term for the 106th Congress.

#### May 1, 1999 Special Election (First Round)

36,719 David Conner Treen (R); 31,741 David Vitter (R); 28,059 David Duke (R); 22,928 Monica Monica (R); 16,446 "Bill" Strain (D); 9,295 "Rob" Couhig (R); 720 Darryl P. Ward (D); 344 Patrick E. Landry (R); 246 S. J. LoCoco (R).

#### May 29, 1999 Special Election Runoff

61,661 David Vitter (R); 59,849 David Conner Treen (D).

### HOUSE SPECIAL ELECTIONS: SUMMARY

| District | Former Member | New Member | Date Elected | Percentage | Voter Turnout |
|---|---|---|---|---|---|
| California 42nd | George E. Brown Jr. (D) | Joe Baca (D) | November 16, 1999 | 50.6% | 46,862 |
| Georgia 6th | Newt Gingrich (R) | Johnny Isakson (R) | February 23, 1999 | 65.1% | 79,213 |
| Louisiana 1st | Bob Livingston (R) | David Vitter (R) | May 29, 1999 | 50.7% | 121,510 |

Note: Results from this chart are from the decisive round of voting when the new member was elected to Congress.

### CHANGES FOLLOWING THE 2000 ELECTION

Following the 2000 general election, and through June 5, 2001, the following changes occurred in the membership of the 107th Congress, including one party switch.

### SENATORS

Missouri—Governor Roger Wilson (D) announced December 4, 2000, the appointment of Jean Carnahan (D) to fill the seat of her late husband, Mel Carnahan (D), who was killed in a plane crash October 17, 2000, but won the seat posthumously in the November general election. Mrs. Carnahan's two-year appointment took effect with the start of the 107th Congress.

# United States Congressional Elections, 1788–1997

### *The Official Results of the Elections of the 1st through 105th Congresses*

## MICHAEL J. DUBIN



McFarland & Company, Inc., Publishers
*Jefferson, North Carolina, and London*

British Library Cataloguing-in-Publication data are available

Library of Congress Cataloguing-in-Publication Data

Dubin, Michael J.
United States Congressional elections, 1788–1997 : the official
results of the elections of the 1st through 105th Congresses /
Michael J. Dubin.
p.  cm.
Includes bibliographical references (p.   ) and index.
ISBN 0-7864-0283-0 (library binding : 40# alkaline paper) ∞
1. United States.   Congress — Elections — History.
2. Elections — United States — History.   I.  Title.
JK1967.D77   1998                    324.973 — dc20
96-9841 CIP

©1998 Michael J. Dubin. All rights reserved

*No part of this book, specifically including the index, may be
reproduced or transmitted in any form or by any means, electronic or
mechanical, including photocopying or recording, or by any information
storage and retrieval system, without permission in writing
from the publisher.*

Manufactured in the United States of America

Designed by Steve Wilson

*McFarland & Company, Inc., Publishers
Box 611, Jefferson, North Carolina 28640*

*7th District*
**Mike Lowry** (D) 126,313 (70.93)
Robert Dorse (R) 51,759 (29.07)
*8th District*
**Rodney Chandler** (R) 79,209 (56.97)
Beth Bland (D) 59,824 (43.03)

**West Virginia**
*1st District*
**Alan B. Mollohan** (D) 79,529 (53.16)
John F. McCuskey (R) 70,069 (46.84)
*2nd District*
**Harley O. Staggers** (D) 87,904 (64.02)
J. D. Hinkle (R) 49,413 (35.98)
*3rd District*
**Robert E. Wise** (D) 84,619 (57.86)
David M. Staton (R) 60,844 (41.60)

Adrienne Benjamin (SW) 787 (0.54)
*4th District*
**Nick J. Rahall** (D) 91,184 (80.52)
Homer L. Harris (R) 22,054 (19.48)

**Wisconsin**
*1st District*
**Les Aspin** (D) 95,055 (61.01)
Peter N. Jannson (R) 59,309 (38.07)
Arthur F. Jackson (Lbt) 1,438 (0.92)
*2nd District*
**Robert W. Kastenmeier** (D) 112,677 (60.57)
Jim Johnson (R) 71,989 (38.70)
David Beito (Lbt) 1,368 (0.74)
*3rd District*
**Steven Gunderson** (R) 99,304 (56.60)

