IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Martin Cowen**, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>**Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia,<br><br>    Defendant. | Case No. 1:17-cv-04660-LMM<br><br>**Plaintiffs' Second Set of Requests for Admissions to the Defendant** |

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and Local Rule 36, the plaintiffs ask the defendant to respond within 30 days to these requests by admitting, for purposes of this action only and subject to objections to admissibility at trial, the truth of each of the following statements:

25. In 2008, James P. Mason declared his intention to qualify for the general-election ballot as an independent candidate in Georgia's Tenth Congressional District and was unsuccessful in doing so.


Plaintiff's SJ Exhibit 028

26. In 2008, Timothy J. Payne declared his intention to qualify for the general-election ballot as an independent candidate in Georgia's Fifth Congressional District and was unsuccessful in doing so.

27. In 2008, an unnamed person at ajmilesmedia.com declared an intention to qualify for the general-election ballot as an independent candidate in Georgia's Fourth Congressional District and was unsuccessful in doing so.

28. In 2010, Charles Perry declared his intention to qualify for the general-election ballot as an independent candidate in Georgia's Thirteenth Congressional District and was unsuccessful in doing so.

29. In 2010, Victor Amendariz declared his intention to qualify for the general-election ballot as an independent candidate in Georgia's Fourth Congressional District and was unsuccessful in doing so.

30. In 2016, David Moreland declared his intention to qualify for the general-election ballot as an independent candidate in Georgia's First Congressional District and was unsuccessful in doing so.

31. In 2016, Raymond Beckwith declared his intention to qualify for the general-election ballot as an independent candidate in Georgia's First Congressional District and was unsuccessful in doing so.

32. In 2016, Lincoln Nunnally declared his intention to qualify for the general-election ballot as an independent candidate in Georgia's Fourth Congressional District and was unsuccessful in doing so.

33. In 2018, Luanne Allen Taylor declared her intention to qualify for the general-election ballot as an independent candidate in Georgia's Sixth Congressional District. She was deterred from doing so by the number of signatures required in order to qualify for the ballot.

34. In 2018, Steve "Fred" Abrams declared his intention to qualify for the general-election ballot as an independent candidate in Georgia's Fourteenth Congressional District and was unsuccessful in doing so.

35. In 2000, Gail Debra Allen-Cartwright declared her intention to qualify for the general-election ballot as an independent candidate in Georgia's Eleventh Congressional District and was unsuccessful in doing so.

36. Federal campaign-finance laws set certain limits on campaign contributions to candidates for federal offices, including political-body candidates for U.S. Representative.

37. Under these laws, the maximum amount that a state or national party may contribute to one candidate for U.S. Representative is $5,000 per election. See https://www.fec.gov/help-candidates-and-committees/candidate-taking-receipts/contribution-limits/.

38. The limits on contributions to candidates apply separately to each federal election in which the candidate participates. A primary election, general election, runoff election and special election are each considered a separate election with a separate limit.

39. Even when candidates are not involved in an actual primary, they are entitled to a primary limit. They may choose one of the following dates to be their "primary" date, and, until that date, they may collect contributions that count towards the contributor's primary limits: (1) the last day on which, under state law, a candidate may qualify for a position on the general election ballot; or (2) the date of the last major primary election, caucus or convention in that state. Political-body candidates may also choose the date of the nomination by their party as their primary date.

40. As a result, the maximum amount that a state or national party may contribute to one candidate for U.S. Representative (except in the event of a runoff election) is $10,000 per election cycle.

41. The value of an in-kind contribution counts against the contribution limits just as a contribution of money does.

42. Any amount paid by a state or national party for petition circulators or other petitioning efforts in support of a candidate for U.S. Representative must be reported to federal authorities as an in-kind contribution and is subject to campaign contribution limits.

43. Any amount paid by a state or national party for qualifying fees in support of a candidate for U.S. Representative must be reported to federal authorities as an in-kind contribution and is subject to campaign contribution limits.

44. The State of Maine uses ranked-choice voting in general elections to elect U.S. Senators and U.S. Representatives. In 2018, a federal district court upheld the state's ranked-choice system against a constitutional challenge brought by a losing congressional candidate. The court of appeals denied the candidate's motion for an emergency

injunction against the system, and the candidate later dropped his appeal.

45. Five states (Arkansas, Alabama, Louisiana, Mississippi and South Carolina) use ranked-choice voting for overseas voters in runoff elections for federal offices.

46. Petition-circulators in Georgia may not lawfully solicit signatures on private property without the permission of the property owner. *See Cahill v. Cobb Place Associates*, 271 Ga. 322 (1999); *Citizens for Ethical Gov't v. Gwinnett Place Associates*, 260 Ga. 245 (1990). That includes places of public accommodation, such as shopping malls, as well as property owned by common-interest community associations, such as homeowners' associations.

47. Georgia law permits candidates to file a pauper's affidavit in lieu of paying an applicable qualifying fee. O.C.G.A. § 21-2-132(g).

48. A pauper's affidavit requires the candidate to swear under oath that the candidate has neither the assets nor the income to pay the filing fee, and it requires the candidate to submit a personal financial statement. O.C.G.A. § 21-2-132(g).

49. In addition, a pauper's affidavit must be accompanied by a qualifying petition signed by one-quarter of one percent of the number of registered voters eligible to vote for the office in the last election. O.C.G.A. § 21-2-132(h).

50. Each sheet of the qualifying petition must also contain a sworn and notarized affidavit of the circulator attesting, among other things, that each signature on the sheet was gathered within 180 days of the filing deadline. *Id.*

51. For a political-body candidate, a qualifying petition is due at the same time that a candidate's notice of candidacy is due – no later than noon on the Friday following the Monday of the thirty-fifth week before the general election – a date that falls in early March of an election year. O.C.G.A. § 21-2-132(d).

Dated: February 8, 2019.

**/s/ Bryan L. Sells**
Attorney Bar No. 635562
Attorney for the Plaintiffs
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com