# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

16-11689-H

_____

GREEN PARTY OF GEORGIA and
CONSTITUTION PARTY OF GEORGIA,

                              Plaintiffs/Appellees,

v.

BRIAN KEMP, GEORGIA SECRETARY
OF STATE,

                              Defendant/Appellant.

_____

## BRIEF OF APPELLANT
## SECRETARY OF STATE BRIAN KEMP

_____

On Appeal from the United States District Court
For the Northern District of Georgia

| | | |
|---|---|---|
| | SAMUEL S. OLENS<br>Attorney General | 551540 |
| | DENNIS R. DUNN<br>Deputy Attorney General | 234098 |
| | RUSSELL D. WILLARD<br>Senior Assistant Attorney General | 760280 |
| State Law Department<br>40 Capitol Square, S.W.<br>Atlanta, GA 30334-1300<br>PH: (404) 656-7063<br>FAX: (404) 651-9325<br>Email: ccorreia@law.ga.gov | JULIA B. ANDERSON<br>Senior Assistant Attorney General | 017560 |
| | CRISTINA M. CORREIA<br>Assistant Attorney General | 188620 |
| | JOSIAH B. HEIDT<br>Assistant Attorney General | 104183 |

Plaintiff's SJ Exhibit 042

district court focused on three factors. First, it measured the severity of the burden as a function of whether the two political bodies before the court were likely to get on the ballot, rather than as a function of whether a political body with significant public support had access to the general election ballot. Second, it compared Georgia's petition requirement, both in terms of the absolute number of signatures required and in the number of Presidential candidates that have gotten on the ballot, to that of other states. R-92 at 50-51. Finally, it found that Georgia's ballot access statute prohibited a candidate with widespread national support from securing a place on Georgia's general election ballot. R-92 at 50-51. As discussed below, the district court erred in its consideration of all four of these factors.

### 1. The Law Requires That Plaintiffs Show Substantial Modicum of Support.

The district court erred by measuring the severity of the burden on the Plaintiff political bodies without any regard to whether they enjoyed significant public support in Georgia. The Supreme Court has held that "[t]he State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson*, 460 U.S. at 788 n. 9 (citations omitted). Here, while addressing the issue of modicum of support, the district court relied solely on evidence of national support for these political bodies and failed to address the extent of support for

10

these political bodies or candidates in Georgia. R-92 at 49. The Plaintiffs, relying on Winger's testimony, argued that the State could not require more than a "small" amount of support before placing these political bodies on the general election ballot. R-79 at 1-2. This opinion is completely contrary to the standard established by the Supreme Court in *Anderson*, 460 U.S. at 789 n. 9 (substantial support required); *Munro v. Socialist Workers Party*, 479 U.S. 189, 193-194 (1986) (referring to both "significant modicum of support" and "substantial support"); *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) (requiring "significant modicum of support"). The fact that Winger does not adopt the standard consistently applied by the Supreme Court is in and of itself grounds for rejecting his opinions. The evidence showed that political bodies with substantial support in Georgia regularly access the general election ballot.

Georgia provides two routes for political bodies to get on the general election ballot, by petition or by garnering sufficient votes at the preceding general election. *See* O.C.G.A. § 21-2-180(1) and (2). Both methods require the political body, or candidate, to demonstrate a modicum of support equal to 1% of the total number of registered voters at the preceding general election. *Id.* Importantly, once a political body has qualified by petition, and one petition can include an entire *slate* of candidates for *all* statewide offices, they need only garner support equal to 1% of all registered voters for any *one* candidate, to remain on the general

11

election ballot for *all* statewide races in the following general election. *See* O.C.G.A. § 21-2-180(2). Winger described Georgia's requirement, that minor parties can remain continuously on the general election ballot by garnering votes equal to 1% of voter registration, as "pretty good." R-75-17 at 30 lns. 4 -14. Georgia's Libertarian Party, a political body, has succeeded in having statewide candidates on the general election ballot in Georgia since 1988. R-75-3 ¶¶ 7-8.

Statewide candidates that have appeared on the general election ballot by petition in Georgia include Lenora Fulani and Joyce Dattner, New Alliance candidates for president and vice president in 1988; Calvin Peterson, New Alliance candidate for Public Service Commission in 1988; Ross Perot and James Stockdale, Independent candidates for president and vice president in 1992; Ross Perot and Pat Choate, Reform Party candidates for president and vice president in 1996; and Pat Buchanan, Independent candidate for president in 2000. *See* R-75-3 ¶ 7. These were all successful petitions. The Libertarian Party, a political body, has also been successful in having its nominees for president and vice president on *every* presidential general election ballot since 1988. This success is because the Libertarian Party, which initially got on the ballot by petition, has been able to garner sufficient votes (1% of the registered voters) at every general election since 1988. The district court, like Winger, failed to take both the Libertarian Party's success *and* Plaintiffs' lack of significant petition attempts into account in

12

measuring the burden of Georgia's ballot access laws on Plaintiffs. R-92 at 13 n. 9; R-75-17 at p. 28 lns. 13 - p. 29 ln. 4; p. 50 ln. 21 – p. 51 ln. 24.

