IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Martin Cowen**, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>**Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia,<br><br>Defendant. | Case No. 1:17-cv-04660-LMM<br><br>**Plaintiffs' Reply in Support of their Motion for Summary Judgment** |

The plaintiffs respectfully submit this reply to the defendant's response brief in opposition to the plaintiffs' motion for summary judgment. (ECF 98, hereinafter "Def's Resp.")

## I. The Court should decline the defendant's invitation to ignore the law of this circuit.

The defendant begins his response brief by asking the Court to uphold Georgia's ballot-access restrictions without applying the balancing test set forth in the Supreme Court's 1983 decision in *Anderson v. Celebrezze*, 460 U.S. 780 (1983). His argument is based on the Supreme Court's 1971 decision in *Jenness v. Fortson*, 403 U.S. 431 (1971), which upheld an earlier version of

Georgia's ballot-access restrictions. (Def's Resp. at 1-2.) But it is the law of this circuit that "cases which have upheld the Georgia provisions against constitutional attack by prospective candidates and minor political parties do not foreclose the parties' right to present the evidence necessary to undertake the balancing approach outlined in *Anderson v. Celebrezze*." *Bergland v. Harris*, 767 F.2d 1551, 1554 (11th Cir. 1985*); accord Green Party of Ga. v. Georgia*, 551 Fed. Appx. 982 (11th Cir. 2014) (per curiam).

The defendant's argument is copied almost verbatim from his brief in support of his motion for summary judgment. (ECF 73-2 at 7-10.) The plaintiffs have already responded to that argument (ECF 96 at 8-11), and they incorporate that response here. The bottom line is that this Court should follow the Eleventh Circuit's rulings in *Bergland* and *Green Party* and decline the defendant's invitation to take a shortcut.

## II. The defendant's attempts to distinguish *Socialist Workers* and *Norman* cut against his position.

The defendant responds next to the plaintiffs' argument, based on *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979), and *Norman v. Reed*, 502 U.S. 279 (1992), that Georgia may not require more signatures from candidates for U.S. Representative than from

candidates for statewide office. (Def's Resp. at 4-9.)[1] The defendant argues that "[n]either case supports Plaintiffs' arguments" (Def's Resp. at 5) because of two distinctions.

First, the defendant argues that *Socialist Workers* and *Norman* deal only with ballot-access requirements for "new" parties and therefore say nothing about ballot-access for political bodies, like the Libertarian Party, that are qualified to nominate candidates for statewide office by convention under O.C.G.A. § 21-2-180(2). (Def's Resp. at 5-7.) But this distinction is unavailing, because a state has less interest in keeping a qualified party off the ballot than it does in keeping a brand-new party off the ballot. A qualified party has already demonstrated that it has a modicum of support. In this case, for instance, Libertarian candidates for statewide offices in Georgia have received more than five million votes in the last ten years. (Ex. 33: Answer, ECF 69-36, ¶131; Ex. 37: Election Results 2000-2018 (excerpts), ECF 69-40.) In addition, the "new" political parties in *Socialist Workers* and *Norman* were not truly new. They were established parties that, unlike the Libertarian Party here, had not secured enough support in previous elections in the jurisdictions at

---

[1] The defendant characterizes the plaintiffs' argument as one based on the Equal Protection Clause. (Def's Resp. at 3.) *Socialist Workers* was certainly based on the Equal Protection Clause. *See Socialist Workers,* 440 U.S. at 177. But *Norman* was based on the Supreme Court's First-and-Fourteenth Amendment jurisprudence that emerged after *Socialist Workers. See Norman,* 502 U.S. at 288 n.8. The plaintiffs' argument is thus best understood as a particular application of the *Anderson* test under the First and Fourteenth Amendments.

issue to maintain any form of recognition by the state. *See Norman*, 502 U.S. at 283; *Socialist Workers*, 44 U.S. at 178. The distinction upon which the defendant relies is thus one of form rather than one of substance. To the extent that the difference between "qualified" parties in Georgia and "new" parties in Illinois matters at all, it favors the plaintiffs here.

The defendant claims that the Supreme Court rejected a "similar argument" in *Norman* (Def's Resp. at 7), but he misreads the case. The argument that the Supreme Court rejected in the cited passage is that a successful petition gathered in one district should qualify a party's candidates in a different district. 502 U.S. at 295. That is almost the opposite of what the plaintiffs are arguing here (in part), which is that the party's success in obtaining and maintaining support statewide should have some bearing on ballot access in congressional districts within the state.

The second distinction upon which the defendant relies is between elections for U.S. Representative and other offices. (Def's Resp. at 7-9.) He points out that both *Socialist Workers* and *Norman* involved ballot-access for candidates for local offices and that this case involves something different. He also contends that the number of signatures required for independent and political-body presidential candidates should not be the ceiling here because

4

presidential elections are different than elections for other offices. But, here again, these distinctions cut against the defendant's position.

