# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

MARTIN COWEN, ALLEN     \*
BUCKLEY, AARON GILMER, JOHN   \*
MONDS, and the LIBERTARIAN    \*
PARTY OF GEORGIA, INC., a      \*
Georgia nonprofit  corporation,     \*    CASE NO.: 1:17cv04660-LMM
                        \*
       Plaintiffs,           \*
                        \*
v.                           \*
                        \*
BRAD RAFFENSPERGER, Georgia   \*
Secretary of State,         \*
                        \*
       Defendant.          \*

## DEFENDANT SECRETARY BRAD RAFFENSPERGER'S
## REPLY BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**I.**    **Defendant Moved for Summary Judgment on All Claims.**

Plaintiffs contend that Defendant's motion for summary judgment only addressed one of Plaintiffs' two claims. Doc. 96 at 2 n. 1. Defendant moved on all claims. Doc. 73-2 at 2 (describing Plaintiffs' claims as including Equal Protection claim); at 7 (describing prior cases upholding same statute both as to First Amendment and Equal Protection claims); at p. 10-14 (discussing constitutional standard in ballot access cases which is the same under both the First Amendment

1

and Equal Protection).   Plaintiffs confuse "claims" with legal arguments.   *See Santhuff v. Seitz*, 385 Fed. Appx. 939, 943-944 (11th Cir. 2010) (explaining that multiple alternative theories of liability are not the same as multiple claims).   Here, Plaintiff asserted two claims and Defendant moved for summary judgment on both. Defendant did not address in his initial brief the legal argument Plaintiff raised for the first time in Plaintiffs' motion for summary judgment, and again in Plaintiffs' response to Defendant's motion for summary judgment.   Defendant has addressed Plaintiffs' argument in response to Plaintiffs' motion for summary judgment and incorporates that argument in full herein.   *See* Doc. 98 at 2-12.

## II.   Plaintiffs Cannot Ignore Supreme Court Precedent Expressly Holding Georgia's Statute Constitutional.

Plaintiffs refuse to acknowledge that the statutory structure they are challenging is the same structure that the Supreme Court expressly held constitutional in *Jenness v. Fortson*, 403 U.S. 431 (1971).   Instead, Plaintiffs insist that because both the Supreme Court and the Eleventh Circuit have held that there is "no litmus paper test" to decide ballot access cases, *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) and *Bergland v. Harris*, 767 F.2d 1551, 1553 (11th Cir. 1985), the Supreme Court's prior holding in *Jenness* simply does not matter. Neither case supports that argument.

As set out in Defendant's initial brief, Doc. 73-2 at 10, *Anderson* set forth a balancing test between the burdens imposed by a ballot access measure and the state's interests justifying the measure.  The Court recognized that although the right to vote is fundamental, not every election law that burdens that right will be subject to strict scrutiny. 460 U.S. at 788 ("Although these rights of voters are fundamental, not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates.").  It was in the context of the Court explaining that elections require a great degree of regulation to be fair, and that "the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions," that the Court rejected any "litmuspaper test" for determining which restrictions are constitutional and which are not.  460 U.S. at 788-789.  Nothing in *Anderson* suggests that once the Supreme Court has held a specific statutory structure either constitutional or unconstitutional lower courts are not bound by that decision.

*Bergland* was a challenge to a petition requirement for President.  At the time of the challenge candidates were required to gather petition signatures equal to 2.5% of the statewide voter registration for all statewide offices, including President.  767 F.2d at 1553 n. 3.  Defendants in that case argued that since the

3

Supreme Court had upheld a 5% requirement in *Jenness*, the 2.5% requirement was necessarily constitutional. *Id.* at 1554. The Eleventh Circuit, citing *Anderson*, rejected the Defendant's argument that *Jenness* foreclosed a challenge to the petition requirement for President, a matter not addressed in *Jenness*. *Id.* The *Bergland* Court explained that "[t]he Supreme Court emphasized in *Anderson* that 'the State has a less important interest in regulating Presidential elections.'" *Id.* (quoting *Anderson*, 460 U.S. at 795). Similarly, in *Green Party of Georgia v. Kemp*, 551 Fed. Appx. 982 (11th Cir. 2014) the Eleventh Circuit again rejected the idea that a challenge to a petition requirement for President, 1% of the statewide voter registration, was necessarily constitutional because of the Supreme Court's holding in *Jenness*. These are not remarkable holdings, and they do not suggest that the Supreme Court's determination that Georgia's petition requirement for Congress, taking into account all of the aspects of the petition requirement that the Court discussed and which are unchanged since *Jenness*, is not binding on all lower courts.

