**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MARTIN COWEN, ALLEN BUCKLEY, AARON GILMER, JOHN MONDS, and the LIBERTARIAN PARTY OF GEORGIA, INC., a Georgia nonprofit corporation, | * * * * * | |
| | * | CASE NO.: 1:17cv04660-LMM |
| Plaintiffs, | * * | |
| v. | * * | |
| BRAD RAFFENSPERGER, Georgia Secretary of State, | * * * | |
| Defendant. | * | |

**DEFENDANT BRAD RAFFENSPERGER'S RESPONSE TO PLAINTIFFS'
STATEMENT OF ADDITIONAL FACTS (DOC. 96-2)**

Defendant Brad Rafensperger ("Defendant") submits the following response
to Plaintiffs' Statement of Additional Facts submitted in opposition to Defendant's
Motion for Summary Judgment.

1.     Georgia law regarding qualifying fees discriminates on the basis of
party affiliation. O.C.G.A. § 21-2-131.

**Response:** Defendant objects to paragraph 1 as a statement of law and not
fact.   Defendant objects further in that the cited authority does not support

1

Plaintiffs' stated fact.  Defendant admits only that pursuant to O.C.G.A. § 21-2-131(b), qualifying fees *for a candidate in a political party primary*, are paid directly to the political party.  Finally, Defendant further responds that this fact is not material.

2.    The effect of Georgia's law regarding qualifying fees is that independent candidates and political bodies are deprived of resources during an election campaign while political parties are enriched.  O.C.G.A. O.C.G.A. § 21-2-131.

**Response:**  Defendant objects to paragraph 2 as a statement of law and not fact.   Defendant objects further in that the cited authority does not support Plaintiffs' stated fact.  Defendant admits only that pursuant to O.C.G.A. § 21-2-131(b), qualifying fees *for a candidate in a political party primary*, are paid directly to the political party.  Finally, Defendant further responds that this fact is not material.

3.    According to campaign-finance reports from the Federal Election Commission (FEC), only ten non-incumbent Republican or Democratic nominees for U.S. Representative between 2012 and 2018 (out of 44 such nominees over that period) spent more than $55,000 to secure his or her party's nomination. (Ex. 43: FEC Reports at 1)

**Response:**  Defendant responds that this fact is not material.

4.      According to campaign-finance reports from the FEC, 31 non-incumbent Republican or Democratic nominees for U.S. Representative between 2012 and 2018 (out of 44 such nominees over that period) spent more than $20,000 to secure his or her party's nomination. (Ex. 43:  FEC Reports at 1)

**Response:**  Defendant responds that this fact is not material.

5.      According to campaign-finance reports from the FEC, 13 non-incumbent Republican or Democratic nominees for U.S. Representative between 2012 and 2018 (out of 44 such nominees over that period) spent less than $1,000 to secure his or her party's nomination. (Ex. 43:  FEC Reports at 1)

**Response:**  Defendant responds that this fact is not material.

6.      According to campaign-finance reports from the FEC, more than half of the non-incumbent Republican or Democratic nominees for U.S. Representative between 2012 and 2018 (out of 44 such nominees over that period) spent less than did plaintiff Martin Cowen in his unsuccessful bid to petition onto the ballot.  (Ex. 43:  FEC Reports at 1)

**Response:**  Defendant responds that this fact is not material.

7.      According to campaign-finance reports from the FEC, the median non-incumbent Republican or Democratic nominees for U.S. Representative

between 2012 and 2018 (out of 44 such nominees over that period) spent approximately $9,774 to secure his or her party's nomination.  (Ex. 43:  FEC Reports at 1)

  **Response:**  Defendant responds that this fact is not material.

  8. According to campaign-finance reports from the FEC, more than 75 percent of the non-incumbent Republican or Democratic nominees for U.S. Representative between 2012 and 2018 spent less to secure his or her party's nomination than it would cost a single Libertarian candidate for U.S. Representative to hire a professional petition-circulating company to obtain ballot access.  (Ex. 43:  FEC Reports at 1; Ex. 21; Wilson decl., ECF 69-24 ¶ 6.)

  **Response:**  Defendant objects to lay witness testimony regarding the costs to hire a professional petition-circulator.  *See Stein v. Ala. Sec'y of State*, 774 F.3d 689, 697 (11th Cir. 2014) (rejecting lay witness testimony because "the cost of signature gathering is a proper subject of expert testimony").  Defendant responds further that this fact is not material.

  9. According to campaign-finance reports from the FEC, the lowest-spending 26 non-incumbent Republican or Democratic nominees for U.S. Representative between 2012 and 2018-combined- spent less to secure their party's nomination than it would cost a single Libertarian candidate for U.S.

Representative to hire a professional petition-circulating company to obtain ballot access.  (Ex. 43:  FEC Reports at 1; Ex. 21; Wilson decl., ECF 69-24 ¶ 6.)

**Response:**  Defendant objects to lay witness testimony regarding the costs to hire a professional petition-circulator.  *See Stein v. Ala. Sec'y of State*, 774 F.3d 689, 697 (11th Cir. 2014) (rejecting lay witness testimony because "the cost of signature gathering is a proper subject of expert testimony").  Defendant responds further that this fact is not material.

