# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MARTIN COWEN, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CASE NO.: 1:17cv04660-LMM |
| | * | |
| BRAD RAFFENSPERGER, Georgia | * | |
| Secretary of State, | * | |
| | * | |
| Defendant. | * | |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

Secretary Raffensperger submits this reply brief to address several misstatements of law and fact in Plaintiffs' response to the Secretary's summary judgment motion.

1.   *The Secretary has no evidentiary burden under the Anderson/Burdick framework.*

Plaintiffs are simply wrong that the Secretary has an evidentiary burden to justify its asserted state interest under *Anderson/Burdick*. (*See* Doc. 139 at 7-9.) To the contrary, the State need only *identify* the interests that it seeks to further by its ballot access laws; it "does not require any evidentiary showing or burden of proof to be satisfied by the state government." *Common Cause of Ga. v. Billups*, 554 F.3d

-1-

1340, 1353 (11th Cir. 2009) (stating that the Supreme Court has never "place[d] an evidentiary burden on the state when defending a voting regulation").

As the Supreme Court clarified in *Munro v. Socialist Workers Party*, "[w]e have never required a State to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access." 479 U.S. 189, 194-95 (1986). Indeed, in *Jenness v. Fortson*, the Supreme Court "conducted no inquiry into the sufficiency and quantum of data supporting the reasons for Georgia's 5% petition requirement." *Id.* at 195. The reason for this is clear:

> To require States to prove actual voter confusion, ballot overcrowding, or the presence of frivolous candidacies as a predicate to the imposition of reasonable ballot access restrictions would invariably lead to endless court battles over the sufficiency of the "evidence" marshaled by a State to prove the predicate. Such a requirement would necessitate that a State's political system sustain some level of damage before the legislature could take corrective action. Legislatures, we think, should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights.

*Id.* at 195-96. *See also Burson v. Freeman*, 504 U.S. 191, 209 (1992) ("this Court never has held a State 'to the burden of demonstrating empirically the objective effects on political stability that [are] produced' by the voting regulation in question") (quoting *Munro*, 479 U.S. at 195).

-2-

Plaintiffs misstate the Eleventh Circuit's holding in *Fulani v. Krivanek*, 973 F.2d 1539 (11th 1992), which did *not* require the state to meet an evidentiary burden to prove its asserted interests. *Fulani* involved an equal protection challenge to a Florida law that excluded minor parties from a provision allowing candidates qualifying by petition to waive signature-verification fees. *Id.* at 1539. The court found the state's asserted interest to be insufficient not because it lacked evidentiary support, but because the asserted interest had no logical relationship to the challenged regulation. *Id.* at 1544.

Plaintiffs do not argue that the State's interest in keeping frivolous candidates off of the ballot is not reasonably related to its ballot access requirements; rather, Plaintiffs argue that the State has not demonstrated this interest with sufficient evidence. However, the Supreme Court has "establish[ed] with unmistakable clarity that States have an 'undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot.'" *Munro*, 479 U.S. at 194 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 n. 9 (1983)). This state interest has long been recognized as sufficient to justify reasonable and non-discriminatory ballot access requirements, and the Secretary is not required to support it with empirical evidence.

2.     *The test for constitutionality is not candidates' record of success.*

Plaintiffs continue to point to candidates' past failures to qualify for the ballot as indisputable evidence that the burden imposed by Georgia's petition requirement is severe. But the law is clear that ballot access requirements can only be considered a severe burden if they make it "virtually impossible" for third parties to access the ballot. *Clements v. Fashing*, 457 U.S. 957, 965 (1982). This is based upon the standard of a "reasonably diligent" candidate—not just anyone who tries to run for office. *Libertarian Party of Florida v. Florida*, 710 F.2d 790, 793 (11th Cir. 1983).

Nearly all of the candidates that Plaintiffs identify as having made a "genuine effort" to meet the petition requirements actually did very little work in their attempt to qualify. The two named plaintiffs collected only a thousand signatures between them in 2018 (Cowen with 620 signatures and Gilmer with 308), which is an insignificant fraction of the nearly 400,000 active voters who resided in those districts at the time. (Doc. 135-3 ¶¶ 42, 43.) In 2020, Mr. Cowen only collected *six* signatures. (*Id.* ¶ 64.)

