IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARTIN COWEN, *et al.*,         :
                                :
                                :
      Plaintiffs,               :
                                :
v.                              :
                                :
BRAD RAFFENSPERGER, in his      :     CIVIL ACTION NO.
official capacity as Secretary of State : 1:17-CV-04660-LMM
of Georgia,                     :
                                :
                                :
      Defendant.                :

## ORDER

This case comes before the Court on the parties' briefing on proposed remedies [160, 163, 164] and Defendant's pending Motion to Exclude [137]. After due consideration, the Court enters the following Order:

### I.   BACKGROUND

In this voting-rights case, the Libertarian Party of Georgia and individual candidates for non-statewide office in Georgia sued the Secretary of State to enjoin enforcement of several of Georgia's ballot-access laws. Dkt. No. [1]. The laws include the qualifying petition signature requirement in O.C.G.A. § 21-2-170(b); the qualifying fee in O.C.G.A. § 21-2-131(a) and § 21-2-132(d); and the pauper's affidavit in O.C.G.A. § 21-2-132(g). It is these laws collectively that the Court refers to when it discusses ballot-access laws or Georgia's ballot-access

1

scheme. The laws established the ballot-access requirements for independent and third-party candidates in non-statewide elections. Plaintiffs argued that the laws were unconstitutional under the First and Fourteenth Amendments and the Equal Protection Clause.

The Court agreed in part, awarding summary judgment to Plaintiffs on their First and Fourteenth Amendment Claim and awarding summary judgment to Defendant on Plaintiffs' equal protection claim. Dkt. No. [159]. In other words, the Court found that the current ballot-access provisions for third-party candidates in non-statewide elections was unconstitutional. The Court directed the parties to brief what remedy the Court should impose to address this issue.

In addition, the Court noted that the parties had not fully addressed one of Plaintiffs' theories for an equal protection violation: that the "five-percent petition requirement was enacted with the discriminatory purpose of preventing Communist Party candidates from appearing on Georgia's ballots." Dkt. No. [1] ¶ 18. The Court asked the parties to address whether Plaintiffs' remaining equal protection theory was moot since the Court already declared the statutes unconstitutional. The parties have briefed those issues, Dkt. Nos. [160, 163, 164], and the Court addresses them now.

## II.   DISCUSSION

### A.   Remedy for First and Fourteenth Amendment Claim

Now that the Court has ruled that Georgia's ballot-access laws are unconstitutional for independent and third-party candidates in non-statewide

elections, the Court must determine what remedies are appropriate. Plaintiffs request two alternative remedies. First, they argue that the Court should enjoin the Secretary of State from enforcing the Georgia ballot-access laws that the Court found unconstitutional without imposing any interim ballot-access requirements. Dkt. No. [160] at 2. This would mean that independent and third-party candidates need only file a notice of candidacy and comply with federal campaign-finance laws, which Plaintiffs argue would be adequate to deter frivolous candidacies. Id. at 5. This remedy would leave to the General Assembly the job of replacing the unconstitutional laws. Until they did so, there would be no restrictions apart from the notice of candidacy and campaign-finance laws.

Plaintiffs also propose an "interim remedy." Id. Under this proposal, would-be candidates would have two options for ballot access: either they could pay the qualifying fee in O.C.G.A. § 21-2-131(a) & (d), which amounts to "3 percent of the total gross salary of the office paid in the preceding calendar year," or they could submit a qualifying petition containing 500 signatures. Id. at 5–6.

Defendant opposes Plaintiffs' proposals.[1] Dkt. No. [163]. Defendant argues against an outright injunction against the Secretary of State that would prevent him from enforcing the relevant laws. Id. at 4–7. He argues that an outright injunction with no interim remedy would "result in *no* meaningful ballot access

---

[1] Although Defendant opposes Plaintiffs' specific proposals and argues that some sort of interim solution would be necessary, Defendant does not propose his own remedy. Instead, he only argues that Plaintiffs' remedies are unworkable.

requirements for the 2022 election cycle." Id. at 6. He also argues that Plaintiffs'
alternative proposal is unworkable because the thresholds suggested are so low
that they do not safeguard the State's interest. Id. at 7–9.

