## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MARTIN COWEN, ALLEN BUCKLEY, AARON GILMER, JOHN MONDS, and the LIBERTARIAN PARTY OF GEORGIA, INC., a Georgia nonprofit corporation, | * * * * * | |
| | * | CASE NO.: 1:17cv04660-LMM |
| Plaintiffs, | * * | |
| v. | * * | |
| BRAD RAFFENSPERGER, Georgia Secretary of State, | * * * | |
| Defendant. | * | |

## DEFENDANT'S OBJECTIONS TO THE COURT'S REMEDY PROPOSAL

Defendant Secretary of State Brad Raffensperger (the "Secretary") submits the following objections to the Court's Order of August 23, 2021, which proposes an interim remedy reducing the petition signature requirement set forth in O.C.G.A. § 21-2-170 from 5% to 1% for all non-statewide offices. (Doc. 165).

*First*, the Court's proposed remedy is overly broad and exceeds the scope of relief requested in Plaintiffs' complaint. Plaintiffs' constitutional claims were limited to the 5% petition signature requirement for U.S. Representative, but the

1

Court proposes to reduce the petition signature requirement for *all non-statewide offices*. *Second*, the Court's proposed remedy reducing the petition signature requirement by 80% undermines the State's important interest in "requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971). The Secretary maintains his position that Georgia's 5% petition requirement is constitutional based upon controlling precedent, and should not be altered by the Court.

1.  **The Court's remedy proposal is overly broad and exceeds the scope of relief sought by Plaintiffs.**

In the case of a constitutional violation, "injunctive relief must be tailored to fit the nature and extent of the established violation." *Gibson v. Firestone*, 741 F.2d 1268, 1273 (11th Cir. 1984)*; see also Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) ("[I]n constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable."). The injunction "must be no broader than necessary to remedy the constitutional violation." *Newman v. State of Ala.*, 683 F.2d 1312, 1319 (11th Cir. 1982). When a district court fails to follow this principle and drafts an unnecessarily broad injunction, the district court abuses its discretion. *Alley v. United States HHS*, 590 F.3d 1195, 1205 (11th Cir. 2009).

2

While the Secretary disputes that any constitutional violation has been established, the Court's proposed injunction is overly broad because it exceeds the scope of the Court's summary judgment order and the relief requested by Plaintiffs in their complaint. The Court's holding on summary judgment is that Georgia's petition signature requirements for *U.S. Representative* are unconstitutionally burdensome in violation of the First and Fourteenth Amendments. (Doc. 159 at 44). The Court has never been presented with the question of whether Georgia's ballot-access requirements for other offices are also unconstitutional. As stated in their complaint, Plaintiffs' case is "a constitutional challenge to Georgia's ballot-access laws for third-party candidates for U.S. Representative" as set forth in O.C.G.A. § 21-2-170. (Doc. 1 at ¶ 1). At no point in this action did Plaintiffs challenge Georgia's ballot-access laws for any office other than U.S. Representative, as acknowledged in the Court's summary judgment order: "This case is a constitutional challenge to Georgia's ballot-access restrictions for third-party and independent candidates *seeking election to the United States House of Representatives*." (Doc. 159 at 2) (emphasis added).

In fact, it has never been established that the Court even has jurisdiction to entertain a constitutional challenge to Georgia's petition signature requirements for any office other than U.S. Representative in this action. Nor have the Plaintiffs, who

include past and aspiring candidates for U.S. Representative, established standing to bring a broader constitutional challenge to any other non-statewide office in Georgia. (*See id.* ¶ 2). Moreover, the factual record presented at summary judgement (*see generally* Doc. 73-1), as well as the factual findings made by the Court in its summary judgement order (*see genrally* Doc. 159), are limited to the requirements and associated burdens imposed on third-party candidates running for U.S. Representative in Georgia. Indeed, the primary fact relied upon by the Court in concluding that the petition signature requirements for U.S. Representative present a severe burden is the fact that no third-party candidate has succeeded in meeting the requirements for this office. (*see* Doc. 159 at 27-28). The Court was neither requested to nor made any such findings with respect to any other non-statewide office.

Because any relief entered by the Court "must be narrowly tailored to fit the nature and extent of the established violation," *Gibson*, 741 F.2d at 1273, any injunction entered must be limited to the petition signature requirements for U.S. Representative. The remedy proposed by the Court is "broader than necessary to remedy the constitutional violation," *Newman*, 683 F.2d at 1319, and therefore improper.

