4months,APPEAL,CLOSED,LMMLC1,PROTO

# U.S. District Court
# Northern District of Georgia (Atlanta)
# CIVIL DOCKET FOR CASE #: <u>1:17−cv−04660−LMM</u>

Cowen et al v. Raffensperger                             Date Filed: 11/21/2017
Assigned to: Judge Leigh Martin May                      Date Terminated: 09/03/2021
 Case in other court:  Eleventh Circuit, 19−14065−HH      Jury Demand: None
Cause: 42:1983 Civil Rights Act                          Nature of Suit: 441 Civil Rights: Voting
                                                         Jurisdiction: Federal Question

<u>**Plaintiff**</u>

**Martin Cowen**                        represented by   **Bryan Ludington Sells**
*an individual*                                          The Law Office of Bryan L. Sells, LLC
                                                         P.O. Box 5493
                                                         1226 Springdale Road, NE
                                                         Atlanta, GA 31107−0493
                                                         404−480−4212
                                                         Email: bryan@bryansellslaw.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Allen Buckley**                       represented by   **Bryan Ludington Sells**
*an individual*                                          (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Aaron Gilmer**                        represented by   **Bryan Ludington Sells**
*an individual*                                          (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**John Monds**                          represented by   **Bryan Ludington Sells**
*an individual*                                          (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Libertarian Party of Georgia, Inc.**  represented by   **Bryan Ludington Sells**
*a Georgia nonprofit corporation*                        (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Brian P. Kemp**
*in his official capacity as Secretary of State of the State of Georgia*
*TERMINATED: 02/19/2019*

represented by **Cristina Correia**
Georgia Department of Law
Department of Law
40 Capitol Square SW
Atlanta, GA 30334
404−458−3535
Fax: 404−463−8864
Email: ccorreia@law.ga.gov
*ATTORNEY TO BE NOTICED*

**Elizabeth Ahern Monyak**
Cobb County Attorney's Office
Suite 350
100 Cherokee Street
Marietta, GA 30090
770−528−4000
Fax: 770=528−4010
Email: Elizabeth.Monyak@cobbcounty.org
*TERMINATED: 04/01/2019*

**Josiah Benjamin Heidt**
Georgia Department of Law
Office of the Attorney General
40 Capitol Square, S.W.
Atlanta, GA 30334−1300
404−656−3389
Email: jheidt@law.ga.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brad Raffensperger**
*in his official capacity as Secretary of State of the State of Georgia*

represented by **Charlene S McGowan**
Office of the Georgia Attorney General
Assistant Attorney General
40 Capitol Square SW
Atlanta, GA 30334
404−458−3658
Email: cmcgowan@law.ga.gov
*ATTORNEY TO BE NOTICED*

**Cristina Correia**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 11/21/2017 | 1 | | COMPLAINT, filed by Martin Cowen, Allen Buckley, John Monds, Libertarian Party of Georgia, Inc. and Aaron Gilmer; and Summon(s) issued. ( Filing fee $ 400.00 receipt number 113E−7521944.) (Attachments: # 1 Civil Cover Sheet)(eop) Please visit our website at |

| | | | |
|---|---|---|---|
| | | | http://www.gand.uscourts.gov/commonly−used−forms to obtain Pretrial Instructions which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 11/22/2017) |
| 11/21/2017 | 2 | | Electronic Summons Issued as to Brian P. Kemp. (eop) (Entered: 11/22/2017) |
| 11/30/2017 | 3 | | STANDING ORDER REGARDING CIVIL LITIGATION. Signed by Judge Leigh Martin May on 11/30/17. (hfm) (Entered: 11/30/2017) |
| 12/18/2017 | 4 | | AFFIDAVIT of Service for summons, complaint and civil cover sheet , as to Brian P. Kemp. (Sells, Bryan) (Entered: 12/18/2017) |
| 12/18/2017 | 5 | | AFFIDAVIT of Service for summons, complaint, and civil cover sheet , as to Christopher M. Carr. (Sells, Bryan) (Entered: 12/18/2017) |
| 12/18/2017 | 6 | | First Certificate of Interested Persons and Corporate Disclosure Statement by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds identifying Corporate Parent Libertarian National Committee Inc. for Libertarian Party of Georgia, Inc.. (Sells, Bryan) (Entered: 12/18/2017) |
| 12/19/2017 | | | Clerks Notation re 6 Certificate of Interested Persons, reviewed and approved by LMM. (rvb) (Entered: 12/19/2017) |
| 12/28/2017 | 7 | | MOTION to Dismiss with Brief In Support by Brian P. Kemp. (Attachments: # 1 Brief)(Correia, Cristina) (Entered: 12/28/2017) |
| 01/01/2018 | 8 | | RESPONSE in Opposition re 7 MOTION to Dismiss filed by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Sells, Bryan) (Entered: 01/01/2018) |
| 01/12/2018 | 9 | | REPLY BRIEF re 7 MOTION to Dismiss filed by Brian P. Kemp. (Correia, Cristina) (Entered: 01/12/2018) |
| 01/22/2018 | | | Submission of 7 MOTION to Dismiss , submitted to District Judge Leigh Martin May. (hfm) (Entered: 01/22/2018) |
| 01/25/2018 | 10 | | ORDER granting 7 Partial Motion to Dismiss. Plaintiffs' claims for nominal damages against Defendant in his official capacity are DISMISSED for lack of jurisdiction. Signed by Judge Leigh Martin May on 1/25/18. (hfm) (Entered: 01/25/2018) |
| 01/29/2018 | 11 | | JOINT PRELIMINARY REPORT AND DISCOVERY PLAN filed by Brian P. Kemp. (Correia, Cristina) (Entered: 01/29/2018) |
| 01/30/2018 | 12 | | SCHEDULING ORDER re 11 Joint Preliminary Report and Discovery Plan. Signed by Judge Leigh Martin May on 1/30/18. (hfm) (Entered: 01/30/2018) |
| 02/08/2018 | 13 | | CERTIFICATE OF SERVICE *of the Plaintiffs' Initial Disclosures* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) (Entered: 02/08/2018) |
| 02/08/2018 | 14 | | *Defendant's* ANSWER to 1 COMPLAINT by Brian P. Kemp. Discovery ends on 7/9/2018.(Correia, Cristina) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions. (Entered: 02/08/2018) |

| 02/08/2018 | 15 | | Initial Disclosures by Brian P. Kemp.(Correia, Cristina) (Entered: 02/08/2018) |
|---|---|---|---|
| 03/12/2018 | 16 | | CERTIFICATE OF SERVICE *of First Set of Interrogatories* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) Modified on 3/13/2018 to remove all cap (btql). (Entered: 03/12/2018) |
| 03/12/2018 | 17 | | CERTIFICATE OF SERVICE *of First Set of Requests for Production* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) Modified on 3/13/2018 to remove all cap (btql). (Entered: 03/12/2018) |
| 03/29/2018 | 18 | | NOTICE of Appearance by Josiah Benjamin Heidt on behalf of Brian P. Kemp (Heidt, Josiah) (Entered: 03/29/2018) |
| 04/19/2018 | 19 | | CERTIFICATE OF SERVICE *re Defendant Responses to Plaintiffs First Interrogatories and Defendant Responses to Plaintiffs First Requests for Production* by Brian P. Kemp.(Heidt, Josiah) (Entered: 04/19/2018) |
| 04/20/2018 | 20 | | CERTIFICATE OF SERVICE *of Expert Reports* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) (Entered: 04/20/2018) |
| 05/11/2018 | 21 | | Consent MOTION for Extension of Time to file rebuttal expert witness reports by Brian P. Kemp. (Attachments: # 1 Text of Proposed Order)(Correia, Cristina) (Entered: 05/11/2018) |
| 05/11/2018 | 22 | | CERTIFICATE OF SERVICE *Defendant's First Supplemental Response to Plaintiffs' Requests for Production* by Brian P. Kemp.(Correia, Cristina) (Entered: 05/11/2018) |
| 05/11/2018 | 23 | | ORDER GRANTING 21 Motion for Extension of Time up to and including 5/28/2018 to file Rebuttal Expert Witness Reports. Signed by Judge Leigh Martin May on 5/11/2018. (btql) (Entered: 05/11/2018) |
| 05/28/2018 | 24 | | Expert Report of Robert Stein by Brian P. Kemp. (Attachments: # 1 Exhibit Expert Report)(Correia, Cristina) (Entered: 05/28/2018) |
| 05/29/2018 | 25 | | CERTIFICATE OF SERVICE *Defendant's First Set of Interrogatories and First Requests to Produce* by Brian P. Kemp.(Correia, Cristina) (Entered: 05/29/2018) |
| 06/21/2018 | 26 | | Consent MOTION for Extension of Time to Complete Discovery *and related deadlines* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) (Entered: 06/21/2018) |
| 06/21/2018 | 27 | | ORDER GRANTING 26 Motion for Extension of Time to Complete Discovery *and related deadlines*. Discovery ends on 9/6/2018. Motions for summary judgment due 10/8/2018. Signed by Judge Leigh Martin May on 6/21/2018. (btql) (Entered: 06/21/2018) |
| 07/05/2018 | 28 | | Notice for Leave of Absence for the following date(s): July 6, 2018−July 25, 2018, by Cristina Correia. (Correia, Cristina) (Entered: 07/05/2018) |
| 08/06/2018 | 29 | | CERTIFICATE OF SERVICE *of the plaintiffs' first set of requests for admissions* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party |

| | | | |
|---|---|---|---|
| | | | of Georgia, Inc., John Monds.(Sells, Bryan) (Entered: 08/06/2018) |
| 08/15/2018 | 30 | | CERTIFICATE OF SERVICE *of the Plaintiffs' First Supplemental Disclosures* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) (Entered: 08/15/2018) |
| 08/15/2018 | 31 | | CERTIFICATE OF SERVICE *of the Plaintiffs' Responses to the Defendant's First Set of Interrogatories* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) (Entered: 08/15/2018) |
| 08/15/2018 | 32 | | CERTIFICATE OF SERVICE *of the Plaintiffs' Responses to the Defendant's First Set of Requests for Production* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) (Entered: 08/15/2018) |
| 08/23/2018 | 33 | | Consent MOTION for Extension of Time to Complete Discovery by Brian P. Kemp. (Attachments: # 1 Text of Proposed Order)(Correia, Cristina) (Entered: 08/23/2018) |
| 08/24/2018 | 34 | | ORDER granting 33 Motion for Extension of Time to Complete Discovery up to and including October 12, 2018 to complete discovery. Motions for summary judgment are due on or before November 12, 2018. Daubert motions and the Pretrial Order are due November 12, 2018 or 30 days after this Court's ruling on any pending motions for summary judgment. Signed by Judge Leigh Martin May on 8/24/18. (hfm) (Entered: 08/24/2018) |
| 09/13/2018 | 35 | | CERTIFICATE OF SERVICE *for Discovery* by Brian P. Kemp.(Correia, Cristina) (Entered: 09/13/2018) |
| 10/09/2018 | 36 | | Joint MOTION for Extension of Time to Complete Discovery by Brian P. Kemp. (Attachments: # 1 Text of Proposed Order)(Correia, Cristina) (Entered: 10/09/2018) |
| 10/10/2018 | 37 | | ORDER − This matter is before the Court on a Joint Motion for Extension of Time to complete deposition discovery 36 . For good cause shown, the Motion is hereby GRANTED. The parties shall have up to and including November 30, 2018, to complete discovery. Motions for summary judgment are due on or before January 11, 2019. Daubert motions and the Pretrial Order are due January 11, 2019, or 30 days after this Court's ruling on any pending motions for summary judgment. Signed by Judge Leigh Martin May on 10/10/2018. (tcc) (Entered: 10/10/2018) |
| 11/19/2018 | 38 | | Joint MOTION for Extension of Time to Complete Discovery by Brian P. Kemp. (Attachments: # 1 Text of Proposed Order)(Correia, Cristina) (Entered: 11/19/2018) |
| 11/19/2018 | 39 | | ORDER GRANTING 38 Motion for Extension of Time to Complete Discovery. Discovery ends on 1/30/2019. Motions for summary judgment due 3/1/2019. Daubert motions and the Pretrial Order are due 3/1/2019 or 30 days after the Court's ruling on any pending motions for summary judgment. Signed by Judge Leigh Martin May on 11/19/2018. (btql) (Entered: 11/19/2018) |
| 01/10/2019 | 40 | | Joint MOTION for Extension of Time to Complete Discovery by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) |

| | | | |
|---|---|---|---|
| | | | (Entered: 01/10/2019) |
| 01/11/2019 | 41 | | ORDER GRANTING 40 Motion for Extension of Time to Complete Discovery. Discovery ends on 3/15/2019. Motions for summary judgment are due 4/15/2019. Daubert motions and the Proposed Pretrial Order due 5/15/2019. The Court will not grant further extensions. Signed by Judge Leigh Martin May on 1/11/2019. (btql) (Entered: 01/11/2019) |
| 01/25/2019 | 42 | | CERTIFICATE OF SERVICE *of the plaintiffs' second set of interrogatories* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) (Entered: 01/25/2019) |
| 02/11/2019 | 43 | | CERTIFICATE OF SERVICE *of the Plaintiffs' Second Set of Requests for Production of Documents* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) (Entered: 02/11/2019) |
| 02/11/2019 | 44 | | CERTIFICATE OF SERVICE *of the Plaintiffs' Second Set of Requests for Admissions* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) (Entered: 02/11/2019) |
| 02/13/2019 | 45 | | NOTICE of Appearance by Elizabeth Ahern Monyak on behalf of Brian P. Kemp (Monyak, Elizabeth) (Entered: 02/13/2019) |
| 02/14/2019 | 46 | | Consent MOTION for Protective Order by Brian P. Kemp. (Attachments: # 1 Text of Proposed Order Protective Order)(Correia, Cristina) (Entered: 02/14/2019) |
| 02/19/2019 | 47 | | CONSENT PROTECTIVE ORDER. Signed by Judge Leigh Martin May on 2/19/2019. (btql) (Entered: 02/19/2019) |
| 02/19/2019 | 48 | | Minute Entry for proceedings held before Judge Leigh Martin May: Telephone Conference held on 2/19/2019 at the request of the parties to discuss a dispute that occurred during the deposition of Ted Metz held on February 13, 2019. The Court heard from Plaintiffs' and Defendant's counsel. Plaintiffs' objection to Defendant using party meeting minutes during the deposition of Ted Metz which were not previously disclosed is overruled and does not violate discovery rules. The parties' orally motioned to substitute Brad Raffensperger as the defendant in place of Brian Kemp. The Court GRANTED the parties' motion. The Clerk shall substitute Brad Raffensperger as the defendant in this civil action. The parties shall contact the Court in accordance with the Standing Order if any further discovery issues arise. (Court Reporter Montrell Vann)(btql) (Entered: 02/19/2019) |
| 02/19/2019 | 49 | | CERTIFICATE OF SERVICE *of the plaintiffs' second supplemental disclosures* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) (Entered: 02/19/2019) |
| 02/25/2019 | 50 | | CERTIFICATE OF SERVICE *Responses to 2nd Interrogatories* by Brad Raffensperger.(Correia, Cristina) (Entered: 02/25/2019) |
| 02/27/2019 | 51 | | CERTIFICATE OF SERVICE *of the plaintiffs' first supplemental responses to the defendant's first set of interrogatories* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds.(Sells, Bryan) (Entered: 02/27/2019) |

| | | | |
|---|---|---|---|
| 03/01/2019 | 52 | | CERTIFICATE OF SERVICE *Defendant's First Supplemental Responses to Plaintiffs' First Set of Interrogatories and Defendant's First Supplemental Responses to Plaintiffs' First Requests to Produce* by Brad Raffensperger.(Correia, Cristina) (Entered: 03/01/2019) |
| 03/04/2019 | 53 | | CERTIFICATE OF SERVICE *Defendant's Second Supplemental Responses to Plaintiffs' First Interrogatories* by Brad Raffensperger.(Correia, Cristina) (Entered: 03/04/2019) |
| 03/08/2019 | 54 | | Consent MOTION for Extension of Time Take a 30(b)(6) deposition of the Libertarian Party of Georgia. by Brad Raffensperger. (Attachments: # 1 Text of Proposed Order)(Correia, Cristina) (Entered: 03/08/2019) |
| 03/11/2019 | 55 | | ORDER GRANTING 54 Motion for Extension of Time through and including 4/5/2019 to complete the Rule 30(b)(6) deposition of Plaintiff, the Libertarian Party. Signed by Judge Leigh Martin May on 3/8/2019. (btql) (Entered: 03/11/2019) |
| 03/11/2019 | 56 | | CERTIFICATE OF SERVICE *Discovery* by Brad Raffensperger.(Correia, Cristina) (Entered: 03/11/2019) |
| 03/12/2019 | 57 | | Supplemental Initial Disclosures by Brad Raffensperger.(Correia, Cristina) (Entered: 03/12/2019) |
| 03/13/2019 | 58 | | Request for Leave of Absence for the following date(s): 3/18/19, 3/19/19, 3/20/19, 3/21/19, by Bryan Ludington Sells. (Sells, Bryan) (Entered: 03/13/2019) |
| 03/14/2019 | 59 | | ORDER ruling on the discovery disputes regarding Plaintiff's deposition of Defendant's 30(b)(6) representative. See order for further details. Signed by Judge Leigh Martin May on 03/14/2019. (rvb) (Entered: 03/14/2019) |
| 03/14/2019 | 60 | | CERTIFICATE OF SERVICE *Fourth Supplemental Responses to First Interrogatories and Third Supplemental Responses to First Requests for Production* by Brad Raffensperger.(Correia, Cristina) (Entered: 03/14/2019) |
| 03/15/2019 | 61 | | Joint MOTION for Extension of Time to Complete Discovery *until April 15* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) (Entered: 03/15/2019) |
| 03/15/2019 | 62 | | CERTIFICATE OF SERVICE *Amended Notice of Deposition* by Brad Raffensperger.(Correia, Cristina) (Entered: 03/15/2019) |
| 03/15/2019 | 63 | | ORDER GRANTING 61 Motion for Extension of Time to Complete Discovery. Discovery ends on 4/15/2019. Motions for summary judgment are due on or before 5/15/2019. Daubert motions and the Pretrial Order are due 6/28/2019, or 30 days after this Court's ruling on any pending motions for summary judgment. Signed by Judge Leigh Martin May on 3/15/2019. (btql) (Entered: 03/15/2019) |
| 04/01/2019 | 64 | | Certification of Consent to Substitution of Counsel. Cristina Correia replacing attorney Elizabeth Ahern Monyak. (Correia, Cristina) (Entered: 04/01/2019) |
| 05/06/2019 | 65 | | Joint MOTION for Extension of Time file motions for summary judgment by Brad Raffensperger. (Attachments: # 1 Exhibit Correspondence from Court |

