IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARTIN COWEN, ALLEN BUCKLEY, AARON GILMER, JOHN MONDS, and the LIBERTARIAN PARTY OF GEORGIA, INC., a Georgia nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, Georgia Secretary of State,<br><br>Defendant. | *<br>*<br>*<br>*<br>* CASE NO.: 1:17cv04660-LMM<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**DEFENDANT'S EMERGENCY MOTION TO STAY PERMANENT
INJUNCTION PENDING APPEAL AND BRIEF IN SUPPORT**

Defendant Brad Raffensperger, Georgia Secretary of State (the "Secretary"), moves pursuant to Fed. R. Civ. P. 62(c) for a stay of the Court's permanent injunction and final judgment [Doc. 171] pending appeal. The Secretary filed a notice of appeal to the U.S. Court of Appeals for the Eleventh Circuit on September 17, 2021, and the Plaintiffs filed a notice of cross appeal on September 27, 2021. A

stay of the permanent injunction is warranted to preserve the status quo until the Eleventh Circuit has the opportunity to consider both parties' arguments on appeal.[1]

The Court's permanent injunction order (the "Injunction") reduces the petition-signature requirements for political body candidates in O.C.G.A. § 21-2-170(b) from 5% to 1% for all non-statewide offices. Not only is the Injunction a significant departure from Supreme Court and Eleventh Circuit precedent upholding the constitutionality of Georgia's petition-signature requirements, the scope of the Injunction far exceeds the scope of relief requested in Plaintiffs' complaint and lacks support in the factual record.

The 5% petition-signature requirement for non-statewide office has been the law in Georgia for decades and has survived constitutional scrutiny by courts multiple times in the past 50 years. Staying the Injunction to allow review by the Eleventh Circuit will ensure a measure of careful deliberation before upending state election processes shortly before the signature-gathering period for candidates opens. Moreover, Plaintiffs have noted their own objections to the Injunction in their notice of cross appeal. Staying the Injunction, therefore, is the most prudent act this

---

[1] There exists good cause for treating this as an emergency motion and waiving the time requirements of Local Rule 7.1, and the Secretary is contemporaneously filing a motion for expedited briefing on this motion.

Court can take to preserve the status quo and allow both parties' arguments to be considered on appeal before any modification of state law takes effect.

## ARGUMENT AND CITATION OF AUTHORITY

Under Fed. R. Civ. P. 62(c), a court may stay an injunction pending appeal. Courts consider four factors to determine whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)); *see also New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1280 (11th Cir. 2020) (granting stay of preliminary injunction pending appeal). "The first two factors of the traditional standard are the most critical." *Nken,* 556 U.S. at 434. Each of these factors favors granting a stay pending the appeal and cross appeal of the Injunction.

**I.   The Secretary is Likely to Succeed on the Merits of the Appeal.**

   **A. The Injunction is contrary to precedent upholding Georgia's petition-signature requirements.**

The Court entered the Injunction following its holding on summary judgment that Georgia's 5% petition-signature requirements in O.C.G.A. § 21-2-170(b) are unconstitutional under the First and Fourteenth Amendments. [Doc. 159]. The Court

3

found that the petition-signature requirements "impose a severe burden on [Plaintiffs'] First and Fourteenth Amendment rights" that is not outweighed by the State's interests in "bringing order to its ballots and screening out frivolous candidates." [*Id.* at 15, 39].

The Court's holding is a significant departure from the 50 years of Supreme Court and Eleventh Circuit precedent upholding the exact same statutory requirements as "reasonable, nondiscriminatory restrictions" that do *not* impose a severe burden on ballot access. *See generally Jenness v. Fortson*, 403 U.S. 431, 438 (1971); *McCrary v. Poythress*, 638 F.2d 1308 (11th Cir. 1981); *Coffield v. Handel*, 599 F.3d 1276 (11th Cir. 2010); *Cartwright v. Barnes*, 304 F.3d 1138 (2002). Indeed, the Eleventh Circuit has upheld Georgia's petition requirements in three separate challenges, holding each time that the associated burdens on candidates are not severe. *Coffield*, 599 F.3d at 1277 ("Our Court and the Supreme Court have upheld Georgia's 5% rule before."); *McCrary*, 638 F.2d at 1311-13 (relying on *Jenness* to uphold the 5% petition requirement); *Cartwright*, 304 F.3d at 1141 (recognizing that the analysis in *Jenness* "still equally pertains today" and that Georgia's 5% petition requirement is not severely burdensome).

