IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARTIN COWEN, *et al.*, | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:17-CV-04660-LMM |
| BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, | |
| Defendant. | |

## **ORDER**

This case comes before the Court on Defendant Brad Raffensperger's Emergency Motion to Stay Permanent Injunction Pending Appeal. Dkt. No. [182]. On September 3, 2021, this Court entered an order enjoining the Secretary of State from enforcing the 5% petition-signature requirement of O.C.G.A. § 21-2-170(b) and replacing that requirement with a 1% petition requirement until the General Assembly can craft a constitutional replacement to the enjoined law. Dkt. No. [168]. Secretary Raffensperger now moves this Court to stay the injunction pending appeal. Dkt. No. [182]. Plaintiffs have responded and oppose the motion. Dkt. No. [186].

"[P]arties are entitled to a stay if they show (1) that they will likely succeed on the merits; (2) irreparable injury absent a stay; (3) that the stay will not

substantially injure the other interested parties; and (4) that a stay is in the public interest." New Ga. Project v. Raffensperger, 976 F.3d 1278, 1280 (11th Cir. 2020); see also Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986) (describing "[t]he grant of an emergency motion to stay [a] trial court's mandate" on the basis of these factors as "an exceptional response").

    Secretary Raffensperger argues that all four factors are satisfied here. First, Secretary Raffensperger argues that he is likely to succeed on the merits because the injunction is contrary to precedent upholding Georgia's petition-signature requirements and because the injunction is overly broad. Dkt. No. [182] at 3-12. Second, Secretary Raffensperger claims that irreparable injury will occur absent a stay because a state is irreparably injured anytime it is enjoined from effectuating statutes enacted by representatives of its people and because this injunction in particular will inject uncertainty into statewide election procedures. Id. at 12-14. Third, Secretary Raffensperger argues a stay would only preserve the status quo and would thus not substantially injure Plaintiffs. Id. at 14-15. Fourth and finally, Secretary Raffensperger argues a stay would protect the public's interest in consistent election procedures and avoid overtaxing the county election officials tasked with verifying the validity of signatures. Id.

    The Court is not persuaded that a stay is appropriate. First, the Court finds that Secretary Raffensperger is not likely to succeed on the merits. After the Court initially granted summary judgment to Secretary Raffensperger on the grounds that Plaintiffs' claims were foreclosed under Jenness v. Fortson,

403 U.S. 431, 432 (1971) and its progeny, the Eleventh Circuit Court of Appeals held that "Jenness does not automatically preclude any subsequent challenges to Georgia's ballot-access requirements" and remanded the matter with express instructions to apply the balancing analysis set forth in Anderson v. Celebrezze, 460 U.S. 780 (1983), explaining that "the Anderson analysis must be undertaken even if the very same requirement had been previously upheld as constitutional, if there are at least some non-frivolous arguments that, since the decision upholding the requirement, circumstances have changed the context of the analysis." Cowen v. Ga. Sec'y of State, 960 F.3d 1339, 1342 n.1, 1346 (11th Cir. 2020). On remand, the Court carefully conducted the analysis and concluded that a different result from Jenness was required in this case based on a robust record showing that third-party and independent candidates have largely been excluded from Georgia's congressional ballots despite their reasonable diligence in attempting to meet Georgia's ballot-access requirements; that Georgia holds third-party and independent candidates to a higher bar than any other state, underscoring the severity of the burden in Georgia; that practical difficulties of obtaining petition signatures to appear on a ballot make it virtually impossible for third-party and independent candidates to meet Georgia's ballot-access requirements; and that the Secretary of State's petition-checking process yields signature-validation rates that require potential third-party and independent candidates to gather signatures in excess of those required by O.C.G.A. § 21-2-170. Dkt. No. [159] at 15-27, 31-32. The Court additionally found

that the conditions here differed from the relevant considerations that were before the <u>Jenness</u> court because a qualifying fee was not at issue in <u>Jenness</u> but is part of the cumulative burdens challenged by Plaintiffs in the instant matter; Georgia law has changed to further limit ballot access since <u>Jenness</u> was decided; federal campaign finance law has become more stringent, making it more difficult for candidates to raise funding to procure petition signatures; and <u>Anderson</u> changed the rubric for analyzing ballot-access challenges like the one in this case. <u>Id.</u> at 28-33. The Court also distinguished post-<u>Anderson</u> cases in which the Eleventh Circuit issued decisions approving Georgia's 5% petition-signature requirement. <u>Id.</u> at 33-36. In sum, the Court carefully conducted the <u>Anderson</u> analysis, just as it was directed to do by the Eleventh Circuit Court of Appeals.

     As to Secretary Raffensperger's argument that the injunction should be stayed because it is overly broad, the Court has already considered Secretary Raffensperger's contention that the injunction should be limited to Georgia's ballot-access restrictions for third-party and independent candidates seeking election to the U.S. House of Representatives and did not include the limitation in the injunction, <u>compare</u> Dkt. No. [166] at 2-4 <u>with</u> Dkt. No. [168] at 1-2, yet Secretary Raffensperger filed no motion for reconsideration, <u>see</u> Dkt. The Court finds it improper for Secretary Raffensperger to have bypassed the opportunity to have the issue decided on the merits in favor of a collateral attack raised on a motion to stay. It also bears noting that on summary judgment, Secretary

Raffensperger argued in favor of the 5% petition-signature requirement based on evidence of signature-gathering activities undertaken by two candidates for State House and one for Brunswick District Attorney, Dkt. No. [140] at 12 (citing Dkt. No. [135-3] ¶¶ 60-62), which suggests to the Court that the Secretary also sees no reasonable basis for distinguishing the petition-signature requirement for third-party and independent candidates for the U.S. House of Representatives from that of third-party and independent candidates for other non-statewide races.[1]

The Court therefore is not persuaded that Secretary Raffensperger is likely to succeed on the merits.

Because the Court does not find that Secretary Raffensperger is likely to succeed on the merits of the appeal, it is not necessary for the Court to address the other factors at length. Nevertheless, the other factors also weigh in Plaintiffs' favor. The Secretary's argument that the state suffers an irreparable injury any time it is enjoined from effectuating its own statutes is a truism that does not evoke a specific injury. The Court also finds little reason for concern over the potential for confusion, since the injunction is crafted to mirror the 1% petition-signature requirement for state-wide elections, see Dkt. No. [168] at 2, which should be quite familiar to the Secretary's office, political-body officials,

---

[1] Even if the injunction were overbroad, Secretary Raffensperger has identified no authority to support the position that the entire injunction should be stayed rather than only that portion pertaining to the petition-signature requirements for the U.S. House of Representatives. Dkt. No. [182] at 9-12.

and the county election officials who verify the signatures on petitions. Conversely, Plaintiffs are likely to suffer irreparable harm absent a stay because Georgia's enjoined 5% petition-signature requirement screens out legitimate candidates without reasonable justification and does so to such an extent that third-party and independent candidates have largely been excluded from Georgia's congressional ballots. Moreover, denying the stay is in the public interest because the right of individuals to associate for the advancement of political beliefs and the right of qualified voters to cast their votes effectively—rights vindicated under the injunction—"rank among our most precious freedoms." Williams v. Rhodes, 393 U.S. 23, 30 (1968). For all of these reasons, a stay is not warranted here.

In light of the foregoing, Secretary Raffensperger's Emergency Motion to Stay Permanent Injunction Pending Appeal is **DENIED**.

**IT IS SO ORDERED** this 18th day of October, 2021.

_____
**Leigh Martin May**
**United States District Judge**