IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARTIN COWEN, ALLEN BUCKLEY, AARON GILMER, JOHN MONDS, and the LIBERTARIAN PARTY OF GEORGIA, INC., a Georgia nonprofit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, Georgia Secretary of State,<br><br>Defendant. | CASE NO.: 1:17cv04660-LMM |

## BRIEF IN SUPPORT OF DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT

Defendant Brad Raffensperger, Georgia Secretary of State, submits the following brief in support of his third motion for summary judgment.

## Introduction

The Eleventh Circuit's decision holding that Georgia's 5% petition-signature requirement for political body candidates does not violate the First and Fourteenth Amendments or the Equal Protection Clause of the U.S. Constitution fully resolved Plaintiffs' claims on the merits. *Cowen v. Sec'y of Ga.*, 22 F.4th 1227 (11th Cir. 2022) ("*Cowen II*"). Because Plaintiffs do not

1

have a legally viable equal protection claim remaining following *Cowen II*, the Court should enter judgment in favor of the Secretary of State consistent with this decision.

Plaintiffs' remaining theory alleges that Georgia's petition-signature requirement was originally enacted in 1943 by the Georgia General Assembly with the purpose of discriminating against the Communist Party. Although the Secretary does not concede this allegation, even if Plaintiffs were able to prove their theory at trial, it would be insufficient to prove an equal protection violation as a matter of law. Evidence of discriminatory intent can be relevant to an equal protection challenge where the plaintiff must show that a state regulation has both a discriminatory purpose and effect. *See, e.g., Greater Birmingham Ministries v. Sec'y of Ala.*, 992 F.3d 1299, 1321 (11th Cir. 2021); *Burton v. City of Belle Glade,* 178 F.3d 1175, 1188–89 (11th Cir. 1999); *Hunter v. Underwood,* 471 U.S. 222, 227–28 (1985). But where, as here, Plaintiffs raise an equal protection challenge to a state *ballot-access* regulation, the Eleventh Circuit has made clear that the appropriate standard of review is the *Anderson-Burdick* framework, where the level of scrutiny is dependent on the severity of the burden imposed by the regulation—not its intent. *Cowen II*, 22 F.4th at 1235. The Eleventh Circuit applied the *Anderson-Burdick* framework to Plaintiffs' equal protection claim

in *Cowen II*, and held that Georgia's petition-signature requirement did not violate equal protection. *Id.* This is the end of the inquiry. Plaintiffs' discriminatory purpose theory adds nothing to the *Anderson-Burdick* analysis, which only takes into account the burdens imposed on candidates, rather than the original intent behind the statute. Moreover, any evidence that Georgia's petition-signature requirement was enacted with the intent to discriminate against non-party candidates is simply irrelevant because the statute on its face classifies between political party and non-political party candidates.

Because Plaintiffs still fail to establish an equal protection claim as a matter of law, a trial on this issue is unnecessary, and the Court should enter judgment in favor of the Secretary.

## **Relevant Background**

The sole issue remaining before the Court is whether Plaintiffs have a viable equal protection claim based upon their discriminatory purpose theory. Plaintiffs' original complaint contains two counts: Count I alleges that Georgia's 5% petition-signature requirement for U.S. Representative violates the First and Fourteenth Amendments of the U.S. Constitution, and Count II alleges that the requirement denies equal protection under the Fourteenth Amendment. [Doc. 1 at 37]. The Secretary previously moved for summary

judgment on all counts of Plaintiffs' complaint [Doc. 135], and Plaintiffs' equal protection arguments, including the discriminatory purpose theory, were extensively briefed by the Secretary [*See* Doc. 135–1 at 21–25; Doc. 149 at 6–14].

Plaintiffs filed a cross-motion for summary judgment on their First and Fourteenth Amendment and equal protection claims, but stated that they were not moving for summary judgment on their claim that "Georgia's five-percent petition requirement is unconstitutional because it was adopted for a discriminatory purpose," because the parties "have a factual dispute about that purpose." [Doc. 134 at 1, 2 n.1]. Plaintiffs' theory is based upon the testimony of their designated expert, Darcy Richardson, who concluded that "the Georgia General Assembly enacted the petition requirement in 1943 for the discriminatory purpose of preventing the Communist Party candidates from appearing on Georgia's ballots." [Doc. 69-20 at 1 (Richardson Declaration)].[1]

---

[1] The Secretary previously filed a *Daubert* motion to exclude Mr. Richardson's testimony [Doc. 137], which the Court denied as moot [Doc. 165 at 9]. Plaintiffs have asked the Court to reopen discovery to designate a substitute expert witness on this issue because Mr. Richardson is apparently unavailable.

