IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Martin Cowen**, et al., Plaintiffs, vs. **Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia, Defendant. | Case No. 1:17-cv-04660-LMM  **Third Declaration of Richard Winger** |

## Introduction

1. My name is Richard Winger. I am over the age of 18, and I am competent to testify to the matters in this declaration.

2. For 54 years I have researched the ballot-access laws of all states, for the period 1888 to the present (there were no ballot access laws in the U.S. before 1888 because there were no government-printed ballots until that year).

3. Since 1985 I have published a newsletter, Ballot Access News (12 issues per year), which covers legal, legislative and political developments of interest to third parties and independent candidates.

PLAINTIFFS' MSJ EXHIBIT 68

4.      I have previously submitted two declarations in this case (ECF 69-25 and ECF **), and my curriculum vitae is attached to my first declaration.

5.      I am making this declaration based on my personal knowledge of the 1986 amendment to Georgia's petition requirements for third parties, and any opinions I may offer in this declaration are based on my personal experience as a lay witness to the events described herein.

6.      I wrote the bill that contained the 1986 amendment.

7.      The impetus for the bill was the Eleventh Circuit's decision *Bergland v. Harris*, 767 F.2d 1551 (11th Cir. 1985), which was a constitutional challenge to Georgia's petition requirement for presidential candidates.  The lead plaintiff in the case, David Bergland, was the Libertarian Party's presidential candidate in 1984 who had tried unsuccessfully to petition his way onto Georgia's ballot.

8.      The district court had dismissed the case, and the plaintiffs appealed.  On August 12, 1985, the Eleventh Circuit vacated the dismissal and remanded the case to the district court for further proceedings.  The district court then stayed the case to give the General Assembly an opportunity to change the petition requirement during the 1986 legislative session.

9. On October 29, 1985, there was a joint meeting of the Senate Governmental Operations Committee and the House State of Republic Committee to consider options for amending the requirement in response to *Bergland*. I testified at that hearing.

10. Prior to that hearing, I had worked with Senator Culver Kidd (D – Milledgeville) to develop a proposal. Senator Kidd was the chair of the Senate Governmental Operations Committee, and I perceived him as somewhat sympathetic to third parties. He told me that he could not get any proposal through the General Assembly if it applied to district offices. So I drafted a proposal that would have lowered the petition requirement to 10,000 signatures for any independent or minor-party candidate for a statewide office.

11. I presented the 10,000-signature proposal at the October 29 hearing alongside Jack Aiken and Bob Budnek, two lobbyists for the Libertarian Party. In my testimony, I noted that many states have a party-recognition petition that allows a third party to qualify for all offices. Georgia did not have such a process, and I suggested that it should.

12. In response to my testimony, a State Representative on the committee exclaimed "I don't want some damned Libertarian running against me!"

13. At the time, the Libertarian Party was by far the most prominent third party in Georgia. It had succeeded in getting Ed Clark, the party's presidential candidate, on Georgia's ballot in 1980—the first time that a third-party candidate had petitioned onto Georgia's presidential ballot since George Wallace in 1968. And the party's chairman, David Simmons, had appeared on the ballot in 1982 as the only challenger to the Democratic incumbent in Macon-based House District 102. Although still relatively new, the party was well organized and had lobbyists at the state capitol.

14. It was nonetheless apparent that the five-percent petition requirement was a substantial barrier to ballot access for the party. No congressional candidates had ever satisfied it. Few legislative candidates had. And the party did not have the resources to gather the signatures necessary to run a substantial number of candidates.

15. The General Assembly ended up adopting an amendment to the petition requirement that required substantially more signatures for statewide offices than I had proposed. And it adopted a party qualification petition—but only for statewide offices.

16. In the years following, Senator Kidd introduced bills that would have lowered the five-percent requirement to one percent for all offices or that would have provided a way for a third party to qualify for all offices, but those bills never succeeded.

17. Based on my experience during the legislative process for the 1986 amendment to the petition requirement, it is my opinion that the five-percent petition requirement for non-statewide offices was maintained for the purpose of discriminating against the Libertarian Party. That is, it was maintained specifically for the purpose of keeping the Libertarian Party off the ballot for non-statewide offices.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on December 21, 2022.

*Richard Winger*
Richard Winger
San Francisco, California

5