IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARTIN COWEN, ALLEN BUCKLEY, AARON GILMER, JOHN MONDS, and the LIBERTARIAN PARTY OF GEORGIA, INC., a Georgia nonprofit corporation,<br><br>   Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, Georgia Secretary of State,<br><br>   Defendant. | *<br>*<br>*<br>*<br>*  CASE NO.: 1:17-cv-4660-LMM<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The issue raised in the Secretary's motion is a pure legal one: whether the Eleventh Circuit's decision holding that Georgia's 5% petition-signature requirement does not violate equal protection under the Fourteenth Amendment forecloses Plaintiffs' "discriminatory purpose" theory. *Cowen v. Sec'y of Ga.*, 22 F.4th 1227, 1235 (11th Cir. 2022) ("*Cowen II*"). As *Cowen II* made clear, equal protection challenges to ballot-access laws are governed by the *Anderson-Burdick* test. *Id.* The Eleventh Circuit applied this test to the summary judgment record in this case and held that the petition-signature

1

requirement did not violate equal protection because the disparity between qualification methods for statewide and non-statewide office did not impose a severe burden on candidates and was justified by the state's interest. *Id.*

Plaintiffs' response to the Secretary's motion concedes that the *Anderson-Burdick* test is the appropriate legal standard [Doc. 210 at 12], but they argue that there are disputed issues of fact regarding whether the petition-signature requirement was enacted by the Georgia General Assembly with a "discriminatory purpose" that require a trial. But this completely misses the point. It is immaterial whether the purpose behind the petition-signature requirement was to discriminate against third-party candidates. Legislative intent simply is not an element of the *Anderson-Burdick* test, which weighs the burdens imposed by the ballot-access law against the state's asserted interest.

Plaintiffs fail to cite to a single case in which a court has considered evidence of "discriminatory purpose" as dispositive or even determinative of the level scrutiny to be applied in an equal protection challenge to a ballot-access case under *Anderson-Burdick*. The Sixth Circuit decision in *Graveline v. Benson*, 992 F.3d 524 (6th Cir. 2021), cited by Plaintiffs in support of this proposition, does nothing of the sort. That case stands for the unremarkable proposition that in an instance where, unlike here, the state regulation has

been found to impose a *severe* burden on the asserted rights, then strict scrutiny is the appropriate standard under *Anderson-Burdick*. *Id.* at 539–44. Plaintiffs' additional reliance on inapposite cases involving unrelated free speech and race discrimination issues also do not support their theory.

Because "discriminatory purpose" is neither a legally cognizable equal protection claim on its own nor a basis under *Anderson-Burdick* to shift to a strict scrutiny analysis in a case where the burden has already been determined to not be severe, it does not matter whether there is a factual dispute between the parties as to the legislature's purpose in adopting the petition-signature requirement. Even assuming a factual dispute exists on the issue of intent, it is not *material* because it is not relevant to Plaintiffs' equal protection challenge under *Anderson-Burdick*. A trial on this issue would be pointless, and adoption of the "discriminatory purpose" theory that Plaintiffs have invented out of whole cloth would be clear error. The Eleventh Circuit has already held that the petition-signature requirement does not violate equal protection under the correct legal test. Because there are no legally viable claims remaining, the Court should dismiss the action.

1. **There are no material issues of fact to be tried because the Eleventh Circuit already held in *Cowen II* that Georgia's 5% petition-signature requirement does not violate equal protection under *Anderson-Burdick*.**

There is no merit to Plaintiffs' argument that the Secretary's motion should be denied because there are issues of fact in dispute regarding whether the petition-signature requirement was adopted by the legislature with the purpose of preventing Communist Party candidates from accessing the ballot. The Secretary is not arguing that there is an absence of factual dispute between the parties on this issue. Rather, the Secretary's argument is that the legislature's purpose in adopting the petition-signature requirement is not *material* to Plaintiffs' equal protection claim because it is not a factor to be considered by the Court under the *Anderson-Burdick* test. An issue of fact is only "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). The legislative purpose behind the petition-signature requirement, even if in dispute, is not a *material* issue of fact that would affect the outcome of Plaintiffs' equal protection claim under the applicable legal test. For this reason, it is not necessary for the Court to hold a trial and resolve factual disputes on this issue.

