IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARTIN COWEN *et al.*, | : |
| Plaintiffs, | : |
| v. | : CIVIL ACTION NO. |
| | : 1:17-CV-04660-LMM |
| BRAD RAFFENSPERGER, *in his official capacity as Secretary of State of Georgia*, | : |
| Defendant. | : |

# **ORDER**

This case comes before the Court on Defendant's Third Motion for Summary Judgment [209] and Plaintiffs' Motion for Leave to Reopen Discovery [205]. After due consideration, the Court enters the following Order.

**I.    BACKGROUND**[1]

This case began in 2017 as a challenge to O.C.G.A. § 21-2-170, a state ballot-access law that imposes distinct requirements on third-party and independent candidates for non-statewide offices. After two appeals, Plaintiffs have one remaining claim: an Equal Protection Clause claim, alleging that the

---

[1] The Court's prior Orders on summary judgment and the Eleventh Circuit opinions in this case provide more detailed factual background. The Court only addresses the information relevant to Plaintiffs' remaining claim here.

statute was enacted with a discriminatory purpose. Defendant now seeks summary judgment on this issue.

Plaintiffs are the Libertarian Party of Georgia, Inc.; prospective Libertarian candidates for the U.S. House of Representatives; and prospective Libertarian voters. Dkt. No. [1]. Under Georgia law, the Libertarian Party is a "political body," not a "political party." O.C.G.A. § 21-2-2. A "political party" is a political organization whose nominees won at least 20% of the vote at the last gubernatorial or presidential election. Id. § 21-2-2(25). A political body is "any political organization other than a political party." Id. § 21-2-2(23). Georgia's ballot-access law distinguishes between these groups: political party candidates are guaranteed ballot access as long as they win their parties' primary and pay the filing fee, but political body candidates must be nominated at a party convention and submit nomination petitions signed by 5% of registered voters eligible to vote for that office in the most recent general election ("the 5% signature requirement"). Id. § 21-2-170.

Initially, Plaintiffs asserted that imposing these requirements on political body candidates violated their First and Fourteenth Amendment rights, as well as the Equal Protection Clause. Dkt. No. [1]. The Court granted Defendant summary judgment, but the Eleventh Circuit reversed the Court's decision and remanded the case for the Court to apply the Anderson test, Anderson v. Celebrezze, 460 U.S. 780 (1983), to Plaintiffs' First and Fourteenth Amendment claims and to separately consider Plaintiffs' equal protection claim. Cowen v. Ga. Sec'y of State,

(Cowen I), 960 F.3d 1339, 1347 (11th Cir. 2020). On remand, the Court granted Plaintiffs' Second Motion for Summary Judgment on their First and Fourteenth Amendment claims and entered a permanent injunction blocking enforcement of the 5% signature requirement. Cowen v. Raffensperger, 537 F. Supp. 3d 1327 (N.D. Ga. 2021); Dkt. Nos. [159, 168]. The Court also granted Defendant's Second Motion for Summary Judgment on Plaintiffs' classification theory for their equal protection claim. Cowen, 537 F. Supp. 3d at 1349. Under that theory, Plaintiffs argued that imposing stricter requirements on Libertarian candidates for non-statewide office than those for statewide office violated the Equal Protection Clause. Dkt. No. [134-1] at 53–54.

The case returned to the Eleventh Circuit on appeal, and the Circuit Court again reversed, holding that Georgia's ballot-access law does not violate the First and Fourteenth Amendments. Cowen v. Sec'y of State of Ga. (Cowen II), 22 F.4th 1227, 1234 (11th Cir. 2022). In that opinion, the Eleventh Circuit also affirmed the Court's grant of summary judgment to Defendant on Plaintiffs' equal protection claim under their classification theory, but for different reasons. Id. at 1234–36. The Eleventh Circuit applied the Anderson test to Plaintiffs' equal protection claim and found that the State's interests justified the ballot-access restriction. Id.

After Cowen II, the Court dismissed Plaintiffs' claims with prejudice, but Plaintiffs sought to revive the case for resolution of their discriminatory purpose equal protection claim. Dkt. Nos. [193, 195]. The Court reopened the case to

3

address Plaintiffs' contention that the 5% signature requirement violates the Equal Protection Clause because it was adopted for a discriminatory purpose, an argument the Court had originally deemed moot in light of its other rulings. Dkt. No. [196]. Defendant has now moved for summary judgment on this claim, and Plaintiffs oppose his Motion. Dkt. Nos. [209–11]. Plaintiffs also seek leave to reopen discovery to designate a replacement for one of Plaintiffs' experts. Dkt. No. [205].