Paul Offner (D) 75,132 (42.82)
Kenneth P. Van Doren (Lbt) 1,027 (0.59)
*4th District*
[13]**Clement J. Zablocki** (D) 129,557 (94.58)
Nicholas P. Youngers (Lbt) 4,064 (2.97)
John F. Baumgartner (I) 2,421 (1.77)
John Gudenschwager (Ct) 946 (0.69)
*5th District*
**Jim Moody** (D) 99,713 (63.55)
Rod K. Johnston (R) 54,826 (34.94)
William G. McCuen (Lbt) 1,498 (0.95)
Walter G. Beach (I) 526 (0.34)
Cheryll Y. Hidalgo (I) 353 (0.22)
*6th District*

**Thomas E. Petri** (R) 111,348 (65.01)
Gordon E. Loehr (R) 59,922 (34.99)
*7th District*
**David R. Obey** (D) 122,124 (67.98)
Bernard A. Zimmerman (R) 57,535 (32.02)
*8th District*
**Toby Roth** (R) 101,379 (57.23)
Ruth C. Clusen (D) 74,436 (42.02)
Anthony Theisen (Lbt) 1,336 (0.75)
*9th District*
**F. James Sensenbrenner** (R) 111,503 (100.0)

**Wyoming**
**Richard Cheney** (R) 113,236 (71.09)
Ted Hommel (R) 46,041 (28.91)

# Special Elections (H.R.)

**Number of special elections: 9.**
Number of vacancies occurring before the 98th Congress convened (1/3/83): 1.

## February 12, 1983
### Texas — 6th
‡**Phil Gramm** (R) 46,371 (55.32)
Dan Kubiak (D) 33,201 (39.61)
John F. Faulk (R) 3,070 (3.66)
Bill Powers (D) 318 (0.38)
Rex Carey (D) 268 (0.32)
H. Martin Gibson (Lbt) 223 (0.27)
George M. Chamberlain (D) 153 (0.18)
three others 223 (0.27)

## March 1, 1983
### New York — 7th
Gary L. Ackerman (D, L) 18,388 (49.65)
Albert Lemishow (R, C, RTL) 8,331 (22.50)
Douglas E. Schown (QI) 5,997 (16.19)

Sheldon Leffler (NSv) 4,318 (11.66)

## March 29, 1983
### Colorado — 6th
**Daniel Schaefer** (R) 49,816 (63.30)
Steve Hogan (D) 27,779 (35.30)
John Heckman (COP) 1,112 (1.41)

## June 21, 1983
### California — 5th (open primary)
**Sala Burton** (D) 44,790 (56.94)
Duncan L. Howard (R) 18,305 (23.27)
Richard Doyle (D) 6,582 (8.37)
Tom Spinosa (R) 2,933 (3.73)
Gary R. Arnold (R) 1,596 (2.03)
Tibor Uskert (D) 1,117 (1.42)
William Dunlap (R) 1,043 (1.33)
Evelyn K. Lantz (D) 880 (1.12)
Michael O. Plunkett (D) 560 (0.71)
A. Paul Kangas (Pe&F) 448 (0.57)
Eric Garris (Lbt) 408 (0.52)

## August 23, 1983
### Illinois — 1st
**Charles A. Hayes** (D) 39,623 (93.70)
Diane Pracely (R) 2,272 (5.37)
Ed Warren (I) 394 (0.93)

## October 18, 1983
### Georgia — 7th (open primary)
Katherine McDonald (D) 25,468 [30.58]
George Darden (D) 22,951 [27.56]
Dave Sellers (R) 21,181 [25.44]
George Pullen (R) 4,578 [5.50]
Dan Fincher (R) 4,283 [5.14]
Lon L. Day (D) 2,919 [3.51]
Charles B. Sherrill 791 [0.95]
Peggy Ann Childers 359 [0.43]
M. G. Huntington 131 [0.16]
Roy Rogers 116 [0.14]
Bill Holsomback 81 [0.10]
Daniel C. Maltz (R) 81 [0.10]
Eight others, plus write-ins 322 [0.39]