One measure of the difference in support for the Libertarian Party of Georgia and Plaintiffs, the Green Party of Georgia and the Constitution Party of Georgia, is their petition efforts and success for state legislative races. The Libertarian Party's access to the general election ballot, for *statewide* candidates, has been repeatedly secured, since 1988, without the need of a petition. However, the Libertarian Party must still submit a petition to get its candidates for state legislative offices, i.e., non-statewide offices, on the general election ballot.[3] The district court erred by not considering this evidence. Since 1990, the Libertarian Party has repeatedly had candidates on the general election ballot. *See* R-75-3 ¶ 7. At least one Libertarian and/or Independent candidate appeared on the general election ballot for a state legislative district in 1990, 1996, 2000, 2002, 2004, 2006, 2008, 2010, and 2014. *Id.* In 2000 alone, six candidates qualified for the general election ballot, for a state legislative seat, by petition. *Id.*

In contrast, no Green Party of Georgia or Constitution Party of Georgia candidates have ever qualified by petition for a state legislative district. R-75-3. This is significant because a party with significant support, like the Libertarian

---

[3] For offices that are not statewide, a candidate must get a petition signed by 5% of the active registered voters in the district for which they are seeking election. O.C.G.A. § 21-2-170(b); R-75-3 ¶ 5.

13

Party, *can* successfully petition to get on the ballot. Thus, the district court erred by refusing to consider this evidence and the court's analysis of the burden imposed by the petition requirement was therefore skewed. It is precisely because Georgia's system permits alternatives to the petition for political bodies that garnered sufficient votes in the preceding election, that there were fewer petition attempts for statewide elections and why refusing to consider petition success for legislative races resulted in the district court's skewed analysis of the burden imposed by the petition requirement. In other words, by making it easier for political bodies that demonstrate significant support in an election to get on the ballot in subsequent years the Libertarian Party did not need to petition for statewide office. However, by not considering the Libertarian Party's success in petition efforts for non-statewide offices, the district court judged Georgia's petition requirement more harshly precisely because it is more open.

The reality is that the Plaintiffs are political bodies with little support in Georgia. That reality does make it difficult for them to collect the requisite number of petition signatures needed. That does not however, make the petition requirement severe. Several characteristics of Georgia's ballot access laws lessen the burden of collecting petition signatures.

First, a political body has *fifteen (15) months* to collect petition signatures. O.C.G.A. § 21-2-182; *see also* R-75-21 at pp. 3-4. This Court has held that a 188

14

due no weight. R-92 at 18. Mr. Yager was not identified as an expert in this case. R-81 at 5-6.

The district court also credited Plaintiffs' hearsay testimony. The Court accepted the affidavit of Garland Favorito regarding the financing of Ross Perot's petition efforts, despite Defendant's objections that the affidavit lacked personal knowledge. R-92 at 19; R-81 at 13-16. Similarly, the district court credits Hugh Esco's affidavit throughout its opinion, despite Defendant's objections that the testimony is not based on Esco's personal knowledge and in some instances is improper lay witness opinion testimony. R-92 at 6, 15, 18, 20, 48, 49; R-81 at 8-10.

These evidentiary errors require reversal of the district court's grant of summary judgment to the Plaintiffs. Both the evidence and proper application of the constitutional standard support summary judgment for the Defendant.

## CONCLUSION

For the reasons set forth above, Secretary Kemp respectfully requests that the Court reverse the district court's order and grant summary judgment to Secretary Kemp.

Respectfully submitted,

SAMUEL S. OLENS    551540
Attorney General

                    DENNIS R. DUNN    234098
                    Deputy Attorney General

                    RUSSELL D. WILLARD   760280
                    Senior Assistant Attorney General
                    rwillard@law.ga.gov

                    JULIA B. ANDERSON    017560
                    Senior Assistant Attorney General
                    janderson@law.ga.gov


                    /s/Cristina Correia
                    CRISTINA M. CORREIA   188620
                    Assistant Attorney General
                    ccorreia@law.ga.gov

                    JOSIAH B. HEIDT     104183
                    Assistant Attorney General
                    jheidt@law.ga.gov

                    Attorneys for Appellant Brian Kemp

Please address all
Communication to:
CRISTINA CORREIA
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
(404) 656-7063
Fax: 404-651-9325

44

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2016, I electronically filed the foregoing **BRIEF OF APPELLANT** with the Eleventh Circuit Court of Appeals using the CM/ECF system which will which will automatically send email notification of such filing to the following attorneys of record:

> Laughlin McDonald
> ACLU Foundation
> 2700 International Tower
> 229 Peachtree Street, NE
> Atlanta, GA 30303
>
> J.M. Raffauf
> Office of J.M. Raffauf
> 248 Washington Avenue
> Marietta, GA 30060

This 6th day of June, 2016.