The State of Georgia has less interest in regulating elections for U.S. Representative than the State of Illinois had in regulating the purely local offices at issue in *Socialist Workers* and *Norman*. *See* U.S. Const. art. I, §§ 1, 4, 5 (establishing federal law as the ultimate authority over elections for U.S. Representative); *see also* U.S. Const. amends. XIV, § 2, XXIV (same). The State of Georgia has almost full authority over elections for local offices but only partial authority over elections for U.S. Representative. And this is for good reason. Decisions made by the U.S. House of Representatives affect the entire nation, and not just the residents of Georgia.

Likewise, while there is no doubt that the State of Georgia's interest in regulating a presidential election "is not nearly as strong" as its interest in regulating elections for state and local offices, *Anderson*, 460 U.S. at 795, the State has even less interest in regulating elections for U.S. Representative than it does in regulating elections for president. *Compare* U.S. Const. art. I § 4 *with* U.S. Const. art. II, § 1, cls. 2, 4. The Constitution gives the states nearly full authority to determine how electors are appointed to choose the President, but Congress retains the power to determine the time, place, and manner of holding elections for members of the House.

5

Although the defendant cites cases emphasizing presidential elections, none of those cases draw the line that the defendant asks this Court to draw here. With one exception, they merely emphasize the national importance of presidential elections over elections for state and local offices. That one exception is the Eleventh Circuit's decision in *Bergland*, which explicitly draws a line between "state and local offices [on the one hand] and federal offices [on the other]" and says that the difference between those two categories "requires a different balance than that used in weighing the state interests against the burdens placed on candidates for statewide and local offices. . . ." 767 F.2d at 1554-55. So to the extent that the specific office at issue here matters at all, the fact that this case involves elections for U.S. Representative weighs in the plaintiffs' favor.

The defendant's attempts to distinguish *Socialist Workers* and *Norman* are thus unpersuasive and ultimately undermine his own position. The Court should therefore follow those cases and grant summary judgment in the plaintiffs' favor.

## III. The Supreme Court has already rejected the defendant's only justification for unequal treatment of Libertarian candidates.

The defendant next addresses the plaintiffs' equal-protection claim. (Def's Resp. at 9-12.) He does not dispute the basic premise of the plaintiffs'

6

claim, which is that Georgia law creates a classification by treating Libertarian Party candidates for U.S. Representative differently from Libertarian Party candidates for statewide offices including U.S. Senator. Instead, he argues that the classification is justified by the State's interest "in making sure that the Libertarian Party has support within the political subdivision or district that its candidates seek election." (Def's Resp. at 10.) He further asserts that "[h]aving a modicum of support statewide does not ensure that the Libertarian Party has *any* support at all within one congressional district." (*Id.* at 11.)

As the plaintiffs noted in their opening brief, however, this interest is indistinguishable from the interest that the Supreme Court found lacking in *Norman*. 502 U.S. at 293-94. (ECF 69-1 at 43.) The defendant responds by trying again to distinguish *Norman*, pointing out that the Illinois law in that case "required support in both district A and B in order to be on the ballot from either district A or B." (Def's Resp. at 11.) That is certainly true, but that was not the constitutional defect. The ruling in *Norman* was that the state could not "require petitioners to gather twice as many signatures to field candidates in Cook County as they would need statewide." 502 U.S. at 293. In fact, the Court observed that the state could have used the same structure as long as

7

the total number of signatures would not exceed 25,000—the same number required for statewide ballot access. *Id.* at 293-94.

The defendant also contends that any distribution requirement would likely be unconstitutional (Def's Resp. at 11), but that overstates the law. A distribution requirement would likely be unconstitutional as a violation of the one-person-one-vote principle if it were based on counties with widely-varying populations, *see Moore v. Ogilvie*, 394 U.S. 814 (1969), but not if it were based on congressional districts. *See, e.g., Angle v. Miller,* 673 F.3d 1122, 1129 (9th Cir. 2012); *Libertarian Party v. Bond,* 764 F.2d 538, 544 (8th Cir. 1985); *Libertarian Party of Virginia v. Davis,* 766 F.2d 865, 868 (4th Cir. 1985); *Udall v. Bowen,* 419 F. Supp. 746, 748-49 (S.D. Ind.), *aff'd mem.,* 425 U.S. 947 (1976).

There are no facts in dispute on this claim. Georgia law creates an absurd classification that impinges upon fundamental rights, and the State's only justification is one that the Supreme Court has already rejected. This Court should therefore grant summary judgment in the plaintiffs' favor.