In other words, the balancing test set out in *Anderson*, and reaffirmed in *Burdick v. Takushi*, 504 U.S. 428 (1992) and *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), must be evaluated in light of the benchmarks the Supreme Court has provided through these prior cases. Defendant's argument is

not for the Court to apply a "litmus test;" his argument is that the Court should follow the binding precedent of the Supreme Court in which the statute at issue was already upheld.  As another district court has summarized:

> the analysis of ballot-access restrictions is not bound by any "'litmus-paper test' that will separate valid from invalid restrictions," *Anderson*, 460 U.S. at 789, based solely on percentage thresholds and time limits. But these cases, although not dispositive, provide a consistent and useful set of benchmarks . . . *See Norman*, 502 U.S. [279,] 295 [(1992)] (using *Jenness* five percent threshold as benchmark in evaluating Illinois ballot restriction); *Munro v. Socialist Workers Party*, 479 U.S. 189, 193-94, 107 S. Ct. 533, 93 L. Ed. 2d 499 (1986) (citing *Jenness* and *American Party of Texas* as benchmarks in ballot-access cases).

*Libertarian Party of N.H. v. Gardner*, 126 F. Supp. 3d 194, 201 (D. N.H. 2015), *aff'd* 843 F.3d 20 (1st Cir. 2016).  While the *Anderson* Court might have expressed "a greater appreciation for the benefits of third-party participation than is apparent on the face of the opinion in *Jenness*.  It would be quite a stretch, [ ] for a [ ] court to leverage such a change in nuance into a license to stray from a clear ruling sustaining as constitutional a burden demonstrably greater than that imposed [here]."  843 F.3d at 32.  "When a . . . federal court has spoken, stability and *stare decisis* require that litigants and other courts take its pronouncement at face value until formally altered."  *Id.* at 32-33 (quoting *Sarzen v. Gaughan*, 489 F.2d 1076, 1082 (1st Cir. 1973)).

As Defendant explained in his initial brief, the Supreme Court has repeatedly reaffirmed the principle holdings in *Jenness* in cases *after Anderson*. *See*, *Burdick*, 504 U.S. at 435 n. 3 ("We have previously upheld party and candidate petition signature requirements that were as burdensome or more burdensome than Hawaii's one-percent requirement." (citing *Jenness*, 403 U.S. 431)); *N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 204 (2008) ("Just as States may require persons to demonstrate 'a significant modicum of support' before allowing them access to the general-election ballot, lest it become unmanageable, *Jenness v. Fortson*, 403 U.S. [at] 442, they may similarly demand a minimum degree of support for candidate access to a primary ballot.") (full citation and parallel cites omitted); *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) ("[I]n order to avoid burdening the general election ballot with frivolous candidacies, a State may require parties to demonstrate 'a significant modicum of support' before allowing their candidates a place on that ballot." (citing *Jenness*, 403 U.S. 431)); *Morse v. Republican Party*, 517 U.S. 186, 198 (1996) (explaining that *Jenness*, and other cited cases, "establish only that political parties with at least a modicum of public support must be provided a reasonable method of ballot access. They do not establish that they are entitled to choose the method itself.").

Similarly, the Eleventh Circuit has looked to its prior cases upholding Alabama's petition requirement when deciding subsequent cases challenging similar statutes.  *Stein v. Ala. Sec'y of State*, 774 F.3d 689, 700 (11th Cir. 2014).

> [I]t is beyond dispute that Alabama has an important interest in requiring minor parties to demonstrate some 'modicum of support' before they are entitled to a spot on the ballot. *Swanson* [*v. Worley*], 490 F.3d [894,] 902 [(11th Cir. 2007)]. And the Eleventh Circuit has already held that Alabama's 3% signature requirement is a rational way to serve that interest. *Id*. at 912. Thus, it is *settled law* that Alabama can demand 45,000 signatures on a petition before it lets a minor party on the ballot

774 F.3d at 700 (emphasis added).  Here, Plaintiffs challenge the *same* statute the Supreme Court has already held constitutional.  Thus, it is settled law that Georgia's ballot signature requirement for independent and political body candidates for U.S. Representative is constitutional.

## III.   The Petition Requirement's Burden on Plaintiffs is Reasonable and Non-Discriminatory.

Plaintiffs take issue with Defendant's description of various characteristics of the petition process as lessoning the burden the petition requirement imposes. *See* Doc. 96 at 7-8.  Plaintiffs insist that Defendant must present evidence that this is so.  But the Supreme Court has explained how numerous aspects of the Georgia petition statute lesson its burden.  *Jenness*, 403 U.S. at 438.  For example, the Supreme Court considered that Georgia "freely provides for write-in candidates."