10.    The Democratic nominee in the Ninth Congressional District in 2018, Josh McCall, spent only $19,109.54 to secure his party's nomination. (Ex. 43: FEC Reports at 58-61.)

**Response:**  Defendant responds that this fact is not material.

11.    The Republican nominee in the Thirteenth Congressional District in 2018, David Callahan, spent only $7,988.13 to secure his party's nomination.  (Ex. 43:  FEC Reports at 102-05.)

**Response:**  Defendant responds that this fact is not material.

12.    Most runoff elections in Georgia occur in party primaries.  (Ex. 23: Harvey dep. (excerpts), ECF 69-26, 175:19-176:13.)

**Response:**  Defendant responds that this fact is not material.

13.     Primary runoffs are more expensive than general runoffs.  (Ex. 23: Harvey dep. (excerpts), ECF 69-26, 179:13-180:4.)

**Response:**  Defendant responds that this fact is not material.

14.     In 2018, there were primary runoffs in 14 contests for partisan federal statewide, or state legislative offices.  (Ex. 44:  primary runoff elections results 2000-2018 at 1-4)

**Response:**  Defendant responds that this fact is not material.

15.     In 2016, there were primary runoffs in 14 contests for partisan federal statewide, or state legislative offices.  (Ex. 44:  primary runoff elections results 2000-2018 at 5-7)

**Response:**  Defendant responds that this fact is not material.

16.     In 2014, there were primary runoffs in 17 contests for partisan federal statewide, or state legislative offices.  (Ex. 44:  primary runoff elections results 2000-2018 at 8-10.)

**Response:**  Defendant responds that this fact is not material.

17.     In 2012, there were primary runoffs in 16 contests for partisan federal statewide, or state legislative offices.  (Ex. 44:  primary runoff elections results 2000-2018 at 11-13.)

**Response:**  Defendant responds that this fact is not material.

18.    In 2010, there were primary runoffs in 22 contests for partisan federal statewide, or state legislative offices.  (Ex. 44:  primary runoff elections results 2000-2018 at 14-18.)

**Response:**  Defendant responds that this fact is not material.

19.    In 2008, there were primary runoffs in six contests for partisan federal statewide, or state legislative offices.  (Ex. 44:  primary runoff elections results 2000-2018 at 19-20.)

**Response:**  Defendant responds that this fact is not material.

20.    In 2006, there were primary runoffs in 14 contests for partisan federal statewide, or state legislative offices.  (Ex. 44:  primary runoff elections results 2000-2018 at 21-23.)

**Response:**  Defendant responds that this fact is not material.

21.    In 2004, there were primary runoffs in 26 contests for partisan federal statewide, or state legislative offices.  (Ex. 44:  primary runoff elections results 2000-2018 at 24-27.)

**Response:** Defendant responds that this fact is not material.

22.     In 2004, there were primary runoffs in 23 contests for partisan federal statewide, or state legislative offices.  (Ex. 44:  primary runoff elections results 2000-2018 at 28-30.)

**Response:**  Defendant responds that this fact is not material.

23.      In 2000, there were primary runoffs in eight contests for partisan federal statewide, or state legislative offices.  (Ex. 44:  primary runoff elections results 2000-2018 at 30-38.)

**Response:**  Defendant responds that this fact is not material.

24.     Between 2000 and 2018, there have been primary runoffs in 160 contests for partisan federal, statewide, or state legislative offices. (Ex. 44: primary runoff elections results 2000-2018.)

**Response:**  Defendant responds that this fact is not material.

25.     Between 2000 and 2018, there have been general runoffs in only six contests for partisan federal, statewide, or state legislative offices. *See https://sos.ga.gov/index.php/Elections/current_and_past_elections_results.*

**Response:**  Defendant responds that this fact is not material.

26.     A runoff for a statewide office would be more expensive than a runoff for U.S. Representative would be.  (Ex. 45:  Harvey dep. (excerpts) 178:16 – 179:6.)

**Response:**  Defendant responds that this fact is not material.

Respectfully submitted,

Christopher M. Carr 112505
Attorney General

Annette M. Cowart 191199
Deputy Attorney General

Russell D. Willard 760280
Senior Assistant Attorney General

/s/Cristina M. Correia
Cristina M. Correia 188620
Senior Assistant Attorney General

Charlene S. McGowan 697316
Assistant Attorney General

40 Capitol Square SW
Atlanta, GA  30334          Attorneys for Defendant
ccorreia@law.ga.gov
404-656-7063
Fax:  404-651-9325

9

## CERTIFICATE OF COMPLIANCE

I hereby certify that the forgoing Defendant's Response to Plaintiffs' Statement of Facts was prepared in 14-point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

## **Certificate of Service**

I hereby certify that I have electronically filed **Defendant Brad Raffensperger's Response to Plaintiffs' Statement of Additional Facts** using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  NONE

This 28th day of August, 2019.

/s/Cristina Correia
Cristina Correia          188620
Senior Assistant Attorney General