Other would-be candidates gathered only a few hundred signatures, or did not even try. (*See* Doc. 135-3 ¶¶ 42-57.) One stated that he "abandoned [his] effort to qualify for the ballot and did not submit the signatures that [his] team had gathered." (*Id.* ¶ 51.) Another "withdrew from the race without ever having publicly announced

[her] intention to enter it." (*Id.* ¶ 54.) Still another inquired with the Secretary of State's office about the number of required signatures, but immediately decided not to run. (*Id.* ¶ 57.)

In sum, Plaintiffs have not demonstrated that Georgia's petition requirements operate to virtually exclude *reasonably diligent* candidates from the ballot. It is not clear that any of the candidates put forth by Plaintiffs could satisfy even a significantly reduced petition requirement. Plaintiffs have the expectation that they should be granted access to the ballot for U.S. Representative without having to put forth any significant time or financial resources to gain voter support. But the Supreme Court has made clear that the State is "not burdened with a constitutional imperative to reduce voter apathy or to 'handicap' an unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot." *Munro*, 479 U.S. at 198. *See also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 367 (1997) ("States need not remove all of the many hurdles third parties face in the American political arena today."); *Council of Alternative Political Parties v. Hooks*, 179 F.3d 64, 75 (3d Cir. 1999) ("Although minor parties face many hurdles in entering the political arena, the [Supreme] Court explained that states are under no duty to alleviate those difficulties."). Accordingly, Plaintiffs' evidence is

insufficient to overcome the overwhelming weight of authority holding that state petition requirements do not present a severe burden. (*See* Doc. 135-1 at 13-16).

3.   *Georgia does not violate equal protection by providing different routes to the ballot.*

Plaintiffs are also incorrect that Georgia's ballot access requirements violate equal protection by discriminating against Libertarian candidates for U.S. Representative by requiring more petition signatures than Libertarian candidates for statewide office. (Doc. 139 at 18). All candidates for office earn a place on the ballot by demonstrating support among the electorate. Political party candidates demonstrate support by winning their primaries. O.C.G.A. § 21-2-151. Political body and independent candidates demonstrate support by submitting a qualifying nomination petition (1% for statewide office and 5% for non-statewide office). O.C.G.A. § 21-2-170(b). Alternatively, political body organizations may qualify to nominate statewide candidates by convention if they (1) submit a petition meeting the 1% signature requirement; and (2) continue thereafter to have a candidate receive 1% of the vote in a statewide race every election cycle. O.C.G.A. § 21-2-180.

The nomination by convention route under O.C.G.A. § 21-2-180 is available to all political body organizations who register with the Secretary of State, but to date only the Libertarian Party has qualified in this manner. Plaintiffs characterize this as the State granting them "automatic ballot access," which is simply false

because it ignores that the Libertarian Party must still demonstrate significant support among the electorate by obtaining *votes* rather than *petition signatures*. If the Libertarian Party had not met the requirements of O.C.G.A. § 21-2-180 by receiving at least 1% of the vote for a statewide office in the last election cycle, it would be required to meet the 1% signature requirement like all other third-party and independent candidates for statewide office in order to appear on the ballot.

The following chart summarizes how Georgia's ballot access requirements operate across the political spectrum for party and non-party candidates for 2020:

| | Political party candidates | Political body candidates | Independent candidates |
|---|---|---|---|
| **Senate** | Win primary (O.C.G.A. § 21-2-151) | Qualifying petition with 51,686 signatures (O.C.G.A. § 21-2-170) *or* have a candidate receive at least 1% of votes cast in the prior election for a statewide office under (O.C.G.A. § 21-2-180) | Qualifying petition with 51,686 signatures (O.C.G.A. § 21-2-170) |
| **House** | Win primary (O.C.G.A. § 21-2-151) | Qualifying petition with 19,778 to 24,972 signatures (O.C.G.A. § 21-2-170) | Qualifying petition with 19,778 to 24,972 signatures (O.C.G.A. § 21-2-170) |

Plaintiffs focus on the fact that the law gives them an option other than meeting the signature requirement for statewide office, but this narrow lens ignores the fact that they still must demonstrate support from at least 1% of voters in every

election cycle in order to maintain their place on the statewide ballot. The Court must look at how Georgia's ballot access laws operate as a whole in determining whether they are discriminatory. *See Ashworth v. Fortson*, 424 F. Supp. 1178, 118 (N.D. Ga. 1976) ("Where particular provisions of state election codes come under constitutional attack, the Supreme Court has consistently analyzed the overall burden of the comprehensive election scheme, rather than evaluating each section separately, in a piecemeal fashion."). Comparing only the number of signatures required when qualifying via nomination petition versus qualifying via convention, as Plaintiffs do, is an apples-to-oranges comparison that does not present the full picture of Georgia's ballot access requirements.