The Court agrees with Defendant in part and declines to enjoin the
Secretary of State from enforcing Georgia's ballot-access scheme without
imposing an interim solution. While it will ultimately be for the General
Assembly to craft a new ballot-access scheme, an absolute injunction with no
interim remedy would not adequately protect the State's legitimate interests. See
Green Party of Ga. v. Kemp, 171 F. Supp. 3d 1340, 1373 (N.D. Ga. 2016) ("[T]he
Court attempts to avoid an overcrowded ballot."). As the Court acknowledged in
its order on summary judgment, Georgia has an "undoubted right to require
candidates to make a preliminary showing of substantial support in order to
qualify for a place on the ballot." Dkt. No. [159] at 36–37 (quoting Anderson v.
Calabrezze, 460 U.S. 780, 788 n.9 (1983)). The Court therefore finds it
appropriate to fashion an interim remedy to guard the State's interest until the
General Assembly can act. Green Party of Ga., 171 F. Supp. 3d at 1373 ("The
Court's interim requirement will expire when the Georgia General Assembly
enacts a permanent provision.").

The Court also finds that Plaintiffs' proposed interim remedy does not
adequately protect the state's interests. As Defendant points out, a 500 petition-
signature requirement—one of the options under Plaintiffs' interim proposal—
would be a 98% reduction of the current signature requirement in some districts.

Dkt. No. [163] at 8. A 500-petition threshold would amount to .08% of registered voters in Georgia's most-populous district, id., and .11% of eligible voters in Georgia's least-populous district, id. Those figures are far below the 1% threshold that currently applies to statewide candidates, which is itself five times lower than the operative threshold for non-statewide office. The Court is unwilling to impose such a dramatic reduction. Further, as Defendant points out, all candidates for office are ordinarily required to pay the qualifying fee. Dkt. No. [163] at 7 (citing O.C.G.A. § 21-2-132(d)). Allowing political body and independent candidates for non-statewide office to opt out of the fee and merely submit a drastically lowered number of petitions would make it much easier for these candidates to reach the ballot than for political-body and independent candidates for statewide office.

Similarly, allowing candidates to pay the qualifying fee alone is too low a threshold. Plaintiff notes that the fee for U.S. House candidates is around $5,000, which might theoretically (though not necessarily) deter frivolous candidacies. But the fee for other non-statewide offices would be considerably lower, since their salaries are lower than the salary of U.S. House Representatives, and frivolous candidates for the other offices might still crowd the ballot. And if the Court allowed these candidates to pay only the fee without obtaining petition signatures, that allowance would place the non-statewide candidates in a more favorable position than statewide candidates who must both pay the fee and obtain signatures.

5

That said, the Court finds that an interim remedy is warranted. <u>Green Party of Ga.</u>, 171 F. Supp. 3d at 1372 ("[I]t is well within this Court's equitable powers to fashion a remedy in this case." (citing <u>Virginian Ry. Co. v. Sys. Fed'n No. 40</u>, 300 U.S. 515, 552 (1937))). The Court finds that a more appropriate reduction would be to a 1% petition signature requirement for non-statewide offices. <u>Id.</u> at 1373 (reducing the petition requirement for presidential electors from 1% of registered voters in the prior election to 7,500 voters). This would bring the non-statewide office threshold in line with the statewide office threshold. The Court finds this appropriate since the General Assembly has already deemed a 1% petition signature requirement adequate to protect Georgia's interests in preventing frivolous candidacies and ballot crowding. And the Court notes that with a 1% petition signature requirement, as opposed to a 5% requirement, several of the serious candidates for office addressed in Plaintiffs' Motion for Summary Judgment would have qualified.