4

2. **The Court's proposed remedy undermines the State's important interest in requiring candidates to demonstrate a "significant modicum of support" for ballot access.**

The Court's proposed remedy is also not narrowly tailored because it amounts to a drastic 80% reduction of the current petition signature requirement. As the Court recognized, the State has an "undoubted right" to require candidates demonstrate "a preliminary showing of substantial support" before placing them on the ballot. (Doc. 165 at 4) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 n. 9 (1983)). However, the Court has provided no rationale for substituting its own judgment for that of the General Assembly in proposing an 80% reduction of the 5% petition signature requirement, which the General Assembly reasonably determined to be necessary to keep frivolous candidates off of the ballot and avoid ballot overcrowding.

The Court appears to support such a reduction because it believes that Plaintiffs' preferred candidates will be able to meet this new judicially-imposed standard. However, the Supreme Court has cautioned that there is no "constitutional imperative to reduce voter apathy or to 'handicap' an unpopular candidate to increase the likelihood that the candidate will gain access to the general election ballot." *Munro v. Socialist Workers Party*, 479 U.S. 189, 198 (1986); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 367 (1997) (a state "need

5

not remove all of the many hurdles third parties face in the American political arena today").

The proposed 80% reduction also brings Geogia's requirements far below those found to be constitutionally permissible in other states with petition signature requirements between 3% and 5%, *including* within this Circuit. *See*, *e.g.*, *Libertarian Party of N.H. v. Gardner*, 843 F.3d 20, 27 (1st Cir. 2016) (New Hampshire's 3% signature requirement); *Swanson v. Worley*, 490 F.3d 894, 912 (11th Cir. 2007) (Alabama's 3% signature requirement); *Rainbow Coalition of Okla. v. Okla. State Election Bd.*, 844 F.2d 740, 744 (10th Cir. 1988) (Oklahoma's 5% signature requirement); *Populist Party v. Herschler*, 746 F.2d 656, 660 (10th Cir. 1984) (Wyoming's 5% signature requirement); *Libertarian Party of Fla. v. Florida*, 710 F.2d 790, 795 (11th Cir. 1983) (Florida's 3% signature requirement); *Dart v. Brown*, 717 F.2d 1491, 1510 (5th Cir. 1983) (Louisiana's 5% signature requirement to be recognized as a political party); *Parker v. Duran*, Civil No. 14-cv-617 MV-GBW, 2014 U.S. Dist. LEXIS 181033, at *30 (D.N.M. Aug. 17, 2014) (New Mexico's 3% signature requirement). Another court in this judicial district, just this past year, found that, even in the height of the global pandemic with the attendant concern and shelter-in-place directives, no more than a 30% reduction in signature

6

requirements was required to satisfy the applicable constitutional standard. *Cooper v. Raffensperger*, 472 F. Supp. 3d 1282, 1292-93 (N.D. Ga. 2020).

The Court's proposed remedy reducing the petition signature requirement by 80% is not narrowly tailored, and is all but certain to undermine the State's important interest in "requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).

In sum, the Secretary maintains his objection to the Court's ruling on summary judgment that Georgia's petition requirements are unconstitutional under the First and Fourteenth Amendment and submits that no injunctive relief is warranted. To the extent the Court enters a permanent injunction over the Secretary's objection, any remedy imposed should be narrowly tailored to to fit the nature and extent of the alleged violation actually pled. The Secretary respectfully requests that the Court enter a final judgment so that any appeal of this matter may be heard expeditiously in advance of the 2022 election cycle.

Respectfully submitted, this 2nd day of September, 2021.

Christopher M. Carr 112505
Attorney General
Bryan K. Webb 743580
Deputy Attorney General
Russell D. Willard 760280
Senior Assistant Attorney General


/s/*Charlene S. McGowan*
Charlene S. McGowan 697316
Assistant Attorney General


40 Capitol Square SW
Atlanta, GA 30334
cmcgowan@law.ga.gov
404-458-3658

*Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing has been formatted using Times New Roman font in 14-point type in compliance with Local Rule 7.1(D).

<u>*/s/Charlene S. McGowan*</u>
Charlene S. McGowan
Assistant Attorney General

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2021, I filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification to all

counsel of record in this case.


*/s/Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General