| | | |
|---|---|---|
| | | Reporter, # 2 Text of Proposed Order)(Correia, Cristina) (Entered: 05/06/2019) |
| 05/07/2019 | 66 | ORDER GRANTING 65 Motion for Extension of Time up to and including 6/5/2019 for parties to file motions for summary judgment. Signed by Judge Leigh Martin May on 5/6/2019. (btql) (Entered: 05/07/2019) |
| 05/31/2019 | 67 | Unopposed MOTION for Leave to File Excess Pages by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) (Entered: 05/31/2019) |
| 06/03/2019 | 68 | ORDER granting 67 Motion for Leave to File Excess Pages. The page limit for each party's brief in support of its motion for summary judgment shall be 45 pages. Signed by Judge Leigh Martin May on 6/3/2019. (tmf) (Entered: 06/03/2019) |
| 06/05/2019 | 69 | MOTION for Summary Judgment with Brief In Support by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Brief In Support of Plaintiffs' Motion for Summary Judgment, # 2 Statement of Material Facts, # 3 Exhibit Index, # 4 Exhibit 1: Declaration of Jeff Anderson, # 5 Exhibit 2: Declaration of Victor Armendariz, # 6 Exhibit 3: Declaration of Allen Buckley, # 7 Exhibit 4: Declaration of Faye Coffield, # 8 Exhibit 5: Declaration of Martin Cowen, # 9 Exhibit 6: Declaration of Hugh Esco, # 10 Exhibit 7: Declaration of Jay Fisher, # 11 Exhibit 8: Declaration of Aaron Gilmer, # 12 Exhibit 9: Declaration of Ryan Graham, # 13 Exhibit 10: Declaration of Derrick Lee, # 14 Exhibit 11: Declaration of Cynthia McKinney, # 15 Exhibit 12: Declaration of Ted Metz, # 16 Exhibit 13: Declaration of John Monds, # 17 Exhibit 14: Declaration of Eugene Moon, # 18 Exhibit 15: Declaration of Hien Nguyen, # 19 Exhibit 16: Declaration of Wayne Parker, # 20 Exhibit 17: Declaration of Darcy Richardson, # 21 Exhibit 18: Declaration of Nicholas Sarwark, # 22 Exhibit 19: Declaration of Luanne Taylor, # 23 Exhibit 20: Declaration of Don Webb, # 24 Exhibit 21: Declaration of Nathan Wilson, # 25 Exhibit 22: Declaration of Richard WInger, # 26 Exhibit 23: Deposition of Chris Harvey (excerpts), # 27 Exhibit 24: Deposition of Darcy Richardson (excerpts), # 28 Exhibit 25: Deposition of Richard WInger (excerpts), # 29 Exhibit 26: Plaintiffs' (Corrected) First Set of Requests for Admissions, # 30 Exhibit 27: Defendant's Responses to Plaintiffs' Corrected First Requests for Admissions, # 31 Exhibit 28: Plaintiffs' Second Set of Requests for Admissions, # 32 Exhibit 29: Defendant's Responses to Plaintiffs' Second Requests for Admissions, # 33 Exhibit 30: Defendant's Responses to Plaintiffs' First Interrogatores, # 34 Exhibit 31: Defendant's Responses to Plaintiffs' Second Interrogatories, # 35 Exhibit 32: Complaint, # 36 Exhibit 33: Answer, # 37 Exhibit 34: Newspaper Articles, # 38 Exhibit 35: Application for Writ of Mandamus (Dixon v. Poythress), # 39 Exhibit 36: 1982 Atlanta Constitution Article, # 40 Exhibit 37: Election Results 2000−2018 (excerpts), # 41 Exhibit 38 (pt.1): Candidate Materials, # 42 Exhibit 38 (pt. 2): Candidate Materials, # 43 Exhibit 39: 1982 The Militant Article, # 44 Exhibit 40: Petition−Verification Instruction Letters, # 45 Exhibit 41: De La Fuente Petition Sheets and ENET Printouts (redacted version), # 46 Exhibit 42: Green Party of Georgia v. Kemp, Appellant's Briefs (excerpts))(Sells, Bryan) ——Please refer to http://www.gand.uscourts.gov to obtain the Notice to |

| | | | |
|---|---|---|---|
| | | | Respond to Summary Judgment Motion form contained on the Court's website.— (Entered: 06/05/2019) |
| 06/05/2019 | 70 | | NOTICE Of Filing Document Under Seal by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds re 69 MOTION for Summary Judgment *Exhibit 41* (Attachments: ATTACHMENT 1 SEALED PURSUANT TO 93 ORDER # 1 Exhibit 41: De La Fuente Petition Sheets and ENET Printouts (unredacted version))(Sells, Bryan) Modified on 7/1/2019 to add sealed text(tmf). (Entered: 06/05/2019) |
| 06/05/2019 | 71 | | MOTION for Leave to File Matters Under Seal re: 70 Notice of Filing, by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) (Entered: 06/05/2019) |
| 06/05/2019 | 72 | | NOTICE Of Filing of Deposition Transcript by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds re 69 MOTION for Summary Judgment (Attachments: # 1 Exhibit Deposition of Chris Harvey (04/05/19), # 2 Errata, # 3 Exhibit 1 − Notice of Deposition, # 4 Exhibit 2 − Defendant's Responses to Plaintiffs' First Interrogatories, # 5 Exhibit 3 − Defendant's First Supplemental Responses to Plaintiffs' First Interrogatories, # 6 Exhibit 4 − Defendant's Second Supplemental Responses to Plaintiffs' First Interrogatories, # 7 Exhibit 5 − Defendant's Third Supplemental Responses to Plaintiffs' First Interrogatories, # 8 Exhibit 6 − Table)(Sells, Bryan) (Entered: 06/05/2019) |
| 06/05/2019 | 73 | | MOTION for Summary Judgment with Brief In Support by Brad Raffensperger. (Attachments: ——ATTACHMENTS 5 AND 6 SEALED PURSUANT TO 82 ORDER—— # 1 Statement of Material Facts, # 2 Brief, # 3 Exhibit A, Declaration of Chris Harvey, # 4 Exhibit A−1, Projected 2020 Congressional Rep. Signature Requirements, # 5 Exhibit A−2, Letter from Chris Harvey to Martin Cowen, # 6 Exhibit A−3, Letter from Chris Harvey to Aaron Gilmore, # 7 Exhibit A−4, Historical Voter Registration Statistics (1998−Present), # 8 Exhibit A−5, Historical Voter Registration Statistics (1962−1996), # 9 Exhibit B, Plaintiffs' Responses to Defendant's First Set of Interrogatories, # 10 Exhibit C, Ga. AG Op. 1948, # 11 Exhibit D, Depo Excerpts of Plaintiff Libertarian Party of GA deposition, # 12 Exhibit E, Depo Excerpts of Plaintiff Aaron Gilmore, # 13 Exhibit F, Depo Excerpts of Richard Winger Deposition, # 14 Exhibit G, Depo Excerpts of Darcy Richardson Deposition, # 15 Exhibit Report of Dr. Robert Stein)(Correia, Cristina) —Please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained on the Court's website.— Modified on 6/19/2019 to add sealed text(tmf). (Entered: 06/05/2019) |
| 06/06/2019 | 74 | | NOTICE Of Filing by Brad Raffensperger re 73 MOTION for Summary Judgment (Attachments: # 1 Exhibit Exhibit D Deposition of the Libertarian Party of Georgia, # 2 Exhibit Exhibit D−1 By−Laws of the Libertarian Party of Georgia, # 3 Exhibit Exhibit D−2 Libertarian Party of Georgia Membership, # 4 Exhibit Exhibit D−3 Libertarian Party of Georgia Executive Committee Minutes, October 13, 2018, # 5 Exhibit Exhibit D−4 Libertarian Party of Georgia Minutes of 2016 Annual Convention, # 6 Exhibit Exhibit D−5 Libertarian Party of Executive Committee Minutes, January 14, 2019, # 7 |

| | | |
|---|---|---|
| | | Exhibit Exhibit D−6 Libertarian Party of Georgia Executive Committee Minutes, February 11, 2019, # 8 Exhibit Exhibit D−7 Libertarian Party of Georgia Executive Committee Minutes, December 10, 2018, # 9 Exhibit Exhibit D−8 Libertarian Party of Georgia Executive Committee Minutes, November 12, 2018, # 10 Exhibit Exhibit D−9 Libertarian Party of Georgia, Budget Document, # 11 Errata Exhibit D Errata Sheet)(Correia, Cristina) (Entered: 06/06/2019) |
| 06/06/2019 | 75 | NOTICE Of Filing by Brad Raffensperger re 73 MOTION for Summary Judgment (Attachments: −−−ATTACHMENTS 1−4 AND 7 SEALED PURSUANT TO 82 ORDER−−− # 1 Exhibit Exhibit E Deposition Transcript of Aaron Gilmer, # 2 Exhibit Exhibit E−1 Nomination Petition, # 3 Exhibit Exhibit E−2 Letter from Chris Harvey to Aaron Gilmer, # 4 Exhibit Exhibit E−3 Email from SOS staff to Aaron Gilmer, # 5 Exhibit Exhibit E−4 Email from SOS staff to Aaron Gilmer, # 6 Exhibit Exhibit E−5 Libertarian Party of Georgia Minutes of 2008 Annual Convention, # 7 Exhibit Exhibit E−6 2009 By−Laws of the Libertarian Party of Georgia, # 8 Exhibit Exhibit E−7 Libertarian Party of Georgia Minutes of 2010 Annual Convention, # 9 Exhibit Exhibit E−8 2011 Revised By−Laws of Libertarian Party of Georgia, # 10 Exhibit Exhibit E−9 Libertarian Party of Georgia Minutes of 2012 Annual Convention, # 11 Exhibit Exhibit E−10 Libertarian Party of Georgia Executive Committee Meeting Minutes, June 4, 2012, # 12 Exhibit Exhibit E−11 Libertarian Party of Georgia Minutes of 2013 Annual Convention, # 13 Exhibit Exhibit E−12 Libertarian Party of Georgia Minutes of 2014 Annual Convention, # 14 Exhibit Exhibit E−13 Libertarian Party of Georgia Minutes of 2015 Annual Convention, # 15 Exhibit Exhibit E−14 Libertarian Party of Georgia Minutes of 2016 Annual Convention, # 16 Exhibit Exhibit E−15 Libertarian Party of Georgia Minutes of 2017 Annual Convention, # 17 Exhibit Exhibit E−16 Libertarian Party of Georgia Minutes of 2018 Annual Convention)(Correia, Cristina) Modified on 6/19/2019 to add sealed text (tmf). (Entered: 06/06/2019) |
| 06/06/2019 | 76 | NOTICE Of Filing by Brad Raffensperger re 73 MOTION for Summary Judgment (Attachments: −−−ATTACHMENT 2 SEALED PURSUANT TO 82 ORDER−−− # 1 Exhibit Exhibit F Deposition Transcript of Richard Winger, # 2 Exhibit Exhibit F Deposition Exhibit 1 Report of Richard Winger, # 3 Errata Errata Sheet)(Correia, Cristina) Modified on 6/19/2019 to add sealed text(tmf). (Entered: 06/06/2019) |
| 06/06/2019 | 77 | NOTICE Of Filing by Brad Raffensperger re 73 MOTION for Summary Judgment (Attachments: # 1 Exhibit Exhibit G Deposition of Darcy Richardson, # 2 Exhibit Exhibit G Deposition Exhibit 1 Report of Darcy Richardson, # 3 Exhibit Exhibit G Deposition Exhibit 2 Signature Page of Darcy Richardson's Report, # 4 Errata Errata Sheet)(Correia, Cristina) (Entered: 06/06/2019) |
| 06/17/2019 | 78 | Consent MOTION for Leave to File Matters Under Seal re: 76 Notice of Filing, 75 Notice of Filing,,,,,, 73 MOTION for Summary Judgment by Brad Raffensperger. (Attachments: # 1 Text of Proposed Order Proposed Order)(Correia, Cristina) (Entered: 06/17/2019) |
| 06/17/2019 | 79 | Notice for Leave of Absence for the following date(s): June 27, 2019− July 9, 2019 by Cristina Correia. (Correia, Cristina) (Entered: 06/17/2019) |

| 06/18/2019 | 80 | (DUPLICATE ENTRY OF 79 )Notice for Leave of Absence for the following date(s): June 27, 2019− July 9, 2019, by Cristina Correia. (Correia, Cristina) Modified on 6/18/2019 per the attorney's request (sap). (Entered: 06/18/2019) |
|---|---|---|
| 06/18/2019 | 81 | Consent MOTION for Extension of Time respond to MSJ re: 69 MOTION for Summary Judgment by Brad Raffensperger. (Attachments: # 1 Text of Proposed Order Proposed Order)(Correia, Cristina) (Entered: 06/18/2019) |
| 06/19/2019 | 82 | ORDER granting 78 Consent Motion for Leave to File Matters Under Seal. The Clerk is hereby instructed to seal the following electronic documents (The Court cannot seal individual pages filed in CM/ECF): (1) ECF 73−5; (2) ECF 73−6; (3) ECF 75−1; (4) ECF 75−2; (5) ECF 75−3; (6) ECF 75−4; (7) ECF 75−7; (8) ECF 76−2. Defendant will refile the above documents with all necessary redactions within 14 DAYS. Signed by Judge Leigh Martin May on 6/18/2019. (tmf) (Entered: 06/19/2019) |
| 06/19/2019 | 83 | ORDER granting 81 Consent Motion for Extension of Time to file responses to motions for summary judgment and statements of undisputed material facts. The parties shall have up to and including August 2, 2019, to file their responses. Signed by Judge Leigh Martin May on 6/18/2019. (tmf) (Entered: 06/19/2019) |
| 06/25/2019 | 84 | FILED IN ERROR NOTICE Of Filing by Brad Raffensperger re 75 Notice of Filing (Attachments: # 1 Exhibit Redacted Exhibit E Deposition Transcript of Aaron Gilmer)(Correia, Cristina) Modified on 6/25/2019 to edit text. Talked to atty (bnw). (Entered: 06/25/2019) |
| 06/25/2019 | 85 | NOTICE Of Filing Redacted Exhibits by Brad Raffensperger RE: 73 Motion for Summary Judgment and 75 Notice of Filing (Attachments: # 1 Exhibit Redacted Exhibit E Deposition Transcript of Aaron Gilmer)(Correia, Cristina) Modified on 6/25/2019 to edit text and add document link. (aaq). (Entered: 06/25/2019) |
| 06/25/2019 | 86 | NOTICE Of Filing Redacted Exhibits by Brad Raffensperger RE: 73 Motion for Summary Judgment and 75 Notice of Filing (Attachments: # 1 Exhibit Redacted Exhibit 1 to Gilmer Deposition− Nomination Petition)(Correia, Cristina) Modified on 6/25/2019 to edit text and add document link. (aaq). (Entered: 06/25/2019) |
| 06/25/2019 | 87 | NOTICE Of Filing Redacted Exhibits by Brad Raffensperger Re: 73 Motion for Summary Judgment and 75 Notice of Filing (Attachments: # 1 Exhibit Redacted Exhibit 2 to Aaron Gilmer Deposition)(Correia, Cristina) Modified on 6/25/2019 to edit text and add document link. (aaq). (Entered: 06/25/2019) |
| 06/25/2019 | 88 | NOTICE Of Filing Redacted Exhibits by Brad Raffensperger RE: 73 Motion for Summary Judgment and 75 Notice of Filing (Attachments: # 1 Exhibit Redacted Exhibit 3 to Aaron Gilmer Deposition)(Correia, Cristina) Modified on 6/25/2019 to edit text and add document link. (aaq). (Entered: 06/25/2019) |
| 06/25/2019 | 89 | NOTICE Of Filing Redacted Exhibits by Brad Raffensperger RE: 73 Motion for Summary Judgment and 75 Notice of Filing (Attachments: # 1 Exhibit Redacted Exhibit 6 to Aaron Gilmer Deposition)(Correia, Cristina) Modified on 6/25/2019 to edit text and add document link. (aaq). (Entered: 06/25/2019) |
| 06/25/2019 | 90 | |