Although the Eleventh Circuit previously remanded this action for further consideration under the *Anderson-Burdick* framework, it made clear that *Jenness* is

4

still controlling authority and the Court's determination must still be informed by the Supreme Court's decision in that case. *Cowen v. Ga. Sec'y of State*, 960 F.3d 1339, 1346 (11th Cir. 2020). Accordingly, in order to prevail on summary judgment, Plaintiffs were required to demonstrate that "a different result from *Jenness* is required in this case—either because of different facts in the instant record, as compared to the record in *Jenness*; changes in the relevant Georgia legal framework; or the evolution of the relevant federal law." *Id*.

Plaintiffs failed to sufficiently distinguish *Jenness* in any of these ways. *First*, the Eleventh Circuit expressly held in *Coffield* that "the pertinent laws of Georgia have not changed materially since *Jenness*." 599 F.3d at 1277. This remains true today, as the requirements under O.C.G.A. § 21-2-170(b) remain the same. Georgia still imposes few restrictions on the signature collection process. *Jenness*, 403 U.S. at 442. Specifically, voters may sign a petition for more than one candidate; voters are not required to state that they intend to vote for that candidate in the election; and voters who previously voted in a party primary are still eligible to sign a petition. *Id*. at 438-39. Additionally, Georgia law "does not fix an unreasonably early filing

deadline for candidates" and allows them six months to gather signatures. *Id.* at 438. Georgia also "freely provides for write-in votes." *Id.* at 438.[2]

*Second*, federal law has not evolved in a way that departs from *Jenness*, even though, as the Court noted in its summary judgment order, *Anderson-Burdick* has emerged as the current framework for courts to apply when considering ballot access cases. [Doc. 159 at 32-33]. *Jenness* still remains controlling Supreme Court precedent and has been frequently cited by federal courts, including the Eleventh Circuit, in upholding other state requirements. *See, e.g., Libertarian Party of Fla. v. Florida*, 710 F.2d 790, 793 (11th Cir. 1983) (upholding Florida's 3% petition requirement and declining to apply a heightened level of scrutiny); *Swanson v Worley*, 490 F.3d 894, 903-904 (11th Cir. 2007) (holding that Alabama's 3% petition requirement "does not impose a severe burden on plaintiffs' rights but is a reasonable, nondiscriminatory restriction"); *Stein v. Ala. Sec'y of State*, 774 F.3d 689, 694-99 (11th Cir. 2014) (holding that Alabama's ballot access requirements for presidential candidates did not demonstrate a burden that would subject them to strict

---

[2] Although the Court's summary judgment order notes that write-in candidates must now file a notice of candidacy to have their votes counted [Doc. 159 at 30-31], this is merely a filing requirement that does not impose additional burdens.

scrutiny).[3] If anything, federal courts have been consistently deferential in upholding state ballot-access requirements as reasonable, nondiscriminatory restrictions.

*Third*, the factual record does not support the Court's finding that, contrary to *Jenness*, Georgia petition-signature requirements now impose a severe burden on candidates. The Court was persuaded by the Plaintiffs' argument that "the historical record shows that third-party and independent candidates have largely been excluded from Georgia's congressional ballots." [Doc. 159 at 15]. But candidates' lack of success in obtaining ballot access has never been the applicable standard for whether a state requirement is a severe burden. Rather, the relevant inquiry is whether it is it "virtually impossible" for third-party candidates to access the ballot. *Jenness*, 403 U.S. at 435 (citing *Williams*, 393 U.S. at 24). When the *Jenness* Court observed that Georgia's election laws did not "operate to freeze the political status quo," it was looking at whether Georgia's scheme allowed for the *possibility* that a third party