The Court granted Plaintiffs' motion for summary judgment and denied the Secretary's motion as to Plaintiffs' First and Fourteenth Amendment claim (Count I). [Doc. 159 at 44]. However, the Court granted the Secretary's motion for summary judgment as to Plaintiffs' "classification theory for their equal protection claim." [*Id.* at 45]. The Court further denied the Secretary's motion for summary judgment as to Plaintiffs' discriminatory purpose theory as moot. [Doc. 165 at 8–9].

On appeal, the Eleventh Circuit reversed the Court's partial grant of summary judgment in favor of the Plaintiffs, holding that Georgia's petition-signature requirement does not violate the First or Fourteenth Amendments as a matter of law. *Cowen II*, 22 F.4th at 1234. The Eleventh Circuit also affirmed the Court's grant of summary judgment in favor of the Secretary on Plaintiffs' equal protection claim, holding that the petition-signature requirement does not deny equal protection under the *Anderson-Burdick* framework. *Id.* at 1235.

Following the Eleventh Circuit's decision in *Cowen II*, the Court entered final judgment dismissing Plaintiffs' claims with prejudice. [Doc. 194]. However, upon Plaintiffs' motion, the Court vacated the final judgment "as to the equal protection claim asserted on a discriminatory-purpose

5

theory." [Doc. 196 (citing Doc. 134 at 2, n.1)]. The Court invited the Secretary to file a motion for summary judgment on this claim. [Doc. 208].

## Argument

Plaintiffs' equal protection claim based on a "discriminatory purpose theory" cannot survive the Eleventh Circuit's decision in *Cowen II*. First, Eleventh Circuit precedent is clear that in cases involving equal protection challenges to state ballot-access laws, courts are to apply the *Anderson-Burdick* framework. Because the Eleventh Circuit already considered Georgia's petition-signature requirement under the *Anderson-Burdick* framework and held that the law does not violate equal protection, this ends the inquiry as to the entirety of Plaintiffs' equal protection claim.

But even if *Cowen II* had not fully resolved the equal protection claim, Plaintiffs' theory that the petition-signature requirement was enacted with the intent to discriminate against the Communist Party is insufficient to prove a violation of equal protection. Discriminatory intent is only one element of an ordinary equal protection claim, which requires evidence of both discriminatory intent and effect, rather than a standalone theory as Plaintiffs contend. Even more, evidence of a discriminatory purpose is irrelevant here because courts only use such evidence of intent when a

statute is facially neutral, and Georgia's ballot-access laws classify political groups for different treatment on their face. *See* O.C.G.A. § 21–2–170; § 21–2–180.

Finally, to the extent that Plaintiffs rely on their discriminatory purpose theory to argue that the Court should apply strict scrutiny, that argument is also foreclosed by *Cowen II*'s holding that the *Anderson-Burdick* framework applies to Plaintiffs' equal protection claim, rather than a strict scrutiny analysis. And in any event, evidence of discriminatory intent would not trigger strict scrutiny in this case because minority political parties do not make up a suspect class that would allow for such scrutiny, and Plaintiffs cannot trace the legislature's alleged discriminatory intent to the Libertarian party—only to the Communist Party. For these reasons, the Secretary is entitled to summary judgment.

### A. Courts are required to apply the *Anderson-Burdick* test to equal protection challenges to state ballot-access laws.

A successful equal protection challenge under the Fourteenth Amendment "requires proof of *both* an intent to discriminate and actual discriminatory effect." *Greater Birmingham Ministries*, 992 F.3d at 1321 (emphasis in original). Ordinarily, the strict scrutiny test is applicable under the Equal Protection Clause to classifications affecting the exercise of

7

fundamental rights or a suspect class. *See Fulani v. Krivanek*, 973 F.2d 1539, 1542 (11th Cir. 1992); *Burton,* 178 F.3d at 1190. Under a strict-scrutiny analysis, "once a plaintiff has demonstrated the burden on her fundamental right, the state must show that the law advances a compelling interest and is narrowly tailored to meet that interest." *Fulani*, 973 F.2d at 1542–43 (quoting *Duke v. Cleland*, 954 F.2d 1526, 1529 (11th Cir. 1992)).

Equal protection challenges to state *ballot-access* laws are treated differently, however, and the Eleventh Circuit has made clear that equal protection challenges to state ballot-access laws are to be considered under the *Anderson-Burdick* test, rather than a strict scrutiny analysis. *Fulani*, 973 F.2d at 1543–44 ("In this circuit, however, equal protection challenges to state ballot-access laws are considered under the *Anderson* test."); *Independent Party of Fla v. Sec'y, Fla.,* 967 F.3d 1277, 1283–84 (11th Cir. 2020) ("We apply the *Anderson-Burdick* test to resolve equal-protection challenges to a ballot-access requirement.").