The Eleventh Circuit already did the work of analyzing Plaintiffs' equal protection claim under the *Anderson-Burdick* test based on the material facts already established in the summary judgment record. *Cowen II*, 22 F.4th at 1235 ("we will conduct the necessary equal protection analysis ourselves based on the summary judgment record"). The Eleventh Ciruit first considered the Plaintiffs' asserted injury, namely that "Libertarian candidates for non-statewide office must petition for individual ballot access rather than benefitting from the Libertarian Party's qualification to nominate a slate of candidates at the statewide level." *Id*. It then concluded that the "magnitude of this inequality" was not "severe," and the "disparity between candidates can thus be justified if the State puts forward an important regulatory interest." *Id*. Turning to the next step in the *Anderson-Burdick* test, the Eleventh Circuit held that the State had a "compelling interest" in ensuring that candidates have modicum of support among voters within the congressional district in which they seek to run, and the petition-signature requirement served that compelling interest. *Id*.

Plaintiffs essentially ask this Court to re-do the Eleventh Circuit's equal protection analysis at trial and to apply a higher level of scrutiny. But if Plaintiffs believed that the petition-signature requirement was enacted with a discriminatory purpose justifying the application of heightened

scrutiny under *Anderson-Burdick*, they could have made that argument in prior summary judgment briefing and on appeal. The ultimate result reached in *Cowen II* would still not have changed because evidence of "discriminatory purpose" is immaterial to the analysis. But nevertheless, Plaintiffs are not entitled to a trial on the merits because they failed to raise this issue at an earlier stage.

Because the Secretary is not asking the Court to consider any new facts or evidence not already established in the record, there was no need for the Secretary to include an additional statement of undisputed material facts with this motion as Plaintiffs contend. As the Secretary's motion made clear, it involves a pure issue of law, namely, whether Plaintiffs' "discriminatory purpose" theory is a viable legal claim following *Cowen II*. [Doc. 209.] This argument is not new—the Secretary argued in his prior summary judgment motion that the law does not recognize "discriminatory purpose" as an independent claim but the Court denied this part of the motion as moot. [Doc. 149 at 9–13.] The Secretary raised this issue again in opposition to Plaintiffs' request to reopen discovery. [Doc. 206.] The Court noted that this argument "appeared to have merit," but that it was hesitant to dismiss the case "absent a motion and briefing." [Doc. 208 at 2.] Accordingly, the Court instructed the Secretary to file a motion for judgment on the legal issue of whether the

Plaintiffs' "discriminatory purpose" theory was a viable equal protection theory. [*Id.*]

The Secretary was not required to file a separate statement of undisputed material facts supported by citations to the record because this is only necessary where the moving party is relying on the stated facts to show the Court that the moving party is entitled to judgment as a matter of law. N.D. Ga. L.R. 56.1.[1] Local Rule 56.1 only prohibits the Court from considering any fact not separately stated by the moving party with supporting citations to the record. *Id.* Here, the Secretary is not asking the Court to consider any additional facts not already established in the record, because it is not necessary for the Court to consider any facts to resolve the purely legal issue

---

[1] The two non-precedential district court orders cited by Plaintiffs do not support their argument that a party is required to file a statement of undisputed material facts even where, as here, the motion is based solely on an issue of law. In those cases, the moving parties argued that they were entitled to summary judgment based on the undisputed facts, but the parties failed to include any statement of undisputed facts supported by citations to the record. Because the motions were not clear as to whether genuine issues of material fact remained that would prevent summary judgment, along with other procedural and substantive defects, the court denied them. *See Hopkins v. DeVeaux*, 781 F.Supp.2d 1283, 1296 (N.D. Ga. 2011); *Amy v. Schloeder*, 2017 U.S. Dist. LEXIS 229182, at *2 No. 1:15-CV-3857-LMM (N.D. Ga. Dec. 5, 2017). Here, the Court need only conclude that Plaintiffs' "discriminatory purpose" theory is not a viable claim as a matter of law in order to grant the Secretary's motion.

of whether Plaintiffs have a cognizable equal protection claim following *Cowen II*.