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party discharges its burden by merely "'showing'—that

is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). If the record as a whole could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine dispute for trial. Id. (citations omitted). All reasonable doubts, however, are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation omitted).

## III. DISCUSSION

Plaintiffs contend that Georgia's ballot-access law is unconstitutional because it was enacted with a discriminatory purpose—namely, to prevent Communist Party candidates from appearing on Georgia ballots—and thus violates the Equal Protection Clause. Dkt. No. [1] ¶¶ 18–19. Defendant makes two primary arguments in his Third Motion for Summary Judgment.[2] First,

---

[2] Defendant elected not to include a statement of undisputed material facts with his Motion because Defendant contends the Motion only concerns an issue

Defendant contends that the Eleventh Circuit's opinion in Cowen II fully resolved Plaintiffs' equal protection claim under the Anderson framework. Second, Defendant argues that Plaintiffs' discriminatory purpose theory does not show an equal protection violation. For the reasons below, the Court finds that Defendant is entitled to summary judgment on Plaintiffs' final claim.

In Cowen II, the Eleventh Circuit addressed Plaintiffs' alternative equal protection theory, their classification theory. Cowen II, 22 F.4th at 1234–36. There, Plaintiffs argued that because the ballot-access restrictions treat Libertarian Party candidates for non-statewide offices differently from Libertarian Party candidates for statewide offices, they violate the Equal Protection Clause. Dkt. No. [134-1] at 53–55. The Eleventh Circuit found that Plaintiffs had not shown an equal protection violation under that theory but expressly stated that the discriminatory purpose theory was not at issue on appeal. Cowen II, 22 F.4th at 1231 n.2. While the Court rejects Defendant's argument that the Eleventh Circuit resolved all of Plaintiffs' equal protection

---

of law. Dkt. No. [209] at 1. Plaintiffs argue that the Court should deny Defendant's Motion because he violated the Local Rules in doing so. Dkt. No. [210] at 9–11. Given the extensive record in this case and the limited legal issue remaining, the Court will not deny Defendant's Motion on those grounds alone. Plaintiffs contend there is a genuine issue of material fact regarding whether the statute was adopted and is maintained for a discriminatory purpose. Dkt. No. [210] at 15–17. But as explained below, even if there is an issue of fact, it is not material. Allen, 121 F.3d at 646. Legislative intent is not part of the Anderson analysis that the Court applies in this case, so Plaintiffs cannot succeed on this claim as a matter of law.

claims on appeal, the Court agrees that Cowen II's equal protection analysis guides the Court's decision on the discriminatory purpose theory.

The parties do not dispute that the Anderson test governs the Court's equal protection analysis. In Cowen II, the Eleventh Circuit plainly stated, "This Circuit considers equal protection challenges to ballot-access laws under the Anderson test."[3] Id. at 1235; see also Fulani v. Krivanek, 973 F.2d 1539, 1543–44 (11th Cir. 1992); Indep. Party of Fla. v. Sec'y, Fla., 967 F.3d 1277, 1283–1284 (11th Cir. 2020). The Circuit Court then explained the test in three steps: "We assess 'the character and magnitude of the asserted denial of equal treatment,' 'identify the precise interests put forward by the State to justify its rule,' and 'determine the legitimacy and strength of each interest.'" Cowen II, 22 F.4th at 1235 (quoting Indep. Party, 967 F.3d at 1284).

The Anderson test "can be described as a balancing test that ranges from strict scrutiny to a rational-basis analysis, depending on the circumstances." Fulani, 973 F.2d at 1543. "Under this framework, the level of scrutiny we apply to a ballot-access law depends on the severity of the burdens it imposes." Indep. Party, 967 F.3d at 1281. Thus, "[s]evere restrictions on ballot access must be

---

[3] In Cowen I, the Eleventh Circuit indicated that strict scrutiny would apply to Plaintiffs' equal protection challenges, without the Anderson test: "[T]o the extent that ballot-access laws draw a distinction, the 'State must establish that its classification is necessary to serve a compelling interest.'" Cowen I, 960 F.3d at 1346 (quoting Ill. State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979)). But the Eleventh Circuit did not apply that standard in Cowen II, and the parties agree that Anderson applies here.