## November 8, 1983
### Georgia — 7th (runoff)
**George Darden** (D) 56,267 (59.09)
Katherine McDonald (D) 38,949 (40.91)

## March 18, 1984
### Wisconsin — 4th
**Gerald D. Kleczka** (D) 76,384 (65.07)
Aubrey Russell (R) 41,007 (34.93)

## November 6, 1984
### Kentucky — 7th
◊[14]**Carl C. Perkins** (D) 75,046 (82.54)
Aubrey Russell (R) 15,871 (17.46)

### New Jersey — 13th
◊[14]**H. James Saxton** (R) 143,080 (61.52)
James B. Smith (D) 87,885 (37.79)
Don Smith (CtsF) 1,622 (0.70)

# Statistical Summary (H.R.)
*(exclusive of special elections)*

| Category | Democrat | | Republican | | Others | All Winners | |
|---|---|---|---|---|---|---|---|
| 50.00% or less | 5 | (1.9%) | 2 | (1.2%) | | 7 | (1.6%) |
| 50.01–50.99% | 6 | (2.2%) | 8 | (4.8%) | | 14 | (3.2%) |
| 51.00–52.49% | 10 | (3.7%) | 9 | (5.5%) | | 19 | (4.4%) |
| 52.50–54.99% | 20 | (7.4%) | 16 | (9.7%) | | 36 | (8.3%) |
| 55.00–59.99% | 36 | (13.3%) | 42 | (25.5%) | | 78 | (17.9%) |
| 60.00%+ | 192 | (71.4%) | 88 | (53.3%) | 1 | 281 | (64.6%) |
| total | 269 | (100.0%) | 165 | (100.0%) | 1 | 435 | (100.0%) |

◊Elected after adjournment; not seated.   #Seated at opening of next Congress.   ‡Replaced member of another party.

Adrienne Benjamin (SW) 787
(0.54)

*th District
**Nick J. Rahall** (D) 91,184 (80.52)
Homer L. Harris (R) 22,054 (19.48)

**Wisconsin**

*st District*
**Les Aspin** (D) 95,055 (61.01)
Peter N. Jannson (R) 59,309
(38.07)
Arthur F. Jackson (Lbt) 1,438
(0.92)

*nd District*
**Robert W. Kastenmeier** (D)
112,677 (60.57)
Jim Johnson (R) 71,989 (38.70)
David Beito (Lbt) 1,368 (0.74)

*rd District*
**Steven Gunderson** (R) 99,304
(56.60)

Paul Offner (D) 75,132 (42.82)
Kenneth P. Van Doren (Lbt) 1,027
(0.59)

*4th District*
[13]**Clement J. Zablocki** (D) 129,557
(94.58)
Nicholas P. Youngers (Lbt) 4,064
(2.97)
John F. Baumgartner (I) 2,421
(1.77)
John Gudenschwager (Ct) 946
(0.69)

*5th District*
**Jim Moody** (D) 99,713 (63.55)
Rod K. Johnston (R) 54,826
(34.94)
William G. McCuen (Lbt) 1,498
(0.95)
Walter G. Beach (I) 526 (0.34)
Cheryll Y. Hidalgo (I) 353 (0.22)

*6th District*

**Thomas E. Petri** (R) 111,348
(65.01)
Gordon E. Loehr (D) 59,922
(34.99)

*7th District*
**David R. Obey** (D) 122,124
(67.98)
Bernard A. Zimmerman (R) 57,535
(32.02)

*8th District*
**Toby Roth** (R) 101,379 (57.23)
Ruth C. Clusen (D) 74,436 (42.02)
Anthony Theisen (Lbt) 1,336 (0.75)

*9th District*
**F. James Sensenbrenner** (R)
111,503 (100.0)

**Wyoming**
**Richard Cheney** (R) 113,236
(71.09)
Ted Hommel (D) 46,041 (28.91)

# Special Elections (H.R.)

Sheldon Leffler (NSv) 4,318 (11.66)