/s/Cristina Correia
Cristina Correia
Assistant Attorney General
Georgia Bar No. 188620
40 Capitol Square, S.W.
Atlanta, GA 30334-1300
PH: (404) 656-7063
FAX: (404) 651-9325
ccorreia@law.ga.gov

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____
16-11689-H
_____

GREEN PARTY OF GEORGIA and
CONSTITUTION PARTY OF GEORGIA,

                       Plaintiffs/Appellees,

v.

BRIAN KEMP, GEORGIA SECRETARY
OF STATE,

                       Defendant/Appellant.

_____
## SECRETARY OF STATE, BRIAN KEMP'S
## REPLY BRIEF OF APPELLANT
_____

On Appeal from the United States District Court
For the Northern District of Georgia

| | |
|---|---|
| SAMUEL S. OLENS<br>Attorney General | 551540 |
| DENNIS R. DUNN<br>Deputy Attorney General | 234098 |
| RUSSELL D. WILLARD<br>Senior Assistant Attorney General | 760280 |
| JULIA B. ANDERSON<br>Senior Assistant Attorney General | 017560 |
| CRISTINA M. CORREIA<br>Assistant Attorney General | 188620 |
| JOSIAH B. HEIDT<br>Assistant Attorney General | 104183 |

State Law Department
40 Capitol Square, S.W.
Atlanta, GA 30334-1300
PH: (404) 656-7063
FAX: (404) 651-9325
Email: ccorreia@law.ga.gov

presidential elector, to contain at least 200 signatures from each of 50 counties, regardless of the disparity in population among rural and urban counties.[4] As the Supreme Court noted, 93.4% of the state's voters resided in the 49 most populous counties with the 53 remaining counties containing only 6.6% of the state's voters. 394 U.S. at 816. It was this inequality in ballot access that offended the Fourteenth Amendment. 394 U.S. at 819. Nothing in *Moore* suggests a state may not require independent and political body candidates to demonstrate significant support before those candidates are placed on the general election ballot.

    Here, the challenged statute imposes only a "generally applicable and evenhanded restriction[]." *Anderson*, 460 U.S. at 788 n. 9. That restriction, in turn, allows parties with significant support to appear on the ballot. ==The record below demonstrated that the Libertarian Party, a political body with significant support in Georgia, regularly places its candidates on the general election ballot.== In measuring the burden imposed by the petition requirement, the district court erred by not taking into account the repeated success of the Libertarian Party in

---

[4] The Illinois statute in *Moore* required that the petition be signed by a total of 25,000 registered voters. 394 U.S. at 815. Appellees contend that "a slate of independent candidates for Presidential electors . . . obviously had little or no support since they were unpledged to any candidate." Red Brief at 47. However, the slate had submitted "the names of 26,500 qualified voters." 394 U.S. at 815. The challenge stemmed only from the distribution requirement, not the requirement that the candidates first demonstrate significant support.

4

gaining access to the general election ballot both by petition and by garnering votes in the general election equal to 1% of the registration.[5] *See* Blue Brief at 11-14.

The comparison to the Libertarian Party also shows why Appellees' contention that petition efforts for state legislative races are not an appropriate measure because "the burdens of qualifying by petition for a state legislative district are less than for the office of President" falls flat. Red Brief at 50. The point of the comparison is that despite the lower requirement for legislative seats neither the Georgia Green Party nor the Constitution Party of Georgia has been successful in petition efforts for state legislative seats.[6] By contrast, the Libertarian Party of Georgia has repeatedly fielded candidates for state legislative races by petition, *and* has had statewide candidates on the ballot every election since 1988 by garnering votes equal to 1% of the statewide registration for at least one candidate in every general election. R1-75-3 ¶¶ 7-8.[7]

---

[5] By contrast, neither the Georgia Green Party nor the Constitution Party of Georgia were successful in collecting even the 7,500 valid petition signatures required in the district court's remedial Order striking down the 1% requirement. R7-92 at 79.

[6] Indeed, the only successful petition attempts identified by Appellees are for one county commission race and one school board race. Red Brief at 51.

[7] References to the 7 volume Appendix will include the volume number followed by the document number. For example, R1-75-3 refers to Doc. 75-3 which is included in volume I of the Appendix filed in this case. Any page number reference refers to the ECF page number which may differ from the document page number.

5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Here, both the evidence and proper application of the constitutional standard support summary judgment for the Defendant.

## CONCLUSION

For the reasons set forth above and those in Appellant's initial brief, Secretary Kemp respectfully requests that the Court reverse the district court's order and grant summary judgment to Secretary Kemp.

Respectfully submitted,

SAMUEL S. OLENS    551540
Attorney General

DENNIS R. DUNN    234098
Deputy Attorney General

RUSSELL D. WILLARD   760280
Senior Assistant Attorney General
rwillard@law.ga.gov

JULIA B. ANDERSON   017560
Senior Assistant Attorney General
janderson@law.ga.gov

/s/Cristina Correia
CRISTINA M. CORREIA   188620
Assistant Attorney General
ccorreia@law.ga.gov

JOSIAH B. HEIDT    104183
Assistant Attorney General
jheidt@law.ga.gov

Attorneys for Appellant Brian Kemp