**IV. The defendant urges the Court to ignore factors that precedent says are relevant when measuring the burden.**

Finally, the defendant responds to the plaintiffs' argument that Georgia's ballot-access restrictions flunk the *Anderson* test. (Def's Resp. at 13-25.) As to the first step in that test—the character and magnitude of the

8

injuries—he argues that the burden imposed here on the plaintiffs' First and Fourteenth Amendment rights is not severe. (*Id.* at 14-23.) His disagreement with the plaintiffs on this point is not so much based on disputes over facts but about how to weigh them.

The defendant agrees with the plaintiffs that one way to measure the burden is by comparison to other cases. (*Id.* at 14.) But he argues that *Green Party* is not the best comparison here because it involved presidential candidates. (*Id.* at 15.) The plaintiffs have already addressed this distinction above, but it is worth emphasizing that Judge Story's main discussion of the State's diminished interest in regulating a presidential election (as opposed to a state or local election) pertains to step three of the *Anderson* test—not to step one. 171 F. Supp. 3d at 1367-68. As to step one, Judge Story cited three factors to support his assessment of the burden: (1) Georgia's requirements were "substantially higher than those in most other states;" (2) Georgia "has had fewer presidential candidates access its ballot" and no independents in just over fifteen years; and (3) Georgia law barred a candidate, Ralph Nader, with "widespread national support" in 2000. *Id.* at 1363. As the plaintiffs' pointed out in their opening brief, Georgia's signature requirement for independent and political-body candidates for U.S. Representative is higher in percentage terms. (ECF 69-2 at 34.) It has excluded political-body candidates

9

for much longer. It is the highest such requirement in the nation, and it has excluded candidates of the Libertarian Party, which is the third-largest party in the United States and enjoys widespread support nationwide *and* in Georgia. The defendant's brief says nothing about how to reconcile those facts with Judge Story's assessment of the burden in *Green Party*.

Instead, the defendant argues that *Jenness* provides the best comparison for measuring the burden here. (Def's Resp. at 15-18.) The plaintiffs disagree for two main reasons. First, *Jenness* was decided twelve years before *Anderson*. The Supreme Court did not conduct the sort of fact-intensive assessment of the character and magnitude of the burden as has now become not only common but required. In fact, the Supreme Court's decision in *Jenness* is based more on judicial supposition than evidence and facts, and, after the Eleventh Circuit's decisions in *Bergland* and *Green Party*, this Court simply does not have the luxury of such evidence-free reasoning. Second, the facts are different now. Georgia's ballot-access regime has changed. The record of exclusion is much longer. Federal campaign-finance law and other factors have become major hindrances. And so on. *Jenness* provides no guide as to how to weigh those new factors.

Although he does not dispute the fact that Georgia's ballot-access restrictions are by far the most stringent in the nation, the defendant

10

disagrees with the plaintiffs about whether comparison to other states is an appropriate way to measure the burden. (Def's Resp. at 19.) Of course, Judge Story relied heavily and explicitly on a comparison to other states in *Green Party*. 171 F. Supp. 3d at 1363. On appeal, the Secretary of State vigorously argued the same point that he raises here, and the Eleventh Circuit nonetheless affirmed. (Ex. 50: add'l excerpts from appellant's briefs at 2-4, 14-15.) Thus, while the Court may not be free to impose the legislative judgments of other states on the State of Georgia, that does not necessarily mean that the Court must blind itself to the probative evidence in the record.

The defendant also disagrees with the plaintiffs about whether it is appropriate to measure the burden by looking at past experience. (Def's Resp. at 20.) But in *Coffield v. Handel*, 599 F.3d 1276, 1277 (11th Cir. 2010), the Eleventh Circuit indicated that a record of unsuccessful candidacies would be highly relevant under the *Anderson* test. Judge Story weighed a fifteen-year record of exclusion very heavily. *Green Party*, 171 F. Supp. 3d at 1363. The defendant suggests that the repeated failure of candidates to qualify for the ballot is irrelevant in measuring the burden, but he does not even attempt to square that view with *Coffield, Green Party*, or common sense.

Aside from *Jenness*, the only factor that the defendant thinks is appropriate for the Court to consider is whether Georgia's restrictions

11

discriminate against minor parties or directly preclude minor parties from obtaining ballot access. (Def's Resp. at 19.) But that simply is not the law of this circuit. While discrimination or direct preclusion might be sufficient to conclude that a burden is severe, there is no suggestion in any Eleventh Circuit case that either condition is necessary to conclude that a burden is severe. The defendant raised this argument unsuccessfully on appeal in *Green Party* as well. (Ex. 50: add'l excerpts from appellant's briefs at 6-11, 14-15.) In this case, moreover, the defendant claims that Georgia's ballot-access restrictions are nondiscriminatory, but he does not address the express discrimination in the filing-fee statute. (*See* ECF 69-1 at 8-9.)

As to the other factors cited in the plaintiffs' opening brief—the petition checking process, campaign-finance law, and other practical difficulties of obtaining signatures—the defendant offers only a cursory response. (Def's Rep. at 21-22.) He raises no genuine dispute as to the facts, but he suggests unpersuasively that the Court should weigh them lightly.