*Id.*  That Georgia's current structure also "freely provides for write-in candidates," is not a matter that requires evidence beyond citation to the statute setting out how a candidate gets on the ballot as a write-in candidate.  *See* O.C.G.A. § 21-2-133. Similarly, other aspects of Georgia's petition requirement, all described in Defendant's initial brief, Doc. 73-2 at 8-10, are a matter of statutory construction and were described in *Jenness* as "impos[ing] no suffocating restrictions whatever upon the free circulation of nominating petitions."  403 U.S. at 438.  Defendant does not need to submit "evidence" to describe the various aspects of Georgia's ballot access laws when they are set out in the challenged statutes.

As the First Circuit has noted:

> ballot-access cases, unlike most voting-access cases, pose an identity between burden and purpose. The obvious purpose of the regime, in toto, is precisely to create the burden itself, which in turn has the effect, at the least, of limiting voters' selection to those who can make 'some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot . . . .' *Jenness*, 403 U.S. at 442.

*Libertarian Party of N.H.*, 843 F.3d at 29-30.  There is no question that collecting signatures equal to 5% of the voter registration is not an easy task, but that does not make the requirement overly burdensome or unconstitutional.

> [T]here is no dispute that a state may require a candidate to demonstrate support from slightly, but not substantially, more than 5% of voters without imposing a severe burden triggering heightened scrutiny.

*Ariz. Libertarian Party v. Hobbs*, 925 F.3d 1085, 1091 (9th Cir. 2019) (citing *Storer v. Brown*, 415 U.S. 724, 739-40 (1974); *Jenness*, 403 U.S. at 442; and *Williams v. Rhodes*, 393 U.S. 23, 24-25 (1968)).

IV. **Georgia has a Legitimate Interest in Limiting the General Election Ballot to Political Bodies and Parties That Have Demonstrated Significant Voter Support Within the Jurisdiction the Candidate Seeks to Represent.**

As explained in Defendant's initial brief in support of summary judgment, Georgia has an important interest in ensuring that political-bodies and their candidates for U.S. Representative can demonstrate significant support within the congressional district they seek to represent.  Doc. 73-2 at 23-28.  Georgia also has a compelling interest in avoiding run-off general elections, both because of costs and because a run-off for federal office is held nine (9) weeks *after* the general election.  O.C.G.A. § 21-2-501(a)(3);  *see also* Discussion Doc. 73-2 at 26-28.

Plaintiff contends that the first asserted interest, having a modicum of support within the jurisdiction that the candidate wants to represent, has:  1) never been held to be a legitimate interest; and 2) even if it's a legitimate interest, it fails under *Norman v. Reed*, 502 U.S. 279, 291-94 (1992) and *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 185-86 (1979).  First, the Supreme Court in *Jenness* recognized that requiring a candidate to show a

9

modicum of support was a legitimate interest.  403 U.S. at 442.  Since *Jenness* was itself a challenge to the petition requirement for Congress, and that petition requirement was and is a percentage of the voter registration *within the district*, then *Jenness* supports Defendant's contention that such a requirement is a legitimate state interest.[1]  Second, nothing in *Norman* and *Socialist Workers Party* address this interest.  Rather, those cases stand for the unremarkable proposition that a State cannot require more petition signatures within a political subdivision of the state than it requires statewide.  As explained in Defendants' brief in opposition to Plaintiffs' motion for summary judgment, Georgia does not have such a requirement.  Doc. 98 at 2-12.

With respect to the state's interest in avoiding run-off general elections, Plaintiffs contend that the state's interest is "weak" and that a petition requirement

---

[1] Plaintiffs argue that Defendant should be judicially estopped from arguing that the Libertarian Party has little support because of arguments Defendant made in other cases.  Doc. 96 at 13.  Defendant's position in this case and prior cases are not inconsistent.  Defendant has never argued in this case that the Libertarian Party lacks sufficient support, statewide, to obtain a position on the general election ballot for a full slate of statewide offices.  State law permits a political body to nominate an entire slate of statewide offices by convention if they obtain sufficient votes at the prior general election equal to 1% of the statewide voter registration for *any* statewide office.  O.C.G.A. § 21-2-180(2).  The Libertarian Party has successfully met this standard since 1988.  This does not mean however, that the Libertarian Party has shown a substantial modicum of support in any one congressional district as required by O.C.G.A. § 21-2-170(b).  Moreover, it is beyond dispute that the Libertarian Party of Georgia has less than 200 members statewide.  Doc. 74-1 at 33 lns. 19-22; p. 107 lns. 18-25.

is not "require[d]" to advance the state's interest.[2]  Doc. 96 at 16.  Plaintiffs also

contend that Georgia is not "really serious about preventing runoffs."  Doc. 96 at

16.  Plaintiffs support this last statement by citing evidence that 1) most run-offs

occur in the primaries; 2) primary run-offs are more expensive; and 3) the state has

lots of primary run-offs.  Doc. 96 at 17.  Of course, primary run-offs do not impose

the same burden on the state.  It is the federal *general election* run-offs, that the

state has the largest interest in avoiding because of the timing of the run-off due to