Merely providing multiple alternative means to achieving ballot access does not compel the conclusion that Georgia has violated equal protection. *See Jenness*, 403 U.S. at 441-42 ("Georgia has not been guilty of invidious discrimination" by "providing different routes to the printed ballot."). "Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution." *Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974). *See also Anderson v. Mills*, 664 F.2d 600, 607 (6th Cir. 1981) ("The Supreme Court taught, in *Jenness*, that more than one avenue exists for obtaining a position on the general ballot."); *Independent Party of Fla. v. Secretary,*

*State of Florida,* 967 F.3d 1277, 1284 (11th Cir. 2020) (holding that Florida did not violate equal protection for offering minor parties two alternative paths for ballot access for president).

Additionally, there is nothing in Georgia's ballot access scheme that runs afoul of *Norman v. Reed*, 502 U.S. 279 (1992), for the reasons discussed at length in the Secretary's prior briefs. (*See* Doc. 140 at 23-28). The State does not require candidates for U.S. Representative to meet the 5% signature requirement for every political subdivision within the congressional district or require political bodies to nominate and qualify an entire slate of candidates for every congressional district, like the Illinois scheme struck down in *Norman*. There is simply nothing in *Norman* or any other precedent that prohibits the State from requiring that Libertarian candidates demonstrate support in their respective congressional districts, even if the party has already qualified another way to run statewide candidates.

4.    *Plaintiffs' argument that the State's petition requirement was adopted with the purpose of discriminating against the Communist Party has no bearing on their equal protection claim.*

In a footnote to their second motion for summary judgment, Plaintiffs assert an alternative basis for their equal protection claim, namely, that "Georgia's five-percent petition requirement is unconstitutional because it was adopted for a

discriminatory purpose." (Doc. 134 at 2 n. 1).[1] The sole evidence relied upon by Plaintiffs to support this claim is the declaration of Darcy Richardson, who opines based upon a handful of newspaper articles that the State's petition requirement was adopted to exclude the Communist Party from the ballot. The Secretary has moved to exclude this evidence as inadmissible expert testimony. (*See* Doc. 137). But even if it were admissible, evidence of discriminatory intent serves no purpose in an equal protection challenge where, as here, the challenged statute expressly draws a classification.

Evidence of discriminatory intent or purpose is only relevant to an equal protection claim where the statute or regulation at issue is facially neutral but allegedly causes a discriminatory impact. *See, e.g., Burton v. City of Belle Glade,* 178 F.3d 1175, 1188-89 (11th Cir. 1999) (claiming city's decision not to annex project was racially discriminatory); *United States v. Fordice,* 505 U.S. 717, 729 (1992) (alleging discrimination in state university system admissions); *Hunter v. Underwood,* 471 U.S. 222, 233 (1985) (alleging an Alabama law disenfranchising persons convicted of crimes of moral turpitude was racially discriminatory).

---

[1] Plaintiffs indicated that they are not moving for summary judgment on that argument and want to reserve it for trial. However, Plaintiffs' equal protection claim was pled as a single count in their Complaint (Doc. 1 ¶ 149), and the Secretary is entitled to summary judgment on the equal protection count as a whole.

Here, the classifications are evident on the face of the challenged statutes (political parties versus political bodies and statewide versus non-statewide candidates). Therefore, evidence of a discriminatory purpose has no relevance. *Shaw v. Reno,* 509 U.S. 630, 642 (1993) ("If the City's annexation decisions created an express racial classification, no inquiry into discriminatory purpose is necessary"); *see also Burton,* 178 F.3d at 1189.

Plaintiffs make the discriminatory purpose claim in order to convince the Court to apply strict scrutiny to the State's petition requirements. (*See* Doc. 138 at 13). However, under the *Anderson-Burdick* framework the level of scrutiny to be applied is dependent on the severity of the burden imposed by the regulation, not its intent. *See Independent Party of Fla.,* 967 F.3d at 1281 (citing *Fulani v. Krivanek,* 973 F.2d 1539, 1542-43 (11th Cir. 1992)). Indeed, the Eleventh Circuit recently clarified that the Anderson-Burdick framework applies when ballot access laws are challenged under either the First Amendment or the Equal Protection clause of the Fourteenth Amendment. *Id.* Plaintiffs have not cited any authority holding that if the burden under *Anderson-Burdick* is not severe, the *intent* behind it can nonetheless require the court to apply strict scrutiny.[2]