The Court will also leave in place the qualifying fee. As the Court has pointed out, candidates for statewide office must pay a qualifying fee in addition to the 1% petition threshold. Requiring non-statewide officials to do the same, along with a five-fold reduction in the signature requirement, would not leave Plaintiffs with an unconstitutional burden. Accordingly, the Court proposes to

reduce the petition signature requirement to 1% of registered voters in the prior election and leave the qualifying fee in place.[2]

At the same time, the Court acknowledges that this remedy is different from what the parties have proposed. The Court does not wish to impose this remedy without providing the parties with a meaningful opportunity to be heard. See Green Party of Ga., 171 F. Supp. 3d at 1373 ("[T]he Court advised the parties of its intended ruling and asked for the parties' input in crafting a temporary remedy."). The Court will therefore allow the parties to respond to the Court's proposal with additional briefing if they have objections.

## B.    Remaining Equal Protection Theory

The Court also asked the parties to address whether Plaintiffs' remaining theory underlying their equal-protection claim is moot. Dkt. No. [159] at 47. This is the theory that the "five-percent petition requirement was enacted with the discriminatory purpose of preventing Communist Party candidates from appearing on Georgia's ballots." Dkt. No. [1] ¶ 18. Plaintiffs acknowledge that this claim "could well become moot once the Court enters a remedy." Dkt. No. [160] at 11. They note that the relief sought under their First and Fourteenth Amendment claim may even be broader than their equal-protection claim

---

[2] The Court declines to issue an order that would require the Secretary of State to take steps regarding the petition validation rate as Plaintiffs request. Dkt. No. [163] at 11. Plaintiffs have not proven that there is anything wrong with the Secretary's validation process. And Georgia law provides a means for judicial review of the grounds for petition rejection. O.C.G.A. § 21-2-171(c).

because the First Amendment claim challenges the entire ballot-access scheme, while the discriminatory-purpose theory targets only the petition requirement. Id.; see also id. ("But the interim remedy that the plaintiffs have proposed in this brief . . . would moot the discriminatory-purpose claim because it makes the petition requirement optional."). But Plaintiffs still argue that this theory presents a live issue unless the Court either enjoins the Secretary of State absolutely or imposes the interim remedy they request. This is so because they might obtain an outright injunction under the discriminatory-purpose theory.

Defendant argues that the issue is moot. Dkt. No. [163] at 13–16. He points out that Plaintiffs raised the discriminatory-purpose claim to challenge the same law that the Court is now striking down on the same grounds that the Court appealed to in its prior order: that the 5% petition signature requirement imposes a severe burden. Id. at 15.

The Court agrees with Defendant on this issue. The Court has already found the 5% petition signature requirement in O.C.G.A. § 21-2-170(b) unconstitutional. Doing so for a different reason would not present Plaintiffs with different remedies. The law would still impose a severe burden upon their rights, which would warrant a reduction, but not an outright injunction, since the State has shown a legitimate interest in preventing frivolous candidacies and ballot crowding.

Accordingly, the Court finds that this theory is **MOOT**. Since Defendant's pending Motion to Exclude [137] targets Plaintiffs' experts on this issue, that Motion is also **DENIED as MOOT**.

### III.    CONCLUSION

Based upon the foregoing, the Court **DIRECTS** the parties, if they have objections, to respond to this Order's remedy proposal within **10** days of the entry of this Order. The parties should address the Court's proposal to reduce the petition-signature requirement to 1% of registered voters in the prior election while leaving the rest of the ballot-access scheme in place.

The Court finds that Plaintiffs' remaining theory under the equal-protection claim is **MOOT**. Defendant's Motion to Exclude [137] is **DENIED** as **MOOT**.


**IT IS SO ORDERED** this 23rd day of August, 2021.

**Leigh Martin May**
**United States District Judge**