| | | |
|---|---|---|
| | | NOTICE Of Filing Redacted Exhibits by Brad Raffensperger RE: 73 Motion for Summary Judgment and 76 Notice of Filing (Attachments: # 1 Exhibit Redacted Exhibit 1 to Richard Winger Deposition)(Correia, Cristina) Modified on 6/25/2019 to edit text and add document link. (aaq). (Entered: 06/25/2019) |
| 06/25/2019 | 91 | NOTICE Of Filing Redacted Exhibits by Brad Raffensperger re 73 MOTION for Summary Judgment (Attachments: # 1 Exhibit Redacted Exhibit A−2 Letter from Chris Harvey to Martin Cowen)(Correia, Cristina) Modified on 6/25/2019 to edit text. (aaq). (Entered: 06/25/2019) |
| 06/25/2019 | 92 | NOTICE Of Filing Redacted Exhibits by Brad Raffensperger RE: 73 Motion for Summary Judgment. (Attachments: # 1 Exhibit Exhibit A−3 Letter from Chris Harvey to Aaron Gilmer)(Correia, Cristina) Modified on 6/25/2019 to edit text. (aaq). (Entered: 06/25/2019) |
| 06/27/2019 | | Submission of the 71 MOTION for Leave to File Matters Under Seal re: 70 Notice of Filing to District Judge Leigh Martin May. (aaq) (Entered: 06/27/2019) |
| 07/01/2019 | 93 | ORDER granting 71 Motion for Leave to File Matters Under Seal. The Clerk is hereby DIRECTED to seal Attachment #1 to the plaintiffs' notice of filing of document under seal ECF 70 . Signed by Judge Leigh Martin May on 7/1/2019. (tmf) (Entered: 07/01/2019) |
| 07/30/2019 | 94 | Consent MOTION for Extension of Time MSJ re: 69 MOTION for Summary Judgment by Brad Raffensperger. (Attachments: # 1 Text of Proposed Order Proposed Order)(Correia, Cristina) (Entered: 07/30/2019) |
| 07/31/2019 | 95 | ORDER granting 94 Motion for Extension of Time: This matter is before the Court on a Consent Motion for Extension of Time to file responses to motions for summary judgment and statements of undisputed material facts. For good cause shown, the Motion is hereby GRANTED. The parties shall have up to and including August 7, 2019, to file their responses. Signed by Judge Leigh Martin May on 7/31/2019. (tmf) (Entered: 07/31/2019) |
| 08/07/2019 | 96 | RESPONSE in Opposition re 73 MOTION for Summary Judgment filed by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 plaintiffs' response to the defendant's statement of material facts, # 2 plaintiffs' statement of additional facts, # 3 Exhibit Index, # 4 Exhibit 43 − FEC Reports (excerpts), # 5 Exhibit 44 − Primary Runoff Election Results 2000−2018, # 6 Exhibit 45 − Deposition of Chris Harvey (excerpts), ATTACHMENT #7 SEALED pursuant to 102 order # 7 Exhibit 46 − Declaration of J. David Gillespie, Ph.D.)(Sells, Bryan) Modified on 8/8/2019 to edit text(bnw). Modified on 8/8/2019 to edit redline text(tmf). (Entered: 08/07/2019) |
| 08/07/2019 | 97 | Response to Statement of Material Facts re 69 MOTION for Summary Judgment filed by Brad Raffensperger. (Correia, Cristina) (Entered: 08/07/2019) |
| 08/07/2019 | 98 | RESPONSE in Opposition re 69 MOTION for Summary Judgment filed by Brad Raffensperger. (Correia, Cristina) (Entered: 08/07/2019) |
| 08/07/2019 | 99 | NOTICE by Brad Raffensperger re 69 MOTION for Summary Judgment *Objections to Plaintiffs' Evidence in Support of Summary Judgment* (Correia, |

| | | | |
|---|---|---|---|
| | | | Cristina) (Entered: 08/07/2019) |
| 08/08/2019 | 100 | | NOTICE Of Filing of Redacted Document by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds re 96 Response in Opposition to Motion,, (Attachments: # 1 Exhibit 46 − Declaration of J. David Gillespie, Ph.D.)(Sells, Bryan) (Entered: 08/08/2019) |
| 08/08/2019 | 101 | | Consent MOTION for Leave to File Matters Under Seal re: 96 Response in Opposition to Motion,, by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) (Entered: 08/08/2019) |
| 08/08/2019 | 102 | | ORDER granting 101 Motion for Leave to File Matters Under Seal. The Clerk is hereby DIRECTED to seal Exhibit 46 which was attached to the plaintiffs' response to the defendant's motion for summary judgment. (ECF 96 −7.) Signed by Judge Leigh Martin May on 8/8/2019. (tmf) (Entered: 08/08/2019) |
| 08/13/2019 | 103 | | MOTION for Extension of Time to file Reply in support of MSJ by Brad Raffensperger. (Attachments: # 1 Text of Proposed Order)(Correia, Cristina) (Entered: 08/13/2019) |
| 08/14/2019 | 104 | | ORDER granting 103 Consent Motion for Extension of Time to file reply briefs in support of motions for summary judgment. The parties shall have up to and including August 28, 2019, to file their reply briefs. Signed by Judge Leigh Martin May on 8/14/2019. (tmf) (Entered: 08/14/2019) |
| 08/28/2019 | 105 | | REPLY BRIEF re 69 MOTION for Summary Judgment filed by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Plaintiffs' Reply to the Defendant's Response to the Plaintiffs' Statement of Material Facts, # 2 Plaintiffs' Response to the Defendant's Objections to the Plaintiffs' Evidence, # 3 Exhibit Index, # 4 Exhibit 47 − Deposition of John Hallman (excerpts), # 5 Exhibit 48 − Presidential Preference Primary Results by Congressional District, # 6 Exhibit 49 − 2016 Public Service Commission Results by Congressional District, # 7 Exhibit 50 − Appellant's Briefs (excerpts), # 8 Exhibit 51 − Deposition of John Monds (excerpts))(Sells, Bryan) (Entered: 08/28/2019) |
| 08/28/2019 | 106 | | REPLY BRIEF re 73 MOTION for Summary Judgment filed by Brad Raffensperger. (Attachments: # 1 Statement of Material Facts Response to Statement of Add'l Facts)(Correia, Cristina) (Entered: 08/28/2019) |
| 08/28/2019 | 107 | | NOTICE Of Filing DEPOSITION by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds *DEPOSITION OF JOHN HALLMAN* (Attachments: # 1 Deposition of John Hallman (04/12/19), # 2 Exhibit 7 − July 2018 petition module, # 3 Exhibit 8 − ElectionNet Instructions)(Sells, Bryan) Modified on 8/29/2019 to edit text(tmf). (Entered: 08/28/2019) |
| 08/28/2019 | 108 | | NOTICE Of Filing DEPOSITION by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds *DEPOSITION OF JOHN MONDS* (Attachments: # 1 Deposition of John Monds (01/11/19), # 2 Exhibit 1 − 2014 convention minutes, # 3 Exhibit 2 − 2016 convention minutes, # 4 Exhibit 3 − 2017 convention minutes, # 5 Exhibit 4 − 2018 convention minutes)(Sells, Bryan) Modified on 8/29/2019 (tmf). (Entered: 08/28/2019) |

| 08/29/2019 | | Submission of 69 MOTION for Summary Judgment , 73 MOTION for Summary Judgment , to District Judge Leigh Martin May. (tmf) (Entered: 08/29/2019) |
|---|---|---|
| 09/13/2019 | 109 | MOTION to Exclude Expert Report *of Darcy Richardson* with Brief In Support by Brad Raffensperger. (Correia, Cristina) (Entered: 09/13/2019) |
| 09/16/2019 | 110 | Consent MOTION for Extension of Time file a response re: 109 MOTION to Exclude Expert Report *of Darcy Richardson* by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) (Entered: 09/16/2019) |
| 09/17/2019 | 111 | ORDER granting 110 Motion for Extension of Time. This matter is before the Court on the plaintiffs' consent motion for a one−week extension of time to respond to the defendant's motion to exclude (ECF 109 ). For good cause shown, the motion is hereby GRANTED. The plaintiffs shall have up to and including October 4, 2019, to file their response to the defendant's motion. The Court notes that this is the 13th extension on this case. Future extensions may not be granted. Signed by Judge Leigh Martin May on 9/17/2019. (tmf) (Entered: 09/17/2019) |
| 09/17/2019 | 112 | MOTION to Withdraw Josiah Benjamin Heidt as Attorney by Brad Raffensperger. (Heidt, Josiah) (Entered: 09/17/2019) |
| 09/23/2019 | 113 | ORDER: Plaintiffs' Motion for Summary Judgment 69 is DENIED. Defendant's Motion for Summary Judgment 73 is GRANTED in PART and DENIED IN PART AS MOOT. Defendant's Motion to Exclude Expert Report of Darcy Richardson 109 is DENIED AS MOOT. The Clerk is DIRECTED to CLOSE this case. Signed by Judge Leigh Martin May on 9/23/2019. (tmf) (Entered: 09/24/2019) |
| 09/23/2019 | | Civil Case Terminated. (tmf) (Entered: 09/24/2019) |
| 09/24/2019 | 114 | CLERK'S JUDGMENT dismissing action in favor of Defendant. (tmf)−−Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist−− (Entered: 09/24/2019) |
| 10/10/2019 | 115 | NOTICE OF APPEAL as to 114 Clerk's Judgment, 113 Order on Motion for Summary Judgment,,,, Order on Motion to Exclude, by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. Filing fee $ 505, receipt number AGANDC−8997355. Transcript Order Form due on 10/24/2019 (Sells, Bryan) (Entered: 10/10/2019) |
| 10/11/2019 | 116 | USCA Appeal Transmission Letter to 11th Circuit re: 115 Notice of Appeal filed by Allen Buckley, Aaron Gilmer, John Mnds, Martin Cowen, Libertarian Party of Georgia, Inc. (kac) (Entered: 10/11/2019) |
| 10/11/2019 | | Transmission of Certified Copy of Notice of Appeal, Clerk's Judgment, Order and Docket Sheet to US Court of Appeals re: 115 Notice of Appeal. (kac) (Entered: 10/11/2019) |
| 10/16/2019 | 117 | USCA Acknowledgment of 115 Notice of Appeal filed by Allen Buckley, Aaron Gilmer, John Monds, Martin Cowen, Libertarian Party of Georgia, Inc. Case Appealed to USCA − 11th Circuit. USCA Case Number 19−14055−F. (kac) (Entered: 10/16/2019) |

| 10/18/2019 | 118 | | TRANSCRIPT ORDER FORM re 115 Notice of Appeal,. (Sells, Bryan) (Entered: 10/18/2019) |
|---|---|---|---|
| 10/18/2019 | | | Set F.R.A.P. 11 Certification of the Record on Appeal due date deadline re: 118 Transcript Order Form. Fed.R.App.P. 11 Certification due on 11/1/2019. (No hearing.)(kac) (Entered: 10/18/2019) |
| 11/07/2019 | | | Pursuant to F.R.A.P.11(c), the Clerk certifies that the record is complete for purposes of this appeal re: 115 Notice of Appeal. Case Appealed to USCA − 11th Circuit. USCA Case Number 19−14055−FF. The entire record on appeal is available electronically. (kac) (Entered: 11/07/2019) |
| 06/03/2020 | 119 | | USCA Opinion received (VACATED AND REMANDED) re: 115 Notice of Appeal filed by Allen Buckley, Aaron Gilmer, John Monds, Martin Cowen, Libertarian Party of Georgia, Inc. In accordance with FRAP 41(b), the USCA mandate will issue at a later date. Case Appealed to USCA − 11th Circuit. USCA Case Number 19−14065−HH. (kac) (Entered: 06/03/2020) |
| 06/05/2020 | 120 | | USCA Opinion received (VACATED AND REMANDED) re: 115 Notice of Appeal filed by Allen Buckley, Aaron Gilmer, John onds, Martin Cowen, Libertarian Party of Georgia, Inc. In accordance with FRAP 41(b), the USCA mandate will issue at a later date. Case Appealed to USCA − 11th Circuit. USCA Case Number 19−14065−HH. (kac) (Entered: 06/05/2020) |
| 07/07/2020 | 121 | | Copy of MANDATE of USCA VACATING AND REMANDING to the District Court for further action re: 115 Notice of Appeal, filed by Allen Buckley, Aaron Gilmer, John Monds, Martin Cowen, Libertarian Party of Georgia, Inc. Case Appealed to Eleventh Circuit Case Number 19−14065−HH. (bnp) (Entered: 07/08/2020) |
| 07/08/2020 | 122 | | PROPOSED ORDER re: 121 USCA Mandate. (bnp) (Entered: 07/08/2020) |
| 07/08/2020 | | | Submission of 121 USCA Mandate and 122 Proposed Order to District Judge Leigh Martin May. (bnp) (Entered: 07/08/2020) |
| 07/08/2020 | 123 | | ORDER making the USCA mandate the judgment of this Court re 115 Notice of Appeal, Case Appealed to Eleventh Circuit Case Number 19−14065−HH. Signed by Judge Leigh Martin May on 7/8/2020. (bnp) (Entered: 07/08/2020) |
| 07/08/2020 | 124 | | CLERK'S REMITTITUR NOTICE re 123 USCA Mandate Order. (bnp) (Entered: 07/08/2020) |
| 07/13/2020 | 125 | | FIFTH AMENDMENT TO GENERAL ORDER 20−01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID−19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 7/10/2020 (rvb) (ADI) (Entered: 07/13/2020) |
| 07/22/2020 | 126 | | MOTION to Amend 63 Order on Motion for Extension of Time to Complete Discovery, by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) (Entered: 07/22/2020) |
| 07/24/2020 | 127 | | ORDER denying 126 Motion to Amend Scheduling Order without prejudice. Defendant's counsel is ORDERED to confer with Plaintiff's counsel within the next 7 days as to an appropriate scheduling order. The parties are then to file a consent scheduling order or individual scheduling orders for the Court's |

| | | | |
|---|---|---|---|
| | | | consideration if you are not able to reach agreement. These should be filed within 10 days of the entry of this order. Entered by Judge Leigh Martin May on 07/24/20. (LMM) (Entered: 07/24/2020) |
| 07/24/2020 | 128 | | NOTICE of Appearance by Charlene S McGowan on behalf of Brad Raffensperger (McGowan, Charlene) (Entered: 07/24/2020) |
| 07/31/2020 | 129 | | Joint MOTION to Amend 63 Order on Motion for Extension of Time to Complete Discovery, by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) (Entered: 07/31/2020) |
| 08/03/2020 | 130 | | ORDER: This matter is before the Court on the parties' joint motion to amend the scheduling order. (ECF 129 .) For good cause shown, the Motion is hereby GRANTED. Motions for summary judgment are due on or before August 28, 2020. Responses to motions for summary judgment are due on or before September 25, 2020. Daubert motions are due on or before September 11, 2020, or 30 days after entry of this Court's ruling on any pending motions for summary judgment. The proposed Pretrial Order is due 30 days after this Courts ruling on any pending motions for summary judgment. Signed by Judge Leigh Martin May on 8/3/2020. (tmf) (Entered: 08/03/2020) |
| 08/04/2020 | 131 | | SIXTH AMENDMENT TO GENERAL ORDER 20−01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID−19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 08/03/2020. (mmc) (ADI) (Entered: 08/04/2020) |
| 08/20/2020 | 132 | | Unopposed MOTION for Leave to File Excess Pages by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) (Entered: 08/20/2020) |
| 08/20/2020 | 133 | | ORDER granting 132 Motion for Leave to File Excess Pages. This matter is before the Court on the plaintiffs' unopposed motion for leave to exceed the page limit. For good cause shown, the motion is hereby GRANTED. The page limit for the plaintiffs' brief in support of their second motion for summary judgment, and the defendant's brief in response, shall be 50 pages. Signed by Judge Leigh Martin May on 8/20/2020. (tmf) (Entered: 08/20/2020) |
| 08/28/2020 | 134 | | Second MOTION for Summary Judgment with Brief In Support by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Brief)(Sells, Bryan) −−Please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained on the Court's website.−− (Entered: 08/28/2020) |
| 08/28/2020 | 135 | | Second MOTION for Summary Judgment with Brief In Support by Brad Raffensperger. (Attachments: # 1 Brief Brief in Support, # 2 Exhibit Exhibit A to Brief in Support, # 3 Statement of Material Facts Statement of Material Facts, # 4 Exhibit Second Declaration of Chris Harvey)(McGowan, Charlene) −−Please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained on the Court's website.−− (Entered: 08/28/2020) |
| 09/02/2020 | 136 | | |