---

[3] *See also Ariz. Libertarian Party v. Hobbs*, 925 F.3d 1085, 1093 (9th Cir. 2019) (holding that a state can allow signature requirements of up to 5% without imposing a "severe burden" triggering heightened scrutiny); *Libertarian Party of N.H. v. Gardner*, 843 F.3d 20, 26 (1st Cir. 2016) ("Neither the Supreme Court nor any circuit court has struck down a statewide ballot-access regime on the grounds that a signature requirement of 5% (or less) is too much, or that 6 months (or more) is too little time within which to gather the signatures from a pool of substantially all voters."); *Rainbow Coalition of Okla. v. Okla. State Election Bd.*, 844 F.2d 740, 743 (10th Cir. 1988) (rejecting the argument that strict scrutiny should be applied in upholding Oklahoma's 5% petition requirement for party status).

candidate could get on the ballot—not whether some had tried and failed. Moreover, the Eleventh Circuit previously rejected this same argument in *Cartwright* and *Coffield*, finding that the holding of *Jenness* still controlled and that Georgia's 5% petition requirement was not severely burdensome. *See Cartwright*, 304 F.3d at 1141; *Coffield*, 599 F.3d at 1277.

The evidence before the Court falls far short of proving that it is "virtually impossible" for a "reasonably diligent" candidate to meet the 5% petition requirement for Georgia's congressional district. *Libertarian Party of Florida v. Florida*, 710 F.2d 790, 793 (11th Cir. 1983) (quoting *Storer v. Brown*, 415 U.S. 724, 742 (1974)). Nearly all of the candidates that Plaintiffs identifed as having made a "genuine effort" to meet the petition requirements actually did very little work during the 6-month signature-gathering period.[4] The factual record simply does not support the Court's conclusion that a reasonably diligent candidate is unlikely to be able to meet the petition-signature requirements.

In sum, the Court's holding that Georgia's petition-signature requirements impose a "severe burden" and are subject to heightened scrutiny is unsupportable and unlikely to withstand scrutiny on appeal. As the Supreme Court noted in

---

[4] The Secretary provided a detailed critique of Plaintiffs' evidence in its summary judgment briefing, which is incorporated herein by reference. [Doc. 131-1 at 8-11; Doc. 140 at 10-12].

*Burdick*, "[e]lection laws will invariably impose some burden upon individual voters." 504 U.S. at 433. The mere fact that Georgia's "system 'creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny." *Id.* Such a result "would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Id.* Because the Secretary is likely to prevail on the merits of this issue on appeal, a stay is warranted.

### B. The Injunction is overly broad and exceeds the scope of relief sought by Plaintiffs.

The Secretary is also likely to succeed on the merits of his appeal because "there are serious and substantial problems that inhere in the remed[y]" the Court has chosen. *Hand*, 888 F.3d 1206. In the case of a constitutional violation, "injunctive relief must be tailored to fit the nature and extent of the established violation." *Gibson v. Firestone*, 741 F.2d 1268, 1273 (11th Cir. 1984). *See also Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) ("[I]n constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable."). An injunction "must be no broader than necessary to remedy the constitutional violation." *Newman v. State of Ala.*, 683 F.2d 1312, 1319 (11th Cir. 1982). When a district court fails to follow this principle and drafts an

9

unnecessarily broad injunction, the district court abuses its discretion. *Alley v. United States HHS*, 590 F.3d 1195, 1205 (11th Cir. 2009).