In *Fulani*, the Eleventh Circuit rejected the application of strict scrutiny to an equal protection challenge to a state ballot-access law that required minor political parties to pay a fee to verify signatures on a nominating petition. 973 F.2d at 1543. The Court noted that "ordinarily, the strict scrutiny test is applicable under the Equal Protection Clause to

8


classifications affecting the exercise of fundamental rights[,]" such as the right to vote. *Id.* at 1542–43 (citations omitted). However, the Court reasoned that the Supreme Court has applied the more flexible *Anderson* balancing test to challenges to state ballot-access laws under the First and Fourteenth Amendments, rather than strict scrutiny. *Id.* at 1543. The Court held that the *Anderson* test should similarly be applied to challenges to ballot-access laws brought under the equal protection clause of the Fourteenth Amendment.[2] *Id.*

Following this precedent, the Eleventh Circuit applied the *Anderson-Burdick* test to Plaintiffs' equal protection claim in *Cowen II*. The Court first assessed "the character and magnitude of the asserted denial of equal treatment," noting that the asserted injury is that "Libertarian candidates for non-statewide office must petition for individual ballot access rather than

---

[2] Other circuits also apply the *Anderson-Burdick* test to equal protection challenges to state ballot-access laws, rather than strict scrutiny. *See, e.g.*, *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 692 (6th Cir. 2015) ("[O]ur cases hold that the *Anderson-Burdick* test serves as a single standard for evaluating challenges to voting restrictions") (citation omitted); *Rogers v. Corbett*, 468 F.3d 188, 193-94 (3d Cir. 2006) (holding that "the *Anderson* test is the proper method for analyzing such equal protection claims due to their relationship to the associational rights found in the First Amendment"); *Republican Party of Ark. v. Faulkner Cnty., Ark.*, 49 F.3d 1289, 1293 n.2 (8th Cir. 1995) ("In election cases, equal protection challenges essentially constitute a branch of the associational rights tree.").

benefiting from the Libertarian Party's qualification to nominate a slate of candidates at the statewide level." *Cowen II*, 22 F.4th at 1235. Because the magnitude of this inequality is no more substantial than the petition-signature requirement itself, the Court concluded that the burden is not severe. *Id.* In the next part of the analysis, the Court reasoned that the state has a compelling interest in "ensuring that candidates have a significant modicum of support among the electorate before placing them on the ballot," which justifies the disparity between the ballot-access requirements for statewide and non-statewide office. *Id.* The Court therefore held that the petition-signature requirement does not deny equal protection. *Id.* at 1236.

Plaintiffs did not raise their discriminatory purpose theory on appeal, and the Eleventh Circuit admittedly did not consider it in their analysis, but it would have no relevance anyways because the *Anderson-Burdick* test looks only at the burdens imposed on candidates weighed against the state's asserted interest, and not the original intent behind the ballot-access restriction. Accordingly, the Eleventh Circuit's holding in *Cowen II* fully resolved Plaintiffs' equal protection claim under the *Anderson-Burdick* framework, and the Court's inquiry should end here.

**B. Plaintiffs' discriminatory purpose theory is insufficient to prove an equal protection challenge.**

Even accounting for Plaintiffs' theory that the petition-signature requirement was enacted for a discriminatory purpose, Plaintiffs' equal protection claim still fails as a matter of law.

## 1. Evidence of discriminatory intent is only relevant where the challenged statute is facially neutral.

Because an equal protection challenge requires proof of discriminatory intent and effect, evidence that a law was enacted with the purpose of discriminating against a certain class can be relevant to prove the "intent" element. But evidence of discriminatory intent serves no purpose where, as here, the classification appears on the face of the challenge statute. *Shaw v. Reno*, 509 U.S. 630, 642 (1993) ("No inquiry into legislative purpose is necessary when the . . . classification appears on the face of the statute."); *see also Burton*, 178 F.3d at 1188–89 (11th Cir. 1999 ("If the City's annexation decisions created an express racial classification, no inquiry into discriminatory purpose is necessary."). Rather, this type of evidence is only relevant to show intent where the statute at issue is facially neutral but allegedly causes a discriminatory impact. *Reno*, 509 U.S. at 630, 642 (1993); *Burton*, 178 F.3d at 1188–89; *see also Hunter*, 471 U.S. at 227–28 (explaining that a court must evaluate whether a law was passed with a discriminatory purpose when it is neutral on its face).

11

Here, the classifications are evident on the face of the challenged statute—the statute sets out a petition-signature requirement for political body candidates that does not apply to political party candidates. O.C.G.A. § 21–2–170. Plaintiffs, themselves, have not claimed that this law is neutral— quite the opposite. *See* [Doc. 1 pp. 5–6, Doc. 134–1 pp. 9–10.] Therefore, evidence that the petition-signature requirement was enacted with a discriminatory purpose is irrelevant because it is clear from the statute that the legislature intended to create different ballot access requirements for different types of candidates, *i.e.*, non-political party candidates.