   **2.** ***Cowen II*** **held that Georgia's petition-signature requirement is not subject to strict scrutiny under *Anderson-Burdick*.**

As discussed above, the Eleventh Circuit already determined that the petition-signature requirement does not violate equal protection under the *Anderson-Burdick* test, which Plaintiffs concede is the applicable legal standard. [Doc. 210 at 12.] However, Plaintiffs argue that Georgia's petition-signature requirement is subject to strict scrutiny under *Anderson-Burdick* because it was "adopted or maintained for the purpose of discriminating against an identifiable political group." [*Id.*] Again, Plaintiffs had the opportunity to raise this argument when the Court previously considered Plaintiffs' equal protection claim on summary judgment. But even if the Court considers it now, Plaintiffs' argument that strict scrutiny should be applied to their equal protection claim when the Eleventh Circuit has already held otherwise is simply wrong.

The Supreme Court in *Anderson* and *Burdick* explicitly *rejected* the automatic application of strict scrutiny to laws that establish ballot-access requirements for independent or third-party candidates that differ from those for political party candidates. Indeed, that is the very purpose of the

8

*Anderson-Burdick* test, which provides a more flexible balancing test for courts to apply, rather than strict scrutiny. *Burdick v. Takushi*, 504 U.S. 428, 433–34 (1992) ("the mere fact that a State's system creates barriers … tending to limit the field of candidates from which voters might choose … does not of itself compel close scrutiny") (quotation marks and citations omitted); *see also Anderson v. Celebrezze*, 460 U.S. 480, 488 (1983).

Under this more flexible test, "the rigorousness of [the Court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. It is only when the burdens imposed on those rights are "severe" that "the regulation must be narrowly drawn to advance a state interest of compelling importance." *Id.* Although *Anderson* and *Burdick* involved constitutional challenges under the First and Fourteenth Amendments, the Eleventh Circuit has held that this framework also applies to equal protection challenges. *Fulani v. Krivanek*, 973 F.2d 1539, 1543–44 (11th Cir. 1992) ("In this circuit, however, equal protection challenges to state ballot-access laws are considered under the *Anderson* test."); *Independent Party of Fla v. Sec'y, Fla.*, 967 F.3d 1277, 1283–84 (11th Cir. 2020) ("We apply the *Anderson-Burdick* test to resolve equal-protection challenges to a ballot-access requirement.").

None of the cases cited by Plaintiffs support their argument that a ballot-access law is subject to strict scrutiny if it was adopted with a "discriminatory purpose." As noted *supra*, in *Graveline*, the Sixth Circuit held that Michigan's ballot-access scheme for statewide independent candidates, which included a 30,000 petition-signature requirement with a geographical diversity component combined with an early filing deadline, was subject to heightened scrutiny under the *Anderson-Burdick* test because the scheme imposed a severe burden. 992 F.3d at 544. Here, however, the Eleventh Circuit has already concluded that Georgia's petition-signature requirement does *not* impose a severe burden on candidates and declined to apply heightened scrutiny. *Cowen II*, 22 F.4th at 1235. The remaining cases cited by Plaintiff are inapposite and do not support Plaintiffs' argument that strict scrutiny is warranted here or that a "discriminatory purpose" theory is viable on its own as a separate legal claim.[2]