narrowly tailored to advance a compelling state interest." Id. (citing Grizzle v. Kemp, 634 F.3d 1314, 1322 (11th Cir. 2011)). "But reasonable, nondiscriminatory restrictions are usually justified by 'a State's important regulatory interests' in conducting orderly elections." Id. (quoting Grizzle, 634 F.3d at 1322). Further, "[h]owever severe the burden, we must ensure it is warranted 'by relevant and legitimate state interests sufficiently weighty to justify the limitation.'" Id. at 1281–82 (quoting Common Cause/Ga. v. Billups, 554 F.3d 1340, 1352 (11th Cir. 2009)). Applying this test to Plaintiffs' discriminatory purpose theory, the Court finds that the Georgia ballot-access law does not violate the Equal Protection Clause.

First, the Court must assess the character and magnitude of the asserted denial of equal treatment. Even though Plaintiffs agree that it is the proper legal standard, Plaintiffs do not apply the Anderson test to their discriminatory purpose theory in their Response to Defendant's Motion. In trying to evaluate Plaintiffs' claims under this theory, the Court assumes Plaintiffs' asserted denial of equal treatment would be a higher burden on political body candidates for non-statewide office than on political party candidates for the same office, which they allege was impermissibly created with the discriminatory purpose of keeping the Communist Party off the ballot. However, as Defendant points out, the Anderson test is not about the alleged discriminatory intent behind the statute; it asks instead about the effects of the statute—the denial of equal treatment. Dkt. No. [209-1] at 2–3. On this point, Plaintiffs contend that no third-party candidate

8

for U.S. Representative has ever satisfied the 5% signature requirement. Dkt. No. [210] at 8. The Eleventh Circuit already determined that this burden on third-party candidates was not severe. Cowen II, 22 F.4th at 1235. Because the Anderson test looks at the effects of the law, not its intent or original context, the Eleventh Circuit's determination of the severity of the burden controls here. Accordingly, strict scrutiny does not apply; instead, the state justifications must simply outweigh the limitations on candidates and voters. Indep. Party, 967 F.3d at 1281–82.

Plaintiffs allege that this equal protection claim is distinct from the claim on appeal in Cowen II. According to Plaintiffs, under Anderson, strict scrutiny should apply to the present challenge because the law places discriminatory burdens on the rights of political parties, candidates, or voters. Dkt. No. [210] at 12. The Anderson Court did find that "[a] burden that falls unequally on new or small political parties or on independent candidates" impinges on "associational choices protected by the *First Amendment*" because it discriminates against candidates and voters "whose political preferences lie outside the existing political parties." Anderson, 460 U.S. at 793–94 (emphasis added). But the Anderson Court did not conduct an equal protection analysis, and it did not hold that strict scrutiny must always apply to ballot-access distinctions between parties.

Plaintiffs also rely on Burdick v. Takushi, 504 U.S. 428, 434 (1992), to support their claim that discriminating between political groups requires strict

9

scrutiny, but Burdick does not go so far.[4] Burdick simply explains that Anderson requires strict scrutiny for laws that impose a severe burden; it does not refer to discrimination against parties, candidates, or voters in that section. Further, the Burdick Court did not consider an equal protection claim in its analysis either.

The more apt comparison is to Independent Party of Florida v. Secretary, State of Florida, 967 F.3d 1277. There, the Eleventh Circuit considered an equal protection challenge to a Florida ballot-access restriction for presidential candidates. The Eleventh Circuit explained, "[T]reating political parties differently may impermissibly burden constitutional rights when no legitimate reason exists for the distinction. . . . But the Supreme Court has made clear that States may account for relevant differences among political parties and candidates when regulating ballot access." Indep. Party, 967 F.3d at 1284. The court went on to find that the State's interest justified its ballot-access restriction, which imposed unique requirements on minor party candidates, and that the burden on those candidates was not severe. Id. It did not apply strict scrutiny despite the distinctions between political parties in the restriction. Accordingly, the Court finds that strict scrutiny is not applicable here.

Second, the Court must identify the state interests proffered to justify this rule. Like the first element, this inquiry does not refer to legislative intent. Thus, the alleged discriminatory purpose is again outside the Court's analysis.

---

[4] The same is true of the additional cases that Plaintiffs cite for this point. None of these references directly supports Plaintiffs' proposition.