### March 29, 1983

**Colorado — 6th**
**Daniel Schaefer** (R) 49,816 (63.30)
Steve Hogan (D) 27,779 (35.30)
John Heckman (COP) 1,112 (1.41)

### June 21, 1983

**California — 5th** (open primary)
**Sala Burton** (D) 44,790 (56.94)
Duncan L. Howard (R) 18,305
(23.27)
Richard Doyle (D) 6,582 (8.37)
Tom Spinosa (R) 2,933 (3.73)
Gary R. Arnold (R) 1,596 (2.03)
Tibor Uskert (D) 1,117 (1.42)
William Dunlap (R) 1,043 (1.33)
Evelyn L. Lantz (D) 880 (1.12)
Michael O. Plunkett (D) 560 (0.71)
A. Paul Kangas (Pe&F) 448 (0.57)
Eric Garris (Lbt) 408 (0.52)

### August 23, 1983

**Illinois — 1st**
**Charles A. Hayes** (D) 39,623
(93.70)
Diane Pracely (R) 2,272 (5.37)
Ed Warren (I) 394 (0.93)

### October 18, 1983

**Georgia — 7th** (open primary)
Katherine McDonald (D) 25,468
[30.58]
George Darden (R) 22,951 [27.56]
Dave Sellers (R) 21,181 [25.44]
George Pullen (D) 4,578 [5.50]
Dan Fincher (D) 4,283 [5.14]
Lon L. Day (D) 2,919 [3.51]
Charles B. Sherrill 791 [0.95]
Peggy Ann Childers 359 [0.43]
M. G. Huntington 131 [0.16]
Roy Rogers 116 [0.14]
Bill Holsomback 81 [0.10]
Daniel C. Maltz (R) 81 [0.10]
Eight others, plus write-ins 322
[0.39]

### November 8, 1983

**Georgia — 7th** (runoff)
**George Darden** (D) 56,267
(59.09)
Katherine McDonald (D) 38,949
(40.91)

### March 18, 1984

**Wisconsin — 4th**
**Gerald D. Kleczka** (D) 76,384
(65.07)
Aubrey Russell (R) 41,007 (34.93)

### November 6, 1984

**Kentucky — 7th**
◊[14]**Carl C. Perkins** (D) 75,046
(82.54)
Aubrey Russell (R) 15,871 (17.46)

### New Jersey — 13th
◊[14]**H. James Saxton** (R) 143,080
(61.52)
James B. Smith (D) 87,885 (37.79)
Don Smith (CtsF) 1,622 (0.70)

# Statistical Summary (H.R.)

*(exclusive of special elections)*

| | Democrat | | Republican | | Others | All Winners | |
|---|---|---|---|---|---|---|---|
| | 5 | (1.9%) | 2 | (1.2%) | | 7 | (1.6%) |
| | 6 | (2.2%) | 8 | (4.8%) | | 14 | (3.2%) |

# 20 qualify to run for McDonald seat

From Staff Reports

The number of candidates in the Oct. 18 special election to fill the congressional seat of the late Larry McDonald reached 20 Thursday, the last day for candidates to qualify.

Later in the day Thursday, Kathy McDonald, seeking to replace her late husband, made her first speech of the campaign at a meeting of Sigma Delta Chi, the professional journalism society. In her speech, she defended her short mourning period for McDonald.

"I have been accused of being Ivy Lady," she told the Atlanta Press Club during her first speech of the campaign Thursday night. "Some said a widow should remain silent. Find a cave to hibernate to let the wounds heal.

"I have a responsibility to the people of the 7th District," she said. "The 7th District needs me and, frankly, I need the 7th District."

Among the issues Mrs. McDonald addressed, she called for the halting of trade with all communist nations. "I just want to hurt the

'I have a responsibility to the people of the 7th District. The 7th District needs me and, frankly, I need the 7th District.'

— Kathy McDonald

Russians."

McDonald died Sept. 1 when a Soviet interceptor shot down a South Korean passenger plane on which he and 268 others perished.

Among the Thursday qualifiers were Rossville Mayor Charles B. Sherrill, a director of the Georgia Municipal Association, and David Sellers, a Marietta attorney who last year ran for the seat against McDonald.