At the end of the day, the defendant urges the Court to ignore virtually all of the factors that precedent and common sense say should indicate a heavy burden here. But that view is not how we the measure the injury to our most fundamental rights. In light of the full record before it, the Court should conclude that the burden here is severe.

## V.     The defendant offers no tailoring argument whatsoever.

As to the second and third steps in the *Anderson* test, the defendant asserts two state interests: (1) ensuring that Libertarian candidates have a modicum of support within each district in which they seek to run; and (2) avoiding runoffs. (Def's Resp. at 23-25.) But the defendant's brief does not actually argue that there is any need to burden the plaintiffs' rights in order to serve those interests, and he therefore cannot pass step three of the *Anderson* test. *See, e.g., Green Party*, 551 Fed. Appx. 982; *Fulani v. Krivanek*, 973 F.2d 1539, 1546 (11th Cir. 1992), *Bergland*, 767 F.2d at 1553-54.

The plaintiffs have already addressed the defendant's asserted interests at length (ECF 69-2 at 37-41; ECF 96 at 15-20), and they incorporate those arguments here. But the plaintiffs have three points to add.

First, as a matter of fact, a burdensome petition is not needed to determine whether the Libertarian Party has support in a particular congressional district. Using statewide election data that he already compiles, the Secretary of State can determine approximately how many votes Libertarian Party candidates received in each of the State's fourteen congressional districts.[2] (Ex. 47: Hallman dep. 302:23-311:12.) The Secretary

---

[2] The number is approximate because a small number of precinct boundaries currently split congressional district lines. For those precincts, one would have to allocate the precinct's votes among the districts on either side of split. (Ex. 47: Hallman dep. 307:7-23.)

13

of State compiles statewide elections by precinct and knows which precincts are wholly or partially in a given congressional district. The rest is just "math." (*Id.* 308:15.) The Secretary of State's office already does that math on the results of the presidential preference primaries. (Ex. 47: Hallman dep. 308:4-16; Ex. 48: presidential preference primary results by congressional district.) Performing those same calculations on the 2016 general election would show, for example, that the Libertarian candidate for the Public Service Commission, Eric Hoskins, received approximately 159,260 votes, or 63.7 percent of votes cast, in Georgia's Fifth Congressional District. (Ex. 49: PSC election results by congressional district) He carried a total of three districts and received no fewer than approximately 45,337 votes or 16.5 percent of the votes in any district. (*Id.*) These are actual votes, and they show that the Libertarian Party has substantial support in each one of Georgia's congressional districts.

Second, the defendant overstates the law of this circuit when he argues that he is not required to present evidence to support the asserted state interests. (Def's Resp. at 23-24.) That rule applies only at the lowest level of scrutiny under the *Anderson* test, *see Swanson v. Worley*, 490 F.3d 894, 912 (11th Cir. 2007), and it does not mean that the Court may ignore evidence brought forward by the plaintiffs, *see, e.g., Green Party*, 171 F. Supp. 3d 1368-

14

69 (finding no genuine issue of material fact as to the state's asserted interest). Yet the defendant's brief does not address the evidence cited in the plaintiffs' opening brief. (ECF 69-1 at 38-41.)

Finally, the defendant's assertion that the test here is only one of rationality with no tailoring required is not an accurate statement of the law. (Def's Resp. at 25.) Even if the Court determines that the burden here is not severe, it must still "determine the legitimacy and strength of the [the State's] asserted interests [and] consider the extent to which those interests make it necessary to burden the [candidate's] rights." *Swanson* 490 F.3d at 903 (quoting *Anderson*, 460 U.S. at 789). And rationality is not the standard: "Lesser burdens . . . trigger less exacting review . . ." *Id.* (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)). This sliding scale of review has supplanted the test on which the defendant relies.

For all of these reasons, there is no genuine issue as to the third step in the *Anderson* test.

## VI. Conclusion

The undisputed facts in this fact-intensive case are overwhelming. They permit the trier of fact to reach only one conclusion, and this Court should therefore grant summary judgment in the plaintiffs' favor.

Respectfully submitted this 28th day of August, 2019.

**/s/ Bryan L. Sells**
Attorney Bar No. 635562
Attorney for the Plaintiffs
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2019, I electronically filed the foregoing PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Cristina Correia: ccorreia@law.ga.gov

**/s/ Bryan L. Sells**
Attorney Bar No. 635562
Attorney for the Plaintiffs
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the forgoing PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT was prepared in 13-point Century Schoolbook in compliance with Local Rules 5.1(C) and 7.1(D).


**/s/ Bryan L. Sells**
Attorney Bar No. 635562
Attorney for the Plaintiffs
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
Email: bryan@bryansellslaw.com