UOCAVA, 52 U.S.C. §20302(a)(8), and *United States v. Georgia*, 778 F.3d 1202,

1203 (11th Cir. 2015).  General election run-offs are held twenty-eight (28) days

after an election for state office and nine (9) weeks after an election for federal

office.  O.C.G.A. § 21-2-501(a)(4) (state offices) and § 21-2-501(a)(3) (federal

offices).  The general run-off election for Congressional races is *after* members of

---

[2] Plaintiffs assert that the Supreme Court has described preventing run-off elections as "'important' *but not compelling*."  Doc. 96 at 16 (emphasis added) (quoting *Clements v. Fashing*, 457 U.S. 957, 965 (1982)).  While *Clements* does describe this interest as important, it in no way discusses or attempts to distinguish important interests from those that are compelling.  In fact, at least one case that *Clements* relies on found interests that *Clements* describes as "important" to be "compelling."  *See Id.* (citing *American Party of Texas v. White*, 415 U.S. 767, 782 n. 14 (1974) ("Appellants concede, as we think they must, that the objectives ostensibly sought by the State, *viz.*, preservation of the integrity of the electoral process and regulating the number of candidates on the ballot to avoid undue voter confusion, are compelling.")).

Congress take office.   2 U.S.C. § 7 (members take office on the third day of January).

Plaintiffs also suggest that Georgia could avoid the problem of run-off elections by other means, like adopting rank choice voting.  Doc. 96 at 18.  But the Supreme Court has made clear, post *Bergland*, that states are not required to "make a particularized showing of the existence" of a the problem they wish to avoid "prior to the imposition of reasonable restrictions on ballot access."   *Munro v. Socialist Workers Party*, 479 U.S. 189, 194-94 (1986).  "Legislatures, we think, should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights."  *Id.* at 195-96.  As the Eleventh Circuit has held, "the test is whether the legislative requirement is a rational way to meet this compelling state interest.  The least drastic means test becomes one of reasonableness, *i.e.*, whether the statute unreasonably encroaches on ballot access."  *Libertarian Party of Florida v. Florida*, 710 F.2d 790, 793 (11th Cir. 1983) (explaining that "any percentage or numerical requirement is 'necessarily arbitrary,'" and impossible to "defend it as either compelled or least drastic.")  (quoting *American Party of Texas*, 415 U.S. at 783); *accord Swanson v. Worley*, 490 F.3d 894, 912 (11th Cir. 2007) ("the test is not whether the regulations

are necessary but whether they rationally serve important state interests."); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) ("Lesser burdens [ ] trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.") (internal quotations and citations omitted).

Here, Georgia's petition requirement for Congress serves its intended purposes:  1) to make sure candidates on the general election ballot have support from the district they wish to serve; and 2) that there are fewer general election run-offs for federal office.

## V.      Plaintiffs' Cannot Introduce the Testimony of a Second Expert to Vouch for Their Expert Darcy Richardson.

In response to Defendant's challenge of Darcy Richardson's qualifications to testify as an expert historian, Plaintiffs introduce a declaration of an historian, Dr. Gillespie, to vouch for Darcy Richardson's qualifications.  First, Dr. Gillespie was not previously disclosed as an expert witness and therefore his testimony is barred by Rule 26(a)(2).   Second, Rule 703 Fed. R. Evid., does not permit expert testimony that amounts to nothing more than one expert "vouching" for another expert.  *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987) (affirming district court's exclusion of expert testimony that was "nothing more than a personal vouching of one expert for another expert").

Finally, Defendant intends to file a *Daubert* motion to exclude Darcy Richardson's testimony within the next few days. Defendant's motion will also further address the inadmissibility of Dr. Gillespie's declaration.

## CONCLUSION

For all of the foregoing reasons, Defendant prays that the Court grants his motion for summary judgment.

Respectfully submitted,

CHRISTOPHER M. CARR
Attorney General            112505

ANNETTE M. COWART   191199
Deputy Attorney General

RUSSELL D. WILLARD   760280
Senior Assistant Attorney General

/s/Cristina M. Correia
CRISTINA M. CORREIA   188620
Senior Assistant Attorney General
Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA  30334
404-656-7063
FAX:  404-651-9325
ccorreia@law.ga.gov

Attorneys for Defendant

14

## CERTIFICATE OF COMPLIANCE

I hereby certify that the forgoing Defendant's Reply Brief was prepared in

14-point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

## CERTIFICATE OF SERVICE

I hereby certify that on this date I have electronically filed the foregoing

**REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

with the Clerk of Court using the CM/ECF system, which will automatically send

email notification of such filing to all attorneys of record.

Dated this 28th day of August, 2019.

/s/ Cristina Correia
Senior Assistant Attorney General