---

[2] Plaintiffs cite to *Green Party of Ark. v. Martin,* 649 F.3d 675, 684 (8th Cir. 2011) in their response to the Secretary's motion to exclude the testimony of Darcy Richardson. (Doc. 138 at 13). But in that case, the court applied the *Anderson-*

Additionally, evidence of discriminatory intent only calls for heightened scrutiny where a suspect class is involved, such as racial classifications. *See, e.g., Burton*, 178 F.3d at 1190; *Hunter*, 471 U.S. at 227-28. The discrimination alleged by Plaintiffs here is based upon partisan affiliation, which is not a suspect class for purposes of equal protection. Courts routinely apply rational basis review to classifications that, for example, allow major party members to perform certain functions while excluding independents and third party members. *See, e.g., Weme v. Merrill*, 84 F.3d 479, 484-85 (1st Cir. 1996) (statutory scheme allowing major parties but not third parties from selecting election inspectors was only subject to rational basis review); *Princin v. Bd. of Elections of Cuyahoga County*, 368 F. Supp. 64, 71 (N.D. Ohio 1973) (applying rational basis review and upholding regulation permitting membership of boards of elections to be drawn solely from parties garnering the two highest vote totals).

It is also unclear how alleged discrimination against the Communist Party has any logical relationship to Plaintiffs' complaint that Georgia's petition requirements discriminate between Libertarian candidates for U.S. House of Representatives and

---

*Burdick* framework rather than strict scrutiny as urged by the Green Party. The court found the Green Party's purported evidence of a discriminatory purpose as "speculative," and declined to apply strict scrutiny based upon that evidence.

Libertarian candidates for Senate. (Doc. 134-1 at 54.) The law is clear that evidence of discriminatory intent must have some relevance to the plaintiffs or classifications at issue in the case in order to warrant strict scrutiny.[3]

If Plaintiffs' argument is that Richardson's testimony is evidence of a broader intent to discriminate against all third parties in favor of major party candidates, this is firmly foreclosed by *Jenness*. 403 U.S. at 440-41 (rejecting equal protection claim based upon alleged discrimination between political party and political body candidates). *See also White*, 415 U.S. at 781 (holding that the equal protection clause does not forbid states from drawing classifications that treat political parties and third parties differently). In fact, Plaintiffs' arguments appear to be designed to avoid the clear holding of *Jenness* that Georgia's petition requirements do *not* violate equal protection. However, Plaintiffs still fail to show that Georgia has created any

---

[3] *See Burton*, 178 F.3d at 1188-89 (discussing evidence of race discrimination in the context of a claim that the city's decision not to annex project was racially discriminatory); *Fordice*, 505 U.S. at 729 (same, in the context of alleging discrimination in state university system admissions); *Hunter*, 471 U.S. at 233 (evidence of racial animus relevant to claim that an Alabama law disenfranchising persons convicted of crimes of moral turpitude was racially discriminatory); *Reno v. Bossier Parish School Bd.*, 520 U.S. 471, 481 (1997) (evidence of racial animus was relevant to claimed intentional effort to dilute minorities voting power); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) (evidence of discriminatory intent relevant to allegedly racially discriminatory refusal to change a tract from single to multi-family classification); *Washington v. Davis*, 426 U.S. 229, 241-42 (1976) (evidence of race discrimination relevant to police department's allegedly racially discriminatory hiring practices).

impermissible classifications with its ballot access requirements. Therefore, the Secretary is entitled to summary judgment on Plaintiffs' equal protection claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' second motion for summary judgment should be denied and the Secretary's motion for summary judgment should be granted.

Respectfully submitted, this 16th day of October, 2020.

CHRISTOPHER M. CARR
Attorney General                    112505

BRYAN K. WEBB              743580
Deputy Attorney General

RUSSELL D. WILLARD        760280
Senior Assistant Attorney General

/s/ *Charlene S. McGowan*
CHARLENE S. MCGOWAN 697316
Assistant Attorney General

Office of the Georgia Attorney General
40 Capitol Square SW
Atlanta, GA 30334
cmcgowan@law.ga.gov
Tel: 404-656-3389

*Counsel for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing has been formatted using Times New

Roman font in 14-point type in compliance with Local Rule 7.1(D).

*/s/Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel for Plaintiffs via electronic notification:

Bryan L. Sells
bryan@bryansellslaw.com

Dated: October 16, 2020.

*/s/ Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General