| | | | |
|---|---|---|---|
| | | | SEVENTH AMENDMENT TO GENERAL ORDER 20−01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID−19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 9/1/2020. (rvb) (ADI) (Entered: 09/02/2020) |
| 09/10/2020 | 137 | | MOTION to Exclude Expert Witness with Brief In Support by Brad Raffensperger. (McGowan, Charlene) (Entered: 09/10/2020) |
| 09/21/2020 | 138 | | RESPONSE in Opposition re 137 MOTION to Exclude Expert Witness filed by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Sells, Bryan) (Entered: 09/21/2020) |
| 09/25/2020 | 139 | | RESPONSE in Opposition re 135 Second MOTION for Summary Judgment filed by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Plaintiffs' Response to the Defendant's Statement of Material Facts, # 2 Plaintiffs' Statement of Additional Facts, # 3 Exhibit Index, # 4 Exhibit 52: Political−Body Nomination Petition Form, # 5 Exhibit 53: Presidential Candidates 2016−2020, # 6 Exhibit 54: Primary Election Results 2010−2020, # 7 Exhibit 55: Second Declaration of Ryan Graham, # 8 Exhibit 56: September 14 Email, # 9 Exhibit 57: McGowan−Sells Emails)(Sells, Bryan) (Entered: 09/25/2020) |
| 09/25/2020 | 140 | | RESPONSE in Opposition re 134 Second MOTION for Summary Judgment filed by Brad Raffensperger. (McGowan, Charlene) (Entered: 09/25/2020) |
| 09/29/2020 | 141 | | EIGHTH AMENDMENT TO GENERAL ORDER 20−01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID19 AND RELATED CORONA VIRUS. Signed by Judge Thomas W. Thrash, Jr. on 09/28/2020. (rvb) (ADI) (Entered: 09/29/2020) |
| 10/05/2020 | 142 | | Unopposed MOTION for Leave to File Excess Pages by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) (Entered: 10/05/2020) |
| 10/05/2020 | 143 | | REPLY BRIEF re 137 MOTION to Exclude Expert Witness filed by Brad Raffensperger. (McGowan, Charlene) (Entered: 10/05/2020) |
| 10/06/2020 | 144 | | ORDER granting 142 Motion for Leave to File Excess Pages. The page limit for the plaintiffs' reply brief in support of their second motion for summary judgment shall be 20 pages. Signed by Judge Leigh Martin May on 10/6/2020. (rjs) (Entered: 10/06/2020) |
| 10/06/2020 | | | Submission of 137 MOTION to Exclude Expert Witness, to District Judge Leigh Martin May. (rvb) (Entered: 10/06/2020) |
| 10/06/2020 | 145 | | Unopposed MOTION for Extension of Time File Reply with Brief In Support by Brad Raffensperger. (Attachments: # 1 Text of Proposed Order)(McGowan, Charlene) (Entered: 10/06/2020) |
| 10/06/2020 | 146 | | Minute Entry for proceedings held before Judge Leigh Martin May: A telephone conference was held to address the parties' discovery dispute. The Court heard from Plaintiffs' and Defendant's counsel. The Court ordered Defendant to produce the petition filed by Andrew Bell and related memo by Friday, October 9th. The parties agreed that the petition is subject to the existing protective order. The Court denied Plaintiffs' request for e−net records |

| | | | |
|---|---|---|---|
| | | | at this time. (Court Reporter Montrell Vann)(rjs) (Entered: 10/07/2020) |
| 10/07/2020 | 147 | | ORDER granting 145 Motion for Extension of Time. The parties shall have up to and including October 16, 2020, to file their reply briefs. Signed by Judge Leigh Martin May on 10/7/2020. (rjs) (Entered: 10/07/2020) |
| 10/16/2020 | 148 | | REPLY BRIEF re 134 Second MOTION for Summary Judgment filed by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Sells, Bryan) (Entered: 10/16/2020) |
| 10/16/2020 | 149 | | REPLY BRIEF re 135 Second MOTION for Summary Judgment filed by Brad Raffensperger. (McGowan, Charlene) (Entered: 10/16/2020) |
| 10/19/2020 | | | Submission of 134 Second MOTION for Summary Judgment , 135 Second MOTION for Summary Judgment , to District Judge Leigh Martin May. (tmf) (Entered: 10/19/2020) |
| 11/30/2020 | 150 | | Request for Leave of Absence for the following date(s): 12/13/20, 12/14/20, 12/15/20, 12/16/20, and 12/17/20, by Bryan Ludington Sells. (Sells, Bryan) (Entered: 11/30/2020) |
| 12/01/2020 | 151 | | First MOTION for judicial notice by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Exhibit 1: data from the Secretary of State, # 2 Text of Proposed Order)(Sells, Bryan) (Entered: 12/01/2020) |
| 12/09/2020 | 152 | | NINTH AMENDMENT TO GENERAL ORDER 20−01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID−19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 12/08/2020. (rvb) (ADI) (Entered: 12/09/2020) |
| 12/21/2020 | | | Submission of 151 First MOTION for judicial notice , to District Judge Leigh Martin May. (tmf) (Entered: 12/21/2020) |
| 12/22/2020 | 153 | | ORDER granting the 151 Plaintiffs' first motion for judicial notice. The Court takes notice of the following fact: In the 2020 election, the Libertarian Party of Georgia retained its qualification under O.C.G.A. § 21−2−180(1) to nominate candidates for statewide public office by convention when three of its nominees for statewide public office (Shane Hazel for U.S. Senator; and Nathan Wilson and Elizabeth Melton for Public Service Commissioner) received votes totaling at least one percent of the total number of registered voters in that election. Signed by Judge Leigh Martin May on 12/22/20. (aaq) (Entered: 12/22/2020) |
| 01/19/2021 | 154 | | Unopposed MOTION to Supplement 134 Second MOTION for Summary Judgment by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Exhibit 58 − November 2020 Active Voters by Congressional District, # 2 Text of Proposed Order)(Sells, Bryan) (Entered: 01/19/2021) |
| 01/20/2021 | 155 | | ORDER granting 154 Motion to Supplement. Upon consideration of the plaintiffs' unopposed motion for leave to supplement the record (ECF 154 ), and for good cause shown, it is hereby ordered that the motion is GRANTED. Exhibit 58, which is attached to the plaintiffs' motion, shall be included in the summary judgment record. Signed by Judge Leigh Martin May on 1/20/2021. (tmf) (Entered: 01/20/2021) |

| 01/28/2021 | 156 | TENTH AMENDMENT TO GENERAL ORDER 20−01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID−19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 01/27/2021. (rvb) (ADI) (Entered: 01/28/2021) |
|---|---|---|
| 03/10/2021 | 157 | ELEVENTH AMENDMENT TO GENERAL ORDER 20−01 RE: COURT OPERATIONS UNDER THE EXIGENT CIRCUMSTANCES CREATED BY COVID−19 AND RELATED CORONAVIRUS. Signed by Judge Thomas W. Thrash, Jr. on 03/09/2021 (ddm) (ADI) (Entered: 03/10/2021) |
| 03/25/2021 | 158 | Request for Leave of Absence for the following date(s): 4/11/21 through 4/16/21, by Bryan Ludington Sells. (Sells, Bryan) Modified on 3/26/2021 to modify dates (rvb). (Entered: 03/25/2021) |
| 03/29/2021 | 159 | ORDER − Plaintiffs' Second Motion for Summary Judgment 134 is GRANTED in part and DENIED in part. Defendant's Second Motion for Summary Judgment 135 is likewise GRANTED in part and DENIED in part. Plaintiffs' Second Motion for Summary Judgment 134 is GRANTED as to their First and Fourteenth Amendment claim. Defendant's Motion for Summary Judgment 135 is DENIED as to that claim. The Court DIRECTS Plaintiffs to submit within 21 days of the entry of this Order briefing proposing an appropriate remedy related to the First and Fourteenth Amendment claim and addressing their claim that Georgia's 5% requirement violates the Equal Protection Clause because it was adopted with a discriminatory purpose. Defendant and Plaintiffs shall then have the ordinary response and reply times. Plaintiffs' Second Motion for Summary Judgment 134 is DENIED as to their equal−protection claim. Defendant's Second Motion for Summary Judgment 135 is GRANTED as to Plaintiffs' classification theory for that claim. Plaintiffs did not move for summary judgment on their discrimination theory for their equal−protection claim, and Defendant did not specifically address that claim in his briefing. Plaintiffs are DIRECTED to show cause why their remaining equal−protection claim should not be dismissed as moot in the same brief they are submitting as to remedies. Even if Plaintiffs do not agree that the claim is moot, they should address whether they are still requesting a trial as to that claim. Defendant can also respond to this issue in his response brief. Plaintiffs shall be entitled to reply. Defendant has filed a motion to exclude the testimony of Plaintiffs' expert Darcy Richardson. Dkt. No. 137 . This testimony only pertains to Plaintiffs' theory that Georgia's 5% requirement violates the Equal Protection Clause because it was adopted with a discriminatory purpose. The Court will wait to rule on this motion until after it becomes clear whether this claim survives. Signed by Judge Leigh Martin May on 3/29/2021. (tcc) (Entered: 03/29/2021) |
| 04/09/2021 | 160 | RESPONSE re 159 Order on Motion for Summary Judgment,,,,,,,,,,,,,,,,, filed by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Sells, Bryan) (Entered: 04/09/2021) |
| 04/16/2021 | 161 | Consent MOTION for Extension of Time File Response re: 160 Response (Non−Motion) with Brief In Support by Brad Raffensperger. (Attachments: # 1 Text of Proposed Order)(McGowan, Charlene) (Entered: 04/16/2021) |
| 04/19/2021 | 162 | ORDER granting 161 Motion for Extension of Time. Defendant shall have up to and including April 30, 2021, to file his response. Signed by Judge Leigh Martin May on 4/19/2021. (rjc) (Entered: 04/19/2021) |

| 04/30/2021 | 163 | | RESPONSE re 160 Response (Non−Motion) *to Plaintiffs' Brief in Response to the Court's March 29 Order* filed by Brad Raffensperger. (McGowan, Charlene) (Entered: 04/30/2021) |
| 05/03/2021 | | | Submission of 160 Response (Non−Motion), 159 Order on Motion for Summary Judgment, 163 Response (Non−Motion), to District Judge Leigh Martin May. (tmf) (Entered: 05/03/2021) |
| 05/14/2021 | 164 | | RESPONSE re 163 Response (Non−Motion) *to the Court's March 29 order 159* filed by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Sells, Bryan) (Entered: 05/14/2021) |
| 08/23/2021 | 165 | | ORDER: The Court DIRECTS the parties, if they have objections, to respond to this Orders remedy proposal within 10 days of the entry of this Order. The parties should address the Courts proposal to reduce the petition−signature requirement to 1% of registered voters in the prior election while leaving the rest of the ballot−access scheme in place. The Court finds that Plaintiffs' remaining theory under the equalprotection claim is MOOT. Defendant's Motion to Exclude 137 is DENIED as MOOT. Signed by Judge Leigh Martin May on 8/23/2021. (rjc) (Entered: 08/23/2021) |
| 09/02/2021 | 166 | | OBJECTIONS re 165 Order on Motion to Exclude *Objections to Court's Proposed Remedy* filed by Brad Raffensperger. (McGowan, Charlene) Modified on 9/3/2021 to edit text. (cmd) (Entered: 09/02/2021) |
| 09/02/2021 | 167 | | RESPONSE re 165 Order on Motion to Exclude filed by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Exhibit 1: Declaration of Richard Winger, # 2 Exhibit 2: Boyd Quits Georgia Governor's Race, # 3 Exhibit 3: Dalton's Dashler Ends Run For Governor)(Sells, Bryan) Modified on 9/3/2021 to edit text. (cmd) (Entered: 09/02/2021) |
| 09/03/2021 | 168 | | ORDER: This case comes before the Court on the parties' responses 166 , 167 to the Court's proposed remedy 165 . After due consideration, the Court enters the following Order: Defendant Brad Raffensperger is PERMANENTLY ENJOINED from enforcing the five percent petition−signature requirement in O.C.G.A. § 21−2−170(b). Until the Georgia General Assembly enacts a permanent measure, a candidate to whom this signature requirement applies may access the ballot by submitting a nomination petition signed by a number of voters equal to one percent of the total number of registered voters eligible to vote in the last election for the office the candidate is seeking, and the signers of such petition shall be registered and eligible to vote in the election at which such candidate seeks to be elected. Signed by Judge Leigh Martin May on 9/3/2021. (cmd) (Entered: 09/03/2021) |
| 09/03/2021 | | | Civil Case Terminated. (cmd) (Entered: 09/14/2021) |
| 09/13/2021 | 169 | | Unopposed MOTION for Extension of Time to File a Motion for Attorney's Fees and Bill of Costs re: 168 Order−Permanent Injunction,,, by Allen Buckley, Martin Cowen, Aaron Gilmer, Libertarian Party of Georgia, Inc., John Monds. (Attachments: # 1 Text of Proposed Order)(Sells, Bryan) (Entered: 09/13/2021) |
| 09/14/2021 | 170 | | ORDER granting 169 Motion for Extension of Time. The plaintiffs shall have until December 16, 2021, to file a motion for attorneys fees and expenses and |

| | | | |
|---|---|---|---|
| | | | a bill of costs in connection with the judgment entered by this Court on September 3, 2021. Signed by Judge Leigh Martin May on 9/14/2021. (ah) (Entered: 09/14/2021) |
| 09/15/2021 | 171 | | CLERK'S JUDGMENT in favor of Plaintiffs. (cmd)──Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist── (Entered: 09/15/2021) |
| 09/17/2021 | 172 | | NOTICE OF APPEAL as to 171 Clerk's Judgment, 168 Order─Permanent Injunction,,, 159 Order on Motion for Summary Judgment,,,,,,,,,,,,,,,,, by Brad Raffensperger. Filing fee $ 505, receipt number AGANDC─11266016. Transcript Order Form due on 10/1/2021 (McGowan, Charlene) (Entered: 09/17/2021) |
| 09/17/2021 | 173 | | USCA Appeal Transmission Letter to 11th Circuit re: 172 Notice of Appeal filed by Brad Raffensperger. (kac) (Entered: 09/17/2021) |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARTIN COWEN, *et al.*,          :
                                 :
                                 :
       Plaintiffs,               :
                                 :
v.                               :
                                 :
BRAD RAFFENSPERGER, in his       :        CIVIL ACTION NO.
official capacity as Secretary of State  :   1:17-CV-04660-LMM
of Georgia,                      :
                                 :
                                 :
       Defendant.                :

## **ORDER**

This case comes before the Court on Plaintiffs' Second Motion for

Summary Judgment [134], Defendant's Second Motion for Summary Judgment

[135], and Defendant's Motion to Exclude Expert Witness [137]. The Court

previously granted Defendant's first motion for summary judgment. See Dkt. No.

[113]. On appeal, the Eleventh Circuit vacated that decision and remanded to this

Court. See Cowen v. Ga. Sec'y of State, 960 F.3d 1339, 1340 (11th Cir. 2020). The

parties then filed the present Motions. After considering the Eleventh Circuit's

decision, the parties' briefs, and the evidence in the record, the Court enters the

following Order:

1

## I.   FACTUAL BACKGROUND

This case is a constitutional challenge to Georgia's ballot-access restrictions for third-party and independent candidates seeking election to the United States House of Representatives. Plaintiffs are the Libertarian Party of Georgia, prospective Libertarian candidates, and Libertarian voters. Plaintiffs seek injunctive relief and a declaration that Georgia's ballot-access restrictions (1) unconstitutionally burden Plaintiffs' rights under the First and Fourteenth Amendments and (2) violate the Equal Protection Clause of the Fourteenth Amendment. See Dkt. No. [1] ¶¶ 148–52.

### A. History of Georgia's Ballot-Access Restrictions

Georgia enacted its first ballot-access law in 1922, which provided that an independent candidate, or the nominee of any party, could appear on the general-election ballot as a candidate for any office with no petition and no fee. Dkt. No. [97] ¶ 13. In 1943, Georgia adopted a 5% petition requirement for access to the general-election ballot. Id. ¶ 15. That law allowed candidates of any political party that received at least 5% of the votes in the last general election for the office to appear on the general-election ballot without a petition or fee. Id. All other candidates were required to file a petition signed by at least 5% of the registered voters in the territory covered by the office. Id. The deadline for the petition was thirty days before the general election. Id. ¶ 16. Between 1943 and 1999, the Georgia General Assembly adopted a series of incremental changes to the petition deadline and imposed various other restrictions. Id. ¶¶ 17–26.

## B. Georgia's Current Ballot-Access Laws

Georgia's current ballot-access laws distinguish between (1) candidates nominated by a political party; (2) candidates nominated by a political body; and, (3) independent candidates. Under Georgia law, a "political party" is any political organization whose nominee received at least twenty percent of the vote in the last gubernatorial or presidential election. O.C.G.A. § 21-2-2(25). Political parties choose nominees in partisan primaries, and the candidate nominated by the party automatically appears on the general election ballot for any statewide or district office. O.C.G.A. § 21-2-130(1). Presently, the only entities that meet the definition of "political party" under Georgia law are the Democratic Party of Georgia and the Georgia Republican Party. Dkt. No. [97] ¶ 38.

A "political body" is any political organization other than a political party. O.C.G.A. § 21-2-2(23). The Libertarian Party is a political body under Georgia law. Dkt. No. [97] at 9. Political bodies must nominate candidates for partisan offices by convention, O.C.G.A. § 21-2-170(g), and the nominees' access to the general-election ballot may depend on whether the nominee seeks a statewide office, a non-statewide office, or the office of the President of the United States.

Under Georgia law, a political body may become "qualified to nominate candidates for statewide public office by convention." O.C.G.A. § 21-2-180. A political body becomes qualified to nominate candidates for *statewide* public office by convention if: (1) it submits a qualifying petition signed by at least one percent of the total number of registered voters at the last general election; or (2)

3

it nominated a candidate for statewide public office in the last general election who received votes totaling at least one percent of the total number of registered voters in the election. O.C.G.A. § 21-2-180. The Libertarian Party has been qualified for statewide offices under § 21-2-180 since 1988. Dkt. No. [97] ¶ 204. Candidates for statewide offices nominated by a political body that are qualified under § 21-2-180 appear automatically on the general election ballot without a nomination petition. O.C.G.A. § 21-2-132(e)(5).