The Injunction is overly broad because it exceeds the scope of the Court's summary judgment order and the relief requested by Plaintiffs in their complaint. The Court's holding on summary judgment was that Georgia's petition-signature requirements *for U. S. Representative* are unconstitutionally burdensome in violation of the First and Fourteenth Amendments. [Doc. 159 at 44]. The Court has never been presented with the question of whether Georgia's ballot access requirements for other offices are also unconstitutional. As stated in their complaint, Plaintiffs' case is "a constitutional challenge to Georgia's ballot-access laws for third-party candidates for U.S. Representative," as set forth in O.C.G.A. § 21-2-170. [Doc. 1 at ¶ 1]. At no point in this action did Plaintiffs challenge Georgia's ballot-access laws for any office other than U.S. Representative, as acknowledged in the Court's summary judgment order: "This case is a constitutional challenge to Georgia's ballot-access restrictions for third-party and independent candidates seeking election to the *United States House of Representatives*." [Doc. 159 at 2] (emphasis added).

It has never been established that the Court even has jurisdiction to entertain a constitutional challenge to Georgia's petition signature requirements for any office other than U.S. Representative in this action. The Plaintiffs include the Libertarian

10

Party of Georgia, as well as individuals who have run or aspire to run as candidates for U.S. Representative in Georgia. [Doc. 1 at ¶ 2]. Plaintiffs have not established that they have any standing to challenge the petition signature requirements for any other office in Georgia. Moreover, the factual record presented at summary judgement [*see generally* Doc. 73-1], as well as the factual findings made by the Court in its summary judgement order [*see generally* Doc. 159], are limited to the burdens imposed on third-party candidates running for U.S. Representative in Georgia—not other non-statewide offices. Indeed, the primary fact relied upon by the Court in concluding that the petition signature requirements impose a severe burden is the fact that no third-party candidate has succeeded in meeting the requirements for *U.S. Representative*. [*see* Doc. 159 at 27-28]. The Court made no similar findings with respect to other non-statewide offices.

Additionally, the Injunction's drastic 80% reduction of the current petition signature requirement is not narrowly tailored to fit the alleged constitutional violation and fails to account for the State's "undoubted right" to require candidates demonstrate "a preliminary showing of substantial support" before placing them on the ballot. [Doc. 165 at 4]. The General Assembly reasonably determined that Georgia's 5% petition signature requirement was necessary to keep frivolous candidates off of the ballot and avoid ballot overcrowding. The Injunction reduces

11

the petition signature requirement by such a substantial amount that it is likely to undermine the State's important interests,[5] especially now that the Court has applied the same reduction to all non-statewide offices.

Accordingly, because the Injunction is far "broader than necessary to remedy the constitutional violation," *Newman*, 683 F.2d at 1319, it is not likely to withstand scrutiny on appeal, and should be stayed pending review.

## II. The Secretary Faces Irreparable Harm if the Injunction is not Stayed.

Along with likelihood of success on the merits, whether the Secretary will be irreparably injured absent a stay is a "most critical" factor in the analysis whether to grant a stay pending appeal. *Hand*, 888 F.3d at 1207. This factor weights strongly in favor of the Secretary here, as the Secretary has been enjoined from enforcing Georgia law. "[A]ny time a state is enjoined by a court from effectuating statutes

---

[5] The Injunction brings Geogia's requirements far below those found to be constitutionally permissible in other states, including within this Circuit. *See, e.g.*, *Libertarian Party of N.H. v. Gardner*, 843 F.3d 20, 27 (1st Cir. 2016) (New Hampshire's 3% signature requirement); *Swanson v. Worley*, 490 F.3d 894, 912 (11th Cir. 2007) (Alabama's 3% signature requirement); *Rainbow Coalition of Okla. v. Okla. State Election Bd.*, 844 F.2d 740, 744 (10th Cir. 1988) (Oklahoma's 5% signature requirement); *Populist Party v. Herschler*, 746 F.2d 656, 660 (10th Cir. 1984) (Wyoming's 5% signature requirement); *Libertarian Party of Fla. v. Florida*, 710 F.2d 790, 795 (11th Cir. 1983) (Florida's 3% signature requirement); *Dart v. Brown*, 717 F.2d 1491, 1510 (5th Cir. 1983) (Louisiana's 5% signature requirement to be recognized as a political party); *Parker v. Duran*, Civil No. 14-cv-617 MVGBW, 2014 U.S. Dist. LEXIS 181033, at *30 (D.N.M. Aug. 17, 2014) (New Mexico's 3% signature requirement).

enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1301 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Ca. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers); *see also Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018) (enjoining "the State from conducting this year's elections pursuant to a statute enacted by the Legislature … would seriously and irreparably harm the State").