## 2. **Evidence of discriminatory purpose does not trigger strict scrutiny here where political affiliation is not a suspect class.**

Even if Plaintiffs could prove at trial that the petition-signature requirement was enacted with the purpose of discriminating against Communist Party candidates, it is not sufficient by itself to prove a violation of equal protection, or even warrant the application of strict scrutiny. Sufficient evidence that lawmakers had a discriminatory purpose in enacting a law can, along with other factors, trigger heightened judicial review but does not support an Equal Protection violation on its own. *See, e.g.*, *Washington v. Davis*, 426 U.S. 229, 242 (1976) (explaining that evidence of a

discriminatory purpose and discriminatory impact are required to "trigger[s] the rule . . . that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest considerations"); *see also Palmer v. Thompson*, 403 U.S. 217, 224–25 (1971) ("But no case in this Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it.").

Evidence of discriminatory purpose only requires heightened scrutiny by a court if the intent is to discriminate against a suspect class, such as based on racial classifications. *See, e.g., Burton*, 178 F.3d at 1190; *Hunter*, 471 U.S. at 227–28. The discrimination alleged by Plaintiffs here is based on partisan affiliation, which is not a suspect class for purposes of equal protection. Unlike distinguishing between racial groups, "[d]istinguishing between recognized political parties based on past electoral accomplishment is not per se invidiously discriminatory." *Werme v. Merril*, 84 F.3d 479, 484 (1st Cir. 1996) (citing *Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974)).

Because it is not a suspect class, courts routinely apply rational basis review to classifications that draw distinctions based on political affiliation—such as allowing major party members to perform certain functions while excluding independents and third party members. *See, e.g., Werme*, 84 F.3d 479, 484–85 (applying rational basis scrutiny to and upholding law allowing

only the two political parties with the largest number of votes cast for governor in the previous general election to select ballot inspectors and clerks); *Princin v. Bd. of Elections of Cuyahoga Cnty.*, 368 F. Supp. 64, 71 (N.D. Ohio 1973) (applying rational basis review and upholding regulation permitting membership boards of elections to be drawn solely from parties garnering the two highest vote totals); *White*, 415 U.S. at 781 (holding that the equal protection clause does not forbid states from drawing classifications that treat political parties and third parties differently).

Furthermore, Plaintiffs cannot even trace lawmaker's discriminatory intent to their own class, but rather to the Communist Party. *See Davis*, 426 U.S. at 240 (explaining that the "invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose"); *Joel v. City of Orlando*, 232 F.3d 1353, 1359 (11th Cir. 2000). (holding that the homeless could not challenge a law that had a discriminatory impact on their group because they could not show that lawmakers had an intent to discriminate against the homeless in particular). A discriminatory purpose "implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Nabozny v. Podlesny*, 92 F.3d 446, 453–54 (7th Cir. 1996). S*ee also*

*Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 522 (9th Cir. 2011) ("[P]laintiffs must show . . . that defendants acted with an intent or purpose to discriminate based upon plaintiffs' membership in a protected class.").

So even if Plaintiffs could demonstrate that the Georgia General Assembly discriminated against the Communist Party when it enacted the petition-signature requirement, it does not prove that legislators intended to discriminate against the Libertarian Party or other third-party candidates. Plaintiffs do not claim to assert the rights of the Communist Party, which it does not have standing to do. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("[A] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

In sum, Plaintiffs' theory that Georgia's petition-signature requirement was enacted with a discriminatory purpose against the Communist Party, even if proven at trial, does not warrant any heightened scrutiny beyond what is required under the *Anderson-Burdick* framework. The Eleventh Circuit already explained in *Cowen II* that the government has not only a legitimate interest but a compelling interest in ensuring that those who are on the ballot have a modicum amount of support, and the petition-signature

15

requirement is rationally related to that interest. *Cowen II*, 22 F.4th at 1235–36. Therefore, this Court should conclude that Plaintiffs' equal protection claim fails as a matter of law and enter judgment in favor of the Secretary.

Respectfully submitted, this 30th day of November, 2022.

> CHRISTOPHER M. CARR 112505
> Attorney General
> BRYAN K. WEBB 743580
> Deputy Attorney General
> RUSSELL D. WILLARD 760280
> Senior Assistant Attorney General
>
> /s/ *Charlene S. McGowan*
> CHARLENE S. MCGOWAN 697316
> Assistant Attorney General
>
> Office of the Georgia Attorney General
> 40 Capitol Square SW
> Atlanta, GA 30334
> cmcgowan@law.ga.gov
> Tel: 404-458-3658
>
> *Counsel for the Secretary of State*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing has been formatted using Century Schoolbook font in 13-point type in compliance with Local Rule 7.1(D).

<div style="text-align: right;">

*/s/Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General

</div>