---

[2] The other cases cited by Plaintiffs involve different legal issues, and none of them hold that ballot-access laws are subject to strict scrutiny if they are "discriminatory." *See Larios v. Cox*, 300 F. Supp. 2d 1320 (N.D. Ga. 2004) (involving a constitutional reapportionment challenge in which the court held that Georgia's legislative maps violated the "one person, one vote" principle); *Cox v. Barber*, 275 Ga. 415 (2002) (upholding Georgia's 12-month residency requirement for candidates for the Public Service Commission). Plaintiffs also cite the unreported superior court decision in *Durand v. Raffensperger* (*see* Ex. 69), which involved an administrative challenge to the qualifications of a candidate for Public Service Commission based upon her failure to meet the

### 3. Plaintiffs cannot raise new claims of "viewpoint discrimination" and "race discrimination" in response to a dispositive motion.

Plaintiffs offer two additional reasons why they contend the petition-signature requirement is subject to strict scrutiny, both of which they raise for the first time in response to the Secretary's motion but neither of which have merit. Plaintiffs first contend that petition-signature requirement is "viewpoint discrimination" in violation of the First Amendment. [Doc. 210 at 13–14]. Next, Plaintiffs allege that the petition-signature requirement was adopted with a "racially discriminatory purpose." [*Id.* at 14]. However, Plaintiffs have never alleged in their pleadings that the petition-signature requirement violates free speech under the First Amendment or discriminates on the basis of race. Plaintiffs may not attempt to amend their complaint by raising new claims in opposition to a summary judgment motion. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that the liberal pleading standard under Fed. R. Civ. P. 8(a) "does not afford plaintiffs with an opportunity to raise new claims at the

---

statutory residency requirement. While the superior court did apply strict scrutiny in that case, the decision is not precedent, is based on flawed reasoning, and became moot prior to appeal by a federal district court order cancelling the 2022 general election for Public Service Commission. *See Rose v. Raffensperger*, __ F. Supp. 3d __, 2022 U.S. Dist. LEXIS 140097, at *57, No. 1:20-cv-02921-SDG (N.D. Ga. Aug. 5, 2022).

11

summary judgment stage"). Because Plaintiffs cannot amend their complaint at this stage, the Court should not consider these arguments.

Nevertheless, Plaintiffs' newly alleged claims are entirely baseless. *First*, Plaintiffs wrongly assert that ballot-access laws adopted "for a discriminatory purpose violate the First Amendment's prohibition on viewpoint discrimination." [Doc. 210 at 13–14]. Plaintiffs fail to provide any explanation for how Georgia's petition-signature requirement for ballot access is a restriction on *speech* at all, let alone "viewpoint discrimination" prohibiting certain content. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (explaining that "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed"). Plaintiffs do not cite a single case in which a court has held that a ballot-access law is a restriction on speech under the First Amendment.[3] Instead, Plaintiffs rely on a number of inapposite cases not

---

[3] Courts have recognized that ballot-access laws can implicate the right to freedom of association protected by the First Amendment, but they are nevertheless governed by the *Anderson-Burdick* test. *See, e.g., Rogers v. Corbett*, 468 F.3d 188, 193-94 (3d Cir. 2006) ( "the *Anderson* test is the proper method for analyzing such equal protection claims due to their relationship to the associational rights found in the First Amendment"); *Republican Party of Ark. v. Faulkner Cnty., Ark.*, 49 F.3d 1289, 1293 n.2 (8th Cir. 1995) ("In election cases, equal protection challenges essentially constitute a branch of the associational rights tree.")

12

involving government regulations restricting speech, such as sign and noise ordinances, which are governed by a different legal standard for First Amendment challenges. *See Reed*, 576 U.S. at 164–65 (holding that a town sign ordinance that imposed more stringent restrictions on signs bearing certain types of content was an unconstitutional restriction on free speech); *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989) (upholding city regulations limiting sound volume for public concert venue as a content-neutral regulation of the time, place and manner of speech that did not violate the First Amendment); *DA Mortgage, Inc. v. City of Miami Beach*, 486 F.3d 1254, 1266–67 (11th Cir. 2007) (upholding content-neutral noise ordinance as a permissible time, place, and manner restriction). Because this is a ballot-access case, Plaintiffs' equal protection claim is governed by the *Anderson-Burdick* test, and the First Amendment cases cited by Plaintiffs are entirely irrelevant to the analysis.