Defendant does not offer new state interests in his Motion and instead relies on the Eleventh Circuit's discussion of state interests in Cowen II. Dkt. No. [209-1] at 10. There, the Circuit Court considered three state interests from Defendant: requiring a showing of support for a candidate before putting them on the ballot, maintaining orderly administration of elections, and avoiding confusion and frustration of the democratic process at a general election. Cowen II, 22 F.4th at 1234–35. The Court will consider these same interests here.

Third, the Court must determine the legitimacy and strength of those state interests. In Cowen II, the Eleventh Circuit determined that all those interests were compelling in its analysis of Plaintiffs' First and Fourteenth Amendment claims. Cowen II, 22 F.4th at 1234. In its equal protection analysis of Plaintiffs' classification theory, the Circuit Court again found the state interest in ensuring support for a candidate to be compelling. Id. at 1235. There is no reason for the Court to deviate from that analysis on Plaintiffs' alternative theory. Given the structure of the Anderson test, the Court's analysis here largely tracks the Eleventh Circuit's in Cowen II. Anderson requires the Court to examine the effects of the law and how the law serves state interests, not the legislative intent. Thus, the Court finds that Georgia's ballot-access law does not violate the Equal Protection Clause under Plaintiffs' discriminatory purpose theory.

Apart from the Anderson analysis, Plaintiffs raise two additional arguments for applying strict scrutiny in this case. First, Plaintiffs argue that ballot-access laws with a discriminatory purpose violate the First Amendment

prohibition on viewpoint discrimination. Dkt. No. [210] at 13–15. Plaintiffs do not have an outstanding First Amendment claim, and they cannot raise a new claim for the first time in response to Defendant's Motion. Second, Plaintiffs state that ballot-access laws with a racially discriminatory purpose are subject to strict scrutiny. Id. at 14–15. Like the new viewpoint discrimination claim, Plaintiffs have not previously brought a race discrimination claim in this case and cannot raise one now. Plaintiffs' claim is limited to what they pled in their Complaint.

The extent of their discriminatory purpose theory, according to Plaintiffs themselves, Dkt. No. [134] at 2 n.1, is two paragraphs in the Complaint. Dkt. No. [1] ¶¶ 18–19. The first simply states the 5% signature requirement "was enacted with the discriminatory purpose of preventing Communist Party candidates from appearing on Georgia's ballots," and the second references a news article from 1943, which shows that the requirement allowed the Georgia Secretary of State to refuse a Communist candidate for U.S. President a place on the ballot in 1940. Id. Plaintiffs' only remaining claim is for unequal treatment on the basis of political partisanship, not race. And it is an equal protection challenge, not a First Amendment viewpoint discrimination claim. Plaintiffs cannot assert a new claim at this late stage, so Plaintiffs' arguments for strict scrutiny on these grounds are unavailing.[5]

---

[5] Regardless, Plaintiffs acknowledge that strict scrutiny requires a showing of both discriminatory purpose and discriminatory effect for a successful race discrimination claim. Dkt. No. [210] at 14. Plaintiffs have not presented any evidence about racially discriminatory effects of this statute. In their Response to

In sum, the only remaining issue in this case is Plaintiffs' discriminatory purpose theory for their equal protection claim. Even on this theory, the challenged statute passes the Anderson test, which applies to equal protection challenges to ballot-access restrictions in this Circuit. Legislative intent is not central to that test, so following the Eleventh Circuit's prior opinions in this case, Plaintiffs' discriminatory purpose theory fares no better than their classification theory. Thus, Defendant is entitled to summary judgment on this claim as well.

## IV.   CONCLUSION

In accordance with the foregoing, Defendant's Third Motion for Summary Judgment [209] is **GRANTED**. Plaintiffs' Motion for Leave to Reopen Discovery [205] is **DENIED as moot**. The Clerk is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED** this 27th day of September, 2023.

_____
**Leigh Martin May**
**United States District Judge**

---

Defendant's Motion, Plaintiffs attach new evidence about the Communist Party platform from the 1930s and 1940s and make new arguments about the Communist Party agenda and race discrimination. This evidence is not sufficient to create a genuine issue of material fact about whether the 5% signature requirement was adopted with a discriminatory intent, and it does not show that it has a racially discriminatory effect. Thus, even if strict scrutiny applied to this analysis, Defendant is entitled to judgment as a matter of law.

13