Sherrill, a Democrat, called his chance of defeating McDonald's widow, "excellent" and promised he would work with Gov. Joe Frank

Harris and other elected officials to "bring about a partnership ... for the common good of all Georgians."

Sherrill, 52, mayor of a small town close to the Tennessee border in northwest Georgia, said he and his supporters had "decided that my chances of being elected to Congress at this time are excellent."

Earlier Thursday, Sellers announced that he is running with the full support of the local, state and national Republican parties.

He called himself the "decisive, conservative leader" that he believes 7th District voters want as their congressman. Sellers drew 39 percent of the general election vote last year when he opposed McDonald.

Sellers also called for additional sanctions against the Soviet Union.

Also Thursday, Lon Day Jr., chairman of the board of Day Realty, announced that he is changing his party affiliation from Republican to Democrat.

# Hopefuls file as self-proclaimed paupers

By Ann Woolner
Staff Writer

Bobby Brickell, who owns a miniature golf course, sat patiently in a corner chair in the state elections office while his declaration of poverty was being reviewed by the director.

Chatting with a stranger, Brickell smiled when asked why he was filing as a candidate for the U.S. House of Representatives. "I like the idea of being a congressman," he said. "I love people."

His chances at victory? "It's hard to say."

Brickell had called no press conference to announce his campaign and he has never run for public office before. He does not live in the district he seeks to represent.

But if his candidacy is a long shot, the affable 32-year-old has lots of company in the race to succeed the late Rep. Larry McDonald in Georgia's 7th Congressional District.

As the clock ticked toward the 4:30 p.m. Thursday deadline for qualifying as a candidate, Brickell be-

## 20 candidates qualify in 7th

Here are the candidates who have qualified to run in the non-partisan Oct. 18 special election for the 7th Congressional District seat left vacant by the death of Rep. Larry McDonald.

Rossville Mayor Charles B. Sherrill, a director of the Georgia Municipal Association and a Democrat; Gerald David Sellers, a Marietta attorney and a Republican; McDonald's widow, Kathy McDonald, who is running as a Democrat; Democratic state Rep. George "Buddy" Darden of Marietta, a former Cobb County prosecutor and a Democrat; former Democratic state Sen. Dan H. Fincher of Rome, a veterinarian; Democratic Rome City Commissioner William George Pullen of Rome, a history teacher at Floyd Junior College; M.G. Huntington, a Cobb County real estate investor.

came the 20th — and last — candidate to file. He became the fourth candidate who lives outside of the 7th District. And he is the 12th to qualify as a pauper.

This special, non-partisan election set for Oct. 18 has brought more candidates than any in the memory of Frances Duncan, the state's elections director. And it has brought a higher proportion of self-proclaimed paupers than she has ever seen before.

She believes the unusual circumstances surrounding

Candidates qualifying as paupers are:

Benjamin Shirley Biggers, an Atlanta drug counselor; Peggy Ann Childers, an unpublished author from Cobb County; Raymond Edward Fulton, a security officer at Berry College in Floyd County; W.R. Honcomback of Smyrna, a Lockheed-Georgia employee; Sara Jean Johnston, an Atlanta garment worker and Socialist Workers' Party candidate; Fred C. Jones of Marietta, who is in the remodeling and construction business; James Maynard Livingston of Avondale Estates, a "man-made golf pro"; Charles C. Maltz, a Smyrna publisher-salesman; Roy Rogers of Marietta, a union apprenticeship director; Alan Craig Smith of Marietta, owner of an Atlanta conservation firm; Marshall Eugene Unczacher, a Marietta writer; and Bobby Brickell of Atlanta, owner of a miniature golf course.

the election — the shooting down by Soviets of the airliner on which McDonald was traveling — has brought a higher degree of news coverage to the race, which in turn has brought a higher number of candidates.

Stories noting that candidates do not have to pay the qualifying fee — or live in the 7th District under a recent state attorney general's opinion — have led to the unusually high number of non-resident candidates and pauper

candidates, she said.

Pauper candidates declare themselves financially unable to pay the $2,000 qualifying fee by filling out a financial disclosure form.