However, candidates for *non-statewide* offices (including the office of U.S. Representative) nominated by a § 21-2-180-qualified political body do not appear automatically on the general-election ballot. Instead, such candidates must submit (1) a notice of candidacy and qualifying fee,[1] see O.C.G.A. § 21-2-132(d), and (2) a nomination petition signed by 5% of the number of registered voters eligible to vote for that office in the last election, see O.C.G.A. § 21-2-170(b). Thus, in order for the Libertarian Party to have run a full a slate of candidates for U.S. Representative in 2020, it would have had to pay the necessary qualifying fees pursuant to § 21-2-132(d) and submit the necessary 5% nomination petitions pursuant to O.C.G.A. § 21-2-170(b). This ballot-access scheme for *non-statewide*

---

[1] Pursuant to O.C.G.A. § 21-2-132(g), a candidate may file a pauper's affidavit in lieu of paying the qualifying fee. A pauper's affidavit requires the candidate to swear under oath that the candidate has neither the assets nor income to pay the filing fee, and it requires the candidate to submit a personal financial statement. Id.

4

political-body and independent candidates is the target of Plaintiffs'
constitutional challenge.

The qualifying fee for most partisan public offices, including U.S.
Representative, is 3% of the annual salary of the office. O.C.G.A. § 21-2-
131(a)(1)(A). The current annual salary for U.S. Representatives is $174,000. Dkt.
No. [97] ¶ 64. As such, the qualifying fee for each candidate for U.S.
Representative is $5,220. Because Georgia currently has fourteen members of the
U.S. House of Representatives, each of whom is elected from a single-member
district, the Libertarian Party would have needed to pay $73,080 in qualifying
fees in order to run a full slate of U.S. Representative candidates in 2020. Id. ¶¶
60, 64. The Secretary of State estimates that the Libertarian Party would also
have also needed 321,713 signatures to run a full slate of U.S. Representative
candidates in 2020. Id. ¶ 63; see also Dkt. No. [69-34] at 8.

Qualifying fees for political-party candidates for U.S. Representative are
paid directly to the state political party, which retains 75% and sends 25% to the
Secretary of State. O.C.G.A. § 21-2-131(b)–(c). Qualifying fees for independent
and political-body candidates for U.S. Representative are paid to the Secretary of
State. O.C.G.A. § 21-2-131(b)(2). For political body candidates, the Secretary
retains twenty-five percent and sends seventy-five percent to the political body.
O.C.G.A. § 21-2-131(c)(4)(A). While the statute requires the Secretary of State to
distribute the funds "as soon as practicable," the Libertarian Party did not receive

5

its share of the qualifying fees for the 2018 election until after the election was over, in mid-April 2019. O.C.G.A. § 21-2-131(c)(4); Dkt. No. [69-12] ¶¶ 15–16.

The deadline for political-body candidates to file their notice of candidacy and qualifying fee is noon on the Friday following the Monday of the thirty-fifth week before the general election—a date that falls in early March of an election year. O.C.G.A. § 21-2-132(d)(2). The nomination petition is due no later than noon on the second Tuesday in July. O.C.G.A. § 21-2-132(e). The form of the petition is set out by statute. O.C.G.A. § 21-2-183. A nomination petition must be on sheets of uniform size and different sheets must be used by signers residing in different counties or municipalities. O.C.G.A. § 21-2-170(d). Each sheet must also contain a sworn and notarized affidavit of the circulator attesting, among other things, that each signature on the sheet was gathered within 180 days of the filing deadline. Id.

No political-body candidate for U.S. Representative has *ever* satisfied the requirements to appear on Georgia's general-election ballot since the 5% petition requirement was adopted in 1943. Dkt. No. [97] ¶ 76. Plaintiffs have submitted evidence that since 2002, at least twenty independent and political body candidates have unsuccessfully attempted to access the ballot. Id. ¶¶ 92-131. Plaintiffs also provide evidence of the various practical barriers to gathering enough signatures to satisfy the 5% petition requirement, including: (1) the Secretary of State's signature-checking process, which according to Plaintiffs is error prone; (2) the difficulty and pace of petitioning; (3) the cost of petitioning

6

and the impact of federal campaign finance law; (4) petition-circulators' lack of

access to voters; and; (5) public concern about disclosing the confidential

information required by the form of a nomination petition. Id. ¶¶ 144, 149-154,

171, 173-74, 181-84. The Court discusses this evidence in further detail in its

analysis of the burden imposed on Plaintiffs' rights.

### C. Support for the Libertarian Party

The Libertarian Party was founded in 1971 and is organized in all fifty

states, plus the District of Columbia. Id. ¶ 189. Nationwide, the Libertarian Party

is currently the third-largest political party in the United States by voter

registration. Id. ¶ 190. In 2018, the National Libertarian Party counted as

members, including persons that paid no annual dues, 5,851 persons residing in

Georgia. Dkt. No. [96-1] ¶ 24. The most recent data from the parties shows that in

2016, the Libertarian Party of Georgia had 161 dues-paying members. Id. ¶ 25.

The Libertarian Party runs hundreds of candidates in every election cycle

who seek positions ranging from city council to President. Dkt. No. [97] ¶ 194.

The Libertarian Party runs numerous candidates for U.S. Representative and has

had those candidates on the ballot in every state in the nation *except Georgia*. Id.

¶ 197. There are currently 180 elected officials affiliated with the Libertarian

Party nationwide. Id. ¶ 198.

In 1988, the Libertarian Party of Georgia qualified to nominate candidates

for statewide public office by convention when it submitted a qualifying petition

signed by at least one percent of the number of total registered voters at the

preceding general election. Id. ¶ 204. The Party has retained that qualification

under Georgia law in each election cycle since 1988 by nominating at least one

candidate for statewide public office who received votes totaling at least one

percent of the total number of registered voters who were registered and eligible

to vote in that election. Id. In the last ten years, Libertarian candidates for

statewide offices in Georgia have received more than five million votes. Id. ¶ 205.

## II.     PROCEDURAL BACKGROUND

Plaintiffs first sued in this Court on November 21, 2017, alleging that

Georgia's ballot-access laws violate their First and Fourteenth Amendment

associational and voting rights and their Fourteenth Amendment equal-

protection rights. Dkt. No. [1] ¶¶ 148–149. On September 23, 2019, the Court

held that Defendant was entitled to summary judgment. Dkt. No. [113]. The Court

reached this conclusion based on the Supreme Court's decision in Jenness v.

Forston, 403 U.S. 431 (1971), which upheld as constitutional Georgia's law

requiring a third-party or independent candidate for any race to file a nominating

petition signed by at least 5% of the number of registered voters in the last

general election for the office in question. Plaintiffs then appealed to the Eleventh

Circuit. Dkt. No. [115]. The Eleventh Circuit reversed and remanded, holding that

this Court erred in its conclusion that Plaintiffs' challenge was foreclosed by

Supreme Court and Eleventh Circuit precedent without conducting the balancing

test articulated in Anderson v. Celebrezze, 460 U.S. 780, 789 (1983). See Cowen,

960 F.3d at 1343. On remand, the Eleventh Circuit has instructed the Court to

8

apply the Anderson test and to consider Plaintiffs' Equal Protection challenge. See id. at 1347.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most

favorable to the party opposing the motion. <u>Johnson v. Clifton</u>, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. <u>Id.</u> (citations omitted). All reasonable doubts, however, are resolved in the favor of the non-movant. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993).

The same standard of review applies to cross-motions for summary judgment, but the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts. <u>S. Pilot Ins. Co. v. CECS, Inc.</u>, 52 F. Supp. 3d 1240, 1242-43 (N.D. Ga. 2014) (citing <u>Am. Bankers Ins. Grp. v. United States</u>, 408 F.3d 1328, 1331 (11th Cir. 2005)). Each motion must be considered "on its own merits, [with] all reasonable inferences [resolved] against the party whose motion is under consideration." <u>Id.</u> at 1243.

## IV.   DISCUSSION

Plaintiffs argue that they are entitled to summary judgment because Georgia's ballot-access restrictions for political body candidates for U.S. Representative unconstitutionally burden their First and Fourteenth Amendment rights. Dkt. Nos. [1] ¶ 148; [134-1] at 7–8. Plaintiffs challenge Georgia's 5%

petition-signature requirement, see O.C.G.A. § 21-1-170(b), as well as the qualifying fee requirement for the office of U.S. Representative, see O.C.G.A. § 21-2-132(d). Plaintiffs argue that "[t]his case is about the '*cumulative* burdens' of Georgia's ballot-access, which include not only a burdensome petition requirement but also the highest candidate qualifying fee in the nation." Dkt. No. [134-1] at 45 (emphasis in original). Plaintiffs also challenge Georgia's ballot-access laws under the Equal Protection Clause, arguing that the ballot-access restrictions create a classification that treats Libertarian Party candidates for U.S. Representative differently from Libertarian Party candidates for statewide offices.[2] Dkt. No. [1] ¶ 149; [134-1] at 8, 54–56. Defendant moves for summary judgment on both of Plaintiffs' claims. See Dkt. No. [135]. In accordance with the Eleventh Circuit's instructions, the Court considers Plaintiffs' claims and the parties' respective arguments in turn.

### A. Plaintiffs' First and Fourteenth Amendment Claim and the <u>Anderson</u> Test

Plaintiffs contend that Georgia's ballot-access laws unconstitutionally burden their First and Fourteenth Amendment rights to vote and to associate with their preferred political party. Dkt. No. [134-1] at 8, 35–36. In remanding the case to this Court, the Eleventh Circuit instructed the Court to apply the balancing test set forth in <u>Anderson</u> to determine whether the challenged ballot-

---

[2] Plaintiffs have not moved for summary judgment on their Equal-Protection Claim that the laws were adopted with a discriminatory purpose.

access laws violate these First and Fourteenth Amendment rights. See Cowen, 960 F.3d at 1346. Under the balancing test established in Anderson, the Court must (1) "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendment that the plaintiff seeks to vindicate[]"; (2) "identify and evaluate the precise interests put forward by the State as justification for the burden imposed by its rule"; and (3) "weigh all these factors and decide whether the challenged provision is unconstitutional." Id. at 1342 (alterations and quotation marks omitted) (quoting Anderson, 460 U.S. at 789).

"Under this framework, the level of scrutiny . . . appl[ied] to a ballot-access law depends on the severity of the burdens it imposes." Indep. Party of Fla. v. Sec'y, State of Fla., 967 F.3d 1277, 1281 (11th Cir. 2020); see also Stein v. Ala. Sec'y of State, 774 F.3d 689, 694 (11th Cir. 2014) ("[T]he level of scrutiny to which election laws are subject varies with the burden they impose on constitutionally protected rights."). "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest." Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997). "Lesser burdens . . . trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." Id. (quotation marks and citation omitted). Still, "[h]owever severe the burden, [a court] must ensure it is warranted 'by relevant and legitimate state interests sufficiently weighty to justify the limitation.'" Indep.

12

Party of Fla., 967 F.3d at 1281 (quoting Common Cause/Ga. v. Billups, 554 F.3d 1340, 1352 (11th Cir. 2009)).

The Eleventh Circuit has also explained that contextual, circumstance-specific analysis is central to the test articulated in Anderson, noting that the Supreme Court has rejected the use of a "litmus-paper test" to differentiate between valid and invalid restrictions. See Cowen, 960 F.3d at 1342 (quoting Anderson, 460 U.S. at 789); see also Storer v. Brown, 415 U.S. 724, 730 (1974) ("The rule is not self-executing and is no substitute for the hard judgments that must be made."). To this end, "the *Anderson* analysis must be undertaken even if the very same requirement had been previously upheld as constitutional, if there are at least some non-frivolous arguments that, since the decision upholding the requirement, circumstances have changed the context of the analysis." Cowen, 960 F.3d at 1342 n.1. With this in mind, the Court turns to the parties' arguments regarding the severity of the burden that Georgia's ballot-access laws impose on Plaintiffs' First and Fourteenth Amendment rights.

### 1. The Character and Magnitude of the Injury

The Court must first "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendment that the plaintiff seeks to vindicate[]". Anderson, 460 U.S. at 789. As to the character of the injury, Plaintiffs assert two related rights: "the right of individuals to associate for the advancement of political beliefs[] and the right of qualified voters, regardless of political persuasion, to cast their votes effectively." Dkt. No.

[134-1] at 35–36 (quoting <u>Williams v. Rhodes</u>, 393 U.S. 23, 30 (1968)). These rights "rank among our most precious freedoms." <u>Williams</u>, 393 U.S. at 30. "The right to vote is 'heavily burdened' if that vote may be cast only for major-party candidates at a time when other parties or other candidates are 'clamoring for a place on the ballot.'" <u>Anderson</u>, 460 U.S. at 787 (quoting <u>Lubin v. Panish</u>, 415 U.S. 709, 716 (1974)). And "[t]he exclusion of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying-point for like-minded citizens." <u>Id.</u>; <u>Ill. State Bd. of Elections v. Socialist Workers Party</u>, 440 U.S. 173, 186 (1979) ("[A]n election campaign is a means of disseminating ideas as well as attaining political office. . . . Overbroad restrictions on ballot access jeopardize this form of political expression.").

As to the magnitude of the injury, Plaintiffs argue that their right to vote and right to associate have been severely burdened. Dkt. No. [134-1] at 37. Defendant disagrees. He cites a series of cases in which the Supreme Court and Eleventh Circuit have upheld Georgia's 5% signature requirement in part because the requirement did not severely burden plaintiffs in those cases. Dkt. No. [140] at 5–8. Defendant has moved for summary judgment on this basis. Dkt. No. [135]. The Court first addresses the magnitude of the injury to Plaintiffs' rights based on the facts in the current record, and then the Court addresses the relevant precedents that Defendant cites.

14

### i. Severity of Burden

The Court agrees with Plaintiffs that Georgia law imposes a severe burden on their First and Fourteenth Amendment rights. The cumulative effect of Georgia's requirements on independent and political-body candidates has frozen the political status quo in Georgia as to congressional races. Libertarian Party of Fla. v. Florida, 710 F.2d 790, 793 (11th Cir. 1983) ("[A] court must determine whether the challenged laws 'freeze' the status quo by effectively barring all candidates other than those of major parties . . . ."). Georgia's laws "ha[ve] effectively foreclosed [Georgia's] [federal congressional] ballot to all but Republicans and Democrats." Williams, 393 U.S. at 35 (Douglas, J., concurring).

The robust record in this case supports this conclusion, and the Court highlights several key facts from it. First, the historical record shows that third-party and independent candidates have largely been excluded from Georgia's congressional ballots. Since 1943, the year the 5% requirement was adopted, no political-body candidate for U.S. Representative has appeared on a general election ballot in Georgia. Dkt. No. [97] ¶ 76. In fact, Plaintiffs note that "Georgia's signature requirement is higher, in absolute terms, than any signature requirement that an independent or third-party candidate for U.S. Representative has ever overcome in the history of the United States." Dkt. No. [134-1] at 38.

As a result, no Georgia voter hoping to support a third-party candidate for U.S. Representative has been able to vote their preference. No such Georgia voter

15

has been able to associate with others who share their views—to express their beliefs by supporting an alternative candidate to those chosen by the Republican and Democratic parties. Only two independent candidates have ever appeared on Georgia's general election ballot for non-statewide office, though neither accessed the ballot under the restrictions as they exist today. Dkt. No. [97] ¶¶ 77–81. In 1964, Milton Lent qualified as an independent candidate in Georgia's First Congressional District. Id. ¶ 77. At that time, voter registration rates were lower; the congressional districts did not split county boundaries; there was no qualifying fee; there was no time limit for gathering signatures; and the petition deadline was October. Id. ¶¶ 78–80. In 1982, Billy McKinney qualified as an independent candidate for U.S. Representative in Georgia's Fifth Congressional District after a federal court temporarily lowered the requirement to 4,037 signatures. Id. ¶ 81.

This long absence of political-body candidates from Georgia's congressional ballots is not for lack of effort on their part. Plaintiffs have produced evidence in this case from 20 third-party and independent candidates who have tried and failed to appear on the ballot since 2002. This evidence strongly supports the conclusion that Georgia's ballot-access laws impose a severe burden based upon the Supreme Court's formulation in Storer: "[C]ould a reasonably diligent independent candidate be expected to satisfy the signature requirements, or will it be only rarely that the unaffiliated candidate will succeed in getting on the ballot?" Storer, 415 U.S. at 742; see also Libertarian Party of

16

Fla., 710 F.2d at 793 (citing Storer). The record indicates that it is exceedingly difficult for even reasonably diligent candidates to access Georgia's ballots.

Plaintiffs have submitted evidence that, since 2002, several independent and political-body candidates for U.S. Representative have unsuccessfully attempted to access the ballot.[3] The Court details a few examples here. In 2002, the Libertarian party sought to qualify Wayne Parker for U.S. Representative in Georgia's Eleventh Congressional District. Dkt. No. [69-19] ¶ 5. Because the 2002 redistricting process had reduced the time available for petitioning, a federal judge reduced the signature requirement to 9,462 signatures. Id. ¶ 8. The Party raised approximately $40,000 and used thirty-five professional, paid petition circulators (after beginning with volunteers) to focus on Parker's petition campaign. Id. ¶¶ 9–11. Parker submitted more than 20,000 raw signatures. Id. ¶ 13. The Secretary of State's office rejected more than half of the signatures, leaving Parker with 8,346. Id. ¶ 14.