The Secretary "has a substantial interest in avoiding chaos and uncertainty in [statewide] election procedures," and should not be forced to implement new requirements while an appeal is pending. *Hand*, 888 F.3d at 1214. While the signature-gathering period for political body candidates is not scheduled to open until January 2022, it would be prudent for the current petition requirements to remain in place until the Eleventh Circuit has reviewed the merits of the appeal. The Secretary's office will not be able to publish the petition requirements until after the Georgia General Assembly has completed the redistricting process during its upcoming special session, which is not scheduled to begin until November. The timeline for publishing the petition requirements for all non-statewide offices is already truncated, and the likelihood that those requirements will be altered on appeal injects further uncertainty into the process. This potential for confusion will affect the Secretary's office, candidates seeking to qualify for office, and the county

elections officials who verify the signatures on petitions.[6] In order to avoid this irreparable harm to the Secretary, as well as to the electoral process in general, the motion to stay should be granted.

### III. The Balance of Harms and Public Interest Favor a Stay of the Injunction.

The final two factors are the balance of harms and the public interest, *Nken*, 556 U.S. at 426. Where the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest. *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (citing *Nken*, 556 U.S. at 435).

The balance of harms here clearly favors the State. In terms of harm to the State, the Supreme Court has repeatedly emphasized that "[a] State indisputably has a compelling interest in preserving the integrity of its election process." *Brnovich v. Democratic Nat'l Comm.*, ___ U.S. ___, 141 S.Ct. 2321, 2347 (2021) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)). In comparison, Plaintiffs will not suffer irreparable injury if the Injunction is stayed pending appeal because the stay merely maintains the status quo that has existed for over five decades since the Supreme Court first upheld the constitutionality of the statutory scheme challenged in this

---

[6] County election officials verify the validity of signatures on a petition even if the petition does not have enough signatures on its face in order to give credit to the signer for signing the petition. However, lowering the number of required signatues will likely increase the time pressure on this task at a time when counties will be actively administering elections.

action. If the Injunction is upheld on appeal, it will not harm their efforts to seek ballot access under any alteration to the State's statutory scheme upheld after appellate review. By contrast, if the Injunction is not stayed and is reversed on appeal, the resulting change in the legal requirements could frustrate or even prevent candidates from obtaining ballot access. *See Hand*, 888 F.3d at 1214 ("We are reluctant to upset the system now in place—particularly since [its] order creates so truncated a schedule—when there is a good chance [its] order may be overturned, and the system would need to be changed still again.")

The prospect of shifting the petition-signature requirements multiple times within the same election cycle—first to this Court's interim relief of 1% and then potentially back to the current 5% or to a new, altered requirement different from the Court's ordered relief—lays the stage for confusion among any propospective candidate (as well as the public). For these reasons, it is in the best interest of all of the parties to maintain the status quo until the Eleventh Circuit "has had an opportunity on full briefing to come to grips with the many constitutional and equitable issues that have been raised" in this case. *Id.* at 1214-15.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that his motion to stay be granted expeditiously.

Respectfully submitted, this 1st day of October, 2021.

                                              Christopher M. Carr 112505
                                              Attorney General

                                              Bryan K. Webb 743580
                                              Deputy Attorney General

                                              Russell D. Willard 760280
                                              Senior Assistant Attorney General


                                              /s/*Charlene S. McGowan*
                                              Charlene S. McGowan 697316
                                              Assistant Attorney General

                                              40 Capitol Square SW
                                              Atlanta, GA 30334
                                              cmcgowan@law.ga.gov
                                              404-458-3658

                                              *Attorneys for Defendant*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing has been formatted using Times New Roman font in 14-point type in compliance with Local Rule 7.1(D).

*/s/Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2021, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record in this case.

*/s/Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General