Plaintiffs' race discrimination claim fares no better. They argue that ballot-access laws "adopted or maintained with a racially discriminatory purpose" are subject to strict scrutiny [Doc. 210 at 14], but the two cases they cite do not support this proposition and are not ballot-access cases. The Eleventh Circuit's decision in *Greater Birmingham Ministries v. Sec'y of State* was a challenge to Alabama's voter ID law, in which the plaintiffs alleged

13

that the law discriminated on the basis of race in violation of the Fourteenth and Fifteenth Amendments. 992 F.3d 1299, 1304 (11th Cir. 2021). The Supreme Court's decision in *Hunter v. Underwood* addressed whether a provision in the Alabama Constitution prohibiting any felon convicted of a crime of moral turpitude from registering to vote violated equal protection under the Fourteenth Amendment. 471 U.S. 222, 224 (1985). Because those cases involved equal protection challenges based on allegations of racial discrimination, the plaintiffs were required to prove both intent to discriminate and actual discriminatory effect. *Greater Birmingham Ministries*, 992 F.3d at 1321; *Hunter*, 471 U.S. at 227-28. If anything, these cases support the Secretary's argument that "discriminatory purpose" alone is insufficient to establish a violation of equal protection, and has no relevance at all where, as here, the challenged statute draws a classification on its face. [*See* Doc 209-1 at 11-12.]

    Even so, Plaintiffs do not even come close to showing that the petition-signature requirement was racially discriminatory. Plaintiffs have never pled nor substantively argued in the five years that this case has been pending that Georgia's ballot-access laws were adopted with a racially-discriminatory purpose, yet they now attempt to make this argument for the first time in response to a dispositive motion, citing to previously undisclosed and

14

unauthenticated documents purporting to show that the Communist Party advocated for racial equality as part of its platform. This evidence is thin at best, and it requires quite the logical leap to infer that because the Communist Party advocated for racial equality, the petition-signature requirement must have been adopted with a racially discriminatory intent. Plaintiffs' effort to tie the Communist Party of the 1930s and 40s to the modern Libertarian Party is even more of a *non sequitur*. [*See* Doc. 210 at 16–18.] Even construing Plaintiffs' purported evidence in their favor, Plaintiffs fail to raise a genuine factual issue as to whether the petition-signature requirement was adopted with the intent to discriminate on the basis of race. And, in any event, this evidence is immaterial to the *Anderson-Burdick* analysis.

But, of course, this is not Plaintiffs' actual claim. They have always maintained that the petition-signature requirement was intended to discriminate on the basis of political partisanship—not race. This last-ditch effort to avoid dismissal does not save their fatally-deficient equal protection theory, and it should be dismissed.

15

Respectfully submitted, this 4th day of January, 2023.

                      CHRISTOPHER M. CARR   112505
                      Attorney General
                      BRYAN K. WEBB         743580
                      Deputy Attorney General
                      RUSSELL D. WILLARD    760280
                      Senior Assistant Attorney General

                      /s/ *Charlene S. McGowan*
                      CHARLENE S. MCGOWAN 697316
                      Assistant Attorney General

                      Office of the Georgia Attorney General
                      40 Capitol Square SW
                      Atlanta, GA 30334
                      cmcgowan@law.ga.gov
                      Tel: 404-458-3658

                      *Counsel for the Secretary of State*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing has been formatted using Century Schoolbook font in 13-point type in compliance with Local Rule 7.1(D).

/s/ Charlene S. McGowan
Charlene S. McGowan
Assistant Attorney General