In Brickell's case, his monthly income from his miniature golf course is $499. A lot and two old cars bring his personal assets to $1,500, according to his affidavit.

Secretary of State Max Cleland, who reviews the affidavits, said late Thursday that under Georgia

law, "It is unclear how 'pauper' is defined. There is no precise standard by which we can judge whether a candidate is indigent, a pauper, or able to pay a qualifying fee."

He declared all 12 of the self-proclaimed paupers eligible, saying, "I have no basis to deny these particular candidates the right to qualify."

Among the listed occupations of those who filed as paupers are a "singer-golf pro," drug counselor, garment worker, Lockheed employees, security officer and "unpublished author."

Until 1972, Georgia required each candidate to pay a qualifying fee. That requirement was found unconstitutional by a federal court.



## Marcia's
## BIG GIRL FASHIONS®

### LEVI'S®
### BEND OVER® PANTS
### SIZES 32-46

When Big Girl Fashions talks, women listen! Drop what you're doing and get over to a Marcia's near you to enter the Olympics—Levi's® Style Sweepstakes. While you're there, take advantage of our wide selection of colors in Levi's® Bend Over® Pants, now at a very special price.

### All colors $19

#### OLYMPICS
#### LEVI'S STYLE

Win a dream trip for two to the Los Angeles 1984 Olympic Games when you help choose the uniform of the U.S. Olympic Team.

OPEN MON.-SAT. 10-6: FRIDAY NITE TILL 8:30
Also in Augusta and Macon

**EASTGATE SHOP. CTR.**
Lower Roswell Rd. at Marietta Pky.
PH. 973-4444, MARIETTA

**SHAMROCK PLAZA**
N. Druid Hills Rd. at Lawrenceville Hwy.
PH. 634-2255, DECATUR

**MARSHALLS PLAZA**
6333 Roswell Road
PH. 256-1113, SANDY SPRINGS

**RIVERDALE SQUARE**
686 Hwy. 138 at GA. 85
PH. 471-4800, RIVERDALE

## FINE LAWNS
## BEGIN IN THE FALL!

# United States Congressional Elections, 1788–1997

*The Official Results of the Elections*
*of the 1st through 105th Congresses*

## MICHAEL J. DUBIN



McFarland & Company, Inc., Publishers
*Jefferson, North Carolina, and London*

British Library Cataloguing-in-Publication data are available

Library of Congress Cataloguing-in-Publication Data

Dubin, Michael J.
United States Congressional elections, 1788–1997 : the official
results of the elections of the 1st through 105th Congresses /
Michael J. Dubin.
p.   cm.
Includes bibliographical references (p.    ) and index.
ISBN 0-7864-0283-0 (library binding : 40# alkaline paper) ∞
1. United States.   Congress — Elections — History.
2. Elections — United States — History.   I.  Title.
JK1967.D77   1998                   324.973 — dc20
96-9841 CIP

©1998 Michael J. Dubin. All rights reserved

*No part of this book, specifically including the index, may be
reproduced or transmitted in any form or by any means, electronic or
mechanical, including photocopying or recording, or by any information
storage and retrieval system, without permission in writing
from the publisher.*

Manufactured in the United States of America

Designed by Steve Wilson

*McFarland & Company, Inc., Publishers
Box 611, Jefferson, North Carolina 28640*

Dan Marriott (R) 144,861 (52.43)
Allan T. Howe (D) 110,931 (40.15)
[6]D. J. McCarty (I) 20,508 (7.42)

**Vermont**
James M. Jeffords (R) 124,458 (67.40)
John D. Burgess (D, IVm) 60,202 (32.60)

**Virginia**
*1st District*
Paul S. Trible (R) 71,789 (48.56)
Robert E. Quinn (D) 70,159 (47.46)
Mary B. McClaine (I) 5,887 (3.98)
*2nd District*
G. William Whitehurst (R) 79,381 (65.69)
Robert E. Washington (D) 41,464 (34.31)
*3rd District*
David E. Satterfield (D) 129,066 (88.06)
Alan R. Ogden (I) 17,503 (11.94)
*4th District*
Robert W. Daniel (R) 74,495 (53.03)
J. W. O'Brien (D) 65,982 (46.97)
*5th District*
Wilbur C. Daniel (D) 101,038 (100.0)
*6th District*
M. Caldwell Butler (R) 90,830 (62.24)
Warren D. Saunders (I) 55,115 (37.76)
*7th District*
J. Kenneth Robinson (R) 115,508 (81.78)
James R. Hutt (I) 25,731 (18.22)
*8th District*