In 2008, Faye Coffield attempted to qualify for the general-election ballot as an independent candidate in Georgia's Fourth Congressional District. Dkt. No.

---

[3] The parties dispute how many aspiring candidates are properly before the Court. Plaintiffs claim 20 candidates, but Defendant argues that nine of these candidates should not be considered. Dkt. No. [140] at 11 n.5 Defendant argues that these nine candidates appear only in unauthenticated documents or hearsay statements from other witnesses. Id. Plaintiffs do not directly counter this argument in their summary-judgment briefing, and so the Court will not consider the additional nine candidates. In any event, the Court finds that the difference between 11 and 20 candidates does not change its finding regarding the burden faced by Plaintiffs.

17

[97] ¶ 104. She needed approximately 15,000 signatures to qualify for the ballot. Dkt. Nos. [97] ¶ 104; [69-7] ¶ 7. With a team of volunteers, and over the course of approximately two months during which she estimates they spent hundreds of hours gathering signatures, she gathered roughly 2,000 signatures. Dkt. Nos. [97] ¶ 104; [69-7] ¶¶ 6, 8. The Secretary of State did not accept her petitions "because they did not contain the required number of signatures on their face," and she did not qualify for the ballot. Dkt. No. [69-7] ¶ 8; see also Dkt. No. [97] ¶ 104.

In 2010, Jeff Anderson sought to qualify for the general-election ballot as an independent candidate in Georgia's Eleventh Congressional District. Id. ¶ 101. He had a team of approximately twenty-four volunteer petition circulators who ultimately gathered between 11,000 and 12,000 signatures. Id. Anderson did not file the signatures with the Secretary of State because this number was far short of what he needed. Id. Likewise in 2010, Eugene Moon attempted to qualify for the general-election ballot as an independent candidate in Georgia's Ninth Congressional District. Dkt. No. [97] ¶ 102. His team of volunteers gathered roughly 13,000 signatures, but he also did not file any of these signatures with the Secretary of State because this number was below what was needed to qualify for the ballot. See id.; see also Dkt. No. [69-17] ¶ 6.

In 2016, Hien Dai Nguyen attempted to qualify for the general-election ballot as an independent candidate in Georgia's Fourth Congressional District. Dkt. No. [97] ¶ 97. His team of volunteer petition circulators gathered

18

approximately 25,000 signatures across Dekalb, Gwinnett, and Rockdale counties, but only 528 of these signatures were accepted as valid by the Secretary of State's office. Dkt. No. [69-18] ¶¶ 8–9.[4] As a result, Nguyen did not qualify for the general-election ballot. Dkt. Nos. [97] ¶ 97; [69-18] ¶ 9.

Defendant attacks Plaintiffs' evidence of failed candidacies. He argues that some of Plaintiffs' "would-be candidates gathered only a few hundred signatures, or did not even try." Dkt. No. [140] at 11. But this fact may help Plaintiffs as much as it harms them. Defendant highlights these candidates to argue that not all of Plaintiffs' candidates who tried to access the ballot made genuine efforts. But the Court notes that several of these candidates gave up for the simple reason that Georgia's ballot access requirements were too high to be worth their effort. See, e.g., Dkt. No. [69-2] ¶ 100 ("McKinney soon determined that she would not be able to raise the resources necessary to mount a successful ballot-access campaign *and* a competitive campaign in the general election once ballot access

---

[4] Defendant objects to paragraph 9 of Nguyen's declaration, in which he testifies that he received a letter from the Secretary of State's office "informing [him] that only 528 of [his] signatures were valid." Dkt. No. [69-18] ¶ 9. Defendant argues that this paragraph makes reference to the letter without including a copy of it and that it is therefore inadmissible hearsay. Dkt. No. [99] at 17–18. Plaintiffs state that they produced the letter to Defendant during discovery and that it could be introduced at trial and would be plainly admissible in that form. Dkt. No. [105-2] at 39. Plaintiffs also argue that this paragraph refers to statements by the Secretary of State's office, which, as opposing party statements, are not hearsay. Fed. R. Evid. 801(d)(2)(A); see Dkt. No. [105-2] at 39. The Court agrees that this is admissible as an opposing party statement and therefore overrules Defendant's objection to this paragraph of Nguyen's declaration. See Fed. R. Evid. 801(d)(2)(A).

had been secured, and she therefore withdrew from the race."); id. ¶ 102 ("His teams gathered approximately 13,000 raw signatures, but he did not turn them in because he knew that he would not qualify for the ballot."); id. ¶ 106 ("After a while, he realized that he would not be able to qualify for the ballot with volunteer petitions, and the option of using paid petitioners was too expensive. He therefore abandoned his effort to qualify for the ballot and did not submit any signatures."). Undoubtedly some of these candidates were genuine candidates who hoped to appear on the Georgia's general election ballot. Plaintiffs have shown that Georgia's ballot-access scheme disserved each of these candidates and their would-be voters.

Defendant also argues that several independent candidates met the 5% petition requirement—two candidates for State House and one for Brunswick District Attorney. Dkt. No. [140] at 12 (citing Dkt. No. [135-3] at 60–61). Plaintiffs contest that these facts diminish their claim. Dkt. No. [139] at 4–5. They argue that only the Brunswick District Attorney candidate gathered enough signatures to meet the 5% threshold and that he did so under the unusually high-profile circumstances of the Ahmaud Arbery murder and its political fallout. Of the other two candidates, one failed to meet the threshold because the Secretary verified too few of his submitted signatures, Dkt. No. [139-8], and the other only met the threshold after it was lowered by a judge in this District due to the coronavirus pandemic. See Cooper v. Raffensperger, 472 F. Supp. 3d 1282, 2020 WL 3892454 (N.D. Ga. July 9, 2020). The Court agrees with Plaintiffs on this

issue. The success of one local official does not significantly undermine the otherwise categorical exclusion of political-body candidates from congressional ballots in Georgia.

Apart from the history of ballot exclusion in Georgia, the record also indicates that Georgia holds third-party and independent candidates to a higher bar than does any other state. While the Eleventh Circuit has emphasized that states are free "to adopt differing means of regulating ballot access," Libertarian Party of Fla., 710 F.2d at 793, the comparison to other states underscores the severity of the burden in Georgia. Williams, 393 U.S. at 33 n.9 (comparing Ohio's restriction to those of forty-two other states and noting that "no significant problem has arisen in these States which have relatively lenient requirements for obtaining ballot position"); Green Party of Ga. v. Kemp, 171 F. Supp. 3d 1340, 1363 (N.D. Ga. 2016) ("Plaintiffs have put forth evidence showing that Georgia's ballot access signature requirements are substantially higher than those in most other states.").

In support of their motion for summary judgment, Plaintiffs submit an affidavit by Richard Winger, a political scientist and ballot-access scholar.[5] Mr. Winger discusses Georgia's ballot-access requirements for third-party candidates in the context of other states' restrictions. Dkt. No. [69-25]. He also submits an

---

[5] Another judge in the Northern District of Georgia recently relied on Mr. Winger's testimony, finding that "[c]ourts have considered Mr. Winger's expert testimony in many other cases and . . . that he is a reliable witness." Green Party of Ga., 171 F. Supp. 3d at 1348 n.8. This Court agrees.

21

appendix of data regarding other states' signature requirements and qualifying fees in support of his assertions. See id. at 16–25. According to Mr. Winger, Georgia requires more signatures for third-party candidates for U.S. Representative to appear on the general-election ballot than any other state in the nation, both as a percentage of votes cast and as an absolute number of signatures. Id. ¶ 2a. In 2018, Georgia law required more than 272,00 valid signatures for a third party to run a full slate of candidates for U.S. Representative. Id. ¶ 10. This number represents more than 6.3 percent of all votes cast in Georgia for president in 2016. Id.

Illinois required the next highest number of signatures for a third party to run a full slate of candidates for U.S. Representative; requiring approximately 178,400 valid signatures in 2016 and 262,000 valid signatures in 2018. Id. ¶ 12. These numbers represent approximately 3.2 percent and 4.7 percent of all votes cast in Illinois for president in 2016. Id. New York required the third highest number of signatures for a third party to run a full slate of candidates in 2016 and 2018, requiring approximately 94,500 valid signatures. Id. ¶ 13. This number represents approximately 1.2 percent of all votes cast in New York for president in 2016. Id. Twenty-nine states required 10,000 or fewer signatures for an unqualified third party to run a full slate of candidates for U.S. Representative in 2018. Id. ¶ 14. In some states, third parties may qualify to nominate candidates without submitting any signatures. Id. ¶ 15.

Mr. Winger further testifies that, in the entire history of the United States, only six independent or third-party candidates for U.S. Representative have ever overcome a signature requirement as high as 10,000 signatures, and only one such candidate has overcome a petition requirement higher than 15,000 signatures. Id. ¶¶ 29–37. This leaves political-body candidates in Georgia in an especially difficult position. In 2020, they needed between 19,777 and 26,539 valid signatures, depending on their district, to appear on the general-election ballot for a congressional race. Dkt. No. [134-1] at 31.

Mr. Winger also provides information regarding Georgia's qualifying fees. He states that most states do not require third-party candidates for U.S. Representative who qualify for the general election ballot by petition to pay any qualifying fee. Dkt. No. [69-25] ¶ 17. Among states with a mandatory petition, Georgia's qualifying fees are higher than any other state in the nation. Id. Georgia's qualifying fee for U.S. Representative is $5,220, which amounts to $73,080 for a full slate of candidates. The state that requires the second highest qualifying fee for third-party candidates is North Carolina, which has a qualifying fee of $1,740 (one percent of the annual salary of a U.S. Representative) for a single candidate and $22,620 for a third party to run a full slate of thirteen candidates for U.S. Representative. Id. ¶ 19.

In addition to demonstrating candidates' historical exclusion from ballots and Georgia's restrictiveness compared to other states, Plaintiffs have introduced evidence showing the practical difficulties of obtaining petition signatures to

23

appear on a ballot. This evidence is key in the context of the <u>Anderson</u> analysis because, "[i]n approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." <u>Anderson</u>, 460 U.S. at 786 (quoting <u>Bullock v. Carter</u>, 405 U.S. 134, 143 (1972)); <u>see also</u> <u>Green Party of Ga.</u>, 171 F. Supp. 3d at 1350 (addressing the practical difficulties of gathering petition signatures in reaching the conclusion that presidential candidates faced a severe burden).

First, Plaintiffs offer evidence that the Secretary of State's petition-checking process yields validation rates of between two percent and forty percent.[6] <u>Id.</u> ¶¶ 145, 147, 148. As a practical matter, then, independent and political body candidates for U.S. Representative must gather signatures in excess of the required figures. Derrick Lee, a member of a professional petition-circulating firm and an experienced petition circulator, estimates based on his experience in Georgia that Libertarian Party candidates would need to gather "somewhere between 600,000 and 1,000,000 signatures" to run a full slate of fourteen candidates for U.S Representative—and that collecting that number of

---

[6] Plaintiffs assert that the Secretary of State's signature-validation process is error-prone, and, as evidence, Plaintiffs offer uncontested testimony that 2016 candidate Rocky De La Fuente's petition contained numerous signatures that were improperly rejected. Dkt. No. [97] ¶ 146. Defendant admits that "some signatures from De La Fuente's petition were improperly rejected." <u>Id.</u>

signatures is not "realistically achievable without an army of paid petition circulators." Dkt. No. [69-13] ¶¶ 21, 22.[7]

Second, Plaintiffs submit evidence regarding the difficulty, pace, and cost of petitioning. Don Webb, a paid petition circulator, testified that he gathers 30 to 40 raw signatures in an eight- or nine-hour day on a Saturday, and 15 to 25 raw signatures on other days—an average of five signatures per hour over the course of a week. Dkt. No. [69-23] ¶ 7. Volunteer signature-gatherers tend to be less effective and rarely are willing or able to work for more than a few hours. Id. ¶ 9; see also Dkt. No. [69-9] ¶ 9. As noted briefly above, Plaintiffs also offer testimony from a number of former independent and Libertarian candidates and experienced petition circulators who opine that it would be impossible for the Libertarian Party to qualify a full slate of candidates for the office of U.S. Representative without making extensive use of paid, professional petition

---

[7] Defendant objects to several declarations Plaintiffs have submitted in support of their claims as containing inadmissible opinion testimony from a lay witness. Defendant argues that this testimony is inadmissible under Federal Rule of Evidence 701. The Court has reviewed these objections and overrules them. Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their own personal experiences." U.S. v. Toll, 804 F.3d 1344, 1355 (11th Cir. 2015) (citations omitted). The Court finds that the testimony at issue is fact testimony based on the witness's own personal experiences. See Toll, 804 F.3d at 1355 (quotation marks and citation omitted). Defendant's objections on this basis are overruled.

circulators. See Dkt. Nos. [69-9] ¶¶ 9–10; [69-10] ¶ 10; [69-13] ¶ 21; [69-16] ¶ 8;[8]
[69-23] ¶ 12.

Third, Plaintiffs provide evidence of the potential overall cost of collecting
signatures via paid petitioners. Hugh Esco, Georgia Green Party secretary and
former Georgia Green Party candidate, estimates that a single independent or
political-body candidate would need more than $75,000 to collect the requisite
number of signatures. Dkt. No. [69-9] ¶ 10. Wayne Parker, former Libertarian
Party candidate, estimates that one third-party candidate would need more than
$100,000 for petition circulators. Dkt. No. [69-19] ¶ 17. Plaintiffs note that
raising such sums is difficult in part because federal campaign finance laws limit
the amount that donors, including a state or national party, can contribute to a
candidate. Dkt. No. [97] ¶¶ 162, 171. The maximum amount that a state or
national party may contribute to one candidate for U.S. Representative is
$10,000 per election. Dkt. No. [134-1] at 19.

Finally, regarding the difficulty of collecting petition signatures, Plaintiffs
cite a lack of access to voters and public concern about disclosing confidential
information as barriers to circulating petitions. Dkt. No. [97] ¶¶ 173, 187. Petition

---

[8] Defendant objects to this paragraph of John Monds's declaration. Dkt.
No. [99] at 16. Defendant argues that Monds "does not claim any personal
knowledge of signature-gathering campaigns, and he is not competent to testify
about the feasibility of signature gathering campaigns under Georgia law." Dkt.
No. [99] at 16–17. As Plaintiff notes, however, there is evidence in the record that
Monds does possess personal knowledge of signature-gathering efforts in
Georgia. Defendant's objection is overruled.

circulators in Georgia may not lawfully solicit signatures on private property (i.e., places of public accommodation) without the permission of the property owner. Id. ¶ 173. Georgia law prohibits petition-circulators from canvassing for signatures within 150 feet of a polling place. Id. ¶ 180. Plaintiffs also noted that the nomination petition form requires a signer's birth year. Dkt. No. [134-1] at 21 n.7. Although a voter's date of birth and residential address are not required, providing that information increases the chance that county election officials will be able to identify the signature. Dkt. No. [97] ¶ 186. Plaintiffs have submitted testimony from former candidates indicating that potential signers frequently cited a reluctance to share such information as a reason for not signing a petition. See, e.g., Dkt. Nos. [69-7] ¶ 11; [69-11] ¶ 13; [69-12] ¶ 13.[9]

In sum, the record before the Court indicates that Georgia's ballot access laws, including the 5% petition signature requirement and the qualifying fee, place a severe burden on Plaintiffs' associational rights and right to vote. Even reasonably diligent political-body candidates who have expended considerable time and resources have failed to access Georgia's ballots. Plaintiffs have shown

---

[9] Defendant objects to paragraph 11 of Faye Coffield's Declaration, Dkt. No. [69-7] ¶ 11, and paragraph 13 of Aaron Gilmer's Declaration, Dkt. No. [69-11] ¶ 13. Dkt. No. [99] at 8, 12. Defendant argues that these paragraphs contain inadmissible hearsay. Dkt. No. [99] at 8, 12. However, as Plaintiffs argue, these assertions need not be admitted for the truth of the matter asserted—that is, it does not matter whether potential signers were telling the truth and actually were fearful of sharing this information or not. Dkt. No. [105-2] at 25. What is relevant is that some individuals provided this reason or excuse—true or not—for refusing to sign a petition.

27

that Georgia's laws relating to these congressional races have functionally frozen the status quo.

### ii. Prior Decisions on Georgia's Ballot-Access Scheme

Prior decisions have addressed and upheld Georgia's 5% signature petition requirement. This Court previously awarded summary judgment to Defendant by applying these decisions, particularly the Supreme Court's decision in <u>Jenness v. Fortson</u>. However, the Eleventh Circuit held that this judgment was in error. The Supreme Court's intervening decision in <u>Anderson</u> changed the test for a First and Fourteenth Amendment challenge in this context. For this reason, the Eleventh Circuit remanded so that the Court could apply the <u>Anderson</u> test. <u>Cowen</u>, 960 F.3d at 1347. Even so, the Eleventh Circuit observed that <u>Jenness</u> remains good law and emphasized that, on remand, Plaintiffs would have to distinguish <u>Jenness</u> "either because of different facts in the instant record, as compared to the record in <u>Jenness</u>; changes in the relevant Georgia legal framework; or the evolution of the relevant federal law." <u>Id.</u> at 1346.

As is clear from the Court's holding that Georgia's ballot-access laws impose a severe burden on Plaintiffs' constitutional rights, the Court finds that Plaintiffs have satisfactorily distinguished <u>Jenness</u>. To make these distinctions clear, the Court briefly reviews <u>Jenness</u> and other relevant precedents to illustrate why this case demands a different outcome regarding the severity of the burden imposed upon Plaintiffs' rights.