Herbert E. Harris (D) 83,245 (51.62)
James R. Tate (R) 68,729 (42.62)
Michael D. Cannon (I) 9,292 (5.76)
*9th District*
William C. Wampler (R) 96,052 (57.35)
Charles J. Horne (D) 71,439 (42.65)
*10th District*
Joseph L. Fisher (D) 103,689 (54.74)
Vincent F. Callahan (R) 73,616 (38.86)
E. Stanley Rittenhouse (I) 12,124 (6.40)

**Washington**
*1st District*
Joel Pritchard (R) 161,354 (71.85)
Dave Wood (D) 58,006 (25.83)
Alan M. Gottlieb (Lbt) 4,230 (1.88)
Patrick Ruckert (USL) 971 (0.43)
*2nd District*
Lloyd Meeds (D) 107,335 (49.26)
John N. Garner (R) 106,806 (49.02)
Tom Bly (AcT) 1,963 (0.90)
Carol Ruckert (USL) 1,783 (0.82)
*3rd District*
Don Bonker (D) 145,198 (70.80)
Chuck Elhart (R) 57,517 (28.05)
David Kilber (USL) 2,357 (1.15)
*4th District*
Mike McCormack (D) 115,364 (57.78)
Richard Granger (R) 81,813 (40.98)
Jeff W. Busby (ACt) 1,586 (0.79)
Ted Andromidas (USL) 901 (0.45)
*5th District*
Thomas S. Foley (D) 120,415

(58.01)
Duane Alton (R) 84,262 (40.59)
D. E. Sandahl (Lbt) 1,959 (0.94)
Ira Liebowitz (USL) 935 (0.45)
*6th District*
Norman D. Dicks (D) 137,964 (73.48)
Robert M. Reynolds (R) 47,539 (25.32)
Michael Duane (USL) 2,251 (1.20)
*7th District*
[7]Brock Adams (D) 133,673 (73.00)
Raymond Pritchard (R) 46,448 (25.36)
Gene Goosman (ACt) 1,668 (0.91)
Marianna Wertz (USL) 1,333 (0.73)

**West Virginia**
*1st District*
Robert H. Mollohan (D) 108,103 (58.04)
John F. McCuskey (R) 78,159 (41.96)
*2nd District*
Harley O. Staggers (D) 136,749 (73.20)
Jim Sloan (R) 50,076 (27.80)
*3rd District*
John M. Slack (D) 128,086 (100.0)
*4th District*
Nick J. Rahall (D) 73,626 (45.58)
Ken Hechler (I) 59,067 (36.57)
E. S. Goodman (R) 28,825 (17.85)

**Wisconsin**
*1st District*
Les Aspin (D) 136,162 (64.90)
William W. Petrie (R) 71,427 (34.05)
Eugene R. Zimmerman (A) 2,205 (1.05)
*2nd District*

Robert W. Kastenmeier (D) 155,158 (64.09)
Elizabeth T. Miller (R) 81,350 (35.91)
*3rd District*
Alvin Baldus (D) 139,083 (58.12)
Adolph L. Gunderson (R) 100,218 (41.88)
*4th District*
Clement J. Zablocki (D) 172,166 (100.0)
*5th District*
Henry S. Reuss (D) 134,935 (77.77)
Robert L. Hicks (R) 36,413 (20.99)
R. Julian Chapman (I) 1,563 (0.90)
John E. Sokoly (I) 597 (0.34)
*6th District*
William A. Steiger (R) 139,541 (63.35)
Joseph C. Smith (D) 80,715 (36.65)
*7th District*
David R. Obey (D) 171,366 (73.27)
Frank A. Savino (R) 60,952 (26.06)
George Olishkewych (A) 1,575 (0.67)
*8th District*
Robert J. Cornell (D) 115,996 (50.85)
Harold V. Froehlich (R) 107,048 (46.93)
Donald D. Hoeft (A) 5,056 (2.22)
*9th District*
Robert W. Kasten (R) 163,791 (65.91)
Lynn M. McDonald (D) 84,706 (34.09)