In <u>Jenness</u>, a 1971 case, the Supreme Court addressed Georgia's 5%

petition requirement. 430 U.S. at 432. The plaintiffs there challenged provisions

of the Georgia Election Code requiring political body candidates to submit (1) a

nominating petition signed by at least 5% of the number of registered voters in

the last general election for the office in question; and (2) a filing fee equal to 5%

of the annual salary of the office sought. <u>Id.</u> The filing fee was not challenged on

appeal because the district court had granted the plaintiffs an injunction as to it.

<u>Id.</u> The appeal was instead taken from the Court's denial of an injunction related

to the signature requirement.

The Supreme Court upheld Georgia's 5% petition signature requirement

based on several factors tied to Georgia's election law scheme. The Court

remarked upon the "open quality of the Georgia system." <u>Id.</u> at 439. At that time,

there was "no limitation whatever . . . on the right of a voter to write in on the

ballot the name of the candidate of his choice and to have that write-in vote

counted." <u>Id.</u> at 434. Further, Georgia did "not require every candidate to be the

nominee of a political party, but fully recognize[d] independent candidacies"; did

not have an unreasonably early filing deadline; did not require small or new

parties to establish "elaborate primary election machinery"; and did not impose

"suffocating restrictions" on the circulation of nominating petitions. <u>Id.</u> at 438–

39. The Supreme Court also observed that the "open quality of the Georgia

system [wa]s far from merely theoretical" given that a candidate for Governor

and a candidate for President had gained ballot designation by nominating

29

petitions in 1966 and 1968, respectively. Id. at 439. The Supreme Court thus
concluded that Georgia's election laws "d[id] not operate to freeze the political
status quo." Id. at 438.[10]

The Supreme Court's reliance on context-dependent factors makes Jenness
distinguishable from the present case in several ways. First, the qualifying fee was
not at issue in Jenness, but it is an important part of Plaintiffs' challenge here.
Dkt. No. [134-1] at 44 (referring to O.C.G.A. § 21-2-132(d)). The Court must
examine the "cumulative burdens" of the laws preventing Plaintiffs from
accessing Georgia's ballot. Clingman v. Beaver, 544 U.S. 581, 607 (2005)
(O'Connor, J., concurring); accord Williams, 393 U.S. at 34 (measuring the
burden of Ohio's ballot-access laws "taken as a whole"). The qualifying fee
increases the burden on Plaintiffs' constitutional rights, and so it is essential to
the Court's analysis. See Cowen, 960 F.3d at 1348 (Jordan, J., concurring) ("So,
whatever effect Jenness may have had on the plaintiffs' First and Fourteenth
Amendment claims, it did not foreclose or control the plaintiffs' challenge to the
qualifying fee.").

Second, Georgia law regarding write-in candidates has changed since
Jenness with new restrictions adopted in 1978. Such candidates must now file
and publish a notice of candidacy in advance of the election, O.C.G.A. § 21-2-

---

[10] The former Fifth Circuit followed Jenness by upholding Georgia's entire
electoral statutory scheme before the Supreme Court changed the test in Anderson.
McCrary v. Poythress, 638 F.2d 1308 (5th Cir. 1981)

133(a), and votes cast for someone who has not followed this process are not counted, Ga. Comp. R. & Regs. 183-1-15-.02(5).

Third, the record of historical ballot exclusion is stronger here than it was in Jenness. There, the Supreme Court held that Georgia's election system was "open" in part because the stipulated record contained evidence that two candidates—one for President and one for Governor—had gained ballot designation by petition. Jenness, 403 U.S. at 439. This finding influenced the Court's holding that "Georgia in no way freezes the status quo[.]" Id. In this case, by contrast, the record indicates that no political-body candidate for U.S. Representative has overcome Georgia's statutory petition threshold since it was established in 1943, though many candidates have tried. See Dkt. No. [97] ¶ 76. At least with respect to non-statewide office, the status quo is frozen.

And fourth, as previously discussed, the record in this case contains much evidence regarding the practical burdens of gathering petitions. Along with evidence of candidates attempting and failing to qualify despite collecting thousands of signatures, there is also evidence in the record illustrating the difficulty and cost of simply gathering the statutorily required number of signatures. See, e.g., Dkt. Nos. [69-9] ¶¶ 9–10; [69-10] ¶ 10; [69-13] ¶ 21; [69-16] ¶ 8; [69-23] ¶ 12. Moreover, Plaintiffs have produced evidence indicating that the Secretary of State's petition checking process yields signature-validation rates that, as a practical matter, require potential third-party and independent

31

candidates to gather signatures in excess of those required by O.C.G.A. § 21-2-170. Dkt. No. [97] ¶¶ 145–148.

In addition to "different facts in the instant record, as compared to the record in Jenness[] [and] changes in the relevant Georgia legal framework," Cowen, 960 F.3d at 1346, the Court notes a critical "evolution of the relevant federal law," id. Since Jenness was decided, federal campaign finance laws have become more stringent, so it has become more difficult for candidates to raise funding to gather petition signatures. More importantly, 12 years after Jenness was decided, the Supreme Court issued its decision in Anderson v. Celebrezze, which changed the rubric for analyzing ballot-access challenges like the one in this case.

This change was not simply academic. The Anderson court rejected what it described as a "litmus-paper test" in favor of "an analytical process that parallels [a court's] work in ordinary litigation." Anderson, 460 U.S. at 789 (citing Storer, 415 U.S. at 730). By this, the Court meant that the extent of the infringement must be considered based upon the facts of a case, and the magnitude of infringement must be balanced against the state's interest. The Court put it this way in Storer, an earlier case upon which Anderson relied:

> [T]he rule fashioned by the Court to pass on the constitutional challenges to specific provisions of election laws provides no litmus-paper test for separating those restrictions that are valid from those that are invidious under the Equal Protection Clause. The rule is not self-executing and is no substitute for the hard judgments that must be made. Decision in this context, as in others, is very much a "matter

32

of degree," . . . very much a matter of "consider[ing] the facts and circumstances behind the law, the interest which the State claims to be protecting, and the interests of those who are disadvantaged by the classification." What the result of this process will be in any specific case may be very difficult to predict with great assurance.

Storer, 415 U.S. at 730 (quoting Williams, 415 U.S. at 730; Dunn v. Blumstein, 405 U.S. at 335).

This shift to a factual, context-based balancing approach reinforces the Court's decision to depart from Jenness for two reasons. First, the robust factual record showing the burden faced by aspiring candidates for office is key to the Court's analysis here. The Eleventh Circuit has explicitly held regarding Jenness and McCrary that "the two cases . . . do not foreclose the parties' right to present the evidence necessary to undertake the balancing approach outlined in Anderson . . . ." Bergland, 767 F.2d at 1554; accord Cowen, 960 F.3d at 1345. And second, the rubric of Anderson requires the Court to take a closer look at the State's stated interest—specifically, "the legitimacy and strength of each of those interests [and] the extent to which those interests make it necessary to burden the plaintiff's rights." Anderson, 460 U.S. at 789. This second distinction is discussed in more detail below.

Since Anderson, the Eleventh Circuit has issued decisions approving Georgia's 5% signature requirement. See Coffield v. Kemp, 599 F.3d 1276 (11th Cir. 2010); Cartwright v. Barnes, 304 F.3d 1138 (11th Cir. 2002). But each of those cases is distinguishable on grounds central to the Circuit's holdings.

33

Cartwright concerned primarily a challenge to the 5% requirement under the Qualifications Clause. 304 F.3d at 1139 ("The main issue in this case is whether this 5% signature requirement creates a new qualification for holding federal office in violation of the Qualifications Clause . . . ."). The court's discussion of the constitutional provisions at issue here was cursory. Id. ("We also conclude that this 5% signature requirement does not violate any other constitutional provision."). Further, the Cartwright plaintiffs "pointed to only two differences in the relevant context to distinguish their case from *Jenness*, both of which the panel rejected summarily as wholly without merit." Cowen, 960 F.3d at 1345 (citing Cartwright, 304 F.3d at 1141–42). And in fact, the court in Cartwright did not even quote Anderson directly, much less apply its three-part test to weigh the interests at stake.

Coffield is similarly distinguishable. In that case, the aspiring independent candidate failed to show that Georgia's 5% requirement severely burdened her. Coffield, 599 F.3d at 1277. The Eleventh Circuit rejected the candidate's challenge because, while she alleged that no independent candidate for the House of Representatives met Georgia's petition requirement since 1964, "she [did] not allege how many candidates have tried." Id. Thus, the Coffield plaintiff simply failed to carry her burden. See Cowen, 960 F.3d at 1345 ("[O]ur decision in Coffield appears to have rejected an attempt to distinguish *Jenness* . . . because the plaintiff's allegations were wholly insufficient to plausibly distinguish

34

*Jenness*."). And as in <u>Cartwright</u>, the Eleventh Circuit in <u>Coffield</u> did not balance the interests under the <u>Anderson</u> rubric.

A cursory reading of these Eleventh Circuit decisions suggests that the Circuit has approved Georgia's ballot-access scheme. A closer reading reveals that the plaintiffs in those cases simply failed to prove a constitutional infringement under the fact- and context-dependent rubric of <u>Anderson</u>. These failures decisively distinguish the prior cases from this one. The distinction is decisive because <u>Anderson</u> instructs courts to consider the cumulative burden upon plaintiffs' rights based on the context of each case. <u>Anderson</u>, 460 U.S. at 789 ("[A] court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. . . . The results of this evaluation will not be automatic; as we have recognized, there is 'no substitute for the hard judgments that must be made.'" (quoting <u>Storer</u>, 415 U.S. at 730)); <u>see also</u> <u>Bowe v. Bd. of Election Comm'rs</u>, 614 F.2d 1147, 1152–53 (7th Cir. 1980) ("[T]he Supreme Court has consistently taken an intensely practical and fact-oriented approach to deciding these election cases."); <u>Green Party of Ga.</u>, 171 F. Supp. 3d at 1363 (holding that Georgia's 1% petition-signature requirement for presidential candidates imposed a severe burden after the plaintiffs had a chance to fully develop an evidentiary record).

In this case, Plaintiffs have done what the plaintiffs in <u>Cartwright</u> and <u>Coffield</u> failed to do: they have developed a fulsome evidentiary record proving that Georgia's laws have excluded political-body candidates from ballots in races

35

for U.S. Representative. They have shown that Georgia's ballot-access laws "'freeze the status quo' by effectively barring all candidates other than those of the major parties . . . ." <u>Libertarian Party of Fla.</u>, 710 F.2d at 793 (quoting <u>Jenness</u>, 403 U.S. at 439). For that reason, the Court finds that the laws impose a severe burden upon Plaintiffs' First and Fourteenth Amendment rights.

### 2.  Identifying and Evaluating the State's Interests

The next step of the <u>Anderson</u> test requires the Court to "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." 460 U.S. at 789. The State has advanced two interests: (1) ensuring that a candidate has substantial support before putting the candidate's name on ballots to screen out frivolous candidacies and avoid overcrowded ballots and (2) "a generalized interest in the orderly administration of elections." Dkt. No. [135-1] at 16–18; Dkt. No. [140] at 21–22.

The first of these interests has become well established in Supreme Court decisions since <u>Jenness</u>. <u>See Jenness</u>, 403 U.S. at 442 (acknowledging the "state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot"); <u>Am. Party of Tex.v. White</u>, 415 U.S. 767, 782 (1974) ("[W]e think that the State's admittedly vital interests are sufficiently implicated to insist that political parties appearing on the general ballot demonstrate a significant, measurable quantum of community support."); <u>Anderson</u>, 460 U.S. at 788 n.9 (discussing the "undoubted right to require candidates to make a preliminary showing of

36

substantial support in order to qualify for a place on the ballot"); <u>Munro v. Socialist Workers Party</u>, 479 U.S. 189, 193–94 (1986) (same).

As Plaintiffs point out, Defendant has invoked this interest in its briefing but has not offered substantial support for that interest. Dkt. No. [148] at 2 (citing <u>Fulani v. Krivanek</u>, 973 F.2d 1539, 1544 (11th Cir. 1992); <u>Bergland</u>, 767 F.2d at 1554). Of course, it goes without saying that a 5% petition signature requirement and registration fee screen out frivolous candidates because it is Plaintiffs' argument that even legitimate candidates are being screened out. But Defendant has offered little support for the reasonableness of those restrictions besides citation to precedent. <u>Cf.</u> <u>Fulani</u>, 973 at 1544 ("The state identifies interests that courts have found compelling in other cases, but fails to explain the relationship between these interests and the classification in question."). Even so, the Court finds that the State does have a legitimate interest in ensuring a significant modicum of support to screen out frivolous candidates and avoid ballot confusion.

The second of the State's claimed interests lacks the same grounding in prior precedent. Defendant cites several cases to support a generalized interest in election administration: <u>Jenness</u>, <u>Storer v. Brown</u>, and <u>Timmons</u>. Dkt. No. [140] at 22. The language Defendant cites from <u>Jenness</u> is a rephrasing of the State's first asserted interest. <u>See</u> <u>Jenness</u>, 403 U.S. at 442 ("There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's

37

candidate on the ballot—*the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election.*") (emphasis added to highlight Defendant's cited language). The citations from Storer and Timmons are truisms that do not outline specific interests, but rather elaborate on State's authority to regulate elections. Storer, 415 U.S. at 730 ("[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process."); Timmons, 520 U.S. at 366 ("States also have a strong interest in the stability of their political systems."). These interests are now weighed.

### 3. Weighing the Factors

The third and final step of the Anderson test requires the Court to "determine the legitimacy and strength of [the State's] interests [and] consider the extent to which those interests make it necessary to burden the plaintiff's rights." 460 U.S. at 789. "Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional." Id. The Eleventh Circuit has held that the legitimacy of ballot restrictions depends on the severity of the constitutional burdens imposed:

> [I]f the state election scheme imposes "severe burdens" on the plaintiffs' constitutional rights, it may survive only if it is "narrowly tailored and advance[s] a compelling state interest." [*Timmons*, 520 U.S. at 358]. But when a state's election law imposes only "reasonable, nondiscriminatory restrictions" upon a plaintiff's First and Fourteenth Amendment rights, "a State's important regulatory

38

> interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* (quotations omitted). In short, the level of scrutiny to which election laws are subject varies with the burden they impose on constitutionally protected rights—"lesser burdens trigger less exacting review." *Id.*

Stein v. Ala. Sec'y of State, 774 F.2d 689, 694 (11th Cir. 2014). Because the Court holds that Georgia's laws impose a severe burden on Plaintiffs' constitutional rights, the Court must determine whether Georgia law is "narrowly tailored and advances a compelling state interest." Id. (citing Timmons, 520 U.S. at 358).

The Court agrees with Plaintiffs on this issue and holds that Defendant has not shown that Georgia's ballot-access requirements for non-statewide office are narrowly tailored to advance a compelling state interest. See Dkt. No. [134-1] at 48. While Georgia has an undeniable interest in regulating elections by bringing order to its ballots and screening out frivolous candidates, its chosen method of accomplishing that goal is overbroad. Georgia's 5% petition signature requirement for non-statewide candidates screens out legitimate candidates in addition to frivolous ones, and it does so without a reasonable justification. Georgia's own election scheme includes a more narrowly tailored means of screening out frivolous candidates—namely, the 1% petition signature requirement of O.C.G.A. § 21-2-180, which the State established in 1986. However, this 1% threshold only applies to statewide candidates, while candidates for non-statewide office must still clear the 5% hurdle established in 1943. Simply put, the State offers no justification for the higher threshold imposed on candidates for non-statewide office.

39

An unjustified distinction like this one was addressed and deemed
unconstitutional by the Supreme Court in <u>Socialist Workers Party</u>. 440 U.S. 173.
In that case, the Socialist Workers Party challenged a provision of Illinois law
which required candidates for mayoral office in Chicago to obtain more
signatures to access the ballot in their race than candidates for statewide office
needed to access the ballot in statewide races. <u>Id.</u> at 177–78. This disparity arose
from an Illinois law that required candidates for statewide office to obtain 25,000
signatures, while candidates for non-statewide office needed signatures from 5%
of the number of persons who voted at the previous election in the relevant
political subdivision. <u>Id.</u> at 176–77. This meant that statewide candidates needed
25,000 signatures, while candidates of "new political parties" running for mayor
in Chicago needed 63,373 signatures. <u>Id.</u> at 177.

The Supreme Court held this scheme unconstitutional. It first described
the rights at stake, which were the same as those at stake here: "the right of
individuals to associate for the advancement of political beliefs, and the right of
qualified voters, regardless of their political persuasion, to cast their votes
effectively." <u>Id.</u> at 184 (quoting <u>Williams v. Rhodes</u>, 393 U.S. at 30). The Court
held that when "such vital individual rights are at stake, a State must establish
that its classification is necessary to serve a compelling interest." <u>Id.</u> (citing <u>Am.
Party of Tex.</u>, 415 U.S. at 780–81). While Illinois, like Georgia, had "a legitimate
interest in regulating the number of candidates on the ballot[,]" <u>id.</u> at 184–85,
such that Illinois could "require a preliminary showing of a 'significant modicum

40

of support,'" id. at 185 (quoting Jenness, 403 U.S. at 442), the State failed to justify the disparity between signature requirements for statewide and non-statewide offices.