**Wyoming**
Teno Roncalio (D) 85,721 (56.44)
Larry J. Hart (R) 66,147 (43.56)

# Special Elections (H.R.)

Number of special elections: 6.
Vacancies occurring before the 95th Congress began (1/4/77): 0.
Vacancies unfilled: 2 (Tennessee 5th, June 18, 1978; California 14th, June 24, 1978).

### February 22, 1977

**Minnesota — 7th**
‡Arlan I. Stangeland (IR) 71,340 (57.58)
Michael Sullivan (DFL) 45,490 (36.72)
James Born (A) 6,105 (4.93)
Jack Bibeau (I) 963 (0.78)

### March 15, 1977

**Georgia — 5th** (open primary)
Wyche Fowler (D) 29,898 [39.65]
John Lewis (D) 21,531 [28.56]
Paul D. Coverdell (R) 16,509 [21.90]
Ralph D. Abernathy (D) 3,614 [4.79]
Marge Thurman (D) 1,626 [2.16]
J. E. McKinney (D) 1,105 [1.47]
Henrietta M. Canty (D) 631 [0.84]
Wyman C. Lowe (D) 276 [0.37]
James Harris (SW) 108 [0.14]
Alma J. Johnson (D) 37 [0.05]
Harry W. Belfor (R) 35 [0.05]
Clennon King (I) 30 [0.04]

### April 5, 1977
**Georgia — 5th** (runoff)
Wyche Fowler (D) 54,378 (62.42)
John Lewis (D) 32,732 (37.58)

### May 17, 1977
**Washington — 7th**
‡John E. Cunningham (R) 43,441 (53.85)
Marvin Durning (D) 37,229 (46.15)

### August 27, 1977
**Louisiana — 1st**
‡Robert L. Livingston (R) 56,121 (51.21)
Ron Faucheux (D) 40,802 (37.23)

Sanford Krasnoff (I) 12,665 (11.56)

### February 14, 1978

**New York — 18th**
‡S. William Green (R) 30,322 (50.47)
Bella S. Abzug (D, L) 29,171 (48.55)
Howard Linn (C) 435 (0.72)
Paul Gallagher (Lab) 152 (0.25)

**New York — 21st**
*‡Robert Garcia (R, L) 7,959 (55.40)
Louis Nine (D, C) 3,514 (24.46)
Ramon S. Velez (V) 2,280 (15.87)
Armando Montano (BtB) 394 (2.74)
Israel Ruiz (AFP) 219 (1.52)

# Special Elections (H.R.)

## March 15, 1977

**Georgia — 5th** (open primary)
Wyche Fowler (D) 29,898 [39.65]
John Lewis (D) 21,531 [28.56]
Paul D. Coverdell (R) 16,509 [21.90]
Ralph D. Abernathy (D) 3,614 [4.79]
Marge Thurman (D) 1,626 [2.16]
J. E. McKinney (D) 1,105 [1.47]
Henrietta M. Canty (D) 631 [0.84]
Wyman C. Lowe (D) 276 [0.37]
James Harris (SW) 108 [0.14]
Alma J. Johnson (D) 37 [0.05]
Harry W. Belfor (R) 35 [0.05]
Clennon King (I) 30 [0.04]

## April 5, 1977

**Georgia — 5th** (runoff)
**Wyche Fowler** (D) 54,378 (62.42)
John Lewis (D) 32,732 (37.58)

## May 17, 1977

**Washington — 7th**
‡**John E. Cunningham** (R) 43,441 (53.85)
Marvin Durning (D) 37,229 (46.15)

## August 27, 1977

**Louisiana — 1st**
‡**Robert L. Livingston** (R) 56,121 (51.21)
Ron Faucheux (D) 40,802 (37.23)