The Court held that the 5% rule, as applied in Chicago, was "not the least restrictive means of protecting the State's objectives." Id. at 186. The Court noted that Illinois's legislature "ha[d] determined that its interest in avoiding overloaded ballots in statewide elections [wa]s served by the 25,000-signature requirement." Id. But the State had advanced "no reason, much less a compelling one," why ballot access should be more burdensome for a Chicago mayoral candidate than for a candidate for statewide election. Id.

The State of Georgia has a similarly incongruous ballot-access scheme to the one struck down in Socialist Workers Party. The General Assembly has deemed a 1% petition signature requirement adequate to guard against ballot crowding and frivolous candidacies on a statewide basis. O.C.G.A. § 21-2-180. It is not immediately clear why candidates for non-statewide office must clear a proportionally higher hurdle, the 5% petition signature requirement. Defendant has not offered any explanation for this disparity. See Fulani, 973 F.2d at 1546 ("The problem is that the state has plucked these interests from other cases without attempting to explain how they justify the discriminatory classification here at issue."). Accordingly, the Court finds that Georgia's 5% petition signature requirement, combined with the qualifying fee, are not narrowly drawn to advanced the State's interests. Georgia's ballot-access scheme overburdens

41

Plaintiffs' rights to vote and to associate with their preferred political party, and so it violates the First and Fourteenth Amendments.

The Court would reach the same decision even under a more deferential standard of review. The Eleventh Circuit has held that, even when the burden on plaintiffs' rights is "significant," rather than "severe," a state defendant must still articulate its interests and "explain the relationship between these interests and the classification in question." Fulani, 973 F.3d at 1544. A state's means of achieving even legitimate goals may be struck down where "the state has failed to justify" the burden in question. Id. at 1547; see also New Alliance Party of Ala. v. Hand, 933 F.2d 1568, 1576 (11th Cir. 1991) (striking down a law that made it "moderately difficult" to access the ballot when the State failed to show that the less-than-severe burdens were necessary to advance Alabama's legitimate interests); Green Party of Ga., 171 F. Supp. 3d at 1367 (holding that, even under a deferential standard, "the State's regulatory interest [wa]s not sufficiently important to justify the restrictions on the First and Fourteenth Amendment rights of Plaintiffs"). Here, Defendant has failed to justify the requirement that congressional candidates must clear the 5% threshold when the General Assembly has determined that a 1% threshold is adequate on a statewide basis.

In reaching this decision, the Court agrees with the reasoning of another judge in this District in a similar case. See Green Party of Ga., 171 F. Supp. 3d at 1365. In Green Party of Georgia, the court found that Georgia's statewide 1% petition requirement violated plaintiffs' First and Fourteenth Amendment rights

42

with respect to a national presidential election. Id. at 1365–66. The plaintiffs'
interests were similar to those in this case, as was the State's interest. Id. at 1365.
The court found that the 1% requirement was "not narrowly tailored to advance
the State's interests." Id. This requirement translated to more than 50,000
signatures to access the general election ballot. Id. "But requiring a lower number
would ease the burden on voters' and political bodies' rights while still serving the
State's interest in avoiding voter confusion and a crowded ballot." Id. The
Eleventh Circuit succinctly affirmed this holding in an unpublished decision.
Green Party of Ga. v. Kemp, 674 F. App'x 974, 975 (11th Cir. 2017) (per curiam)
(unpublished) ("The judgment of the district court is affirmed based on the
district court's well-reasoned opinion.").

    In fact, the case now before the Court is a stronger case for Plaintiffs under
the Anderson framework. While the court in Green Party of Ga. looked at the
burden of the 1% requirement and the State's justification in isolation, the Court
here has the 1% requirement as a benchmark against which to consider the
challenged 5% requirement and qualifying fee. The Green Party of Ga. court held
that, even under a deferential standard of review, the State could not justify a 1%
threshold that required presidential candidates to gather 50,000 signatures.
Green Party of Ga., 171 F. Supp. 2d at 1366. Here, Defendant must justify a higher
proportional burden for non-statewide elections—a 5% signature requirement
that forces aspiring congressional candidates in Georgia's 14 congressional
districts to gather between 19,000 and 25,000 signatures. The candidates face

43

this burden despite the State's decision that a 1% threshold is adequate for candidates running on a statewide basis. Defendant has failed to justify this burden.

Accordingly, Plaintiffs' Second Motion for Summary Judgment, Dkt. No. [134], is **GRANTED** as to their First and Fourteenth Amendment claim. Defendant's Motion for Summary Judgment on that claim, Dkt. No. [135], is **DENIED**.

### B. Equal Protection Clause Challenge

Plaintiffs have also moved for summary judgment on a separate, narrow equal-protection challenge. They argue, under Socialist Workers Party and Norman v. Reed, 502 U.S. 279 (1992), that Georgia's election scheme unconstitutionally requires candidates for non-statewide office to obtain more petition signatures than candidates for statewide office. Dkt. No. [134-1] at 53–54. They point out that statewide Libertarian candidates do not need any petition signatures because they have already qualified under O.C.G.A. § 21-2-180, while non-statewide candidates must meet the 5% threshold and thus obtain between 19,777 and 26,539 signatures (for 2020).

Defendant argues that this claim fails as a matter of law, Dkt. No. [135-1] at 22–23, and the Court agrees. Plaintiffs misconstrue Georgia's ballot-access scheme. While it is true that Libertarian candidates for statewide office did not need to collect petition signatures, that is only so because the Libertarian Party has qualified to run statewide candidates under O.C.G.A. § 21-2-180 since 1988.

44

But that statute requires the political bodies to show the required modicum of support by obtaining votes from 1% of registered voters in the prior election. If a statewide candidate in 2020 sought ballot access through petition signatures, that candidate would need 51,686 signatures, a sum far above that required for any individual congressional district. That Georgia provides an alternative way to access the general-election ballot through votes obtained in the prior election does not mean that they have created a distinction that violates Plaintiffs' right to equal protection. See Jenness, 403 U.S. at 441–42.[11]

Accordingly, Plaintiffs' Motion for Summary Judgment, Dkt. No. [134], is **DENIED** as to their classification theory for their equal-protection claim. Defendant's Motion for Summary Judgment, Dkt. No. [135], is **GRANTED** as to that theory.

### C. Remedies and Remaining Claims

Although the Court is granting Plaintiffs' Motion for Summary Judgment as to its Fourteenth Amendment claims, the issue of what remedies are appropriate and whether there are other remining claims remains unclear.

As to the issues of remedies, Plaintiffs should submit a brief within 21 days of the date of this Order as to the remedies it is proposing. Defendant shall then

---

[11] To be clear, Plaintiffs argue that they are entitled to summary judgment because the state may not require a higher absolute number of signatures on a statewide basis than on a non-statewide or district-level basis. Dkt. No. [134-1] at 54. Plaintiffs do not argue in their summary judgment motion that Georgia has violated their equal-protection rights by establishing disparate percentage requirements.

45

have an opportunity to respond, and Plaintiffs can then reply. The Court will then provide further guidance to the parties.

In addition, a claim relating to Plaintiffs' theory that Georgia's 5% requirement violates the Equal Protection Clause still remains. Plaintiffs have not moved for summary judgment on that theory. Dkt. No. [134] at 2 n.1. Defendant does not address the claim in his summary-judgment brief. Dkt. No. [135-1]. Since the Court is granting Plaintiffs' Motion for Summary Judgment as to their First and Fourteenth Amendment claims, the Court is unclear as to whether Plaintiffs want to move forward with a trial as to this remaining claim when the summary judgment order may resolve any ongoing controversy in the case. To that end, Plaintiffs are **DIRECTED** to show cause why their remaining equal-protection claim should not be dismissed as moot in the same brief they are submitting as to remedies. Even if Plaintiffs do not agree that the claim is moot, they should address whether they are still requesting a trial as to that claim. Defendant can also respond to this issue in his response brief. Plaintiffs shall be entitled to reply.[12]

---

[12] Defendant has filed a motion to exclude the testimony of Plaintiffs' expert Darcy Richardson. Dkt. No. [137]. This testimony only pertains to Plaintiffs' theory that Georgia's 5% requirement violates the Equal Protection Clause because it was adopted with a discriminatory purpose. The Court will wait to rule on this motion until after it becomes clear whether this claim survives.

## V.    CONCLUSION

Based upon the foregoing, Plaintiffs' Second Motion for Summary Judgment [134] is **GRANTED in part** and **DENIED in part**. Defendant's Second Motion for Summary Judgment [135] is likewise **GRANTED in part** and **DENIED in part**.

Plaintiffs' Second Motion for Summary Judgment [134] is **GRANTED** as to their First and Fourteenth Amendment claim. Defendant's Motion for Summary Judgment [135] is **DENIED** as to that claim.

The Court **DIRECTS** Plaintiffs to submit within **21** days of the entry of this Order briefing proposing an appropriate remedy related to the First and Fourteenth Amendment claim and addressing their claim that Georgia's 5% requirement violates the Equal Protection Clause because it was adopted with a discriminatory purpose. Defendant and Plaintiffs shall then have the ordinary response and reply times.

Plaintiffs' Second Motion for Summary Judgment [134] is **DENIED** as to their equal-protection claim. Defendant's Second Motion for Summary Judgment [135] is **GRANTED** as to Plaintiffs' classification theory for that claim. Plaintiffs did not move for summary judgment on their discrimination theory for their equal-protection claim, and Defendant did not specifically address that claim in his briefing.

**IT IS SO ORDERED** this 29th day of March, 2021.

_____

**Leigh Martin May**
**United States District Judge**

48

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARTIN COWEN, *et al.*,       :
                               :

     Plaintiffs,          :

v.                             :

BRAD RAFFENSPERGER, in his  :     CIVIL ACTION NO.
official capacity as Secretary of State :     1:17-CV-04660-LMM
of Georgia,                 :

                               :

     Defendant.         :

## <u>ORDER</u>

This case comes before the Court on the parties' responses [166, 167] to the Court's proposed remedy [165]. After due consideration, the Court enters the following Order:

### I.    DISCUSSION

In this voting-rights case, the Court previously granted summary judgment in Plaintiffs' favor. Dkt. No. [159]. The Court determined that Georgia's ballot-access scheme imposed an unconstitutional burden on Plaintiffs' First and Fourteenth Amendment rights. Dkt. No. [159]. The Court accordingly directed the parties to brief appropriate remedies for that violation. <u>Id.</u> After considering the parties' positions, the Court rejected parts of their proposed remedies, Dkt. No. [165], and proposed a remedy: "to reduce the petition-signature requirement

1

to 1% of registered voters in the prior election while leaving the rest of the ballot-access scheme in place." Id. at 9. The Court determined that this remedy would alleviate the unconstitutional burden imposed upon Plaintiffs, while safeguarding the State's interest in preventing ballot crowding and frivolous candidacies. However, the Court allowed the parties to respond to its proposal. The parties have now filed responses. Dkt. Nos. [166, 167].

After carefully considering the parties' responses, the Court maintains that the best solution to balance the parties' competing interests would be to enjoin the Secretary of State from enforcing the 5% petition-signature requirement of O.C.G.A. § 21-2-170(b), while replacing that requirement with a 1% petition requirement until the General Assembly can craft a constitutional replacement to the enjoined law. Georgia's ballot-access scheme will be unaffected in all other respects.[1] This 1% petition requirement is similar to what the legislature requires in other races but remedies the constitutional problems Plaintiffs raised in this case.

_____

[1] In their briefing, Plaintiffs oppose the 1% requirement on the grounds that it will still place an undue burden upon them, and they argue that several other aspects of Georgia's ballot-access laws should be altered to effectuate the Court's remedy. Dkt. No. [167]. These other aspects include, for example, the timeline for the Secretary of State to tabulate petition signature thresholds. Plaintiffs argue that the Secretary's potential delay in tabulation calls for a pro-ration of the petition signature requirement. The Court rejects Plaintiffs' proposals because they would broaden the remedy beyond the constitutional violation shown in this case.

## II.    CONCLUSION

Based upon the foregoing, Defendant Brad Raffensperger is

**PERMANENTLY ENJOINED** from enforcing the five percent petition-

signature requirement in O.C.G.A. § 21-2-170(b).

Until the Georgia General Assembly enacts a permanent measure, a

candidate to whom this signature requirement applies may access the ballot by

submitting a nomination petition signed by a number of voters equal to one

percent of the total number of registered voters eligible to vote in the last election

for the office the candidate is seeking, and the signers of such petition shall be

registered and eligible to vote in the election at which such candidate seeks to be

elected.

**IT IS SO ORDERED** this _3rd_ day of September, 2021.

_____

**Leigh Martin May**
**United States District Judge**

3

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

MARTIN COWEN, *et al.*

                      Plaintiffs,

v.

BRAD RAFFENSPERGER, in his official capacity as Secretary of the State of Georgia,

                      Defendant.

CIVIL ACTION NO.

1:17-cv-4660-LMM

## JUDGMENT

This action having come before the Court, Honorable Leigh Martin May, United States District Judge, and the Court having granted in part and denied in part Plaintiffs' Second Motion for Summary Judgment [Doc. 134] and granted in part and denied in part Defendant's Second Motion for Summary Judgment [Doc. 135] by order dated March 29, 2021, and the Court having further reviewed the parties' responses [Docs. 166, 167] to the Court's proposed remedy [Doc. 165] for Defendant's violation of Plaintiffs' First and Fourteenth Amendment Rights and entered a final order regarding same on September 3, 2021 [Doc. 168], it is

**ORDERED AND ADJUDGED** that Defendant Brad Raffensperger is permanently enjoined from enforcing the five percent petition-signature requirement

in O.C.G.A. § 21-2-170(b). It is

**FURTHER ORDERED AND ADJUDGED** that Plaintiffs recover their

costs of this action, and the action be, and the same hereby is, **DISMISSED.**

Dated at Atlanta, Georgia this 15th day of September, 2021.

KEVIN P. WEIMER
CLERK OF COURT

By*:  s/ Charlotte Diggs*
Deputy Clerk

Prepared, Filed and Entered
In the Clerk's Office
      September 15, 2021
Kevin P. Weimer
Clerk of Court

By*:  s/ Charlotte Diggs*
      Deputy Clerk

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| MARTIN COWEN, ALLEN BUCKLEY, AARON GILMER, JOHN MONDS, and the LIBERTARIAN PARTY OF GEORGIA, INC., a Georgia nonprofit corporation, | * * * * * | |
| | * | CASE NO.: 1:17cv04660-LMM |
| Plaintiffs, | * * * | |
| v. | * * | |
| BRAD RAFFENSPERGER, Georgia Secretary of State, | * * * | |
| Defendant. | * | |

## DEFENDANT'S NOTICE OF APPEAL

Notice is hereby given that, pursuant to 28 U.S.C. § 1291, Defendant Brad Raffensperger, in his official capacity as Georgia Secretary of State, hereby appeals to the U.S. Court of Appeals for the Eleventh Circuit from the Final Judgment of the Court entered on September 15, 2021 [Doc. 171]; the Order dated September 3, 2021, entering a permanent injunction in this action [Doc. 168]; and the Order dated March 29, 2021, granting in part Plaintiffs' Motion for Summary Judgment and denying Defendant's Motion for Summary Judgment [Doc. 159].

1

Respectfully submitted, this 17th day of September, 2021.

Christopher M. Carr 112505
Attorney General
Bryan K. Webb 743580
Deputy Attorney General
Russell D. Willard 760280
Senior Assistant Attorney General


/s/*Charlene S. McGowan*
Charlene S. McGowan 697316
Assistant Attorney General

40 Capitol Square SW
Atlanta, GA 30334
cmcgowan@law.ga.gov
404-458-3658

*Attorneys for Defendant*

2

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Notice of Appeal has been formatted using

Times New Roman font in 14-point type in compliance with Local Rule 7.1(D).

*/s/Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General

3

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 17, 2021, I filed the foregoing NOTICE

OF APPEAL with the Clerk of the Court using the CM/ECF system, which will

send notification to all counsel of record in this case.


*/s/Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General

4

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA
### 2211 UNITED STATES COURTHOUSE
### 75 TED TURNER DRIVE, SW
### ATLANTA, GEORGIA 30303-3361

KEVIN P. WEIMER
DISTRICT COURT EXECUTIVE
 AND CLERK OF COURT

DOCKETING SECTION
404-215-1655

September 17, 2021

Clerk of Court
U.S. Court of Appeals, Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia    30303

> **U.S.D.C. No.: 1:17-cv-4660-LMM**
> **U.S.C.A. No.: 00-00000-00**
> **In re:    Martin Cowen, et al. v. Brad Raffensperger**

Enclosed are documents regarding an appeal in this matter.   Please acknowledge receipt on the enclosed copy of this letter.

| | |
|---|---|
| **X** | **Certified copies of the Notice of Appeal, Clerk's Judgment, Orders and Docket Sheet appealed enclosed.** |
| **X** | **This is not the first Notice of Appeal.** |
| ____ | There is no transcript. |
| **X** | **The court reporter is Montrell Vann.** |
| **X** | **There is sealed material in this case.** |
| ____ | Other: . |
| **X** | **Fee paid; Receipt Number AGANDC-11266016.** |
| ____ | Appellant has been   leave to file *in forma pauperis*. |
| ____ | This is a bankruptcy appeal.   The Bankruptcy Judge is Judge . |
| ____ | The Magistrate Judge is . |
| **X** | **The District Judge is Leigh Martin May.** |
| ____ | This is a **DEATH PENALTY** appeal. |

Sincerely,

Kevin P. Weimer
District Court Executive
and Clerk of Court

By:  /s/ K. Carter
     Deputy Clerk

Enclosures